

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CHRISTOPHER LANGDON,
    Plaintiff,

    versus                     Case No.

GOOGLE, INC, d.b.a DELAWARE GOOGLE, INC., YAHOO! INC, TIME- WAR-
NER COMPANIES, INC., and MICRO-SOFT CORPORATION
    Defendants

## CIVIL RIGHTS COMPLAINT FOR DAMAGES AND INJUNCTIVE AND DECLARATORY RELIEF; ANTI-TRUST COMPLAINT AND DEMAND FOR JURY TRIAL

    (I) I am the publisher of two internet websites, www.ncjusticefraud.com.

and www.chinaisevil.com. The first site exposes some of the fraud perpetrated

on the U.S. Supreme Court, and other courts, by North Carolina Attorney Gen-

eral Roy Cooper, and his associates, Lisa Glover, T.L. Mallonee and Robert O.

Crawford III (now in private practice). It also exposes fraud by the North Car-

olina Department of Transportation (NCDOT) and several NCDOT employees,

J.J. Swain, Jack Murdock and F.D. Martin. That site has been in continuous exis-

tence since October 27th, 2005. The second site is critical of the Chinese Com-

munist government.

    (II) I attempted to place two different ads for www.ncjusticefraud.com

with Google through their Adwords program. I wanted the ads to appear on the

first page when one does a "Google Search" for *Roy Cooper, the N.C. Depart-*

-2-

*ment of Justice*, and other searches. The ads are sometimes referred to as "spon-

sored links," or, "click ads." The first attempted ad is in *Appendix #1* and reads:

"<u>Roy Cooper's Fraud</u>
Cooper's fraud on the Supreme Court
Corruption within the N.C.D.O.J.
<u>www.ncjusticefraud.com</u>"

The ad was rejected by Google on March 3rd, 2006 (*See:Appendix I* ) for the

following, purported reasons:

"Your ad in campaign #1 was just disapproved for the following issues:
Unacceptable content -POLICY DEFINITIONS-Unacceptable Content: At this
time , Google policy does not permit ad text that advocates against an individual,
group, or organization. In addition, this policy does not permit the advertise-
ment of websites that advocate against a group protected by law." (*See: Appendix*
*#1* ).

Of course, Roy Cooper, Lisa Glover, T.L. Mallonee, Robert O. Crawford III,

J.J. Swain, F.D. Martin and J. Murdock are not groups, they are individuals, and

they are not protected by law from criticism. The N.C. Department of Justice

(NCDOJ) and the NCDOT might be considered groups, but they also are not

protected by law from criticism. Additionally, the rejection of my ads is contrary

to Google's own policy, that is published on their website.

"Ad text advocating against any organization or person (public, private, or
protected) is not permitted. Stating disagreement with or campaigning against a
candidate for public office, a political party or public administration is generally
admissible." (*See: Appendix #1*).

-3-

My website, www.ncjusticefraud.com, criticizes agencies and individuals

involved in public administration. Also, Roy Cooper's website is prominently

listed when a "Google Search" of his name is done. On that website, political

campaign contributions are still being sought. Published reports by the N.C.

State Board of Elections of political campaign contributions shows large amounts

of funds collected by Cooper for the period ending December 31st, 2005.

According to news reports, Roy Cooper has over $700,000 which may be

used in a future run for the N.C. governorship, the second largest amount col-

lected by any candidate. Cooper has issued a large number of public service

announcements, at taxpayers expense, which, in reality, are political ads.

Most importantly, the rejection of my ads is a violation of my rights of free

speech and to petition the government for a redress of grievances (U.S.C.

Amendments I & XIV) (*See : Section IV*, below)

(III) I subsequently submitted another proposed ad to Google for

www.ncjusticefraud.com which reads:

"Roy Cooper
The truth about Roy Cooper
the North Carolina Attorney General." (*See: Appendix #1)*

That ad was rejected on March 6th, 2006 for the same purported reasons given

for rejecting the first ad. Those purported reasons are baseless for the same

-4-

reasons stated in the preceding Section. Additionally, the text in the second

proposed ad does not advocate against Roy Cooper, as falsely alleged by Google.

It does refer the viewer to my website, which is anti-Roy Cooper.

(IV) On Wednesday, March 29th, 2006, I also attempted to place an ad for

my other website, www.Chinaisevil.com which stated:

Communist China
Has Murdered Millions
Boycott China

When that ad did not appear on Google by the next morning, Thursday,

March, 30th, 2006, I e-mailed  Google asking them about the ad.  Normally,

AdWords ads appear on Google within a few minutes after they are submitted.

Google responded that my China ad was under review to determine if it met

their policy guidelines.  However, when I did not receive a response, I e-mailed

them again on Friday, March 31st.  When I did not receive an approval, or a dis-

approval, for the ad, I e-mailed them again on Saturday, April 1st, 2006, at 10:15

a.m. and asked for a quick decision.  At 10: 50 a.m.  I canceled my Google

AdWords programs.  A message appeared on my Google account page asking

why I had canceled my ad program and indicating that personnel were available

to answer any questions that I had.

On the following Monday, April  3rd, 2006, Google e-mailed me and asked

-5-

that I re-submit my China ad for review. I did re-submit the ad the following

day, Tuesday, at 10:15 a.m. Eastern Time. However, by the following day at

10:38 a.m. I still hadn't received a decision on the ad. Therefore, I canceled my

Google ad account and ad program because Google had over a week to approve

the China ad and never reached a decision. They had "stonewalled" me.

(V) (a)  Google's rejection of all three of my ads denied my rights of free

speech and to petition the government for a redress of grievances, as guaranteed

by the Constitution of the United States, Amendments I and Amendment XIV,

and the Constitution of the State of Delaware. The internet, and search engines

like Google, are public forums, therefore, Google cannot enforce its prior restraint

of free speech without violating the aforementioned Constitutional rights.

In *Marsh v. Alabama*, 326 U.S. 501, 66 S.Ct. 276 (1946) the Court held that

private property that is opened to the public may be subject to the First

Amendment.

"The more an owner, for his advantage opens up his property to for use by
the public in general, the more do his rights become circumscribed by statutory
and constitutional rights of those who use it..In balancing the constitutional
rights of property owners against those of the people to enjoy freedom of press
and religion the latter occupy a preferred position." *Marsh v. Alabama,* 66 S.Ct.
276 at 276 [3-5] (1946).

The Supreme Court in *Amalgamated Food Employees Union Local v. Logan*

*Valley Plaza, Inc.,* 391 U.S. 308, 88 S. Ct. 1601 (1968), held that a shopping mall is a

public forum. The Court later limited *Amalgamated, supra,* in *Lloyd Corp. v.*

*Tanner,* 407 U.S. 551, 92 S.Ct. 2219 (1972) and *Hudgens v. NLRB,* 424 U.S. 507, 96

S.Ct. 1029 (1976). However, the Court has not over-ruled *Marsh, supra.* The

Court has re-affirmed the principle that public property may be dedicated to

public use.

   "...although petitioner is correct that as an initial matter a speaker must seek
access to public property or to *private property dedicated to public* use to evoke First
Amendment concerns.." *Cornelius v. NAACP Legal Defense & Education Fund,* 105
S.Ct. 3439, 3448 (1985).

   (b) The Courts rulings in *Lloyd* and *Hudgens* do not bar the present action be-

cause:

   (1) The internet is a public forum, much more open to the public than the

shopping mall in *Amalgamated,* and more so than the company town in *Marsh.*

There are more First Amendment activities occurring on the internet than in any

mall. Several states have held that a shopping mall is a public forum. *Pruneyard*

*Shopping Center v. Robins,* 447 U.S. 74, 100 S.Ct. 2035. *See also: Section  below.* The

mall in *Pruneyard* had 25,000 visitors a day. The internet, Google, AOL and

Yahoo! have millions of visitors each day. There are thousands of shopping

centers in the U.S. However, the internet search engine market is dominated by

three companies: Google-AOL, Yahoo! and Microsoft (MSN).

-7-

Shopping malls are primarily devoted to retail activities. The internet and search engines are used for retail activities, and for: chat rooms, presenting news, polling on government/political matters; providing information on government agencies, services and officials; accessing public records, including court records; filing court documents (*i.e.* the Pacer System); obtaining government forms; petitioning the government (*i.e.* Google search "impeach George Bush"); paying taxes; applying for jobs (including government jobs); purchasing U.S. Postal Service Stamps; e-mailing; tracking private mail deliveries (*i.e.* FedEx); taking state approved driving courses; advertising; taking public and private college courses; political fund-raising; religious fund-raising ; registering to vote; and voting.

The internet is also used to broadcast radio programs, religious events, press conferences by government officials, television shows, sports events, *etc.* There is a symbiotic relationship between traditional broadcasters and the internet. For example, NBC news allows viewers to vote *via* the internet for news stories it wishes to see on the NBC nightly news. The TV show "Who Wants to Be a Millionaire" allows viewers at home to assist contestants by answering questions *via* the internet and AOL. Broadcasting is highly regulated. *Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367 (1969); *FCC v. National Citizens Comm. for Broadcasting,* 436

-8-

U.S. 775 (1978) (law requiring broadcaster serve public interest to receive and maintain license upheld). *See generally* 47 U.S.C.

Furthermore, the internet was developed by the U.S. Government and public universities, and was eventually made available to the public, therefore state action is involved. Government employees access the internet, and e-mail each other, in government buildings with computers purchased by governments. There was a scandal in North Carolina several years ago when employees of the North Carolina Department of Transportation racked up thousands of dollars in expenses accessing pornographic web-sites.

Many colleges, state and private, require students to have computers and to access the internet for research projects. Some elementary schools in California require students to have a computer in order to access the internet. Public universities and libraries make computers available to the public to access the internet. The Pennsylvania courts have held that a mall is not public forum, however, their courts have also held that a private university is a public forum. *Commonwealth v. Tate,* 432 A. 2d 1382 (Penn. 1981). *See also: State v. Schimid,* 423 A. 2d 615 (1980) (private university public forum).

The internet is accessed *via* telephone lines throughout the country. The rights of ways for those lines, strung along the public streets and highways, were

-9-

procured through the power of eminent domain. Streets, including the shoulders and sidewalks, have always been open for picketing, leaf-letting, protesting and other First Amendment activities. *Hague v. C.I.O.,* 307 U.S. 496, 59 S.Ct. 954, 955 (1939). Telephone companies are quasi-public corporations with government granted monopolies, further proof of the internet's symbiotic relationship with governments.

Some people access the internet via cable companies, whose lines are also strung along public streets. Cable companies have government granted monopolies, are highly regulated, and are required to provide public access channels. *See: Turner Broadcast Systems, Inc. v. FCC,* 117 S.Ct. 174 (1997).

The internet is also accessed via satellite dishes. Those signals are transmitted by satellites that have been launched by the government (NASA) from government property (Kennedy Space Center) by rockets developed by the U.S. government. It is my understanding that the launching and orbits of satellites are highly regulated by U.S. and International Law.

According to USA Today (April 28th, 2006, p. 3A) the California Public Utilities Commission approved a plan to allow the transmission of internet data through power lines. A test program has been utilized with the help of Southern California Edison and the Los Angeles Department of Water and Power.

-10-

When there is substantial government entwinement with an ostensibly

private entity, there is state action, as required by 42 U.S.C. 1983. *Brentwood*

*Academy v. Tennessee Secondary School Athletic Association,* 121 S.Ct. 924, 925 [5-6]

(2001). Certainly, there is more government entwinement in the internet than in

the company town in *Marsh*. The internet is the greatest public forum ever

created, and Google-AOL, Yahoo! and Microsoft are the primary search engines

for the internet. When courts examine First Amendment rights, they must adapt

those rights to technological and economic changes.

(2) Once private property is dedicated as a public forum, it may not dis-

criminate, as the Supreme Court in *Lloyd v. Tanner* stated:

"First and Fourteenth Amendments safeguard rights of free speech and
assembly by limitations on state action, not on action by owner of private
property used *non-discriminatorily* [emphasis added] for private purposes only...
Courts properly have shown special solicitude for guarantees of First Amend-
ment" *Lloyd Corp., Ltd. v. Tanner,* 407 U.S. 551, 33 L. Ed 2d 131, 92 S.Ct. 2219 at
2219 [1-2] (1972).

"The basic issue in this case is whether respondents, in the exercise of
asserted First Amendment rights, may distribute handbills on Lloyd's private
property contrary to a policy enforced against *all* [Court's emphasis] hand-
billing." *Lloyd, supra,* at 92 S.Ct. 228 [1], 407 U.S. at 567.

The Court made it clear that if Lloyd had opened the mall to handbilling it

could not discriminate, as the U.S. Court of Appeals for the Third Circuit noted:

"The third suggested factor in *Lloyd* is that a demonstration of discriminatory
denial of access might create an enforceable right of entry." *Asociacion de*

-11-

*Trabajadores, v. Green Giant,* 518 F. 2d 130, 137 (3rd. Cir. 1975).

Google discriminated against me when it refused to place my ads and

falsely claimed that it does not allow ads for sites advocate against individuals

(*See* : page 2 herein). However, when I did a Google Search for "Impeach George

Bush," I observed ads (sponsored links) for a website called "Sloganation" that

sells bumper stickers and t-shirts advocating that George W. Bush be impeached.

That implies that George W. Bush has broken the law. Some of the bumper

stickers for sale on sites that advertise on Google accuse President of Bush of:

being a Nazi; murdering millions; being Satan; lying; *etc.* Another site adver-

tising on Google sells a bumper sticker which depicts Senator Hillary Clinton

urinating on the word "everyone." *See: Appendix* #2. If sites selling those mater-

ials may be advertised on Google, why can't my sites be advertised on Google?

(3) The federal state action requirement has been met in my case.

"..in certain circumstances private property might become subject to First
Amendment demands." *Asociacion de Trabajadores, supra,* at 131 [5].

"Property does become clothed with a public interest when used in a manner
to make it of public consequence, and affect the community at large. When,
therefore, one devotes his property to a use in which the public has an interest,
he, in effect, grants to the public an interest in that use, and must submit to be
controlled by the public for the common good, to the extent of the interest he has
thus created." *Munn v. Illinois,* 94 U.S. 113, 126 (1877).

In *Niemetko v. State of Maryland,* 340 U.S. 268, 71 S.Ct. 325, the Court held that

-12-

the Jehova's Witnesses should be allowed to use a public park which other re-

ligious organizations were allowed to use. In *Laguna Publishing Co. v. Golden*

*West Publishing Corp.,* 177 Cal. Rptr. 703, 715-716 (Cal.App. 1981), the court held

that a private residential complex could not discriminate by allowing  handbil-

ling by some, and not others, relying on *Lloyd. See also: Burton v. Wilmington Park-*

*ing Authority,* 365 U.S. 715, 81 S.Ct. 856 (1961).  Thus, a discriminatory ban of my

political expressions by  Google is unconstitutional.

When Google denied my ads, it did not provide me with a contact telephone

number, e-mail address, or, a mailing address, that would have allowed me to

explain why my ads should have been allowed.  The Google censorship is one

sided and arbitrary.  The explanations given for the denial of my ads were gener-

ic, non-specific and false.

Google gave no reasons for not running my ad for my *Chinaisevil* website.

It has been well established that Google has curried favor with the Chinese

Communist government by censoring its search engine in China.  Information on

Chinese dissidents was collected by Google and given to the government, result-

ing in their imprisonment.  It is my understanding that Google has agreed to

censor certain words in its Chinese operations, including "democracy" and

"freedom."  Google has sold its soul and kowtows to the Communist Chinese

-13-

dictators for profits.

(VI) A "Google Search" on Roy Cooper produces hundreds of results.
Nearly all of those results are articles that are favorable to Cooper. My website
cannot get the exposure it should have on Google, and I do not have a meaning-
ful alternative to advertising on the internet.

After the rejection of my ads, I asked for a refund of my $5.00 enrollment fee
in Google's Adwords program, and the refund was granted. However, shortly
thereafter, Google retaliated by eliminating direct links to my website,
www.ncjusticefraud.com, when doing a "Google Search" for Roy Cooper.

I did a "Google Search" for "Roy Cooper" on March 13th, 2006. My website
was result #35. I did a subsequent "Google Search" for "RoyCooper" on March
15th, 2006 and my website was listed at #34. On that same day I did a "Google
Search" for "Roy Cooper North Carolina Attorney General." My website was
listed as result #16.

Shortly thereafter, the same searches indicated that all direct links on
Google to www.ncjusticefraud.com were eliminated. On March 19th, 2006, I did
a "Google Search" for "Roy Cooper Attorney General." I checked all 605 results
and found no link to my website. I also checked "Roy Cooper" and "Roy Coop-
er North Carolina Attorney General" without any results for my website. In a

-14-

few days, I had gone from #16, 34 and #35 on Google, to nowhere.

At the same time, other search engines ranked me highly. A search of "Roy Cooper Attorney General" on MSN indicated that MSN ranked my website at #8. The same search on www.search.com ranked my site at #24 and 27 on March 19th. The same search on *All the Web* had my site ranked at #59. My search on *Dogpile* had my site ranked at #43. *Metacrawler* had my site ranked at #43 and # 47.

Google's elimination of my site from its results for "Roy Cooper" has an adverse effect on my ranking by all of the aforementioned search engines. All of them, except MSN, base their results on a compilation of the results (rankings) by other search engines, including Google. Refusal by Google to place my site in its search results for "Roy Cooper" will negatively effect my ranking by MSN because of less traffic to my site.

Searches on AOL and Netscape are "enhanced by Google," therefore, Google's elimination of direct links to my website, when searching "Roy Cooper," has impaired, or eliminated, direct links to my site when searching through AOL search or Netscape.

Clearly, Google has not only refused to place my ads, but has retaliated against me for asserting my First Amendment rights by eliminating any direct

-15-

links to my site when "Google Searching" for information on Roy Cooper.

(VII) Google and AOL, a Time Warner company, are partners in the search engine business. When seeking to advertise on AOL's search engine, callers to AOL's telephone number (1-888-265-2131) are told to contact AOL's partner, Google. Therefore, Time Warner is jointly and severably liable for Google's refusal to place my ads.

(VIII) My website, www.ncjusticefraud.com, contains allegations, including, but not limited to, the following:

(a) N.C. Attorney General Roy Cooper, and his associates, Lisa Glover and Robert O. Crawford III, perpetrated fraud on the U.S. Supreme Court, and other courts, in *Langdon Cooper & Tippett* and in *Langdon v. Swain, Martin and Murdock*. Their fraud on the courts includes: lying about material facts; mis-representing the pertinent law; failing to cite the contrary, controlling case law; concealing critical information; and misrepresenting my Complaints. They also violated the principles of equitable and judicial estoppel.

(b) North Carolina Department of Justice attorney T.L. Mallonee procured the purported judgment in *Langdon v. NCDOT* (98-CVS-139) in the state courts of N.C. by fraud on the courts and by violating the principles of equitable and judicial estoppel.

-16-

(c) The NCDOT, and its employees, Swain, Martin and Murdock, used fraud to prevent me from obtaining just compensation for the taking of my property in the state and federal courts, thereby denying my Constitutional rights to meaningful access to the courts; due process of law; and equal protection under the law.

(d) Lisa Glover and Robert O. Crawford III used fraud in the N.C. Courts in order to prevent me from obtaining relief from the void, purported judgment in *Langdon v. NCDOT*.

(e) Several examples of their fraud on the U.S. Supreme Court are given at www.ncjusticefraud.com. *See: Appendix #3.* For instance, Cooper, Glover and Crawford stated in their *Brief in Opposition*, filed with the U.S. Supreme Court:

"Plaintiffs Complaints were properly dismissed as frivolous on the grounds of res judicata and/or failure to state a claim and qualified immunity." *Brief in Opposition*, case no. 02-12, p. 14.

That statement is false for several reasons: (1) Neither of my complaints (*Langdon v. Tippett et alia* and *Langdon v. Swain et alia* ) were dismissed because of qualified immunity, as falsely alleged by Cooper and his associates; (2) Cooper, Crawford and Glover falsely alleged in their preceding statement, filed with the U.S. Supreme Court, that my Complaints were properly dismissed because of *res judicata.* However, they contradicted themselves by later admitting in the same

-17-

*Brief in Opposition* that it was <u>not</u> proper to dismiss *Langdon v. Swain* because of

*res judicata.*

   " Thus, it may not have been proper for the lower courts to dismiss Plaintiff's
Complaint in *Langdon v. Swain* on the grounds of res judicata." <u>*Brief in Opposition*</u>
<u>(case 02-12), p. 20.</u>

   There are numerous other examples of their fraud on the U.S. Supreme

Court, many of which, but not all, have been exposed at <u>www.ncjustciefraud.com</u>

for 6 months. *See: Appendix #3.*

   Google never stated that it was refusing to place my ads because they were

false, or, because my websites contained information that was false, or, poten-

tially false. Also, Cooper, Crawford and Glover, and others mentioned on my

website, consented to the allegations against them by not objecting to them. *See*

*Section IX below.* Without waiving those objections, I am willing to withdraw my

Firts Amendment claims *if* the defendants can prove that my Complaints

[*Langdon v. Swain et alia* and *Langdon v. Tippett et alia* were dismissed because of

qualified immunity, as fraudulently alleged to the U.S. Supreme Court by Coop-

er, Crawford and Glover.

   (IX) I made Cooper, Crawford, Mallonee and Glover aware of my web-site,

and the nature of my allegations before, and after, the inception of the site. In a

letter dated July 20th, 2005, I outlined some of the fraud on the courts by

-18-

Cooper, Crawford Mallonee and Glover. The letter was also mailed to Governor

Easley. I sent a subsequent letter to Cooper and attached a detailed exposition of

at least twenty instances of fraud on the court by Cooper, Crawford, Glover and

Mallonee. Those allegations of fraud on the courts have since been posted on my

website, www.ncjusticefraud.com. *See: Appendix #3.* A copy of my letter and

supporting documents were sent to Governor Easley, and they both received the

documents on September 8th, 2005. I offered to discuss the situation with Cooper

in person, or by telephone, however, he appears to be unwilling to do so.

Cooper responded through a NCDOJ attorney, Elizabeth Mc Kay, in letters

dated September 1st and September 16th, 2005. Neither letter denied the charges,

however, the second letter threatened me with consequences if I took "any

action" (whatever that means) alleging fraud by the NCDOJ attorneys. I took the

letter as a hollow threat. I responded in a letter dated September 23rd, 2005, and

informed Mc Kay that I would not be bullied and that I had informed members

of the media about the allegations.

Another of my letters, dated October 27th, 2005, informed each of the U.S.

Supreme Court Justices of my website and its allegations. I also sent copies of the

letter to Roy Cooper, Robert O. Crawford, Lisa Glover and T.L. Mallonee.

I also called and left voice mail messages for Glover, Cooper (via Mc Kay)

and Crawford  Those messages informed them of the existence and nature of my website. My subsequent letter of October 31st, 2005 to Cooper, Crawford, Glover and Mallonee asked them to write me if they disputed any of my assertions of fraud by them on my website. The letter was received by the NCDOJ attorneys on the following dates: Robert Crawford III, November 4th, 2005; Roy Cooper, November 9th, 2005; Lisa Glover, November 9th, 2005; and T.L. Mallonee, November 11th, 2005.

They never responded to the letter, therefore, they waived any right to object to the publication of the accusations on my website. Beginning in November, 2005, I wrote and/or e-mailed every member of the North Carolina General Assembly about my website and the nature of its allegations. I also began e-mailing hundreds of attorneys, reporters, and Cooper contributors in North Carolina with the same information.

On January 12th, 2006, I wrote Chief Justice Roberts a lengthy letter informing him again, in more detail, of Cooper, Crawford and Glover's fraud on the Supreme Court. I affirmed, under the penalty of perjury, that my allegations in the letter, and the accompanying printouts from my website, were true and correct. I also affirmed, under the penalty of perjury, that copies were mailed to Crawford, Cooper, Glover and Mallonee. Copies of the letter were also sent to

-20-

each of the other eight Justices.

My allegations were published in letter form, and circulated, at least since July, 20th, 2005, approximately nine months ago. My allegations have been published on my website since October 27th, 2005, approximately six months ago.

None of the individuals accused of fraud, and/or fraud on the courts on my website, or in my letters, has denied the charges, or, asked for a retraction. If my allegations were false, the named individuals could have objected to the publication of the allegations, demanded a retraction, and sued for libel if the allegations were not withdrawn. However, they have not done so, therefore, the allegations should be deemed admitted and acceptable for publication. If *Google* had provided me with contact information after the rejection of my ads, I could have provided them with the preceding information.

Defendant Google has never asserted that the allegations on my website, www.ncjusticefraud. com, are false, or, that they might be false. Unlike the broad allegations of criminal acts by President Bush and Senator Clinton, made by commercial advertisers on Google, my allegations are well supported factually.

(X) I also seek relief under the Constitution of the State of Delaware based on diversity of citizenship. The Defendants have violated my rights under Article I, Section 5 of the State of Delaware Constitution which states that:

-21-

"The press shall be free to every citizen who undertakes to examine the official conduct of men acting in a public capacity.."

According to Delaware law, a shopping mall is a public forum.

"Owners of private property held out for public purpose, such as shopping centers, are not entitled to prevent individuals form picketing individuals from picketing on landowners private property." *State v. Elliot*, 548 A. 2d 28, 29 [1] (Del. 1988)

The Delaware court in *State v. Elliot* adopted the analysis that the New

Jersey courts use to determine what is a public forum. *State v. Eliot supra,* at 32-

33. Other states have reached similar conclusions. *Bock v. Westminster Mall Co.,*

819 P. 2d 55 (Colo. 1991); *Alderwood Assocs. v. Washington Environmental Council,*

635 P. 2d 108 (1981); *Pruneyard Shopping Center v. Robins,* 447 U.S. 74, 100 S.Ct.

2035 (1980); *Batchelder v. Allied Stores International,* 445 N.E. 2d 590 (Mass. 1983);

*Lloyd Corp. v. Whiffen,* 849 P. 2d 446 Ore. 1993); *State v. Cargill,* 786 P. 2d 208 (Ore.

App. 1990). *See also: New Jersey Coalition v. JMB,* 650 A. 2d 757 (N.J. 1994); *State v.*

*Shack,* 277 A. 2d 369 (N.J. 1971). Of course, the internet, and Google, are shop-

ping malls, and much more.

The state courts cited above agree that: either, there is no state action re-

quirement in their constitutions for access to private property for First Amend-

ment purposes; or, they have held that the state action requirement has been

met because the private property has been dedicated to public use. *See: Golden*

-22-

*Gateway Center v.  Golden Gateway Tenants Association,* 111 Cal. R. 2d 336 (Cal.

2001), *re-affirming Pruneyard, supra.*

Defendant Google has also committed fraud in violation of Delaware Law.

According to Google, it denied my ads for www.ncjusticefraud.com for:

"Unacceptable Content: At this time Google policy does not permit ad text
that advocates against an individual, group or organization. In addition, this
policy does not permit the advertisement of websites that advocate against a
group protected by law." *See Appendix #1.*

That is false because, as proven in Section II, herein, Google does allow the

advertisement for sites that, for commercial reasons, advocate against President

Bush, Vice President Cheney, Senator Hillary Clinton, and other politicians and

persons. Also, as it has been previously demonstrated herein, Cooper,  Craw-

ford, Glover, Swain etc. are not groups and are not protected by law from

criticism. Likewise, Google could not come up with an acceptable excuse for

not advertising my website, www.chinaisevil.com.  It used fraud to avoid making

a formal decision as to whether or not to run the ad.

Google's failure to list my website, www.ncjusticefraud.com, when doing a

Google search for "Roy Cooper," is fraud because it mis-represents the amount of

traffic to my site.  Yahoo! also fraudulently mis-represents the ranking of my site.

(XI) I attempted to place an ad (sponsored link) on Yahoo!  However, I was

informed that Yahoo! does not accept ads for websites that aren't hosted by

-23-

Yahoo!. My website is hosted by Network Solutions. I wrote a certified letter to the president of Yahoo! asking if that was their policy. Although my letter was received at Yahoo! on March 18th, 2006, I never received an answer. *See Appendix* #4.

Yahoo!'s refusal to run my ad violates my rights of free speech and to petition the government for a redress of grievances (U..S. Constitution, Amendments I & XIV, the Constitution of Delaware and the common law.

(XII) I also attempted to place an ad for my website, www.chinaisevil.com, with Microsoft's search engine, www.search.msn.com., a month ago. *See: Appendix #4* . I never received a response. Therefore, Microsoft denied my rights of free speech and to petition the government for a redress of grievances, as guaranteed by the Constitution of the United States of America and the Constitution of the State of Delaware and the common law.

(XIII) Alternatively, The refusals by Google-AOL, Yahoo! and Microsoft to run my ads are discriminatory and in violation of the Commerce Clause of the Constitution of the United States.

"And though the issue is not directly analogous to the one before us we do want to point out by way of illustration that such regulation may not result in an operation of these facilities, even by privately owned companies, which unconstitutionally interferes with and discriminates against interstate commerce. Port Richmond & Bergen Point Ferry Co. v. Board of Chosen Freeholders of Hdson County, supra 234 U.S. at page 326, 34 S.Ct. at page 823.." *Marsh v.*

-24-

_Alabama, 326 U.S. 501, 66 S.Ct. 276, 278-279 (1946)._

Yahoo! requires that advertisers must host their websites with Yahoo! which is discriminatory and interferes with interstate commerce.  Google allows websites to advertise products that display messages accusing public officials of all sorts of crimes and misconduct, but would not allow me to advertise my sites, although the allegations therein are well documented and have gone un-denied. Microsoft allows some advertisers, and not others.  It is my understanding that Microsoft, Google-AOL and  Yahoo! dis-criminate against small advertisers by discouraging, and/or,  effectively banning them.

(XIV)  Alternatively, the internet and internet search engine providers are common carriers.

"Common carrier.  The term 'common carrier' or 'carrier' means any person engaged as a common carrier for hire, in interstate or foreign communication by wire or radio or in interstate radio transmission of energy..." _47 U.S.C.S, Section 153 (10)._

The U.S. Supreme Court stated that:

The authority to regulate the conduct of a business ..does not exist in respect of merely private property or business..but exists only where the business has become 'affected with a public interest.' This phrase, used by Lord Hale 200 years ago (Munn v. Illinois, 94 U.S. 113, 126)  includes,[businesses] like common carriers, telegraph and telephone companies, ferries, wharfage etc." _Tyson & Bro.–United Theatre Ticket Offices, Inc., v. Banton, 47 S.Ct.  428[4] (1927)._

The internet did not exist in 1927, however, telegraph and telephone com-

-25-

panies did and were considered public businesses, as common carriers are. They

transmit messages electronically over wires, as do internet companies like

Google-AOL, Yahoo!, and Microsoft. While some telephone and internet signals

are carried by satellite, that doesn't change the fact that they are public compa-

nies and common carriers. Therefore, they may not discriminate.

"Discrimination and preferences..It shall be unlawful for any common
carrier to make any unjust or unreasonable discrimination in charges, practices,
classifications, regulations, facilities, or services for or in connection with like
communication service, directly or indirectly, by any means or device, or to make
or give any unreasonable preference or advantage to any particular person, class
of persons, or locality, or to subject any particular person, class of persons,
or locality to any undue or unreasonable prejudice or disadvantage...Any carrier
who knowingly violates the provisions of this section shall forfeit to the United
States the sum of $6,000 for each such offense and $300 for each and every day of
continuance of such offense" 47 U.S.C.S., Section 202.

"..carriers duty to serve all indifferently cannot be lessened by violation of
that duty." _Semon v. Royal Indemnity Company, 279 F. 2d 737, 738 [6] (5th Cir.
1960)._

_See also: Munn v. Illinois_ at 129-130; _Neubauer v. Disneyland, Inc.,_ 875 F. Supp.

672 (C.D. Cal., Southern Div. 1995)

(XV) The Defendants monopolize the internet search engine advertising

business. According to a Reuters news article, published at today.reuters.

com/news, May 3rd, 2006, the companies have the following shares of the U.S.

Search engine advertising market:  Google-AOL - 49%; Yahoo! - 22%; and

Microsoft (MSN) 11%. They have control of 82% of the market, with Google

-26-

controlling approximately half the market. In order to maintain their monopoly power, the Defendants have a stated and/or a *de facto* bar against small advertisers in order to concentrate on more profitable, larger advertisers. Discriminatory advertising practices, in order to maintain monopoly power, are illegal.

"The publisher may not accept or deny advertisements in an 'attempt to monopolize * * * any part of the trade or commerce among several States.." *Lorain Journal Co. v. U.S.*, 342 U.S. 143, 72 S. Ct. 181, 187 (1951).

According to an article in the *Wall Street Journal*, May 4th, 2006, p.1, p. 5, the Defendants are doing everything possible to increase ad revenues from their search engines. When they violate the law to maximize revenues, they must be held accountable. Microsoft, like Yahoo! and Google, also wishes to curry favor with the Chinese Communist government.

Therefore, the Defendants' refusals to place my ads are in violation of the anti-trust laws of the U.S. and of the State of Delaware (Vol. 6, Chapter 21, Section 2101 *et seq*.).

(XVI) When I attempted to place an ad with Microsoft, it was during its pilot advertising program. Microsoft has just launched a new advertising system called AdCenter. To advertise on Microsoft's search engine, one must agree to certain terms, which require potential advertises to surrender many of their rights of access to the courts (U.S.C. Amendment I) and due process of law (U.S.

Constitutional Amendment V). Microsoft's advertising restrictions are an arbitrary and un-constitutional impingement on the rights of advertisers. They also are: an illegal, discriminatory restriction on interstate commerce; a violation of the requirement that common carriers serve all without discrimination; and an unfair exercise of monopolistic power.

(XVII) I respectfully demand a jury trial for all issues so triable.

(XVIII) I do not agree to the determination of any issues by a magistrate judge, unless required to do so by law.

(XIX) The court has jurisdiction to determine the U.S. Constitutional questions under 42 U.S.C., Section 1983; 28 U.S.C., Sections 1331 and 1343. The other federal questions are under 47 U.S.C., Sections 153 & 202. The Court has jurisdiction to determine the Delaware constitutional and law issues under diversity of citizenship, 28 U.S.C., Section 1332, and under supplemental jurisdiction.

(XX) I ask that my *pro se* pleadings be liberally construed and held to a lesser standard than those prepared by an attorney.

"In civil rights cases where the plaintiff appears pro se, the court must construe the pleadings liberally and must afford the plaintiff the benefit of any doubt." *Karim Panahi v. L.A. Police Dept.*, 839 F. 2d 621, 623 (9th Cir. 1988).

*See also: Haines v. Kerner*, 404 U.S. 519, 520-521, 92 S.Ct. 594, 595-596 (1972);

-28-

*Satchell v. Dilworth,* 745 F. 2d 781 (2nd Cir. 1984); *Gibbs v. Roman,* 16 F. 3d 83 (3rd

Cir. 1997); and *Sellers v. M.C. Floorcrafters, Inc.,* 842 F. 2d 639 (2nd Cir. 1988).

(XXI) Therefore, I ask for the following relief:

(a) A declaratory judgment that the internet and internet search engines are

public forums under federal law; (b) a declaratory judgment that the internet

and internet search engines are public forums under Delaware law; (c) that

Google-AOL, Yahoo! and Microsoft be required to place my ads for my websites,

www.ncjusticefruad.com and www.chinaisevil.com , in prominent places on

their search engine results for searches of my choosing; (d) that Defendants

Google-AOL and Yahoo! honestly rank my websites, www.chinaisevil.com and

www.ncjusticefraud.com, in their search results, as Microsoft does; (e) com-

pensatory damages in the amount of $95,000 from each of the Defendants for the

violation of my federal rights, as described in this Complaint; (f) compensatory

damages of $95,000 from Google-AOL and Yahoo! for the violation of my rights

under the Constitution and laws of Delaware; (g) Punitive damages from each

of the Defendants of $95,000 for the violation of my federal rights; (h) punitive

damages from Google-AOL and Yahoo! of $95,00 each for the violation of my

rights under the Delaware Constitution and laws; and (i) a declaratory judgment

holding that Microsoft's waiver requirements for advertising on its search engine

-29-

are unconstitutional. However, in the spirit of goodwill, if the Defendants allow

my ads, under terms and conditions that are acceptable to me, within 7 days of

service of this Complaint, I will ask for only $6,500 total from each of the

Defendants.

Respectfully submitted, this the $\underline{8^{th}}$ day of May, 2006.

Christopher Langdon
1835 Edwin Blvd.
Winter Park, Fl. 32789
407-647-7539

## VERIFICATION

I solemnly affirm under oath, and under the penalty of perjury, that
everything contained herein is true and correct, except those matters asserted on
information and belief, and those matters I believe to be true and correct.

Christopher Langdon

Suscribed to and affirmed before me, this the $\underline{8^{th}}$ day of May, 2006.

Notary Public

CHARLES CURTIS WILSON

Charles Curtis Wilson
My Commission DD363274
Expires October 17 2008



1835 Edwin Blvd
W. Park, Fla 32789

Clerk of court
US Dist. Court
844 N. King St.
LockBox 18
Wilmington, Del. 19801

FIRST CLASS

RETURN RECEIPT
REQUESTED

CERTIFIED MAIL

7005 1160 0003 3234 4201

JS 44 (Rev. 11/04)

**CIVIL COVER SHEET**

06 - 319

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Christopher Langdon | Google, Inc., Yahoo!, Inc., Time Warner Cos., Microsoft Corp. |

**(b)** County of Residence of First Listed Plaintiff  Orange County, Fl. 32789
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  New Castle
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**FILED**

**MAY 17 2006**

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Pro se-  1835 Edwin Blvd., Winter Park
Fl. 32789----407-647-7539

Attorneys (If Known)

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

scanned

| II. BASIS OF JURISDICTION (Place an "X" in One Box Only) | | III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff |
|---|---|---|
| | | (For Diversity Cases Only) and One Box for Defendant) |

| II. BASIS OF JURISDICTION | III. CITIZENSHIP OF PRINCIPAL PARTIES |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☒ 3  Federal Question (U.S. Government Not a Party) |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity (Indicate Citizenship of Parties in Item III) |

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product   Med. Malpractice | ☐ 625 Drug Related Seizure   28 USC 157 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument |   Liability / ☐ 365 Personal Injury - |   of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &   Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
|   & Enforcement of Judgment |   Slander / ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'   Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent |   Corrupt Organizations |
| ☐ 152 Recovery of Defaulted |   Liability   Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
|   Student Loans | ☐ 340 Marine **PERSONAL PROPERTY** |   Safety/Health | | ☐ 490 Cable/Sat TV |
|   (Excl. Veterans) | ☐ 345 Marine Product / ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment |   Liability / ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
|   of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) |   Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle   Property Damage |   Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract |   Product Liability / ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) |   12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal   Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise |   Injury |   & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment   Sentence | ☐ 791 Empl. Ret. Inc. |   or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ **Habeas Corpus:** |   Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land |   Accommodations / ☐ 530 General | |   26 USC 7609 |   Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare / ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - / ☐ 540 Mandamus & Other | | |   Under Equal Access |
| |   Employment / ☐ 550 Civil Rights | | |   to Justice |
| | ☐ 446 Amer. w/Disabilities - / ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| |   Other | | |   State Statutes |
| | ☒ 440 Other Civil Rights | | | |

**V. ORIGIN** (Place an "X" in One Box Only)

| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Appeal to District Judge from Magistrate Judgment |
|---|---|---|---|---|---|---|

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. Section 1983 and diversity 28 USC 1332
Brief description of cause:
Denial of First Amendment rights in public forum, Antitrust

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

**VIII. RELATED CASE(S) IF ANY**
(See instructions):
JUDGE _____  DOCKET NUMBER _____

DATE  May 9th,  SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG. JUDGE_____

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
Case No._____ - 0 6 - 3 1 9 -

CHRISTOPHER LANGDON,
    Plaintiff,

    versus

GOOGLE, INC, d.b.a. DELAWARE GOOGLE, INC., YAHOO!,INC.,
TIME WARNER, INC., AND MICROSOFT CORPORATION,
    Defendants.

## PLAINTIFF'S APPENDIX I

Go gle
AdWords

qiology@aol.com | Help | Contact us | Sign Out
Customer ID: 985-729-1894

| Campaign Management | **Reports** | **Analytics** | **My Account** | Advanced Search |

Campaign Summary | **Tools** | Conversion Tracking        [_____] Search

Tools > **Disapproved Ads**

## Disapproved Ads

Review the table below to learn when and why your ad was disapproved. [?] Modify your disapproval email notification settings.

| Ignore | [Show only active campaigns ▼] | | | | 1 - 1 of 1 Disapproved Ads. | |
|---|---|---|---|---|---|---|
| ☐ | **Ad** | **Campaign** | **Ad Group** | **Disapproval Reason** | **Date Disapproved** | **View/Edit** |
| ☐ | Roy Cooper's Fraud<br>Cooper's fraud on the Supreme Court<br>Corruption within the N.C.D.O.J.<br>www.ncjusticefraud.com | Campaign #1<br>Active | Ad Group #1<br>Active | **Unspecified Disapproval Reason**<br>▶Details | Mar 3, 2006 | Edit Ad |

©2006 Google - AdWords Home - Editorial Guidelines - Privacy Policy - Contact Us

Subj:      **Re: [#48812586] Can't see my ad**
Date:      3/3/2006 3:10:05 P.M. Eastern Standard Time
From:      adwords-support@google.com
To:        qiology@aol.com

Hello Chris,

Thank you for your email. I understand that you are having difficulty
viewing your ads. I have reviewed your account and found that your ads
weren't showing for a short period of time because they were in review.
Some ads require review before they can run.

However, while reviewing your campaign I found that one of your ads
currently doesn't comply with our guidelines. It's now marked
'disapproved' and therefore isn't running. AdWords Specialists review ads
in the Google AdWords program and temporarily disable those that don't
meet our standards.

Your ad in Campaign #1 was just disapproved for the following issues:
Unacceptable Content

POLICY DEFINITIONS:
Unacceptable Content: At this time, Google policy does not permit ad text
that advocates against an individual, group, or organization. In addition,
this policy does not permit the advertisement of websites that advocate
against a group protected by law. As noted in our advertising terms and
conditions, we reserve the right to exercise editorial discretion when it
comes to the advertising we accept on our site. Please note that both your
ad and keywords have been suspended at this time.

You can review our guidelines at:
http://adwords.google.com/select/guidelines.html. After making the
necessary changes, save your ad. This automatically resubmits your ad back
to us for review. We appreciate your effort in editing your ad.

Tip: Use the Disapproved Ads tool to check the status of your disapproved
ads and find out why they were disapproved. To learn more, visit
https://adwords.google.com/support/bin/answer.py?answer=14737&hl=en.

If you have additional questions, please visit our Help Center at
https://adwords.google.com/support to find answers to many frequently
asked questions. Or, try our Learning Center at
http://www.google.com/adwords/learningcenter/ for self-paced lessons that
cover the scope of AdWords.

We look forward to providing you with the most effective advertising
available.

Sincerely,

Janelle
The Google AdWords Team


----------------
Want more info on AdWords? Check out the official AdWords Blog, "Inside
AdWords," at http://adwords.blogspot.com to get the latest news,
information and tips.

Original Message Follows:

Friday, March 03, 2006 America Online: Qiology



| Campaign Management | **Reports** | **Analytics** | **My Account** | Advanced Search |

Campaign Summary | **Tools** | Conversion Tracking

Search

Tools > **Disapproved Ads**

## Disapproved Ads

Review the table below to learn when and why your ad was disapproved. [?] Modify your
disapproval email notification settings.

| Ignore | Show only active campaigns ▼ | | | | 1 - 2 of 2 Disapproved Ads. | |
|---|---|---|---|---|---|---|
| ☐ | **Ad** | **Campaign** | **Ad Group** | **Disapproval Reason** | **Date Disapproved** ▲ | **View/Edit** |
| ☐ | Roy Cooper<br>The truth about Roy Cooper<br>the North Carolina Attorney General<br>www.ncjusticefraud.com | Campaign #2<br>**Active** | Roy Cooper<br>**Active** | **Unacceptable Content**<br>▼ Details<br>At this time, Google policy does not permit ad text that advocates against an individual, group, or organization. In addition, this policy does not permit the advertisement of websites that advocate against a group protected by law. As noted in our advertising terms and conditions, we reserve the right to exercise editorial discretion when it comes to the advertising we accept on our site. Please note that both your ad and keywords have been suspended at this time. | Mar 6, 2006 | Edit Ad |
| ☐ | Roy Cooper's Fraud<br>Cooper's fraud on the Supreme Court<br>Corruption within the N.C.D.O.J.<br>www.ncjusticefraud.com | Campaign #1<br>**Active** | Ad Group #1<br>**Active** | **Unspecified Disapproval Reason**<br>▶ Details | Mar 3, 2006 | Edit Ad |

©2006 Google - AdWords Home - Editorial Guidelines - Privacy Policy - Contact Us

Subj:   **Re: [#49142027]**
Date:   3/6/2006 9:22:56 P.M. Eastern Standard Time
From:   adwords-support@google.com
To:     qiology@aol.com

Hello Chris,

Thank you for your email. Allow me to explain why you may not be able to see your ads.

When I checked your campaign, I found that both of your ads are currently marked 'disapproved' and therefore are not running. AdWords Specialists review ads in the Google AdWords program to ensure they comply with our advertising guidelines. When ads don't meet our standards, we temporarily disable them.

Your ads were disapproved for the following issue: Policy - Unacceptable Hate/Anti Content. At this time, Google policy does not permit ad text that advocates against an individual, group, or organization. In addition, this policy does not permit the advertisement of websites that advocate against a group protected by law. As noted in our advertising terms and conditions, we reserve the right to exercise editorial discretion when it comes to the advertising we accept on our site. Please note that both your ad and keywords have been suspended at this time.

You can review our guidelines at
https://adwords.google.com/select/guidelines.html. To edit and resubmit your ad, please follow these steps:
https://adwords.google.com/support/bin/answer.py?answer=6273&hl=en. This automatically resubmits your ad back to us for review. We appreciate your effort in editing your ad.

Tip: Use the Disapproved Ads tool to check the status of your disapproved ads and find out why they were disapproved. To learn more, visit
https://adwords.google.com/support/bin/answer.py?answer=14737&hl=en.

If you have additional questions, please visit our Help Center at
https://adwords.google.com/support to find answers to many frequently asked questions. Or, try our Learning Center at
http://www.google.com/adwords/learningcenter/ for self-paced lessons that cover the scope of AdWords.

We look forward to providing you with the most effective advertising available.

Sincerely,

Stephanie H.
The Google AdWords Team

===Today's AdWords Tip===
Adding synonyms and related phrases to your keyword list can improve your advertising reach. Get ideas for new keywords by accessing our keyword tool at http://www.google.com/adwords/keyword.

Original Message Follows:
-------------------------
From: qiology@aol.com
Subject:
Date: Mon, 06 Mar 2006 14:42:58 -0000

 It's All About Results ™

Contact Us - Help

AdWords Home

AdWords Support

**Overview**
AdWords Advantages
Program Comparison
Success Stories
News and Updates
Demos and Guides
For Your Industry
Inside AdWords Blog

**Getting Started**
Editorial Guidelines
Step-by-Step
Optimization Tips
Account Navigation
Keyword Tools

## Content Policy

Google is committed to providing an advertising service with fair and consistent policies that benefit our users, advertisers, partners, and Google. To achieve this goal, we maintain high standards for ads accepted into the AdWords program. The policies listed below complement our Terms and Conditions and describe Google's advertising policies with regards to products and services.

In addition, you may wish to review our Editorial Guidelines. To run your ads on Google and our growing ad network of sites, products, and services, you must adhere to both our content and editorial policies. Application of our policies will always involve an element of discretion and we reserve the right to reject or approve any ads.

Please note that the decisions we make concerning advertising in no way affect the search results we deliver.

| | |
|---|---|
| **Aids to Pass Drug Tests** | Advertising is not permitted for the promotion of products such as drug cleansing shakes and urine test additives. |
| **Alcohol** | Advertising is not permitted for the promotion of beer or hard alcohol. |
| **Anti and Violence** | Advertisements and associated websites may not promote violence or advocate against a protected group. A protected group is distinguished by their: |

- Race or ethnic origin
- Color
- National origin
- Religion
- Disability

- Sex
- Age
- Veteran status
- Sexual orientation/Gender identity

Ad text advocating against any organization or person (public, private, or protected) is not permitted. Stating disagreement with or campaigning against a candidate for public office, a political party or public administration is generally permissible.

This standard applies to everyone who wants to advertise on Google, whether we agree with their viewpoint or not.

| | |
|---|---|
| **Bulk Marketing** | Advertising of bulk marketing products is not permitted if the stated or implied use of the following products is unsolicited spam: |

- Email lists that are not opt-in
- Bulk email software
- Bulk messaging

| | |
|---|---|
| **Cable Descramblers and Black Boxes** | Advertising is not permitted for products that descramble cable and satellite signals in order to get free cable |

services.

**Counterfeit Designer Goods**    Advertising is not permitted for products that are replicas, or imitations, of designer goods.

**Dialers**    We do not permit advertising that is associated with dialers in any way.

**Drugs and Drug Paraphernalia**    Advertising is not permitted for the promotion of drugs and drug paraphernalia. This includes drug accessories, illegal drugs, and herbal drugs such as salvia and magic mushrooms.

**Fake Documents**    Advertising is not permitted for the promotion of fake IDs, passports, diplomas, and noble titles.

**Fireworks/Pyrotechnic Devices**    Advertising is not permitted for the promotion of fireworks and pyrotechnic devices.

**Gambling**    Advertising is not permitted for online casinos, sports books, bingo, and affiliates with the primary purpose of driving traffic to online gambling sites.

**Hacking and Cracking Sites**    Advertising is not permitted for the promotion of hacking or cracking. For example, sites must not provide instructions or equipment to illegally access or tamper with software, servers, or websites. Advertising is not permitted for the promotion of sites or products that enable illegal access of or tampering with software, servers, websites, cell phones or other communications or content delivery systems or devices.

**Miracle Cures**    Advertising is not permitted for the promotion of miracle cures, such as 'Cure cancer overnight!'

**Mod Chips**    Advertising is not permitted for the promotion of mod chips, such as devices that unlock copyright protection.

**Prescription Drugs and Related Content**    Websites advertising prescription drugs or using prescription drug keywords may only target the U.S. or Canada, and must be SquareTrade certified. Ads will not run until a valid SquareTrade identification number is provided. The SquareTrade program is only open to pharmacies based in the U.S. or Canada. Please review our FAQ for further details, or review Google's Online Pharmacy Qualification Program.

**Prostitution**    Advertising is not permitted for the promotion of prostitution.

**Sexual Content (Adult)**    Advertising is not permitted for the promotion of child pornography or other non-consensual material.

**Solicitation of Funds**    Only government-registered charities may solicit funds.

Political fundraising is generally permitted.

**Tobacco and Cigarettes**    Advertising is not permitted for the promotion of tobacco or tobacco-related products.

**Traffic Devices**            Advertising is not permitted for the promotion of radar
                               jammers, license plate covers, traffic signal changers,
                               and related products.

**Weapons**                    Advertising is not permitted for the promotion of certain
                               weapons, such as firearms, ammunition, balisongs,
                               butterfly knives, and brass knuckles.

©2005 Google - AdWords Home - Terms and Conditions - Privacy Policy

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
Case No._____
_____ - 0 6 - 3 1 9 -

CHRISTOPHER LANGDON,
    Plaintiff,

    versus

GOOGLE, INC, d.b.a. DELAWARE GOOGLE, INC., YAHOO!,INC.,
TIME WARNER, INC., AND MICROSOFT CORPORATION,
    Defendants.

## PLAINTIFF'S APPENDIX II

# cafepress

# Anti-Bush Shirts, Stickers, and Buttons

☎ Order 87

Home of *"51% is <u>NOT</u> a mandate"*, hailed in the press as *"the best neo-anti-Bush line"*!    **BeatBush**

## ★ Browse Products ★



select one ▼

## ★ Browse Designs ★



Select a Design ▼

Ads by Gooooogle

**Google Toolbar - Free**
Add a Google searchbox to your browser - Blocks popups & more.
toolbar.google.com

**George Bush**
Should He Be Forced To Step Down? Vote Now To See Survey Results!
www.popularq.com

**$1200/Hr Jobs?**
Apply Now And Make Up To $300 In the Next 15 Minutes!
MaximumPayJobs.com

**Free Ringtones**
Get All Your Favorite Songs For your Cell Phone Today
www.blinko.com

**A New Political Leader**
Fight Illegal Immigration Police Sergeant-Lawyer-CJ Professor
www.michaelwilliamson.net

Advertise on this site

Anti-Bush T-Shirts, Anti-Bush Bumper Stickers, etc : **SEARCH GOOGLE TO BEAT BUSH**

Search Google from here to beat Bush's agenda.
We donate 50% of Google's fees to groups fighting the GOP.

### So start your Google searches here to help beat Bush!

> Or see hottest anti-Bush designs. all on many products *(homepage)*
> Or see political t-shirts, political bumper stickers, or political buttons

Something for Eve
•Political T-Shirts
•Political Stickers
•Political Buttons
•Political Magnets

## Start searching and donating to progressive causes:

Google [                    ]  Search

⦿ Web ○ BeatBushGear

Whenever you search Google by starting your Google search from this page and click on or "Ads by Google" in the results, BeatBushGear gets paid a fee. Since we donate 50% of our progressive causes, doing your searches from here is an easy way to donate and make a d

Please don't abuse this by clicking on the ads multiple times. But if you're going to be searc web anyway (as most of us do every day!), why not start your searches here to help the figh

**Be sure to bookmark this pageso you can always start donations-earning search her** It's a free and easy way to beat Bush's agenda! You can also Shop Amazon to beat Bush.

## Shortcuts to popular designs:

Political T-Shirts / Political Bumper Stickers / Political Buttons
Refrigerator Magnets / Coffee Mugs / Thongs
Funny T-Shirts, Funny Bumper Stickers, etc.
Custom T-Shirts, Custom Stickers, etc.

"No W" / "Asses of Evil" / "He's Still Not My President" /
"Better Dead Than Red" / "Jesus is a Liberal" / "Buck Fush"
Other hot Anti-Bush designs (homepage)

"Hillary Clinton 2008" / "Al Gore 2008"

Animal T-Shirts / Animal Pictures & Posters / Animal Lover Gifts

Shopping at Amazon to Beat Bush / Search Google to Beat Bush

Open Your Own Shop! / Online Affiliate Program

**cafepress**
.com

Your Account | Sign In | Cart: **0 items**

All Products ▼ | hillary

Home > Marketplace > hillary > Life's a bitch Anti-Hillary Sticker (Bumper)

More t

Life's a bitch Anti-Hillary Sticker (Bumper)

**$3.99**

Visit this member's Shop: Hillary Clinton Scares Me Shirt & Sticker Shop

Life's a bitch... so Don't vote for One! Anti-Hillary Shirts Buttons and Stickers for a can't Stand Hillary Clinton.

**Life's a bitch...**
— SO —
**DON'T VOTE FOR ONE!**

Product Details

Tell the world how you feel! Our bumper stickers are perfect for expressing yourse while cruising down the highway or just for posting on the wall. Made of durable vi and measuring a generous 10" x 3" these stickers are made for adding style to an surface.

○ Printed on 4mil vinyl using water and UV resistant inks - means no fading ii sun or bleeding in the rain.

View Larger

Qty:
1

AVAILABILITY: In Stock, will ship in 2 business days

Product Number: 23495587

**Shop other categories:**
Animals | Baby Gifts | Bumper Stickers | Comics | Dog Gifts | Fantasy Art | Gifts | Humor | Games | Geek | Insects
Military Gifts | Music | Peace | Pet Lover Gifts | Politics | Religious Gifts | Sci-Fi | Sports | T-Shirts | Unique Gifts | Urban Chic
Affiliate Programs

About Us | Jobs | Affiliate Program | Community | Help | Contact Us

Sign up for specials: Email Address

**TRUST e**
site privacy statement

All Content Copyright © 1999-2006 CafePress.com. All rights reserved. Use of this web site constitutes acceptance of the Terms of Service. Privacy Policy | Intellectual Property Policy

 

**cafepress**
.com

Your Account | Sign In | Cart: **0 items**

All Products ▼ Hillary Sucks

Home > Marketplace > Hillary Sucks > Anti Hillary Bumpersticker

More L

Anti Hillary Bumpersticker

**$3.89**

Visit this member's Shop: yourbumpers.com

Clintons, corruption, president, 2008, elections, Condi Rice, Whitewater, republicar democrats, liberalts, conservatives, left-wing, right-wing, Hillary, no Hillary, anti H



### Product Details

Tell the world how you feel! Our bumper stickers are perfect for expressing yourse while cruising down the highway or just for posting on the wall. Made of durable vi and measuring a generous 10" x 3" these stickers are made for adding style to an surface.

- Printed on 4mil vinyl using water and UV resistant inks - means no fading ii sun or bleeding in the rain.

View Larger

Qty:
1

AVAILABILITY: In Stock, will ship in 2 business days

Product Number: 48220796

**Shop other categories:**
Animals | Baby Gifts | Bumper Stickers | Comics | Dog Gifts | Fantasy Art | Gifts | Humor | Games | Geek | Insects
Military Gifts | Music | Peace | Pet Lover Gifts | Politics | Religious Gifts | Sci-Fi | Sports | T-Shirts | Unique Gifts | Urban Chic
Affiliate Programs

About Us | Jobs | Affiliate Program | Community | Help | Contact Us

Sign up for specials: Email Address



All Content Copyright © 1999-2006 CafePress.com. All rights
reserved. Use of this web site constitutes acceptance of the Terms
of Service. Privacy Policy | Intellectual Property Policy

 



Your Account | Sign In | Cart: **0 items**

All Products    ▼    Hillary Sucks

Home > Marketplace > Hillary Sucks > Hillary "Piss on Everyone" Ringer T    More



### Hillary "Piss on Everyone" Ringer T

**$20.99**

Visit this member's Shop: Her Heinous, Hillary

This may be THE most blatantly accurate anti-Hillary gear! Her Heinous wants to,
you know she -could- do just as this design depicts, both figuratively and literally!

#### Product Details

The Ringer T has made a fashion comeback, and ours is a popular favorite. This cl
style is sure to impress even the most discerning t-shirt connoisseur with an eye fi
retro-coolness. Great for relaxing in comfort year-round.

- 5.5 oz 100% preshrunk cotton
- Double-needle hemmed trim
- Contrast ringer neck and sleeves



Thin    Thick
T-Shirt Fabric Thickness

click to view
front / back:    

**View Larger**

Blue/White  Black/White

Qty:    Size:
1       Large        ▼    Size Chart
Color:
Black/White ▼

Available Printing Method(s):

Direct Printing [What is this?]

AVAILABILITY: In Stock, will ship in 2 business days

Product Number: 27623148



**Shop other categories:**
Animals | Baby Gifts | Bumper Stickers | Comics | Dog Gifts | Fantasy Art | Gifts | Humor | Games | Geek | Insects
Military Gifts | Music | Peace | Pet Lover Gifts | Politics | Religious Gifts | Sci-Fi | Sports | T-Shirts | Unique Gifts | Urban Chic

Sign in



**Web**  Images  Groups  News  Froogle  Local  **more »**

George Bush          Search | Advanced Search
                            | Preferences

## Web

Results **11** - **20** of about **285,000,000** for **George Bush**. **(0.05** seconds)

Welcome to the White House - WWW.WHITEHOUSE.ORG
Whitehouse.org is the officious web site for the White House and President
**George** W. **Bush**, the 43rd President of the United States of America.
www.whitehouse.org/ - 41k - Cached - Similar pages

George W Bush is the AntiChrist
Using Biblical and historical references, argues that President **Bush** is really the
anti-Christ.
www.bushisantichrist.com/ - 167k - Cached - Similar pages

The Lies of George W. Bush: Mastering the Politics of Deception
Reviews of the book, excerpts, top ten lies, author profile and forum.
www.davidcorn.com/ - 43k - Cached - Similar pages

The Truth About George W. Bush
Presents information about how the **Bush** administration's actions affect US
citizens's rights. Contains information on domestic policy, women's rights and ...
www.thetruthaboutgeorge.com/ - 10k - Cached - Similar pages

George Bush Intercontinental Latest News LET'S GO, BUENOS AIRES: A ...
PROPOSED PLANS FOR **GEORGE BUSH** INTERCONTINENTAL AIRPORT'S FUTURE
GROWTH UNVEILED TO THE PUBLIC · More news... Future Plans ...
iah.houstonairportsystem.org/ - 5k - Cached - Similar pages

George HW Bush - Wikipedia, the free encyclopedia
**Bush** is the father of the 43rd and current president, **George** Walker **Bush**. ... **George**
**Bush** began his formal education at the Greenwich Country Day School in ...
en.wikipedia.org/wiki/George_H._W._Bush - 149k - Cached - Similar pages

George W. Bush on the Issues
Tired of media reports of fundraising and poll results instead of policy issues? At
Issues2000.org, you can see the view of every candidates on every issue.
www.ontheissues.org/George_W__Bush.htm - 165k - Cached - Similar pages

GW Bush Went AWOL
Chasing **George Bush** and the F-102 - An illustrated History of GW **Bush's** Flying
Career ... Documented Service Records of John Kerry and **George Bush** ...
www.awolbush.com/ - 127k - Cached - Similar pages

Vote To Impeach Bush
Advocates impeachment of the President, solicits donations to finance ads in major
newspapers, and features views of former US Attorney General Ramsey Clark ...
www.votetoimpeach.org/ - 22k - Cached - Similar pages

The George W. Bush Online Store
Campaign-sanctioned website for all **Bush**-Cheney and **George** W. **Bush** for President
campaign materials, gift items and wearables.
www.georgewbushstore.com/ - 11k - Cached - Similar pages

Sponsored Links

George Bush
Do You Value Your Life or Families?
Nokr Dont Leave Home Without it!
www.nokr.org

Bush George
Whatever you're looking for
you can get it on eBay.
www.eBay.com

Should Bush Be Impeached?
Iraq, NSA, $3 Gas, FEMA, Ports
Urge Congress To Take Action!
impeachPAC.org



because they lied

Get Involved |

Get E-mail Alerts
Join the discussion
Contact us
Link to us
Take Action!



This book will
change America!

ARTICLES OF
IMPEACHMENT
AGAINST
GEORGE W. BUSH

CENTER FOR CONSTITUTIONAL RIGHTS

This urgent book by the
Center for
Constitutional Rights
presents four Articles of
Impeachment:
warrantless
surveillance, lying to
Congress about Iraq,
torturing prisoners, and
subverting the
Separation of Powers.
Buy a copy and send
one to your
Representative -
$9.95 can change
America!

More ads here...

## ImpeachPAC
*Electing a Congress to
Impeach Bush and Cheney*

Home

### Help Us Impeach George Bush Now!

Submitted by bob fertik on Wed, 2006-01-25
20:46.    About ImpeachPAC

### Welcome to ImpeachPAC!

ImpeachPAC is a non-profit, nation-wide
political action committee that is working
tirelessly to impeach George Bush and
Dick Cheney **immediately**.

And we're making a difference! When we
launched in November 2005, no one in
Washington would say "impeachment"
out loud. Now everyone is talking
about impeachment - and
ImpeachPAC is leading the way!

In fact, our widely-publicized polls show:

- 52% of Americans think Bush
  should be impeached for
  wiretapping Americans without a
  judge's approval
- 53% of Americans think Bush
  should be impeached for lying
  about Iraq

Here is our **strategy for impeachment**:

1. **Send 1 million email petitions
   to our Senators and
   Representatives in Congress**
   urging them to impeach George
   Bush and Dick Cheney **now**.

   *PLEASE CLICK HERE TO EMAIL
   YOUR REPRESENTATIVES!*

2. Raise $100,000 for passionately
   patriotic
   candidates who
   will impeach Bush
   and Cheney - like
   Tony Trupiano
   in Michigan

Home | Contribute | Candidates | Resolutions |
Library | Forums | Store

Support ImpeachPAC





My contribution:
$          Contribute
with ActBlue

Subscribe

Click here to subscribe to
the ImpeachPAC
newsletter!

Impeachment
Blogging

Learning From Latino Unity

This weekend in Los Angeles
California an estimated
500,000 people peacefully
demonstrated in what the LA
Times called "possibly the
largest gat

2 Additional Rep's
Cosponsor Impeachment
Resolution HR 635 Today

Great news today! Two
additional Representatives,
Rep David Wu [OR-1] and
Rep Betty McCollum [MN-4]
have added their support by



**BeatBushGear**
is proud to be part of the
Webby winning
**Cafepress Experience**

Anti-Bush Gear
in another style
**A Rose is a Rose**





Urban Chic
In the News
Vegetarian
Gay & Lesbian
Unique Gifts
Hobbies
Fantasy Art
Geeks
Retro Humor
Photographic Art
Religious Gifts
Sports
Wildlife



★ **Like Minds** ★

Link to Us!
Daily Kos
Democracy for America
MoveOn.org
Talking Points Memo
The Blue Lemur
Earthrenewal.org
True Blue Liberal
All That's Left
BandTogether
A Rose is a Rose
Partisan T Party
SmartAssProducts.com





"Asses of Evil"
Another great design of anti-
Bush shirts, anti-Bush stickers,
buttons, et al.



*Support
our Troops*

**Bring Them
Home**

"Bring Home Our Troops"



"Bush Lied Soldiers Died"



"A Village is Missing its Idiot"

*Support
our Troops*

**Impeach Bush**

"Support Our Troops -
Impeach Bush"



"Four Moron Years"



"Impeach Bus



"I Have a Drea

*I think, therefore
DEMO*

"I Think"

Jesus is
a Liberal

GOD is not
spelled G.O.P.



20 JANUARY

   

cafepress

Cart & Checkout | Help | Order Status | Shop Home

VIRTUAL TRAVELER      MUSIC BOX      VIRTUAL CLASSROOM      NEWS & OPINION

» "W" Behind Bars
» T-Shirts
» Bush the Woodman!
» Sweatshirts
» For the Ladies
» Bumper Stickers
» Mugs
» John Kerry Under Fire

**This store is brought to you by Mike Cuenca, producer of this commercial, which was one of the MoveOn.org Bush in 30 Seconds finalists.**



"W" Behind Bars
Tired of seeing those annoying "W" stickers? Talk back with this "W" behind bars!



T-Shirts
Let's Bump Bush, Impeac Now, Dissent IS Patriotic, a




Sweatshirts
Crew neck and hooded sweatshirts with all of our most popular logos.

For the Ladies
Shirts, camisoles, and th



**Don't miss our other great, patriotic products!**

**Outspoken logos on t-shirts, sweatshirts, hats, mugs, and more!**



SHOP•COM™      universal shopping cart 🛒      egifts      your account      wish list      help



**HOME      DEPARTMENTS      STORES      GIFTS      SERVICES      ON SALE**

D E P A R T M E N T S      **SEARCH FOR** Impeach george Bush **IN** All Products      ▼ 


Get FREE SHIPPING or Flat Rate Shipping from over 200 Stores  ⊘

## Sponsored Links
Try these resources for additional options

**Impeach Bush Gear**      CafePress.com
Over 5,300 **Impeach Bush** Designs! T-Shirts, Stickers, Buttons & More

**Political Bumper Stickers**      www.bushbumperstickers.com
**Bush** - War - Impeachment - Peace anti-**Bush** pro-Democracy Stickers

**Vote Democrat 06**      dontblamemeivoted4kerry.com
end the culture of corruption bumper stickers shirts mugs

**George W. Bush**      bush.peel.com
Are You Happy **Bush** Won? Vote & Win a Free Razr Phone

**Impeach Bush Decals**      www.pressforprogress.com
Support presidential accountability with these car decals and magnets.

**Humorous Anti-Bush Stuff**      www.BeatBushGear.com
Send a message and have a laugh. T-shirts, stickers, buttons, etc.

**Speak Thru Your Rear End**      SlogaNation.com
Buy Bumper Stickers. $0.49 - $2.99 Custom, Humor, Politics, **Bush** Wacky

**Dick Cheney**      www.popular-survey.com
Should Dick Cheney be prosecuted? Vote now to see results

FEATURED ITEM

Photo Not Available

### Articles of Impeachment Against George W. Bush (1st Ed.) Paperback

Was $9.95
Now: $7.42

available from
**BestPrices.com**



Articles of Impeachment Against George W. Bush
Price: $6.40

Warrior-King : The Case for Impeaching George W. Bush
$7.05 - $10.95

You may see more results if you search for...

- george Bush
- Impeach Bush
- Impeach george

## Choose from a wide variety of Departments!

| | | | | | |
|---|---|---|---|---|---|
| Auto | Cameras & Optics | Food & Drink | Home Furnishings | Remodeling & Building | Toys & Games |
| Baby | Clothing & Accessories | Garden & Outdoors | Housewares | Shoes | Travel |
| Beauty | Collectibles | Gifts & Occasions | Jewelry & Watches | Software | Video Games |
| Books & Magazines | Computers | Health & Wellness | Music | Sports & Fitness | Videos & DVDs |
| Business | Electronics | Hobbies & Crafts | Pet Supplies | Tools & Workshop | Services |

It's Time to Celebrate Spring!

**Web**    Images    Groups    News    Froogle    Local    **more »**

Go gle

| Impeach george Bush              Search    Advanced Search
Preferences

**Web**                              Results **1** - **10** of about **5,690,000** for **Impeach george Bush**. (0.13 seconds)

                    Sponsored Link                    Sponsored Links

**Impeach Bush** Gear
CafePress.com    Dress for Political Activism. Buy T-shirts, stickers, pins & more

Tip: Save time by hitting the return key instead of clicking on "search"

Product search results for **Impeach george Bush**
Who would Jesus wiretap Jr. Baby Doll T-Shirt - $17.99 -
TeeStyle's House of Tee
Fitted **Bush** Happens Tshirt Made in USA - $17.99 -
TeeStyle's House of Tee
**Impeach Bush** Now Jr. Baby Doll T-Shirt - $19.99 -
impeachdubyadotcom

Vote To **Impeach Bush**
Advocates **impeachment** of the President, solicits donations to finance ads in major newspapers, and features views of former US Attorney General Ramsey Clark ...
www.voteto**impeach**.org/ - 22k - Cached - Similar pages

**Impeach Bush** Coalition
A United Coalition of Blogs For the **Impeachment** of **George W. Bush**. ... We aren't trying to bring upon **impeachment** merely because **George W. Bush** is a dirty ...
**impeachbush**coalition.blogspot.com/ - 127k - Cached - Similar pages

**Impeach Bush**
Dedicated to the **Impeachment** of **George Bush**. ... 3/12/06 - Senator Feingold calls for Censure of **George Bush** over wiretapping. Please contact your Senators ...
www.**impeachbush**.tv/ - 13k - Cached - Similar pages

**IMPEACH-BUSH-NOW.ORG**
**Impeach Bush** With Humor. Send a message and have a laugh. ... **George W. Bush**. Are You Happy **Bush** Won? Vote & Win a Free Razr Phone.
**bush**.peel.com ...
www.**impeach-bush**-now.org/ - 43k - Cached - Similar pages

**Impeachment** Resolution
**Impeachment** Resolution Against President **George W. Bush** ... **Impeaching George** Walker **Bush**, President of the United States, of high crimes and misdemeanors. ...
www.rise4news.net/Impeachment_Resolution.html - 33k -
Cached - Similar pages

Petition to **Impeach George W. Bush**
A petition for the **impeachment** of **George W. Bush** to the Congress of the United States.
www.petitionto**impeach**.com/ - 2k - Cached - Similar pages

**Impeach Bush** Decals
Support presidential accountability
with these car decals and magnets.
www.pressforprogress.com

**Impeach Bush** Stickers
Bumper stickers only $3.99. Plus
t-shirts, hats and much more
shop.seekpeace.com

Anti-**Bush** Shirts and Gear
Don't Blame Me, I Voted For Kerry
And other messages you have to buy!
www.BeatBushGear.com

**Impeach george bush**
Should **Bush** Be Replaced? Respond
And You Can Get A Free Computer!
www.willkerrywin.com

Speak Thru Your Rear End
Buy Bumper Stickers. $0.49 - $2.99
Custom, Humor, Politics, **Bush** Wacky
SlogaNation.com

**George W. Bush**
Are You Happy **Bush** Won?
Vote & Win a Free Razr Phone
**bush**.peel.com

Dick Cheney
Should Dick Cheney be prosecuted?
Vote now to see results
www.popular-survey.com

First Son
W. **Bush** and the **Bush** Family Dynasty
5 CDs, Abridged
SHOP.COM

More Sponsored Links »



PROFIT OVER PEOPLE
$1.99



BRINGING ON THE END-
$1.99



DUMB AND DUMBER
$2.99



BUSH/CHENEY IN ASSOCIAT
$2.49





MEN OF MURDER
$2.49



CHICKEN HAWKS
$1.99



THE BIBLE AND THE BOMB
$2.99



WOLFMAN OF WA
$2.99



WEREWOLF OF WASHINGTON
$2.99



GEORGE LOVES ABDU
$2.99





# GEORGE WALKER BUSH
# DRUNK ON POWER!

GWB DRUNK ON POWER
$1.99



I LOVE BUSH, DICK, &
$1.99

## GEORGE...
# JUST GO AWAY !

GEORGE JUST GO AWAY
$1.99



TURN YOUR BACK ON
$2.49



BUSH IS A MAN O WAR
$2.99

MEN OF MENDACIT
$2.99



BUSH BENDS THE CROSS FOR
SATAN
$2.99



SONS OF SATAN
$2.99



ENRICHING THE RICH
$1.99



# TRICKLE-DOWN ECON
# MEANS GETTING PISS

TRICKLE DOWN ECON(
$1.99

**NATIONAL CELIBACY DAY
NOVEMBER 2, 2004
NO BUSH!  NO DICK!**

NATIONAL CELIBACY DAY
$1.99



NEO-CON MEN
$1.99



SEND THE CRETIN BACK TO
TEXAS
$1.99



WE WILL EXPORT DEATH AN
$1.99

**" I AM NOT PART OF THE PROBLEM !
I AM A REPUBLICAN ! "**
GWB

I AM NOT PART OF THE
PROBLEM, I AM A REPUBLICAN
$1.99



LIAR, LIAR, PANTS ON
$2.99



CROWN OUR KING GWB
$1.99



FRIST PRESUDUNT WITH A
DISABILITY
$1.99

GEORGE **A
W
O
L** BUSH

George AWOL Bush
$0.99

**T E X A
I S
T O X I**

TEXAS IS TOXIC
$0.99



I LOVE BUSH AND DICK
$1.99



IMPEACH THE LEE(
$0.99



MEN OF STEAL
$1.99



IMPEACH THE LEECH P!
$2.99

 

BUSH + BIN LADIN
$1.49



CORONATION NOT INAUG
$1.99



ZERO/HERO
$1.99



WE WANT YOU TO PAY MO
$1.99



A NEW KIND OF DICTATORSHIP
$1.99



TAKING JOBS AWAY AS FAST
$1.99



**BUSH VOTERS HAVE BLOOD ON THEIR HANDS TOO**

BUSH VOTERS HAVE BLOOD ON THEIR HANDS TOO
$1.99



**Impeac BUSI**

IMPEACH BUSH
$1.99

*Guantanamo Gonzalez justice by torture*

GUANTANAMO GONZALEZ
$1.99

I WREC IRA

I WRECKED IRAQ
$2.49



**"OILY GEORGIE" GIVES GREASE A BAD NAME**

"Oily Georgie" Gives Grease a Bad Name
$1.99

*Seedy Gonzalo*

*Speedy Gonzalez*

SPEEDY AND SEEI
$1.99

 

*Subverting Democracy One Election At A Time*

**BUSH CHENEY '04**

SUBVERTING DEMOCRACY ONE ELECTION AT A TIME
$1.99

**DICK AND BU SMELL LII TUSHI**

DICK AND BUSH SMELL LI
$1.99

Eh...Eh...Eh.. WAR!

"Eh..Eh..Eh..WAR?"
$1.99



OILY GEORGIE SAYS,

FOOLED YOU ONC
$1.99



CONdoleeza, HER NAME SPELLS
IT OUT
$2.99



BUSH FINALLY GETS A M/
$2.99



STEALING ELECTIONS SINCE
2000
$1.99



CRUSADER RABBI
$1.99



OMISSIONS ACCOMPLISHED
$1.99



PINK SLIP THE PRESII
$1.99



Got War?
$1.99

Bush is a Tush
$0.99



1ST FAMILY VALUES PRESCOTT
$2.99

Exorcism Not Election
$0.99



GOD HELPS THOSE WHO...
$1.99



BUSH GIVES PLANTS A B...
$1.99

## BUSH URGES HASTE SO HE CAN WASTE SOCIAL SECURITY

BUSH URGES HASTE TO WASTE
SOCIAL SECURITY
$1.49



IS OUR CHILDREN LEA...
$2.49



AMBUSH
$1.99



WHO'S YOUR BOGEY?
$2.99



BUSH PUSHES ALAN
GREEDSPAN
$2.99



DRILLING AND KILL...
$1.99



FEAR FACTORY
$1.99

## WHITE MAN SPEAK WITH FORKED TONGUE

WHITE MAN SPEAK WITH FOR...
$2.99



GAS TOO HIGH?
$2.99



FAITH NOT FACTS
$2.99



BUSH FALLS DOWN
$2.99



GHOST COAST
$2.99



COWBOY OF CARNAGE
$2.99



BUSH IS BAD
$2.49



BUSH OUR GREATEST MIS -
LEADER
$2.99



WORTHLESS
$2.99





PRINCE OF PAIN
$2.99



KING OF KILL
$2.99





BUSH WACKIES



BUSH ON BLOW?
$2.49



WEAPONS OF MIDDLECLASS [
$2.99



KING CON
$2.99



DICK AND DANGERI
$2.99



WELCOME TO TERROR - FIRMA
$2.99



GEORGE AND ABDULLAH ST
MOOLAH
$2.99











DICK AND DANGERMAN

bw142  $2.99   Order









SIGN OF SATAN

bw125  $2.99   Order









BUTCHERS OF BAGDAD

bw73 $2.99    Order





# BUSH IS TURNING OUR SOLDIERS INTO STORM TROOPERS



BUSH IS TURNING OUR SOLDIERS INTO STORM TROOPERS

bw85  $2.99    Order









SECRETARY OF HATE

bw92  $2.99   Order







CONDOLEEZZA REICH

bw86  $2.99   Order







# BUSH **VOTERS** HAVE BLOOD ON THEIR HANDS TOO

BUSH VOTERS HAVE BLOOD ON THEIR HANDS TOO

bw42  $1.99   Order









HISTORY ALWAYS REPEATS ITSELF

bw26 $2.99 Order









ILLUMINAZIS

bw38  $1.99   Order









BUSH BENDS THE CROSS FOR SATAN

bw72  $2.99   Order









STEALING ELECTIONS SINCE 2000

bw7  **$1.99**   Order





.Giving a voice to the people

800·864·0381





IMPEACH BUSH

bw62 **$1.99**  Order









MEN OF MENDACITY

bw94  $2.99    Order



**Press for Progress**
Have a Voice.

**A better line of bumper stickers and car magnets liberal, progressive, and the rest of thinking Ame**

**order online or by phone** 888-891-5262



HOME


PRODUCTS

- Anti Bush
- Civil Rights
- Education
- Environment
- Gay Rights
- National Debt / Deficit
- Science and Religion
- Stem Cell Research
- Supreme Court
- War and Terrorism
- Miscellaneous

VIEW CART

product prices

shipping info

WHAT'S NEW
March 14

Join the Mailing List
once per month showcasing
latest products
email address:

Join

A quick note...

The health of a democracy depends upon its citizens' willingness to voice opposition and dissent. In the absence of active dissent lies complacency –a force that crumbles the very foundation that a democracy, a government for and by the people, is built upon.

In the presence of complacency accountability is lost, corruption prevails, and history's most successful system of government will ultimately falter.

Press for Progress encourages you to have a voice of dissent, the highest form of patriotism.

Today's Picks:

**IMPEACH**
It's time for
accountability.

**Fund Education,
Not War.**



All products available
both **bumper sticke**
and **car magnets**

March 16, 200

**OVERSTOCK DISCOUI**

W
THE MORON

W
WRON

W
THE WORST

W
THE PRO

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
Case No.____0 6 - 3 1 9 -

CHRISTOPHER LANGDON,
    Plaintiff,

    versus

GOOGLE, INC, d.b.a. DELAWARE GOOGLE, INC., YAHOO!,INC.,
TIME WARNER, INC., AND MICROSOFT CORPORATION,
    Defendants.

<u>PLAINTIFF'S APPENDIX III</u>



**Chris Langdon 1835 Edwin Blvd.,**
**Winter Park Fl, 32789-407-647-7539**

Home
Fraud NC Courts
Judge Baker
Sham Courts
More Fraud

# FRAUD BY ROY COOPER &THE N.C DEPARTMENT OF JUSTICE BEFORE THE U.S SUPREME COURT and other courts

By Chris Langdon- qiology@aol.com- *Preface-*

N.C. Attorney General Roy Cooper, and attorneys serving under him at the N.C. Department of Justice, used fraud to prevent me from obtaining compensation for: the taking [destruction] of my property in Polk County, North Carolina; the denial of my right of meaningful access to the N.C. courts; and other claims. Governor Michael Easley is aware of the fraud by Roy Cooper and N.C. Department of Justice attorneys Robert Crawford, T.L. Mallonee and Lisa Glover, Easley refuses to do anything about it. Roy Cooper, Crawford, and Glover perpetrated fraud in their *Brief in Opposition,* submitted to the U.S. Supreme Court. However, the U.S. SupremeCourt only hears a small percentage of cases submitted to it, and my cases were not among them. Background information on

the destruction of my property and fraud by the NCDOT

and fraud by NCDOT attorney Mallonee will be posted

on page two of the menu on this website.

I. Some of the fraud by Roy Cooper, Crawford and

Glover in their *Brief in Opposition* (case: 02-12,U.S.

Supreme Court, a consolidation of *Langdon v. Tippett*

and *Langdon v. Swain*) is delineated below.

"Plaintiff's Complaints were properly dismissed as
frivolous on the grounds of res judicata and/or failure to state a
claim and qualified immunity." *Brief in Opposition* (02-12),
p.14 (Statement #1)

That statement contains several lies. Neither

Complaint was dismissed because of a purported defense

of "qualified immunity." Qualified immunity was never

raised by the by the defendants in the lower courts, nor

was it raised by the lower courts themselves.

Statement #1 (which also appears on page iv of said

brief) fraudulently alleged that my Complaints [lawsuits]

were properly dismissed because of *res judicata*. Similar

fraudulent statements were made in the same brief.

"Plaintiff's claims against the individual employees
[ *Langdon v. Swain* ] was also barred by res judicata." *Brief in
Opposition* (02-12), pp. 8-9 (Statement #2).

"The District Court held that the claims presented in the
instant Complaints ( *Langdon v. Tippett* and *Langdon v.
Swain* ) could have been brought in the earlier action and were
thus barred by the doctrine of res judicata." *Brief in*

*Opposition* (02-12), p. 18 (Statement #3)

" However, Plaintiffs Complaint and attachments filed in *Langdon v. Swain* showed on their face that res judicata was applicable." *Brief in Opposition* (02-12), p. 17 (Statement #4)

After lying to the U.S. Supreme Court at least five

times on the purported issue of res judicata, the attorneys

reversed themselves in the very same brief:

"Thus, it may have not been appropriate for the lower courts to dismiss Plaintiff's Complaint in *Langdon v. Swain* on the grounds of res judicata." *Brief in Opposition* (02-12), p. 20 (Statement #5)

Roy Cooper, Crawford and Glover also fraudulently

concealed from the U.S. Supreme Court the fact that they

had stated before the U.S. Court of Appeals, Fourth

Circuit, that *res judicata* did apply to *Langdon v. Swain*.

Of course, they have never taken any action to correct the

damage done by their fraud before the courts.

In Statement #1, *supra*, Cooper, Crawford and Glover

fraudulently alleged that my Complaints (plural) were

properly dismissed because of an alleged failure to state

a claim. The truth is, *Langdon v. Tippet* was not

dismissed by the district court for an alleged failure to state

 a claim, nor did the U.S. Court of Appeals hold that

*Langdon v. Tippett* failed to state a claim. Likewise, the

district court did not dismiss *Langdon v. Swain* for an

alleged failure to state a claim.  The U.S. Court of Appeals

did allege that *Langdon v. Swain* failed to state a claim,

*sua sponte,* without notice and opportunity to be heard.

However, the attorneys contradicted their Statement #1,

by admitting in the same brief, that the Fourth Circuit was

in error when it held that *Langdon v. Swain* failed to state

a claim.

> "The Fourth Circuit noted..that *Langdon v. Swain* ..was
> subject to dismissal for failure to state a claim upon which
> relief can be granted 'because takings actions sound aginst
> governmental entities rather than individual state employees in
> their individual capacities.' ..However, it appears the court
> may have overlooked Plaintiff's assertions that his claim as
> based on 42 U.S.C.1983, under which it is possible to sue a
> state official in his individual capacity." *Brief in Opp.,* p. 8
> (Statement # 6).

Clearly, Roy Cooper, Crawford and Glover perpetrated

fraud when they stated that the reasons given by the lower

courts for the dismissal of *Langdon v. Swain* as frivolous

and malicious, were proper.  Despite their admissions in

Statements #5 & #6 to the contrary, Cooper, Crawford

and Glover repeatedly and fraudulently argued in their

*Brief in Opposition* that the dismissal of *Langdon v.*

*Swain,* as frivolous and malicious, for the reasons given

by the lower courts, was proper.  In addition to their State-

ments quoted above, they also made the following false

statements, which also contradict Statements #5 & #6.

" .. Plaintiff's Complaints were properly dismissed as frivolous and malicious." *Brief in Oppos.* (02-12), p.iii. (Statement 7)

"...federal courts have the inherent power...to dismiss Complaints as frivolous or malicious." *id* at p. 7 (Statement #8)

"....the federal courts have the inherent power to dismiss a case as frivolous and malicious." *id.* (Statement #9)

" Both the District and Circuit Court herein found Plaintiff's Complaints to be frivolous and malicious, and dismissed the Complaints on those grounds." *id.* (Statement #10)

"..inherent powers to dismiss his Complaints as frivolous." *id.* (Statement #11)

"..his frivolous lawsuits." *id.* (Statement #12).

"...A *sua sponte* dismissal, without a formal hearing, is appropriate when the court finds the Complaint to be frivolous." *id.*, p. 15 (Statement #13).

"Thus, the decision of the lower courts to dismiss Plaintiff's Complaints as frivolous should be upheld." *id.*, p. 21 (Statement #14).

"Plaintiff..has made no showing..which would justify review by this Court of claims found to be frivolous by both a District Court and the Fourth Circuit Court of Appeals." *id.*, p. 25 (Statement #15).

"Even if Plaintiff may have stated a claim upon which relief could be granted, the Fourth Circuit and District Court both held that Plaintiff's claim against the individual employees was also barred by res judicata and was a frivolous claim subject to *sua sponte* dismissal." *id.*, p. 9 (Statement # 16).

All tolled, there are at least fifteen statements in their

*Brief in Opposition* that fraudulently argue that the reasons

given for the dismissal of my Complaints were proper,

although they directly contradict Statements #5 & #6.

Statement #16 intentionally gives the false impression

that the lower courts dismissed *Langdon v. Swain* because

of *res judicata* <u>and</u> because it was (allegedly) frivolous and

malicious. That statement attempts to deceive the Court

into believing that *res judicata* and frivolousness were two

separate and distinct issues. In reality, the district court

eroneously held that my Complaints were frivolous and/or

malicious *because of res judicata*. The 4th Circuit

erroneously upheld.

The numerous statements by the N.C. attorneys that

allege that my Complaints are frivolous and/or malicious

(Statements 7-16) fraudulently concealed from the U.S.

Supreme Court critical facts. The alleged defenses were

never raised in the district court. The Defendants in

*Langdon v. Tippett* filed an answer, but they never alleged

that my claims were malicious or frivolous. In fact, they

never denied any of my claims, except for one, therefore,

the un-denied claims should have been taken as admitted.

The Defendants in *Langdon v. Swain* were in default,

never filed an answer, and never took the proper steps to

remove the default. On appeal, they fraudulently alleged,

without any supporting case law, that they could borrow
the answer made in *Langdon v. Tippett.* Legally, they
couldn't. The Complaints contained different claims against
different parties, not in privity with each other. *Langdon v.
Swain* sought prospective and injunctive and declaratory
relief only, no damages. It challenged the constitutionality
of several N.C. laws, customs, *etc. Langdon v. Swain*
contains claims aganst three state employees, sued in their
individual capacities, for damages.

Even *if* the Defendants in *Langdon v. Swain* could
borrow the answer filed on behalf of the Defendants in
*Langdon v. Tippett,* that answer did not allege that my
Complaints were malicious or frivolous. The N.C. attorneys
concealed the fact that the Defendants had waived any
defense of frivolousness and/or maliciousness.

There was a great deal of fraud perpetrated by the
attorneys regarding the default of the Defendants in
*Langdon v. Swain,* which will be discussed in another
Section, when time permits.

II. The district court erroneously held that it had the
power to dismiss my Complaints, without notice and an
opportunity to be heard, under 28 U.S.C. 1915, the
*In-Forma Pauperis Statute,* and under *Arizona v. Cali-*

*fornia,* 120 S.Ct. 2304 (2000). I was not given any opportunity to challenge the dismissals in the district court.

Before the Fourth Circuit, Cooper, Crawford and Glover fraudulently alleged that the district court had the authority to dismiss my Complaints via the *In Forma Pauperis Statute* (28 U.S.C. 1915) although my Complaints were not filed *In Forma Pauperis,* and I have never been a prisoner. No other court has ever dismissed a non-prisoner, *non-informa pauperis,* complaint via 28 U.S.C. 1915. They failed to cite any case law that supported their postion. They also failed to cite the contrary, controlling case law that holds that the legislative intent of 28 U.S.C. 1915, the *In-Forma Pauperis Statute*, as amended by the *Prison Litigation Reform Act,* is to reduce the number of frivolous, *in forma pauperis* lawsuits by prisoners. *See: Roller v. Gunn,* 107 F. 3d 227, 228, 233-34 (4th Cir. 1997); *Crawford-El v. Britton,* 525 U.S. 574, 118 S.Ct. at 1596 (1998). Their failure to cite the contrary, controlling case law is a violation of the *Model Rules of Professional Conduct* and is fraud on a court.

In the U.S.Supreme Court, Cooper, Crawford and Glover reversed themselves and admitted that the dismissals were:

"..with a (perhaps erroneous) citation to 28 U.S.C. 1915.

However, Plaintiff fails to show any abuse of discretion in the courts' exercise of their inherent powers to dismiss his Complaints.." *Brief in Opposition* (02-12), p. 7 (Statement # 17)

That statement fraudulently concealed from the U.S.

Supreme Court the fact that they had argued the opposite

before the Fourth Circuit, where they falsely argued that

the district court did have the authority to dismiss my

Complaints via 28 U.S.C. 1915.

In Statement #17 Roy Cooper, Crawford and Glover

fraudulently stated that the courts had exercised their

"inherent powers" to dismiss my Complaints. That is false.

Neither the district court, nor the Fourth Circuit, exercised

their inherent powers in dismissing my Complaints.

Also, Cooper, Crawford and Glover failed to cite the

controlling case law which states that if the lower courts

did not exercise their inherent power, the issue is not

properly before the U.S. Supreme Court.

"Respondents' contention that the federal courts posses inherent authority..will not be considered by this Court, since the lower courts did not invoke such authority in reaching their decisions." *Mallard v. U.S. District Court,* 490 U.S. 296, 297 [3] (1989)

I know the three miscreants, Roy Cooper, Crawford &

Glover, are aware of *Mallard* because they cited it on page

7 of their *Brief in Opposition.* They also fraudulently

argued before the 4th Circuit that the district court had the
authority to dismiss my Complaints under the authority of
*Arizona v. California. Arizona* holds that a federal court
may dismiss a Complaint on its own motion, because of
*res judicata,* if it has previoulsy decided the same claim
between the same parties, and it has the record of the case.
However, I had never filed any previous claims against the
defendants in *Langdon v. Swain,* or, *Langdon v. Tippett,*
in any federal court. The district court dismissed my
Complaints, purportedly, because of a prior state court
decision. The district court (Judge Thornburgh) did not
have a copy of the record of the prior state case,
nor any documents at all from the case.

Before the U.S. Supreme Court, the miscreants
abandoned any argument that the courts had authority to
dismiss my Complaints via *Arizona* and admitted that the
courts lacked authority under 28 U.S.C. 1915. When a
court acts, it must act under a valid authority, or, its
judgments are void. The district court purported to act
under 28 U.S.C. 1915 and A*rizona,* when it dismissed my
Complaints, without notice and an opportunity to be heard,
the essence of due process of law. The 4th Circuit upheld,
citing only 28 U.S.C. 1915.

Therefore, Cooper and his associates admitted that the
lower courts lacked authority to dismiss my Complaints
under the only authorities they cited. To make the void
judgments appear valid, Cooper, and the other miscreants,
concocted the lie that the lower courts acted under their
inherent authority (Statement # 17).

III. You might be wondering how it is possible to lie
to the U.S. Supreme Court and get away with it. I filed a
*Petition for a Writ of Certiorari* asking the Court to review
the lower courts' decisions. The N.C. attorneys responded
in their *Brief in Opposition.* However, Petitioners are not
given a specific amount of time to respond to the
*Brief in Opposition.* The Court can move ahead and
decide whether or not to hear the case at any time after
it receives the *Brief in Opposition.* I did not have adequate
time to document the massive fraud on the Supreme Court
by the N.C. attorneys, the pertinent law, and timely file
a response. Because of the large volume of Petitions, most
of the Justices do not have the time to read the Petitions.

The W.D.N.C. has illegally blocked me from seeking
relief from the alleged judgments that were procured
through fraud. The W.D.N.C. has also barred me from
appealing any of its decisions that bar me from seeking

relief from the fraudulently obtained judgments.

If time allows, these issues will be discussed in more detail later. The bias of the U.S. Court of Appeals, for the Fourth Circuit, against *pro se* parties (those without attorneys) will also be discussed herein, at a future time.

IV.  Although the attorneys admitted in their *Brief in Opposition* that *res judicata* should not have barred *Langdon v. Swain*, they continued to fraudulently argue in said brief that *res judicata* barred my claims in *Langdon v. Tippett.*  That fraud will be discussed later.

V.  The miscreants attached a purported release agreement to their *Brief in Opposition*.  However, they did not argue in said brief that my claims were barred by the alleged release.  I demonstrated in my pleadings in the lower courts that the alleged release was procured through fraud. It was not pled as a defense by the defendants in the lower courts, and if they had, the defense would have been waived when they admitted that *res judicata* did not apply to *Langdon v. Swain.*  Even if the purported release had been valid, properly pled, and not waived, it still wouldn't have barred my claims.  The alleged release refers to the damage from a landslide (singular) occurring in June, 1995.  *Langdon v. Swain* contains claims for

damages from a series of landslides that began on, or

about, July 1st, 1995, rendering my property useless by

September, 1997. I believe that the N.C. attorneys

mis-represented the number of slides, when they occurred,

and the amount of damage they caused, in order to make

it apear that the alleged release barred my claims. Their

fraud regarding those material facts is discussed in detail

in the next Section.

The fraud involved in the purported release will be

discussd in more detail in a future Section.

VI. N.C. attorneys Crawford, Glover and Mallonee

made numerous false statements denying NCDOT

responsibility for the destruction and the taking of my

property in N.C. They also repeatedly misrepresented

material facts. Their tangled webs of deceit are so

convoluted that it is difficult to untangle them. In the

federal courts, Roy Cooper, Crawford and Glover

fraudulently stated that the damage to my property was:

"..one event: a 'minor landslide' on or about June 1995."
*Appellee's Brief* (04-1649), p. 3, lines 4-6 (Statement 18).

Statement #18 directly contradicts statements by

several NCDOT engineers and N.C. attorney

T.L. Mallonee, who has and/or is serving under Roy

Cooper, in the N.C. Dept. of "Justice." Statement #18

is directly contradicted by the following:

"The Complaint itself states that ..the aforementioned actions and inactions caused a series of landslides, beginning around July 1st, 1995, which rendered the property useless." T.L. Mallonee, Transcript, *Langdon v. NCDOT* (98-cvs-139), p. 3, March 15th, 1999 (Statement #19)

"..the landslides in question." *id* at p. 5, line 5 (Statement #20)

"Now he indicates that there was a series of landslides that culminated in his property being rendered useless." *id* at p. 5, lines 15-17 (Statement #21).

"...regardless of how small the very first slide may have been, significant slope failure had occurred by mid-July, 1995." T.L. Mallonee, *Defendant-Appellee's Brief,* p. 16, *Langdon v. NCDOT* (Statement #22)

"..significant slope failure, or sliding, had occurred on the Plaintiff's property." *Affidavit,* NCDOT engineer J.J. Swain (2-20-99) (Statement #23).

"The earth mass on Mr. Langdon's property has shown signs of movement over the last year or so." Report of NCDOT engineer F.D. Martin (3-29-96) (Statement # 24).

An engineer that I hired also agreed that the damage to

my property was significant and occurred over along period

of time.

"The amount of property adversely affected by the slope failure was considerably greater in January 1999 than when first observed in August, 1995." Report of William Matthews, engineer (1-08-02) (Statement #25).

Clearly, the damage to my property was significant and

occured over a long period of time. The damage was not

the result of single, minor landslide occurring in June, 1995,

as fraudulently alleged by Roy Cooper, Crawford and

Glover in Statement #18, *supra.*

Cooper, Crawford and Glover denied any NCDOT

responsibility for the taking (or the destruction) of my

property before the Fourth Circuit and the U.S. Supreme

Court.

""NCDOT and its employees consistently denied any responsibility for the landslide or landslides.." *Appellee's Brief* (01-1975, 4th Cir.), *Langdon v. Swain,* pp. 7-8 (Statement #26 )

When I first approached the NCDOT about this

situation, the NCDOT engineers fraudulently denied any

NCDOT responsibilty. When I filed a Complaint for the

taking of my property against the NCDOT (*Langdon v.*

*NCDOT*) in the state courts, NCDOT attorney Mallonee

made several false statements denying NCDOT

responsibility. He flip-flopped between denying that a

taking had occurred and alleging that it was barred by a

statute of limitations.

"The Defendant-Appellee [the NCDOT] therefore submits that ..it came forward...establishing that the Plaintiff-Appellant's action accrued in July 1995." T.L. Mallonee, *Defendant-Appellees' Brief, Langdon v. NCDOT,* p. 16 (1-03-00) (Statement #27)

In layman's terms, Mallonee was asserting that the

taking of my property occurred in July, 1995. I agree that
there was a taking [destruction] of my property, but at a
later date. If the taking of my property did occur, as
alleged by NCDOT attorney Mallonee, why did Roy
Cooper, Crawford and Glover deny that a taking had
occurred?  Why did the NCDOT and its engineers deny
in July, 1995, and afterwards that there was a taking?

A cause of action accrues when one has the right to
sue. Mallonee alleged that my right to sue for a taking of
my property accrued in July 1995.  Roy Cooper, Crawford
and Glover deny that I had the right to sue, and deny that
there was a taking.

N.C. Department of Justice attorney Mallonee
succeeded in the state courts by alleging that:  the damage
to my property was significant;  my property was
rendered useless; the damage was the result of a series of
slides;  and that my cause of action for a taking
of my property without just compensation accrued in mid-
July, 1995.

Cooper, Crawford and Glover succeeded in the federal
courts by alleging that:  the damage to my property was
minor;  the damage resulted from a single slide; and that
my cause of action for a taking never accrued.

Therefore, the N.C. Department of Justice has taken exactly opposite positions, as to material facts, in different court proceedings. They have a habit of saying whatever is to their advantage at the time, regardless of how false it may be.

I have given Cooper, Crawford, Glover, and Mallonee numerous opportunities to correct their fraud, but they have refused to do so. The courts, state and federal, have simply ignored their fraud. Apparently, if you go into court without an attorney, you have no rights.

There are many more instances of fraud by the N.C. attorneys Cooper, Mallonee, Crawford and Glover, which will be included in future pages on this web site.

Chris Langdon, 1835 Edwin Blvd., Winter Park Fl. 32789 www.qiology@aol.com

Update-December 14th, 2005

Roy Cooper, Crawford and Glover perpetrated fraud on the U.S. Supreme Court and the lower courts regarding the default of the Defendants in *Langdon v. Swain, Martin & Murdock,* the three NCDOT engineers who were responsible for the taking of my property, committed fraud, blocked my right of meaningful access to the courts, and destroyed my business. The attorneys fraudulently stated:

"Plaintiff cannot show that Defendant had 'failed to plead
or otherwise defend,' before his motions for default entry were
filed. Fed. R. Civ. P. 55(a). default entry was thus not
appropariate and the district court did not abuse its discretion
by denying Plaintiff's motion." *Brief in Opposition* (02-12),
pages 10-11 (Statement #28).

There is a great deal of fraud in that statement. The

defendants failed to file a timely answer, therefore, they

were in default.

## 000507

"Rule 55. Default (a) Entry. When a party against
whom a judgment for affirmative relief is sought has failed to
plead or otherwise defend as provided by these rules and that
fact is made to appear by affidavit or otherwise, the clerk shall
enter the party's default."

The entry of a default is mandatory, not discretionary,

as they fraudulently alleged. "Shall" in statutes is mandatory,

"may" is permissive.

"..the defendants are in a position of having failed to
plead or otherwise to defend within twenty days..They are
therefore in default..there has been no entry of default...But
that entry is a purely formal matter." *Orange County Theater
Corp. v. Rayhertz Amusement Corp.,* 130 F. 2d 185, 187[2]
(3rd Cir. 1942)

" A party's default is not excused simply becuase it is not
recorded in the docket." *Moore's Federal Practice,* 3d Ed.,
Section 55.11 [5] (2000).

The defendants filed a Rule 6 (b) motion for more time

that was mailed one day after the time for Murdock to

answer had expired. What the N.C. attorneys

fraudulently concealed from the Court was the fact

that their first motion contained factual errors and was

denied. Even *if* the first motion could have removed

the default, it was mailed one day after the time for

Murdock to answer had expired.

They filed subsequent Rule 6(b) motions for more

time to answer, one for Murdock and another for Swain

and Martin. Those motions could not have prevented

the default, as fraudulently alleged by the N.C.

attorneys, because they were mailed after the time to

answer had expired and they did not meet any of the

other requirements to prevent a default.

"Under no theory can a motion under Rule 30(b) extend a defendant's time to answer. Rule 12(a) extends the time to serve a responsive pleading only when a motion is made that is permitted under Rule 12." *Atlantic Steamers Supply Co. v. International Maritime Supply Co.,* 268 F. Supp. 2d 1009, 1011 (SDNY 1967)

*See also: Educational Services v. Maryland State*

*Board of Education*, 710 F. 2d 170, 176-177

(4th Cir. 1983), *citing Atlantic Steamers Supply,*

*supra.* A Rule 6(b) motion is not one of the motions

under Rule 12 that can prevent a default. Under some

circumstances a Rule 6(b) motion may be construed as

a motion to set aside a default. However, it must meet

all of the requirements of said motion.

"In order to vacate entry of default, the moving party must show: good cause for default; quick action to correct it; and a meritorious defense." *Pretzel & Stouffer v. Imperial Adjusters,* 28 F. 3d 42, 43[2] (7th Cir. 1994)

"Trial court properly required defendant.. to state underlying facts to support claim of meritorious defense." *Consolidated Masonry & Fireproof, Inc. v. Wagman Const. Co.,* 383 F. 2d 249 (4th Cir. 1967).

The attorneys did not file an affidavit, as required,

nor an answer.

"The defendant filed a written motion to set aside default and..the affidavit of general counsel. However, no answer was tendered for filing." *id.,* at 251.

Affidavits are required. *Thompson v. Wooster,*

114 U.S. 104, 5 S.Ct. 788 (1885); *Park Corp. v.*

*Lexington Insur. Co., supra; Atlantic Steamers*

*Supply, supra.* The defendants did not utilize quick

action. Quick action means the filing of an answer, or

a motion to set aside a default, supported by affidavits,

alleging a meritorious defense, and providing a rational,

acceptable reason for the default. Crawford, Cooper,

and Glover failed to explain why there was a

miscalculation of the response date, who made it,

and who handled the Complaint, as required, before

a default may be set aside. *See: Park Corp. supra;*

*Heyman v. M.L. Market Co.,* 116 F. 3d 91 (4th Cir.

1997); *Robinson v. Bantam Books, Inc.* 49 F.R.D. 139

(SDNY 1970).

In Statement #28, *supra,* the N.C. attorneys

fraudulently alleged that I could not show that they had

failed to "plead or otherwise defend." Rule 55 states:

"plead or otherwise defend as provided by these rules."

That refers to an answer, or one of the motions allowed

under Rule 12 of the Fed. Rules of Civ. P.

> "The words 'otherwise defend' refer to the interposition of
> various challenges to such matters as service, venue and the
> sufficiency of the prior pleading, any of which might prevent a
> default if pursued in the absence of a responsive pleading."
> *Federal Practice & Procedure,* Vol. 10A, Section 2682, p. 15-
> 16, Wright , Miller & Kane (1998).

The N.C. attorneys met none of the criteria to

prevent, or, to set aside the default. They perpetrated

fraud on the courts by mis-representing the law regarding

defaults and by failing to cite the contrary case law.

> "..an advocate has a duty to disclose directly adverse
> authority in the controlling jurisdiction." *Model Rules of
> Professional Conduct,* Rule 4.

The N.C. attoneys fraudulently attempted to blame

the defaults on Murdock. They alleged that:

> "Mr. Murdock mistakenly disposed of Plaintiff's
> Complaint when first received by him, as he beleived it was
> related to an earlier case filed by Plaintiff in state court."
> Statement #29.

Murdock did not mistakenly throw out the summons

and Complaint. He deliberately threw them out, although he knew that they were legal documents. Murdock did not want to respond. Furthermore, the N.C. attorneys had a copy of the Complaint ten days before the time to answer. Therefore, they knew that Murdock was a defendant. Statement #29 does not explain the failure of any of the defendants to plead or otherwise defend. Magistrate Judge Cogburn was derelict in his duties by not entering the default. The Fourth Circuit was derelict in its duty in upholding Cogburn. They accepted the fraudulent position of the N.C. attorneys without question.

What is bizarre about all of this is that the N.C. courts did not consider my federal claims under 42 U.S.C. 1983. If they had, my claims could not have been barred by any limitations, even if they took the fraudulent date alleged by Mallonee for the taking, mid-July 1995. My state Complaint was filed in June 1998, less than three years later. The statute of limitations for suits under 42 U.S.C. 1983 is three years. In their pleadings in the federal courts, the N.C. attorneys never denied this allegation, nor did they deny that: I did not have a full and fair opportunity to litigate my claims in the prior state case; and that the purported

judgment in the state case is void.

I have given the crooked lawyers, Cooper, Crawford and Glover ten weeks to deny the charges herein and they have failed to do so. They have never asked for a retraction of the allegations. What kind of "legal system" do we have in this country? - 1/08/05.

What's bizarre about all of this is that Cooper has spent more of the tax payer's money depriving me of my rights than it would have cost to fix the problem, which is still a threat to motorists and will have to be fixed someday anyway. 1/12/05

# FRAUD BY THE N.C. DEPARTMENT OF JUSTICE



Home
Fraud NC Courts
Judge Baker
Sham Courts
More Fraud

# How the NCDOT destroyed my property, covered it up, and got away with it (so far).

The North Carolina Department of Transportation (NCDOT) is responsible for the destruction of the value of my 6.83 acres of land in PolkCounty, North Carolina, near the Town of Tryon. The property has spectacular mountain views but has been rendered useless because NCDOT engineers J.J. Swain, Jack Murdock, Dave Henderson and F.D. Martin failed to perform their fiduciary duties to properly maintain the NCDOT's right of way [NCSR 1116, a.k.a. "Hogback Mtn. Rd."] that traverses my property. I was unable to obtain just compensation for the taking [destruction] of my property because of fraud and deceit by NCDOT engineers Swain, Henderson, Murdock and Martin. Swain, Murdock and other NCDOT engineers also libeled and/or slandered me and destroyed my business in the process. Swain also illegally denied me access to pertinent NCDOT construction records, contrary to the N.C. Public Records law.

NCDOT attorney T.L. Mallonee, a.k.a. T. "Liar"
Mallonee, used fraud, and fraud on the courts, to prevent
me from obtaining just compensation for my property. A
review of the pertinent events will bear out these
accusations.

On, or about, July 1st, 1995, a small (15 sq. ft.) chunk
of dirt broke loose from the NCDOT's bank, located within
its right of way. A former NCDOT employee warned me
that, if the NCDOT did not take corrective measures within
its right of way, there would be subsequent slides that
would eventually destroy my property beyond the
NCDOT's right of way.

Therefore, I asked the NCDOT District Engineer at
the time, J.J. Swain, to take corrective, preventative
measures within the NCDOT's right of way. He refused.
Instead, he recommended that I take corrective
measures within the NCDOT's right of way. He
recommended that I build a railroad tie retaining wall to
shore up the improperly sloped bank, and that I move the
outlet of the NCDOT's drainpipe that is located above
the NCDOT's improperly sloped bank.

In a letter dated July 26th, 1995, Swain again
recommended that I move the outlet of the NCDOT's

drainpipe. He told me that I had to get the NCDOT's
permission before undertaking any work within the
NCDOT's right of way. Swain attached a letter from
NCDOT engineer Dave Henderson to his letter.
Henderson's letter also recommended that I move the
outlet of the NCDOT's drainpipe. Swain and Henderson
fraudulently denied any NCDOT responsibility.

Of course, why move the NCDOT's drainpipe if it is
not a factor in the collapse of the NCDOT's bank? Why
build a retaining wall within the NCDOT's right of way, if
the bank was properly constructed? Under N.C. law, the
maintenance of the NCDOT's right of way is the
responsibility of the NCDOT, not the citizens! It's clear
that they wished to trick me into taking responsibility for
their problem by undertaking *their responsibilities.*
In his letter to me, he referred to it as *your problem.*

The engineers that I hired determined that the
NCDOT's bank was not sloped according to acceptable
engineering standards, and that the NCDOT's drainpipe
added hydrostatic (water) pressure to the improperly
sloped bank. They agreed that if corrective measures were
not taken, there would be future slides on my property
beyond the NCDOT's right of way. I sent their reports to

the NCDOT engineers.

The NCDOT, and NCDOT engineer Swain, prevented me from viewing the NCDOT's construction records for its easement traversing my property. However, I learned later that their denial of my access to the records was illegal and in violation of the N.C. Public Records Law. I also learned later that the NCDOT's bank was not sloped according to the NCDOT's *Design Manual*, a fact which the NCDOT and its engineers (Swain, Henderson, Martin, Murdock and others) intentionally, fraudulently concealed from me.

There was a great deal of illegality and fraud, regarding the concealing of the relevant NCDOT construction records, by NCDOT attorneys Mallonee and Crawford. They were working for Michael Easley at the time, when he was the N.C. Attorney General. Therefore, he shares responsibility for their fraud.

The engineers that I hired to assess the situation stated that the causes of the slides within the NCDOT's right of way were: the steepness of the NCDOT's bank; and the NCDOT's drainpipe. I sent their reports to the NCDOT but they still refused to take corrective, preventative measures within their right of way. At the suggestion of

Swain, I contacted the N.C. Dept. of Health, Environment
and Natural Resources. Mr. Beck from that department
viewed the situation. He concluded that: I hadn't broken
any environmental laws; and that the NCDOT's drainpipe
was the main cause of the slides within the NCDOT's right
of way.

In the summer of 1997, an area of my property had
been physically destroyed by the slides, which had
progressed beyond the NCDOT's right of way. I had a
surveyor measure the area that had been destroyed by the
slides. I then asked him to draw a line through the
NCDOT's drainpipe and down through the destroyed area.
The line divided the destroyed land into two almost exactly
equal areas, which proves that the NCDOT's drainpipe was
a prime cause for the slides. This information, along with
my engineering reports, were sent to the NCDOT, to no
avail.

J.J. Swain, Jack Murdock, F.D. Martin, and other
NCDOT engineers made false statements that indicated, or
strongly implied, that I was responsible for the slides.
Many of their statements contradicted each other, and
even themselves. I filed suit against them in the N.C.
Industrial Commission (NCIC). Their attorney, Michael

Warren, made inconsistent defensive arguments in a hearing.
He argued that the defendants hadn't libeled me. He also
argued that I couldn't recover because the libelous
statements were false, and the engineers knew they were
false when they made them. The NCIC only allows for the
recovery of damages for negligent acts. The magistrate
made Warren elect one of the inconsistent defenses. He
elected the defense that the engineers intentionally made
false statements that blamed me for the slides.

I then reached a small settlement agreement with
Warren for the libel/slander  The agreement was to release
the libel claims. However, when I received the agreement,
I discovered that additional, new items had been added. I
asked Warren why, and he stated that the new items were
added at the request of NCDOT attorney T.L. Mallonee.
That surprised me because Warren had told me that
Mallonee was not involved in the case. Mallonee's additions
to the agreement required me not to seek damages from the
NCDOT, or its employees, for any damage to my property,
resulting from a landslide of June, 1995, except in my
lawsuit filed in N.C. (*Langdon v. NCDOT,* 98-CVS-139).

I agreed to the terms with the understanding that I
would get a full and fair hearing in *Langdon v. NCDOT.*

I did not get a full and fair hearing in *Langdon v. NCDOT*. Also, my complaint (*Langdon v. NCDOT*) was for damages from a series of slides (not one), beginning in July, 1995. It did not allege any damage from a slide (singular) in June, 1995.

There was no additional compensation for the additional items in the settlement agreement. Furthermore, NCDOT attorney Mallonee had consented, before I signed the release, to depositions of the NCDOT engineers involved in this matter. However, after the purported settlement (release), Mallonee began dodging my phone calls. He eventually informed me that he was reneging on the agreement for depositions.

I would not have agreed to the release if I had known that Mallonee was going to renege on the agreement for depositions. I wouldn't have signed the release if I had known that T. "Liar" Mallonee had illegally removed the pertinent NCDOT engineering records, from the NCDOT's district office in Henderson County, to his office in Asheville, N.C. (Buncombe County). The NCDOT district engineer, E. Green, faciltated the illegal removal of the records, contrary to the N.C. Public Records Law.

Because the NCDOT failed to take corrective,

preventative measures within its right of way (r.o.w.), I

filed a Complaint in the superior court of Polk County,

N.C. (case no. 98-CVS-139) in June of 1988, I alleged that

the NCDOT had taken my property without just

compensation and due process of law, in violation of the

N.C. Constitution, Article I, Sections 18 & 19, and the U.S.

Constitution, Amendments V & XIV.

In his answer *to Langdon v. NCDOT*, T.L.

Mallonee fraudulently referred to the damage of a

"landslide" (singular). My suit correctly asserted that the

damage to my property was the result of a series of

landslides. Mallonee also fraudulently denied any NCDOT

responsibility and pled a statute of limitations (NCGS 136-

111). However, a plea of limitations presupposes that a

cause of action has accrued.

"The plea of limitations presuposes the existence of a right
of action which has become barred by the lapse of time, while
the plea of a prescriptive right denies that the alleged right
ever existed." *Hume v. Grand Trunk Western Ry. Co.*, 158
NW 840[4] (Mich. 1916).

"...stautes of limitation pre-suppose an established
substantive right, but forbid the plaintiff from enforcing it."
34 Am. Jur., *Limitations of Actions,* Section 410, p. 322 (1941)

"Statute of limitations bar claim which has arisen."
*Olympic Products Co. v. Roof Systems, Inc.,* 339 S.E. 2d 432
[2] (N.C. App.1986).

Therefore, the two defenses are inconsistent. There is

N.C. case law that holds that a defendant may not plead a
limitations, and deny that a taking has occured/and or deny
the plaintiff's ownership of the property in question. *See:
Mason v. Commissioners of Durham County,* 96 S.E. 110,
111 (N.C. 1918); *Whiting Manufacturing Co. v. Carolina
Aluminum Co.,* 175 S.E. 698 (N.C. 1934); *Kistler v. City
of Raleigh,* 136 S.E. 78, 80 [1] (N.C. 1964). Mallonee's
answer in *Langdon v. NCDOT* denied a taking had
occured and, for reasons unkown, denied my ownership.

The denial of a taking and a plea of limitations by
Mallonee in *Langdon v. NCDOT* are inconsistent defenses.
Even if they could have been pled under N.C. law, they were
not pled in the hypothetical, nor in the alternative, therefore,
they should have canceled each other out. *Schott Motorcycle
Supply Co. v. American Honda Motor Co.,* 976 F. 2d 58
(1st Cir. 1992).

The plea of limitations was not properly made
because it did not allege a date that my cause of action
accrued.

I believe that Mallonee wished to conceal the fact
that the plea of limitations was an admission that my cause
of action for a taking of my property had accrued.

Mallonee's answer also intentionally mis-represented

the law. He fraudulently stated that the right to just

compensation for the taking of property was a right created

by statute (NCGS 136-111). In reality, the right to just

compensation goes back 800 years and pre-dates the *Magna*

*Charta*. The N.C. Supreme Court, in many of its earliest,

most important decisions, acknowledged the right as implied

in the first N.C. Constitution, and in its subsequent revisions,

and was derived from the Magna Charta. *See: Trustees of*

*the University of North Carolina v. Foy,* 5 N.C.58, 73-80

(1805).

   "The right to just compensation is an ancient one. it
reaches back before the Magna Carta and forms a part of the
common law." *Karp v. Urban Development Commission of*
*Stamford,* 294 A. 2d 633, 635 [5,6].

   The right to just compensation is also included in the

U.S. Constitution, Amendments V & XIV. I believe that

Mallonee fraudulently asserted that just compensation was

a right created by statute to make it seem that the stautory

remedy (NCGS 136-111) was the exclusive remedy.

Mallonee never supplied any case law that indicates that

NCGS 136-111 was the exclusive remedy for a taking of

property without just compensation.

   Mallonee filed a motion for summary judgment that

alleged that my Complaint was barred by an alleged statute

of limitations. His motion did not contain a denial of
NCDOT responsibility, therefore, Mallonee had waived any
reliance by the NCDOT on that defense. Mallonee elected
the purported defense of a limitations. *See: Alpar v.
Weyerhauser Co., Inc.,* 201 S.E. 2d 503, 503-04 (N.C.
App. 1974) (election of a defense must be made before
trial). Once a position has been taken, a party may not
change that position later.

I responded to the NCDOT's motion for summary
judgment with two pleadings that alleged that my Complaint,
*Langdon v. NCDOT,* was filed in June, 1998, nine months
after the taking of my property in September, 1997, when
I was denied a septic tank permit for the property.
Therefore, my cause of action could not be barred by the
purported 2 years limitation in NCGS 136-111, *if* it had
been properly pled.

I also filed several motions: a motion to amend my
Complaint; a motion for a jury trial; a motion to join the
note-holders and trustees; and a motion to compel
discovery. The motions were properly noticed for the
same day as the NCDOT's motion for summary judgment.

The motion to amend asked for leave to amend my
Complaint to allege that the taking had occurred in

September, 1997. My original Complaint didn't allege a

specific date for the taking. The motion was un-opposed,

therefore, it should have been granted. Motions to amend

are to be liberally granted, especially in *pro se* civil rights

actions.

> "A relaxed standard for the grant of leave to amend a
> complaint applies with particular force to a pro se litigants,
> and a pro se complaint is to be read liberally, and should not
> be dismissed without granting leave to amend at least once..."
> C.J.S., *Federal Civil Procedure,* Section 400, pp. 373-74

> "A plaintiff may be allowed to amend the complaint in
> order to show facts which mitigate against a defense, such as
> limitations..." C.J.S., *Federal Civil Procedure,* Section 414, p.
> 388.

The motion to compel discovery was necessary

because Mallonee had reneged on my discovery request. I

wish to depose several NCDOT engineers and have them

bring the construction records to the depositions. At that

time I was not aware that Mallonee had illegally removed

them from the NCDOT's district office to Mallonee's office.

My motion to compel discovery was un-opposed. There

was a court order requiring discovery. Mallonee tricked

me into delaying the depositions. He asked me to delay the

depositions because the witnesses were scattered across the

state and the weather was bad in N.C. that January and

February. He then filed his motion for summary judgemnt

and reneged on the agrement for depositions.

My motion to join the noteholders and trustees was

made because, under N.C. law, they are necessary parties

in a suit for just compensation.

"In view of complaint, in inverse condemnation
action..trial court properly ordered joinder of trustee and
noteholder...Long v. City of Charlotte, 293 S.E. 2d 101 (N.C.
1982)." 29A C.J.S., Section 398, p. 783, n. 75 (1992).

"Trustee and Noteholder Necessary Parties in Inverse
Condemnation Action ..Long v. City of Charlotte." *General
Statutesof North Carolina, Annotated,* Vol. I, Section 1A-1,
Rule 19, p. 883, notation, Matthew Bender & Co.., Lexis-
Nexis Publishing (2002)

If the necessary parties are not joined, any purported

judgment is void. *J & B Slurry Seal v. Mid-South Aviation,*

363 S.E. 2d 812, 813 [10] (N.C. App. 1987). The joinder

of necessary parties can't be waived. *Commonwealth Land*

*Title Insurance Co. v. Stephenson,* 387 S.E. 2d 77, 78 [1]

(N.C.App. 1990) The motion to join the necessary parties

was un-opposed, and according to N.C. law, could not be

denied.

My motion for a jury trial should have been granted

because it was un-opposed and a plaintiff has a right to

have a jury determine issues of fraud. The NCDOT

engineers perpetrated fraud to prevent me from filing a suit

for just compensation. Also, under N.C. law, a plaintiff has

the right to have disputed issues of fact resolved by a jury.

The motions were scheduled for March 15th, 1999. In court that day I answered "here" when my name was called. The presiding judge noticed that I had a box with me. He sarcastically asked if it contained more motions. That clearly demonstrated his bias against me and my motions. The Judge, Claude Sitton, asked Mallonee if my case could be moved to the end of the session, and Mallonee agreed. Sitton didn't ask me if it was OK, once again demonstrating his bias.

Mallonee argued at the hearing that my Complaint was barred by a purported limitations, NCGS 136-111, although my Complaint was not filed under that statute. Mallonee did not supply any case law that alleged that NCGS 136-111 is the exclusive remedy for a taking.

Mallonee also fraudulently denied any NCDOT responsibility for the taking. Mallonee's denial of a taking was waived when he filed his motion for a summary judgment based on a limitations only. That was an election of a defense of a limitations. Once a defense is elected, a party may not switch to another defense later. However, at the so called hearing (3-15-05) Mallonee was arguing a purported defense for the NCDOT that had been waived.

Also, as stated previously herein, Under N.C, law, a defendant may not deny that a taking has occurred and allege a limitations. Those inconsistent arguments were not made in the alternative, nor the hypothetical, therefore, they should have cancelled each other out.

Mallonee's oral argument contradicted his anser by conceding that there was a series of slides on my property, beginning on July 1st, 1995. He fraudulently concealed the fact that those slides began within the NCDOT's right of way. They did not occur on my property beyond the right of way until 1996. During his argument, Mallonee did not allege a date for the taking. He argued that the statute of limitations for a taking runs from the first injury, although the statute that purportedly barred my claim, NCGS 136-111, states that the limitation runs from the taking, not the first injury.

Mallonee's motion for summary judgment was supported by a false affidavit by Swain. It appears that Mallonee wrote the affidavit for Swain. Swain alleged in his affidavit that:

"..as of mid-July, 1995, significant slope failure, or sliding had occured on the Plaintiff's property and clear evidence existed..that additional failure would occur if corrective measures were not taken by the Plaintiff." *Affidavit,* J.J. <u>Swain, p. 2, Section 10 (2/20/99)</u>

That is an admission that Swain, the NCDOT District Engineer at the time, knew in July, 1995, that if corrective, preventative, measures were not taken, serious damage would occur to my property. What Swain's affidavit fraudulently conceals, with the help of Mallonee, is the fact that those corrective, preventative measures were those that had to be undertaken within the NCDOT's r.o.w., the responsibility of the NCDOT. Swain's verbal recommendations, his letter of July 26th, 1995 and the accompanying letter of NCDOT engineer Swain prove that.

Swains allegation that the damage to my property was significant by mid-July, 1995, is intentionally false. I believe that he and Mallonee intended to imply that the taking occurred in mid-July, 1995. Later statements by Mallonee susbtantiate my allegations. Neither before, nor during the hearing of March 15th, 1999, did Mallone ever allege that the taking ocured by mid-July, 1995, or by any date. Mallonee appeared not to want to do anything that would admit that a taking had ocurred, *i.e.,* allege a date for a taking.

I demonstrated in my pleadings opposing summary judgment that the first slide was within the NCDOT's r.o.w. and was small, 15 sq, ft. out of the almost 300,000

sq. ft, that was taken. The first slide was on, or about July

1st, 1995. A second, smaller slide occurred within the

NCDOT's right of way several weeks later, in late August,

or early September. The first slide outside of the NCDOT's

r.o.w didn't occur until 1996. I did not file suit then

because I expected more slides, and the damage was not

signifiant enough to be a taking. Both federal and N.C. law

require that there be a substantial diminution in market value

to be considered a taking.

I testified at the "hearing" that: the taking did not occur

until September, 1997; the first slide was small and within

the NCDOT's right of way; and that Swain's affidavit was

perjury. Mallonee never disputed my testimony, except

to object to my testifying, without stating why he was

objecting, as required. The judge over-ruled him and

allowed me to continue to testify.

At the hearing I presented to the judge the appropriate

case law that states that the note-holders and trustees are

necessary parties and must be joined to a suit for just

compensation. I also presented to him a list of the note-

holders and trustees having a security interest in my

property at the time of the taking. I made NCDOT attorney

Mallonee aware of the noteholders and trustees well in
advance of the hearing. It should also be noted that
Mallonee was seeking a summary judgment based on the
purported limitations in NCGS 136-111. NCDOT attorney
Mallonee must have been well aware that before
proceeding under NCGS 136-111, it is necessary for the
court to proceed under NCGS 136-108. That statute
requires the court to join any necessary parties, determine
if a taking has occurred, and if so, what property was
"taken," none of which was done.

Mallonee denied that there was taking while pleading
the inconsistent defense of a limitations. He perpetrated
fraud on the court because he must have known that the
court had to undertake the procedures under NCGS 136-
108 before proceeding under NCGS 136-111. Because the
court did not undertake the procedures required under 136-
108, it lacked jurisdiction to proceed under 136-111.
Mallonee knew that, but kept quiet. Cooper, Crawford and
Glover are aware that the court lacked jurisdiction in the
state case, Langdon v. NCDOT, but they have used it to
prevent me from obtaining relief in *Langdon v. Swain* and
*Langdon v. Tippett*. They have also prevented me from
getting relief from the alleged judgment in *Langdon v.*

*NCDOT*, although they know it is void and was procured

through fraud and fraud on the court. Their reliance on the

purported judgment in *Langdon v. NCDOT* in the federal

and state courts is fraud on those courts.

I also presented case law to the court that proves that

there is no statute of limitations for a taking without just

compensation in N.C .

"As the Supreme Court of North Carolina has indicated, there
is no statute of limitations applicable to a claim for just
compensation. Hoyle v. City of Charlotte, 172 S.E. 2d 1
(1970). If Plaintiff's property has been taken by defendants,
Plaintiff is entitled to just compensation under the N.C.
Constitution regardless of when the taking occurred. The time
of the taking is relevant only for purposes of valuing the 'just
comppensation due." *Ocean Acres v. Dare County Board of
Health*, 514 F. Supp. 1117, 1123 (E.D.N.C. 1981), affirmed
707 F. 2d 103 at 103 [3] (4th Cir. 1983)

The trial judge (Sitton) cut the so-called "hearing"

short because he was hungry. He did end the session with a

promise to review the entire case file. A few days later he

entered summary judgment for the NCDOT without ruling

on any of my motions. No explanation was given for his

purported ruling, and his order failed to even mention my

motions. He didn't address a single issue raised by me. He

merely stated that my Complaint was barred by a statute

of limitations, although the N.C. Supreme Court has ruled

that there is no staute of limitations for a suit for just

compensation for the taking of property. NCDOT attorney

Mallonee succeeded on a purported limitations, although he

never alleged a date for the taking. I alleged that the taking

occured in September, 1997, in my: pleadings opposing

summary judgment; in my un-opposed motion to amend;

and in my testimony at the summary judgment "hearing."

At no time did Mallonee allege any date for the taking.

Therefore, the court should have accepted the un-disputed

date that I alleged for the taking, September, 1997.

Mallonee's only argument at the "hearing" was that the

purported limitations runs from the first act in the taking.

However, when the first injury is minor, there is no taking.

"Minor physical intrusion is not 'physical taking' for purposes
of takings clause." *Southview Associates, Ltd. v. Bongartz*, 980
F. 2d 84, 85 [7] (2nd Cir. 1992).

The problem I was confronted with was to determine

at what point the damage to my property rose to the level of

a taking. Even Swain admitted in his affidavit, *supra*, that

the damage to my property was not complete by mid-July,

1995. I supplied to the court case law holding that,

when the taking occurs over a period of time, any statute

of limitations (if there is one) runs from the last act in the

taking, when the taking is complete, not the first act.

That way, a plaintiff does not have to file suit when

each instance of damage occurs. The damage to my

property resulted from a series of slides over a long period

of time, which NCDOT-NCDOJ attorney Mallonee

admitted. However, NCDOT-NCDOJ attorneys Cooper,

Crawford and Glover fraudulently stated in the federal

courts that there was only a single, minor slide involved

(*See* page 1).

The Supreme Court addressed a similar situation in

*U.S. v. Dickinson* where the U.S. government flooded a

man's property for over six years. The government tried to

weasel out of paying him by alleging that the six year

limitation had run. The court held that:

" The Government could, of course, have taken appropriate
proceedings to condemn as early as it chose..it could have
fixed the time when the property was 'taken.' [It] chose not to
do so. It left the taking to physical events thereby putting on
the owner the onus of determining the decisive moment in the
process of acquisition by the United States when the the fact
of the taking could no longer be in controversy.. We are not
now called upon to decide whether in a situation like this a
landowner might be allowed to bring a suit as soon as
inundation threatens. Assuming that such an action would be
sustained, it is not a good enough reason why he must sue
then, or have, from that moment, the staute of limitations run
against him. If suit must be brought, lest he jeopardize his
rights, as soon as his land is invaded, other contingencies
would be running against him--for instance, the uncertainty of
damage and the risk of res judicata against recovering later for
damage as yet uncertain. The source of the entire claim..is not
a single event; it is continuous..there is nothing in reason, so
there is nothing in legal doctrine, to preclude the law from
meeting such a process by postponing suit until the situation
becomes stabilized..when dealing with a problem which arises

under such diverse circumstances procedural rigidities should be avoided...when the Government chooses not to condemn land but to bring about a taking by a continuing process of physical events, the owner is not required to resort either to piecemeal or to premature litigation to ascertain the just compensation for what is really "taken." *U.S. v. Dickinson*, 67 S.Ct. 1382, 1385 (1947).

*See also: Mac Donald, Sommer & Frates v. Yolo Cnty.,* 106 S.Ct. 2561, 2566 (1986) reaffirming the "Dickinson" rule. In Swain's affidavit, supplied by NCDOT attorney Mallonee to the court at the summary judgment hearing on 3-15-99, Swain stated that he warned me in July, 1995, that future damage would occur to my property if corrective measures were not taken. That proves that the taking was not complete by mid-July, 1995, and, according to the Dickinson rule, no staute of limitations could begin to run by mid-July, 1995, because the taking was not complete. NCDOT attorney Mallonee never alleged that the taking was complete by July, 1995, nor did he allege any date for the taking. He argued that the purported limitations ran from the first injury, not the last, contrary to the Dickinson rule.

However, the U.S. Supreme Court based its decision in Dickinson on Amendment V, U.S. Constitution, which requires fairness (Due Process of Law). States courts are required to supply at least the minimum amount of fairness

(due process) embodied in Amendment V. Also, my

Complaint sought relief under the U.S. Constitution,

Amendments V & XIV. "Taking's" claims under

Amendment XIV may be heard directly under the

Constitution, or under 42 U.S.C., Section 1983.

See: *Ocean Acres v. Dare Cnty., supra*. The staute of

limitations for Section 1983 suits in N.C. is three years.

My Complaint, *Langdon v. NCDOT*, was filed less than

three years after the initial slide in the NCDOT's right of

way. Therefore, *if* Mallonee had alleged that the taking had

occurred by mid-July, 1995, the taking still would not have

been barred by the limitations for Section 1983 suits. The

trial court never considered my federal claims (Amendments

V & XIV, Section 1983).

    In his answer, Mallonee referred to a landslide

(singular), implying that the taking occured by a single

event. Since the first slide occured, on or about, July 1st,

1995, Mallonee was implying that the taking had occurred

on July 1st, 1995. At the summary judgment "hearing,"

Judge Sitton stated that he believed that Mallonee's position

was that I had alleged in my Complaint that the taking had

occured on July, 1st, 1995. I pointed out that my

Complaint had alleged that the taking had occured by a

series of slides that began on, or about, July, 1st, 1995.
My Complaint never alleged a date for the taking, which I
attempted to correct by my Motion to Amend, which
alleged September, 1997, as the date for the taking.
Mallonee did nothing to correct Judge Sittons mis-
conception, fostered by Mallonee, that I had alleged that
the taking had occured on July, 1st, 1995. Mallonee's
silence on the issue was also fraud on the court because he
could have corrected the mis-representation of my
Complaint. On appeal, Mallonee fraudulently assered that
the taking occured in mid-July, 1995, not July 1st, 1995, as
he misled the trial court.

    If the court had taken my un-disputed date for the
taking, September, 1997, my Complaint could not have
been barred by the alleged two year limitations in NCGS-
136-111 because my Complaint was filed nine months later,
in June, 1998. If the court had considered my claims under
Amendments V & XIV (Section 1983), my Complaint
could not have been barred because it was filed well within
three years of the taking. Even if the taking had occurred
on July 1st, 1995, as fraudulently implied, but never pled,
or argued, by Mallonee, then my federal claims could not
have been barred because my Complaint was filed in June,

1998, less than three years later.

The entry of summary judgment was improper for those reasons and because: necessary parties were not joined, rendering the judgment void; the court had not ruled on my motions; the court did not apply the Dickinson rule; the court did not consider my federal claims; the NCDOT did not dispute the date that I had alleged for the taking, and my Complaint was filed nine mos. after the undisputed date for the taking; I testified that Swain's affidavit was perjury; I was not allowed to depose Swain, or any other NCDOT engineer; there was no meaningful discovery; Mallonee pepretrated fraud on the court by changing his position as to a material fact (the number of slides); Mallonee perpetrated fraud on the court by supporting his motion for a summary judgment with a false affidavit by Swain, by implying that the taking ocuured on July 1st, 1995, and by not correcting that misconception at the hearing; no evidence was presented that NCGS-136-111 is an exclusive remedy for a taking, as fraudulently implied by Mallonee; the court failed to draw all inferences in my favor; the court did not consider that fraud by a fiduciary prevents the running of a statute of limitations; and the trial court failed to consider a single

issue raised by me.

Additionally, the pleaings of *pro se* parties are to be liberally construed, especially in civil rights complaints, like mine. *See: Haines v. Kerner,* 404 U.S. 519, 520-21, 92 S.Ct. 594, 596 (1972). The trial court failed to liberally construe my Complaint.

I appealed the court's purported ruling and a "hearing" was set to settle the Record on Appeal had by telephone. No record of the proceeding was kept, which is a violaiton of due process of law. Mallonee had some of my evidence opposing summary judgment excluded from the Record on Appeal, without an explanation by the judge. After the purported settling of the Record on Appeal, Mallonee had an *ex parte* conversation with the trial judge. In that conversation, Mallonee got the judge to effectively remove all of my remaining evidence opposing summary judgment, without a full explanation. *Ex parte* conversations are a violation of the N.C. Canon of Judicial Conduct. It must be assumed that Mallonee was aware that his *ex parte* conversation was illegal and unethical, and, therefore, it was fraud on the court. Mallonee's purported changes to the Record on Appeal, fraudulently accepted by the judge after the Record on Appeal had been settled at the

purported hearing, intentionally deprived me of due process
of law and equal protection under the law.

By the time I learned of the *ex parte* conversation and
Mallonee's and Sittton's fraud, the time to perfect my
appeal had almost expired. Therefore, I had no choice but
to proceed with the appeal. Neither Mallonee, nor the
NCDOT, have denied these allegations.

While my appeal was pending, I filed a motion
seeking depositions and discovery pending appeal, because
the court had not ruled on my motion to compel discovery
and depositions.  Rule 27 of the N.C. Rules of Civil
Procedure is entitled to "Depositions Before Action or
Pending Appeal."  Clearly, I was allowed to seek
depositions.  However, Mallonee instructed the trial court
administrator not to place my motions on the docket,
although they had been properly noticed.  The trial court
adminstrator, Jerry Brewer, complied with Mallonee's
request and unilaterally ruled that the court no longer had
jurisdiction, which he had no authority to do.  Cooper,
Glover and Crawford later fraudulently alleged in federal
court that Brewer was acting under the orders of the trial
judge.

Mallonee's surreptitious, *ex parte* conversation, and his

blocking of my right to a hearing on my motions were
intentional acts designed to deprive me of my rights to:
due process of law; equal protection under the law; and
meaingful access to the courts. Mallonee had Sitton
defraud me of my right to present a defense to the
NCDOT's motion for summary judgment. Any purported
judgment entered without a true hearing is void. *Hovey v.
Elliot,* 167 U.S. 409, 17 S.Ct. 841 (1897); *Windsor v.
McVeigh,* 93 U.S. 277. Sham proceedings, like those I
was subject to, are not constitutionally adequate.
Therefore, the purported judgment in *Langdon v. NCDOT*
is void for a lack of due process of law. It is also void
because the necessary parties were not joined and no
proceedings were held under NCGS 136-108, as required.

I wondered if the NCDOT was barring everyone from
viewing the pertinent construction records, or, if only I was
barred from viewing them. I asked a friend to go to the
NCDOT District Engineer's office to view and copy the
records. The new District Engineer, Ed Green, said OK.
That proved to me that the NCDOT was only barring me
from viewing the records. When Green went to get the
records they were gone. Green then remembered that
the records had been removed to T.L. Mallone's office

in Asheville, N.C. NCDOT attorney Mallonee had the
original records removed to his office, in violation of the
N.C. Public Records Law. The records were removed
shortly after I filed my Complaint in June, 1998.

Mallonee still had the original records more than a year
later. I asked Mallonee to return the records to the office
they were taken from, and to provide me copies of them.
Both requests are provided for in the records law.
Mallonee ignored my requests, therefore, I filed suit to
get certified copies of the record and to have the originals
returned to the office where they are normally kept, as
required by the records law.

NCDOT attorney Robert Crawford III defended the
suit. He had the former NCDOT district engineer,
J. Swain, collect the purported records, take them to
Swain's office in another district, and send me purported
copies. I objected because the copies were not certified.
Crawford refused to supply certified copies and responded
with a lie, stating that:

"The Public Records Act does not require that 'certified'
copies be provided. Again, its our position that you have
received eveything that you are entitled to under the Public
Records Act." *Letter of Robert O. Crawford III,* October 7th,
1999 (Statement #2).

That's a deliberate mis-representation of the law.

"Persons requesting copies of public records may request that the records be certified or uncertified." N.C.G.S. Section 132-6.2.

I did receive copies of the purported records, however, they were purportedly certified by Mallonee and Green not Swain, the person who collected them and was in possession of them. According to the records law, they were supposed to be certified by the official in control of them. Crawford refused to have Swain certify them and he refused to have Swain return them to the office they were taken from, in direct contravention to the records law.

I had originally asked to see the records back in 1995, but my request was denied by Swain. The records were illegally removed by Mallonee and Green to Mallonee's office in 1998. By 1999 I still had not received copies of the records that were certified by the official in control of them. I dropped my suit because it was clear that whatever incriminating evidence that was in the records was destroyed. Why else did they illegally conceal the records from me for over four years?

On appeal, I asked the N.C. Court of Appeals to allow my evidence, opposing the summary judgment motion, into the Record on Appeal. It had been accepted, and then illegally removed from the Record on Appeal, due to the

collusion of Sitton and Mallonee in their *ex parte*

conversation. It is error to grant summary judgment

without ruling on a plaintiff's motions, as was done in my

case. *See: Carolina Builders v. Gelder & Associates,*

289 S.E. 2d 628, 629 [2] (N.C.App. 1982). It is a violation

of a citizen's constitutional rights to deny one an

opportunity to present their case, or defend against a motion.

> "The right to notice and an opportunity to be heard on motions filed in a lawsuit is critically important to the non-movant and cannot be considered an insubstantial ..omission on the part of the ..court." *Pask v. Corbitt,* 220 S.E. 2d at 382.

> "Wherever one is assailed in his person or his property, there he may defend..This is a principle of natural justice.. A sentence of a court pronounced against a party without hearing him, or giving him an opportunity to be heard, is not a judicial determination of his rights, and is not entitled to respect in any other tribunal." *Windsor v. McVeigh,* 93 U.S. 274, 277 (1876).

The N.C. Court of Appeals refused to allow my evidence

into the Record on Appeal, without an explanation. Of

course, there was no legal, rational, explanation why my

evidence was excluded. They ignored the fact of Sitton's

illegal, *ex parte* conversation. Apparently, in N.C. one's

constitutional rights don't count if you don't have an attorney.

It is clear that Sitton's *ex parte* conversation with Mallonee

was in violation of the N.C. Code of Judicial Conduct,

Canon 3A(4). *Financial Services of Raleigh v.*

*Barefoot,* 594 S.E. 2d 37, 40 (N.C.App. 2004).

Before the N.C. Court of Appeals, Mallonee

fraudulently stated:

"The Defendant-Appellee therefore submits that..it came
forward..establishing that the Plaintiff-Appellant's action
accrued in July, 1995." T.L. Mallonee, *Defendant-Appellee's
Brief, Langdon v. NCDOT*, p. 16 (January 3rd, 2000).

In the same brief, Mallonee denied that there was a

taking. If, as Mallonee alleged, he had established that my

cause of action for a taking had accrued, how could he

deny in the same brief that there was no taking? If the

taking of my property had accrued in mid-July, 1995,

why did the NCDOT engineers deny it in July, 1995,

and subsequently? Why was Mallonee allowed to

flip-flop between two inconsistent positions, even after

succeeding in one before the Superior Court?

I pointed out in my briefs that no statute of limitations

can run when the cause of action is fraudulently concealed

by a fiduciary. The NCDOT and its engineers and

attorneys have a fiduciary duty to inform a citizen if they

are responsible for the destruction (taking) of their property.

The NCDOT and its engineers fradulently concealed the

taking, thus preventing the running of any purported

statute of limitations. The N.C. Court of Appeals, like the

Superior Court, did not consider a single issue or argument

raised by me. Like the Superior Court, they drew all
inferences against me, contrary to the law. For example, I
was uncertain as to what date to ask for interest from. The
taking took place over a two year period. The NCDOT
engineers knew on July 1st, 1995, that if corrective
measures were not taken within the NCDOT's right of way
that my property would be eventually destroyed. I didn't
believe that it was fair to not get interest for the time that
the NCDOT sat by and failed to perform its fiduciary duties.
Therefore, I asked for interest from July 1st, 1995, when
the cover-up began. Federal courts hold that when a taking
occurs over a period of time, as in my sitaution, rather than
a single event, interest is calculated from the mid-point
of the taking. If I had asked for interest from the date that
the taking was complete, Sept., 1997, I would have
deprived myself of over a year's interest.

Alos, I had intended to amend my Complaint with
claims against the engineers for fraud, etc., once I had
deposed them. Swain's fraud began about July 1st, 1995.

In any case, the N.C. Supreme Court denied
*certiorari*. Therefore, I filed suit in federal court against
the NCDOT engineers responsible for the taking,
and/or covered it up: Swain, Martin and Murdock.

I had filed a complaint against several NCDOT engineers in the N.C. state courts. I filed a motion to join the noteholders and trustees to the case. The trial court administrator, Jerry Brewer, intentionally did not place the motion on the docket. He also failed to notify me of a important, potentially dispositive hearing. Brewer is the same individual who refused to place my motions for discovery and depositions, pending appeal, on the docket in *Langdon v. NCDOT.*

It was clear to me that I was unable to get a fair hearing in the N.C. courts, therefore, I took a voluntary dismissal without prejudice. I then filed my federal Complaint against several N.C.D.O.T. engineers, *Langdon v. Swain, Martin and Murdock.* The fraud on the courts used to prevent me from getting a fair hearing in that case is presented on Page 1 at the top. I also attempted to obtain relief from the purported judgment in *Langdon v. NCDOT.* I was prevented from doing so by the illegal actions of Judge James Baker and fraud by the N.C. attorneys: Cooper, Crawford and Glover. Their actions are described on Page 3.

# FRAUD BY THE N.C. DEPARTMENT OF JUSTICE



**Home**

**Fraud NC Courts**

**Judge Baker**

**Sham Courts**

**More Fraud**

## Judge Baker Denied My Rights to Meaningful Access to the Courts, Due Process of Law and Equal Protection Under the Law--- Chris Langdon  qiology@aol.com

Judge Baker Denied My Constitutional Rights - Intentional or Un-intentional?

I attempted to obtain relief from the alleged judgment in *Langdon v. NCDOT* in an Independent Action (case no. 03-CVS-173, Polk County N.C.). A careful reading of Page 2 at the top of the menu clearly indicates why the purported judgment in *Langdon v. NCDOT* is void. The NCDOT, through attorneys Roy Cooper, Robert Crawford and Lisa Glover filed a motion to dismiss my Independent Action. The motion was granted because of fraud on the court by the N.C. attorneys Roy Cooper, Robert Crawford and Lisa Glover, and because of Judge James L. Baker Jr.'s denial of my constitutional rights.

Judge James L. Baker Jr. Baker granted the motion to dismiss in a sham proceeding, in violation of my constitutional rights. I wrote N.C. Judge James L. Baker Jr. a letter giving him the opportunity to explain his actions

before I made my charges against him public. The

letter states:

" I am writing you concerning your violations of my rights
to: due process of law; equal protection under the law; and
meaningful access to the courts, in case 03-CVS-173. Those
violations were intentional and/or you're incompetent. Before
I go public with my accusations, I wish to afford you with the
opportunity to respond, an opportunity you never afforded me
in court. Your granting of the defendant's motion to dismiss
violated the aforementioned rights for numerous reasons,
including the following: (1) you failed to liberally construe
my *pro se* pleadings and draw all inferences in my favor; (2)
you denied me an opportunity to amend my Complaint,
despite the liberal policy of allowing amendments to
complaints in N.C.; (3) you failed to take my factual
allegations as true; (4) you allowed the NCDOT attorneys to
plead for some who are not party to the case; (5) you refused
to join the necessary parties; (6) you refused to declare the
purported judgment void for failure to join necessary parties,
as required by N.C. law; (7) you failed to exercise the proper
legal standards when considering a motion to dismiss. The
movant must prove that the Plaintiff's complaint is a claim for
which relief cannot be granted. My complaint was an
Independent Action for relief from a void judgment which is a
claim for which relief may be granted. Whether or not the
relief should be granted is a separate question that cannot be
resolved by a motion to dismiss; (8) you converted the
defendant's motion to dismiss into one for summary judgment
by considering matters outside the pleading and by purporting
to rule on the merits of the case, without giving me the
required notice and time to respond; (9) you illegally moved
the hearing to settle the Record on on Appeal to another
county to, for your own conveneince twice. You had no
jurisdiction to do so. Furthermore, I had no written notice of
the purported hearing , only a few days verbal notice. I was
not given the street address and the city where the purported
hearing was held; and (10) you made the purported ruling
without adequate time for consideration. You intentionally
refused to apply the law because I was appearing *pro se* and I
was suing your employer, the State of North Carolina. If you
can't put your biases aside and rule fairly, you shouldn't be a
judge. It is obvious that you do not have the qualifications

required of a judge. I hope that you don't plan to to seek re-election. Sincerely, Christopher Langdon."

Judge Baker received that letter on January 6th, 2006 and he hasn't denied my charges, because they are true (I am writing this on January 25th, 2006). My letter did not include all of Baker's violations of my Constitutional rights. Judge Baker is like the other judges I have encountered in the North Carolina Courts. He won't allow a *pro se* party (someone acting as his own attorney) to have a fair hearing. He simply used whatever illegal excuse he could drum up to get rid of me. I believe that his failure to apply the law properly was intentional. He has had 22 days to deny my allegations and he hasn't done so. He hasn't even attempted to contact me to discuss it. In North Carolina, if you can't afford an attorney for a civil case, you have no rights. The same is true in the U.S. District Court for the Western District of North Carolina (Judge Thornburgh) and the U.S. Court of Appeals for the Fourth Circuit (*See:* Page 1 at the top of the menu).

I filed my Independent Action for relief from the purported judgment in *Langdon v. NCDOT,* 98-CVS-139. I asked for a 30 day continuance in order to amend my Complaint. At the time I was suffering from a severe

case of the flu. I was severely ill for a month. Also,

members of my family were, and are, suffering from more

serious illnesses. Additionally, I was engaged in prosecuting

my Complaints, *Langdon v. Swain* and *Langdon v. Tippett,*

in the federal courts *(See: Home Page)*.

There are a large number of issues in this matter. The

fraud by the North Carolina Department of Transporation

(NCDOT) and its engineers, NCDOT attorneys Robert

Crawford, Lisa Glover, T.L. Mallonee, and North Carolina

Attorney General Roy Cooper, has made this matter

extremely complicated. Roy Cooper, Robert Crawford and

LisaGlover filed their motion to dismiss at the same time

they filed an answer, which is not proper, according to the

Federal Rules of Civil Procedure (North Carolina has modeled

its rules on the federal rules and follows the federal courts'

interpretations of those rules).

"Motion to dismiss must be filed before responsive
pleading (answer) is filed." *Aetna Life Insurance Co. v. Alla
Medical Service, Inc.,* 855 F.2d 1470, 1475 (9th Cir. 1988).

"Motion to dismiss for failue to state a claim was rendered
moot by filing of answer." *Brisk v. City of Miami Beach,
Florida,* 709 F. Supp. 1146, 1147 (S.D.Fla. 1989).

My Motion for a 30 day extension of time to amend

was filed 115 days after I filed my Independent Action for

relief from the purported judgment in *Langdon v. NCDOT.*

My motion for more time to amend was filed only 59 days

after the Defendants' Motion to Dismiss was filed.

Therefore, it was timeley filed. In *Estrada v. Jacques,* 321

SE 2d 240 (N.C.App. 1984), a party was allowed to amend

507 days after the Complaint was filed and after a summary

judgment motion was filed. In *Henry v. Deen,* 300 SE 2d

707 (N.C. App. 1983), the court held that it was error for

the trial court to deny a motion to amend, although it was

filed 158 days after the the Complaint was filed. In *Coffey v.*

*Coffey,* 381 SE 2d 467 (N.C.App. 1989), the court held

that it was error not to allow an amendment to a complaint

112 days after it was filed.

Amendments are allowed under Rule 15 of N.C. Rules

of Civ. Proc. The N.C. Courts look to the federal courts and

the New York Courts for interpretation of its rules. They

liberally allow amendments to Complaints, especially *pro se*

civil rights complaints like mine.

"..the Rules of Civil Procedure achieve their purpose of
insuring a speedy trial by providing for and encouraging
liberal amendments to pleadings under Rule 15." *Carolina
Builders v. Gelder & Associates,* 289 SE 2d 628, 629 (NC
App. 1982).

"..leave to amend shall be freeely given when justice so
requires is mandate to be heeded." *Foman v. Davis*, 83
S.CT. 227, 228 [5] (1962).

"What might be a meritorious claim on the part of a pro se

litigant unversed in the law should not be defeated without
affording the pleader a reasonable opportunity to articulate his
case... trial court erred in denying pro se plaintiff leave to
amend his complaint, notwithstanding fact that plaintiff did
not state in his motion for leave how he would cure the
deficiencies in his pleadings." *Gordon v. Leake,* 574 F. 2d
1147, 1148 (4th Cir. 1978).

Motions to dismiss are not usually granted.

"Motions to dismiss pleadings are to be granted sparingly and
with caution." *Kingwood Oil Co. v. Bell,* 204 F. 2d 8, 13 (7th
Cir. 1953).

*See also: Hartley v. Wisconsin Bell, Inc.,* 167 F.R.D.

72 (E.D.Wisc. 1996) (Defendant allowed to amend answer

21 months after the answer was filed).

*Cornwall v. U.S. Const. Mfg. Co.,* 800 F. 2d 250 (Fed. Crt.

of App. 1986) (Defendant should have been allowed to

amend on the eve of the trial); *Island Creek Coal Co. v.*

*Lake Shore, Inc.,* 832 F. 2d 274 (4th Cir.1987) (Plaintiff

should have been allowed to amend his complaint 3 and

1/2 years after it was filed); *Eades v. Thompson,* 823

F. 2d 1055 (7th Cir. 1987) (inmate should have been

allowed to amend his complaint a third time). *Brandon v.*

*Holt,* 105 S.Ct. 873 (1985) (allowed to amend

before the U.S. Supreme Court); *Satchell v. Dillworth,*

745 F. 2d 781 (2nd Cir. 1984) ( *pro se* plaintiff should be

allowed to amend complaint, even if request is made after

dismissal); *Karim-Panari v. L.A. Police Dept.,* 839 F. 2d

621 (9th Cir. 1988) ( *pro se* party should be given

statement of complaint's deficiencies before dismissal).

The federal courts usually require that a *pro se* party be

given an opportunity to amend before a dismissal, even if

they haven't asked to amend.

"The motions and recomendations apprised Grayson of his
pleadings' deficiencies, but failed to inform him 'expressly'
that he could amend his compalint to fix the problem...the
District Court erred it should have told him that he had leave
to amend his compalint to cure its deficiencies and granted
him a set period of time to do so." *Grayson v. Mayview State
Hospital,* 293 F. 3d 103, 108-109 (3rd Cir. 2002).

Unfortunately, I was not allowed to amend my

complaint, before, or after, its dismissal. I was not given

a list of its purported deficiencies before its dismissal.

Judge Baker didn't give my Complaint, and the

motions in the case, a thorough consideration before

dismissing my Complaint the same day. He had never

reviewed the case until the day of the sham "hearing."

Clearly, he had prejudged the matter and gave the State of

North Carolina what ever it wanted, even if it

was illegal or unfair, presumably because I

did not have an attorney.

In ruling on a motion to dismiss, the court is supposed

to liberally cosntrue the Plaintiff's Complaint and take its

allegations as true. *Atlantic Research Corp. v. Metzer,* 330 F. 2d 946 at 946 [1] (4th Cir. 1964); *Ware v. Fort,* 478 SE 2d 218, 220 (N.C.App. 1996); *Flood v. New Hanover County,* 125 F. 3d 249, 251 (4th Cir. 1997). Judge Baker did not take my factual allegations as true and did not liberally construe my Complaint, as required, before dismissing it. Furthermore, a motion to dismiss is not supposed to decide the merits of a case, as judge Baker purported to do. A claim that a purported judgemnt is void is a claim upon which relief can be granted, as Judge Baker is well, aware. Whether or not the relief from the purported judgment should be granted is a separate question. Therefore, I can only conclude that Judge Baker intentionally dismissed my case for fraudulent reasons, or, that he is extremely ignorant of the law can't be that ignorant of the law.

Cooper, Crawford and Glover filed a motion to dismiss and an answer at the same time. That doesn't seem proper. A motion to dismiss must be filed before an answer is filed. *See: Aetna Life Insurance Co. v. Alla Medical Service, Inc.,* 855 F. 2d 1470, 1475 (9th Cir. 1988).

Update April 23rd, 2006---- There were many improprieties in the sham hearing in this case. Even worse

violations of my rights came after the sham hearing, when
I appealed the court's purported judgment (which is void).
A hearing was set to settle the Record on Appeal. That
hearing was illegally set in a distant county, not in
Polk County, where my property is located, and where
the so-called hearing was had.

Judge Baker had purported to illegally move the
venue for the hearing to a distant county.  I
received notice of this illegal change of venue by
telephone, not in writing, as required by N.C. law.
The verbal notice was made on a Friday for the
following Monday, giving me less than the 5 days
notice required by N.C. law.  Certainly, I wasn't
given enough notice to drop everything and travel
from Florida to North Carolina.  Also,  I was only told
what county the sham hearing was in. I was not
told the name of the city, nor the address of the
building the hearing was in.

One can only come the conclusion that Judge Baker
is grossly ignorant of the law and/or that he is
grossly lacking in ethics. Judge Baker dsispenses
what is commonly referred to as "redneck justice."
That means that, regardless of the law, you're wrong.

He's not the first redneck judge to step all over the
rights of citizens who can't afford an attorney.

I did write Judge Baker about this matter on
December 31st, 2005. He didn't respond until five
weeks after receiving it, on February 10th, 2006. He
claimed he didn't remember the case. Considering how
long he took to respond, it's clear that he didn't want to
remember it.



Page 1 Name

Page 2 Name

Page 3 Name

Page 4 Name

Page 5 Name

# COMMUNIST CHINA HAS MURDERED MILLIONS--- BOYCOTT CHINA

Not all Chinese people are evil, however, the Communist Chinese government has been, and is, a murderous one. The Communist Chinese slaughtered many during the Chinese revolution. After coming to powe they murdered thousands of landowners after mock trials. Subsequently, Commmunist China invaded Tibet and murdered a milllion Tibetans.

Communist China aided the North Koreans in their invasion of South Korea. When North Korea was on the verge of defeat, China invaded Korea and attacked American troops, murdering many wounded and surrendered Americans. Those that survived were abused, tortured, and some were brainwashed. Over two million people died during the war. North Korea would have collapsed long ago without Communist China's assistance. Although a million people might have died their from starvation over the last 15 years, North Korea continues to build a nuclear weapons program, with the assistance of Communist China. North Korea continues to threaten the U.S. and Japan.

During the "Great Leap Forward" China 30-40 million Chinese starved to death. During the "Cultural Revolution" China murdered a million of their own people simply for being intellectuals. Many more were imprisoned and tortured.

Just recently, over 70 Chinese peasants were murdered for protesting poor living conditions and a Chinese general threatened America if we should defend Taiwan.

This site will be updated in the future to expose how China is undermining the U.S. through, spying, spreading nuclear weapons technolgy and donating to American political campaigns  Chris Langdon, March, 29th, 2006

Subj:    **Sign up for the MSN adCenter U.S. Pilot**
Date:    4/4/2006 2:08:38 P.M. Eastern Standard Time
From:    msnactea@email.microsoft.com
To:      qiology@aol.com



Dear Christopher,

We're excited to let you know that you have been chosen to participate in the U.S. pilot of MSN® adCenter. Getting started early on MSN adCenter will provide you with many opportunities. You'll learn how to use audience intelligence to connect with search users through advanced targeting options that will help increase your ROI.

You are also invited to join a complimentary initial campaign set-up service called MSN adCenter QuickLaunch.\* With this service, a Media Specialist will help you migrate and optimize your current P4P campaign, get you set up in the tool, and educate you on how to best manage your campaign performance in adCenter.

We encourage you to take advantage of this offering by signing up here.

If you prefer to start your campaign immediately, go to:
https://adcenter.msn.com/AuthorizeUser.aspx.

You will need to use qiology@aol.com to sign up.

As this is a pilot program we need and want your input so that we can make adCenter even better. Please feel free to provide feedback and suggestions to our adCenter Support Team through the link below.

We look forward to working with you.

Sincerely,

The MSN adCenter Team

To learn more about QuickLaunch, go to the QuickLaunch program page.

Share the benefits of adCenter - refer your friends and colleagues to the pilot today.

Please contact the adCenter Support Team if you encounter any trouble signing up or would like to provide feedback.

\*For a limited time, this service is offered free of charge.

This invitation is nontransferable and there is only one sign-up per invitation. In addition, there will be a 5¢ minimum CPC on keywords and a one-time $5 administrative sign up fee. During the U.S. pilot, MSN adCenter will be delivering text-based advertisements on up to 25 percent of MSN Search traffic.

View the system requirements for adCenter.

© 2006 Microsoft Corporation. All rights reserved. Microsoft and MSN are registered trademarks of Microsoft Corporation in the United States and/or other countries.

# Pilot Signup

Thanks for your interest in the US Pilot of MSN adCenter!

Please complete the form below to apply to participate or if you would like to stay informed about the program. We are collecting the information to help us with the selection process. You will be invited via email if you are selected to participate.

Find out more about the US adCenter pilot

adCenter Pilot Signup Form
* = Required

System Information

**Which Web browser do you use? ***
| Microsoft Internet Explorer ▼ |

Contact Information

**First Name ***
Chris

**Last Name ***
Langdon

**Your Job Title ***
| Small Business Owner ▼ |

**Phone ***
407-647-7539

**E-mail ***
qiology@aol.com

**Company Name ***
Self-employed

**Street Address**
1835 Edwin Blvd.

**City**
Winter Park

**State**
Florida

**Postal Code**
32789

**Country ***
| United States ▼ |

Company Information

**URL ***
www.chinaisevil.com

**Company Type ***
| Advertiser ▼ |

**Which category best describes the Web content you want your keywords to drive to? ***
| News ▼ |

**What other countries/regions would you be interested in targeting with paid search advertising? ***

| ☐ Australia | ☐ France | ☐ Latin America | ☐ South Africa |
|---|---|---|---|
| ☐ Austria | ☐ Germany | ☐ Malaysia | ☐ Spain |
| ☐ Belgium | ☐ Hong Kong SAR | ☐ Mexico | ☐ Sweden |
| ☐ Brazil | ☐ India | ☐ Netherlands | ☐ Switzerland |
| ☑ Canada | ☐ Indonesia | ☐ New Zealand | ☐ Taiwan |
| ☐ China | ☐ Ireland | ☐ Norway | ☐ Thailand |

☐ Denmark              ☐ Italy              ☐ Phillippines              ☐ Turkey

☐ Finland              ☐ Japan              ☐ Singapore              ☐ United Kingdom

**Is your target audience limited to a specific region within your country?**

No

**How much is your total search budget per month (USD)?**

$0 - $499     ▼

**How many keywords do you currently manage? ***

0 - 99     ▼

**How many years of P4P advertising experience do you have? ***

Less than one year     ▼

**Where are you currently buying search advertising?**

☐ Google

☐ Overture (Yahoo)

☐ FindWhat

☐ Kanoodle

☐ Other

☑ I am not currently buying search advertising.

**Are you currently buying search advertising on a local commerce site (Yellow Book, Citysearch.com, local newspaper)? If so, please specify**

Additional Information

**How did you hear about MSN adCenter?**

MSN Advertising Web site     ▼

**Are you interested in applying to participate in the U.S. Pilot of MSN adCenter?**

Yes     ▼

**If a source code was included on the communication you saw, please input it here**

msnactea@email.micrisoft.com

**Comments**

☐ I would like to receive updates on MSN adCenter information

Submit

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
Case No._____ 6 - 3 1 -

CHRISTOPHER LANGDON,
    Plaintiff,

        versus

GOOGLE, INC, d.b.a. DELAWARE GOOGLE, INC., YAHOO!,INC.,
TIME WARNER, INC., AND MICROSOFT CORPORATION,
    Defendants.

PLAINTIFF'S APPENDIX IV

March14th, 2006
1835 Edwin Blvd.
Winter Park, Fl. 32789
407-647-7539
Qiology@aol.com

President
Yahoo!Inc.
701 First Ave.
Sunnyvale, Cal. 94089

Dear Sir,

I wanted to place a click ad on Yahoo!, which I am not allowed to do, for suspect reasons. I was told that if Yahoo! wasn't hosting my website, I couldn't advertise my non-profit website on Yahoo!, according to someone named Terrence (reference # 3262486). Is this true?

I must say that your website is very confusing and offers little help to someone in my position. I rummaged through your website, to no avail, and made numerous telephone calls before I was told I couldn't place an ad.

Sincerely,

Christopher Langdon

**SENDER: *COMPLETE THIS SECTION***

■ Complete items 1, 2, and 3. Also complete
  item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

1. Article Addressed to:

Josephat
Mashorone
701 First Ave.
Sunnyvale, Cal.
94089

***COMPLETE THIS SECTION ON DELIVERY***

A. Signature
☐ Agent
☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☑ Certified Mail      ☐ Express Mail
   ☐ Registered          ☐ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)      ☐ Yes

2. Article Number
   (Transfer from service label)
   7005 1160 0003 3233 2222

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540

Subj:    **Sign up for the MSN adCenter U.S. Pilot**
Date:    4/4/2006 2:08:38 P.M. Eastern Standard Time
From:    msnactea@email.microsoft.com
To:      qiology@aol.com

 adCenter

Dear Christopher,

We're excited to let you know that you have been chosen to participate in the U.S. pilot of MSN® adCenter. Getting started early on MSN adCenter will provide you with many opportunities. You'll learn how to use audience intelligence to connect with search users through advanced targeting options that will help increase your ROI.

You are also invited to join a complimentary initial campaign set-up service called MSN adCenter QuickLaunch.* With this service, a Media Specialist will help you migrate and optimize your current P4P campaign, get you set up in the tool, and educate you on how to best manage your campaign performance in adCenter.

We encourage you to take advantage of this offering by signing up here.

If you prefer to start your campaign immediately, go to:
**https://adcenter.msn.com/AuthorizeUser.aspx.**

You will need to use qiology@aol.com to sign up.

As this is a pilot program we need and want your input so that we can make adCenter even better. Please feel free to provide feedback and suggestions to our adCenter Support Team through the link below.

We look forward to working with you.

Sincerely,

The MSN adCenter Team

To learn more about QuickLaunch, go to the QuickLaunch program page.

Share the benefits of adCenter - refer your friends and colleagues to the pilot today.

Please contact the adCenter Support Team if you encounter any trouble signing up, or would like to provide feedback.

*For a limited time, this service is offered free of charge.

This invitation is nontransferable and there is only one sign-up per invitation. In addition, there will be a 5¢ minimum CPC on keywords and a one-time $5 administrative sign up fee. During the U.S. pilot, MSN adCenter will be delivering text-based advertisements on up to 25 percent of MSN Search traffic.

View the system requirements for adCenter.

© 2006 Microsoft Corporation. All rights reserved. Microsoft and MSN are registered trademarks of Microsoft Corporation in the United States and/or other countries.

Wednesday, April 05, 2006 America Online: Qiology

## Pilot Signup

**Thanks for your interest in the US Pilot of MSN adCenter!**

Please complete the form below to apply to participate or if you would like to stay informed about the program. We are collecting the information to help us with the selection process. You will be invited via email if you are selected to participate.

Find out more about the US adCenter pilot

**adCenter Pilot Signup Form**
* = Required

**System Information**

**Which Web browser do you use? ***
| Microsoft Internet Explorer ▾ |

**Contact Information**

**First Name ***
| Chris |

**Last Name ***
| Langdon |

**Your Job Title ***
| Small Business Owner ▾ |

**Phone ***
| 407-647-7539 |

**E-mail ***
| qiology@aol.com |

**Company Name ***
| Self-employed |

**Street Address**
| 1835 Edwin Blvd. |
| |
| |

**City**
| Winter Park |

**State**
| Florida |

**Postal Code**
| 32789 |

**Country ***
| United States ▾ |

**Company Information**

**URL ***
| www.chinaisevil.com |

**Company Type ***
| Advertiser ▾ |

**Which category best describes the Web content you want your keywords to drive to? ***
| News ▾ |

**What other countries/regions would you be interested in targeting with paid search advertising? ***

| | | | |
|---|---|---|---|
| ☐ Australia | ☐ France | ☐ Latin America | ☐ South Africa |
| ☐ Austria | ☐ Germany | ☐ Malaysia | ☐ Spain |
| ☐ Belgium | ☐ Hong Kong SAR | ☐ Mexico | ☐ Sweden |
| ☐ Brazil | ☐ India | ☐ Netherlands | ☐ Switzerland |
| ☑ Canada | ☐ Indonesia | ☐ New Zealand | ☐ Taiwan |
| ☐ China | ☐ Ireland | ☐ Norway | ☐ Thailand |

☐ Denmark              ☐ Italy              ☐ Phillipines              ☐ Turkey

☐ Finland              ☐ Japan              ☐ Singapore              ☐ United Kingdom

**Is your target audience limited to a specific region within your country?**

No

**How much is your total search budget per month (USD)?**

$0 - $499       ▼

**How many years of P4P advertising experience do you have? ***

Less than one year   ▼

**How many keywords do you currently manage? ***

0 - 99     ▼

**Where are you currently buying search advertising?**

☐ Google

☐ Overture (Yahoo)

☐ FindWhat

☐ Kanoodle

☐ Other

☑ I am not currently buying search advertising.

**Are you currently buying search advertising on a local commerce site (Yellow Book, Citysearch.com, local newspaper)? If so, please specify**

**Additional Information**

**How did you hear about MSN adCenter?**

MSN Advertising Web site   ▼

**Are you interested in applying to participate in the U.S. Pilot of MSN adCenter?**

Yes                                   ▼

**If a source code was included on the communication you saw, please input it here**

msnactea@email.micrisoft.com

**Comments**

☐ I would like to receive updates on MSN adCenter information

Submit