UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
Case No.___ 0 6 - 3 1 9 -

CHRISTOPHER LANGDON,
  Plaintiff,

    versus

GOOGLE, INC, d.b.a. DELAWARE GOOGLE, INC., YAHOO!,INC.,
TIME WARNER, INC., AND MICROSOFT CORPORATION,
  Defendants.


<u>PLAINTIFF'S APPENDIX III</u>



**Chris Langdon 1835 Edwin Blvd.,
Winter Park Fl, 32789-407-647-7539**

Home
Fraud NC Courts
Judge Baker
Sham Courts
More Fraud

# FRAUD BY ROY COOPER &THE N.C DEPARTMENT OF JUSTICE BEFORE THE U.S SUPREME COURT and other courts

By Chris Langdon- qiology@aol.com- *Preface-*

N.C. Attorney General Roy Cooper, and attorneys serving under him at the N.C. Department of Justice, used fraud to prevent me from obtaining compensation for: the taking [destruction] of my property in Polk County, North Carolina; the denial of my right of meaningful access to the N.C. courts; and other claims. Governor Michael Easley is aware of the fraud by Roy Cooper and N.C. Department of Justice attorneys Robert Crawford, T.L. Mallonee and Lisa Glover, Easley refuses to do anything about it. Roy Cooper, Crawford, and Glover perpetrated fraud in their *Brief in Opposition,* submitted to the U.S. Supreme Court. However, the U.S. SupremeCourt only hears a small percentage of cases submitted to it, and my cases were not among them. Background information on

the destruction of my property and fraud by the NCDOT

and fraud by NCDOT attorney Mallonee will be posted

on page two of the menu on this website.

I. Some of the fraud by Roy Cooper, Crawford and

Glover in their *Brief in Opposition* (case: 02-12,U.S.

Supreme Court, a consolidation of *Langdon v. Tippett*

and *Langdon v. Swain*) is delineated below.

"Plaintiff's Complaints were properly dismissed as
frivolous on the grounds of res judicata and/or failure to state a
claim and qualified immunity." *Brief in Opposition* (02-12),
p.14 (Statement #1)

That statement contains several lies. Neither

Complaint was dismissed because of a purported defense

of "qualified immunity." Qualified immunity was never

raised by the by the defendants in the lower courts, nor

was it raised by the lower courts themselves.

Statement #1 (which also appears on page iv of said

brief) fraudulently alleged that my Complaints [lawsuits]

were properly dismissed because of *res judicata*. Similar

fraudulent statements were made in the same brief.

"Plaintiff's claims against the individual employees
[ *Langdon v. Swain* ] was also barred by res judicata." *Brief in
Opposition* (02-12), pp. 8-9 (Statement #2).

"The District Court held that the claims presented in the
instant Complaints ( *Langdon v. Tippett* and *Langdon v.
Swain* ) could have been brought in the earlier action and were
thus barred by the doctrine of res judicata." *Brief in*

*Opposition* (02-12), p. 18 (Statement #3)

" However, Plaintiff's Complaint and attachments filed in
*Langdon v. Swain* showed on their face that res judicata was
applicable." *Brief in Opposition* (02-12), p. 17 (Statement #4)

After lying to the U.S. Supreme Court at least five

times on the purported issue of res judicata, the attorneys

reversed themselves in the very same brief:

"Thus, it may have not been appropriate for the lower
courts to dismiss Plaintiff's Complaint in *Langdon v. Swain* on
the grounds of res judicata." *Brief in Opposition* (02-12), p. 20
(Statement #5)

Roy Cooper, Crawford and Glover also fraudulently

concealed from the U.S. Supreme Court the fact that they

had stated before the U.S. Court of Appeals, Fourth

Circuit, that *res judicata* did apply to *Langdon v. Swain*.

Of course, they have never taken any action to correct the

damage done by their fraud before the courts.

In Statement #1, *supra*, Cooper, Crawford and Glover

fraudulently alleged that my Complaints (plural) were

properly dismissed because of an alleged failure to state

a claim. The truth is, *Langdon v. Tippet* was not

dismissed by the district court for an alleged failure to state

a claim, nor did the U.S. Court of Appeals hold that

*Langdon v. Tippett* failed to state a claim. Likewise, the

district court did not dismiss *Langdon v. Swain* for an

alleged failure to state a claim. The U.S. Court of Appeals

did allege that *Langdon v. Swain* failed to state a claim,

*sua sponte,* without notice and opportunity to be heard.

However, the attorneys contradicted their Statement #1,

by admitting in the same brief, that the Fourth Circuit was

in error when it held that *Langdon v. Swain* failed to state

a claim.

"The Fourth Circuit noted..that *Langdon v. Swain* ..was
subject to dismissal for failure to state a claim upon which
relief can be granted 'because takings actions sound aginst
governmental entities rather than individual state employees in
their individual capacities.' ..However, it appears the court
may have overlooked Plaintiff's assertions that his claim as
based on 42 U.S.C.1983, under which it is possible to sue a
state official in his individual capacity." *Brief in Opp.,* p. 8
(Statement # 6).

Clearly, Roy Cooper, Crawford and Glover perpetrated

fraud when they stated that the reasons given by the lower

courts for the dismissal of *Langdon v. Swain* as frivolous

and malicious, were proper. Despite their admissions in

Statements #5 & #6 to the contrary, Cooper, Crawford

and Glover repeatedly and fraudulently argued in their

*Brief in Opposition* that the dismissal of *Langdon v.*

*Swain,* as frivolous and malicious, for the reasons given

by the lower courts, was proper. In addition to their State-

ments quoted above, they also made the following false

statements, which also contradict Statements #5 & #6.

" .. Plaintiff's Complaints were properly dismissed as frivolous and malicious." *Brief in Oppos.* (02-12), p.iii. (Statement 7)

"...federal courts have the inherent power...to dismiss Complaints as frivolous or malicious." *id* at p. 7 (Statement #8)

"....the federal courts have the inherent power to dismiss a case as frivolous and malicious." *id.* (Statement #9)

" Both the District and Circuit Court herein found Plaintiff's Complaints to be frivolous and malicious, and dismissed the Complaints on those grounds." *id.* (Statement #10)

"..inherent powers to dismiss his Complaints as frivolous." *id.* (Statement #11)

"..his frivolous lawsuits." *id.* (Statement #12).

"...A *sua sponte* dismissal, without a formal hearing, is appropriate when the court finds the Complaint to be frivolous." *id.*, p. 15 (Statement #13).

"Thus, the decision of the lower courts to dismiss Plaintiff's Complaints as frivolous should be upheld." *id., p. 21* (Statement #14).

"Plaintiff..has made no showing..which would justify review by this Court of claims found to be frivolous by both a District Court and the Fourth Circuit Court of Appeals." *id., p. 25* (Statement #15).

"Even if Plaintiff may have stated a claim upon which relief could be granted, the Fourth Circuit and District Court both held that Plaintiff's claim against the individual employees was also barred by res judicata and was a frivolous claim subject to *sua sponte* dismissal." *id., p. 9* (Statement # 16).

All tolled, there are at least fifteen statements in their

*Brief in Opposition* that fraudulently argue that the reasons

given for the dismissal of my Complaints were proper, although they directly contradict Statements #5 & #6.

Statement #16 intentionally gives the false impression that the lower courts dismissed *Langdon v. Swain* because of *res judicata* <u>and</u> because it was (allegedly) frivolous and malicious. That statement attempts to deceive the Court into believing that *res judicata* and frivolousness were two separate and distinct issues. In reality, the district court eroneously held that my Complaints were frivolous and/or malicious *because of res judicata*. The 4th Circuit erroneously upheld.

The numerous statements by the N.C. attorneys that allege that my Complaints are frivolous and/or malicious (Statements 7-16) fraudulently concealed from the U.S. Supreme Court critical facts. The alleged defenses were never raised in the district court. The Defendants in *Langdon v. Tippett* filed an answer, but they never alleged that my claims were malicious or frivolous. In fact, they never denied any of my claims, except for one, therefore, the un-denied claims should have been taken as admitted.

The Defendants in *Langdon v. Swain* were in default, never filed an answer, and never took the proper steps to remove the default. On appeal, they fraudulently alleged,

without any supporting case law, that they could borrow
the answer made in *Langdon v. Tippett.* Legally, they
couldn't. The Complaints contained different claims against
different parties, not in privity with each other. *Langdon v.
Swain* sought prospective and injunctive and declaratory
relief only, no damages. It challenged the constitutionality
of several N.C. laws, customs, *etc. Langdon v. Swain*
contains claims aganst three state employees, sued in their
individual capacities, for damages.

Even *if* the Defendants in *Langdon v. Swain* could
borrow the answer filed on behalf of the Defendants in
*Langdon v. Tippett,* that answer did not allege that my
Complaints were malicious or frivolous. The N.C. attorneys
concealed the fact that the Defendants had waived any
defense of frivolousness and/or maliciousness.

There was a great deal of fraud perpetrated by the
attorneys regarding the default of the Defendants in
*Langdon v. Swain,* which will be discussed in another
Section, when time permits.

II. The district court erroneously held that it had the
power to dismiss my Complaints, without notice and an
opportunity to be heard, under 28 U.S.C. 1915, the
*In-Forma Pauperis Statute,* and under *Arizona v. Cali-*

*fornia,* 120 S.Ct. 2304 (2000). I was not given any opportunity to challenge the dismissals in the district court.

   Before the Fourth Circuit, Cooper, Crawford and Glover fraudulently alleged that the district court had the authority to dismiss my Complaints via the *In Forma Pauperis Statute* (28 U.S.C. 1915) although my Complaints were not filed *In Forma Pauperis,* and I have never been a prisoner. No other court has ever dismissed a non-prisoner, *non-informa pauperis,* complaint via 28 U.S.C. 1915. They failed to cite any case law that supported their postion. They also failed to cite the contrary, controlling case law that holds that the legislative intent of 28 U.S.C. 1915, the *In-Forma Pauperis Statute*, as amended by the *Prison Litigation Reform Act,* is to reduce the number of frivolous, *in forma pauperis* lawsuits by prisoners. *See: Roller v. Gunn,* 107 F. 3d 227, 228, 233-34 (4th Cir. 1997); *Crawford-El v. Britton,* 525 U.S. 574, 118 S.Ct. at 1596 (1998). Their failure to cite the contrary, controlling case law is a violation of the *Model Rules of Professional Conduct* and is fraud on a court.

   In the U.S.Supreme Court, Cooper, Crawford and Glover reversed themselves and admitted that the dismissals were:

   "..with a (perhaps erroneous) citation to 28 U.S.C. 1915.

However, Plaintiff fails to show any abuse of discretion in the courts' exercise of their inherent powers to dismiss his Complaints.." *Brief in Opposition* (02-12), p. 7 (Statement # 17)

That statement fraudulently concealed from the U.S.

Supreme Court the fact that they had argued the opposite

before the Fourth Circuit, where they falsely argued that

the district court did have the authority to dismiss my

Complaints via 28 U.S.C. 1915.

In Statement #17 Roy Cooper, Crawford and Glover

fraudulently stated that the courts had exercised their

"inherent powers" to dismiss my Complaints. That is false.

Neither the district court, nor the Fourth Circuit, exercised

their inherent powers in dismissing my Complaints.

Also, Cooper, Crawford and Glover failed to cite the

controlling case law which states that if the lower courts

did not exercise their inherent power, the issue is not

properly before the U.S. Supreme Court.

"Respondents' contention that the federal courts posses inherent authority..will not be considered by this Court, since the lower courts did not invoke such authority in reaching their decisions." *Mallard v. U.S. District Court,* 490 U.S. 296, 297 [3] (1989)

I know the three miscreants, Roy Cooper, Crawford &

Glover, are aware of *Mallard* because they cited it on page

7 of their *Brief in Opposition.* They also fraudulently

argued before the 4th Circuit that the district court had the authority to dismiss my Complaints under the authority of *Arizona v. California. Arizona* holds that a federal court may dismiss a Complaint on its own motion, because of *res judicata,* if it has previoulsy decided the same claim between the same parties, and it has the record of the case. However, I had never filed any previous claims against the defendants in *Langdon v. Swain,* or, *Langdon v. Tippett,* in any federal court. The district court dismissed my Complaints, purportedly, because of a prior state court decision. The district court (Judge Thornburgh) did not have a copy of the record of the prior state case, nor any documents at all from the case.

Before the U.S. Supreme Court, the miscreants abandoned any argument that the courts had authority to dismiss my Complaints via *Arizona* and admitted that the courts lacked authority under 28 U.S.C. 1915. When a court acts, it must act under a valid authority, or, its judgments are void. The district court purported to act under 28 U.S.C. 1915 and A*rizona,* when it dismissed my Complaints, without notice and an opportunity to be heard, the essence of due process of law. The 4th Circuit upheld, citing only 28 U.S.C. 1915.

Therefore, Cooper and his associates admitted that the
lower courts lacked authority to dismiss my Complaints
under the only authorities they cited. To make the void
judgments appear valid, Cooper, and the other miscreants,
concocted the lie that the lower courts acted under their
inherent authority (Statement # 17).

III. You might be wondering how it is possible to lie
to the U.S. Supreme Court and get away with it. I filed a
*Petition for a Writ of Certiorari* asking the Court to review
the lower courts' decisions. The N.C. attorneys responded
in their *Brief in Opposition.* However, Petitioners are not
given a specific amount of time to respond to the
*Brief in Opposition.* The Court can move ahead and
decide whether or not to hear the case at any time after
it receives the *Brief in Opposition.* I did not have adequate
time to document the massive fraud on the Supreme Court
by the N.C. attorneys, the pertinent law, and timely file
a response. Because of the large volume of Petitions, most
of the Justices do not have the time to read the Petitions.

The W.D.N.C. has illegally blocked me from seeking
relief from the alleged judgments that were procured
through fraud. The W.D.N.C. has also barred me from
appealing any of its decisions that bar me from seeking

relief from the fraudulently obtained judgments.

If time allows, these issues will be discussed in more detail later. The bias of the U.S. Court of Appeals, for the Fourth Circuit, against *pro se* parties (those without attorneys) will also be discussed herein, at a future time.

IV.  Although the attorneys admitted in their *Brief in Opposition* that *res judicata* should not have barred *Langdon v. Swain*, they continued to fraudulently argue in said brief that *res judicata* barred my claims in *Langdon v. Tippett.* That fraud will be discussed later.

V.  The miscreants attached a purported release agreement to their *Brief in Opposition.* However, they did not argue in said brief that my claims were barred by the alleged release.  I demonstrated in my pleadings in the lower courts that the alleged release was procured through fraud. It was not pled as a defense by the defendants in the lower courts, and if they had, the defense would have been waived when they admitted that *res judicata* did not apply to *Langdon v. Swain.*  Even if the purported release had been valid, properly pled, and not waived, it still wouldn't have barred my claims.  The alleged release refers to the damage from a landslide (singular) occurring in June, 1995.  *Langdon v. Swain* contains claims for

damages from a series of landslides that began on, or
about, July 1st, 1995, rendering my property useless by
September, 1997. I believe that the N.C. attorneys
mis-represented the number of slides, when they occurred,
and the amount of damage they caused, in order to make
it apear that the alleged release barred my claims. Their
fraud regarding those material facts is discussed in detail
in the next Section.

The fraud involved in the purported release will be
discussd in more detail in a future Section.

VI. N.C. attorneys Crawford, Glover and Mallonee
made numerous false statements denying NCDOT
responsibility for the destruction and the taking of my
property in N.C. They also repeatedly misrepresented
material facts. Their tangled webs of deceit are so
convoluted that it is difficult to untangle them. In the
federal courts, Roy Cooper, Crawford and Glover
fraudulently stated that the damage to my property was:

"..one event: a 'minor landslide' on or about June 1995."
*Appellee's Brief* (04-1649), p. 3, lines 4-6 (Statement 18).

Statement #18 directly contradicts statements by
several NCDOT engineers and N.C. attorney
T.L. Mallonee, who has and/or is serving under Roy

Cooper, in the N.C. Dept. of "Justice." Statement #18

is directly contradicted by the following:

"The Complaint itself states that ..the aforementioned actions and inactions caused a series of landslides, beginning around July 1st, 1995, which rendered the property useless." T.L. Mallonee, Transcript, *Langdon v. NCDOT* (98-cvs-139), p. 3, March 15th, 1999 (Statement #19)

"..the landslides in question." *id* at p. 5, line 5 (Statement #20)

"Now he indicates that there was a series of landslides that culminated in his property being rendered useless." *id* at p. 5, lines 15-17 (Statement #21).

"...regardless of how small the very first slide may have been, significant slope failure had occurred by mid-July, 1995." T.L. Mallonee, *Defendant-Appellee's Brief*, p. 16, *Langdon v. NCDOT* (Statement #22)

"..significant slope failure, or sliding, had occurred on the Plaintiff's property." *Affidavit*, NCDOT engineer J.J. Swain (2-20-99) (Statement #23).

"The earth mass on Mr. Langdon's property has shown signs of movement over the last year or so." Report of NCDOT engineer F.D. Martin (3-29-96) (Statement # 24).

An engineer that I hired also agreed that the damage to

my property was significant and occurred over along period

of time.

"The amount of property adversely affected by the slope failure was considerably greater in January 1999 than when first observed in August, 1995." Report of William Matthews, engineer (1-08-02) (Statement #25).

Clearly, the damage to my property was significant and

occured over a long period of time. The damage was not

the result of single, minor landslide occurring in June, 1995,

as fraudulently alleged by Roy Cooper, Crawford and

Glover in Statement #18, *supra.*

Cooper, Crawford and Glover denied any NCDOT

responsibility for the taking (or the destruction) of my

property before the Fourth Circuit and the U.S. Supreme

Court.

""NCDOT and its employees consistently denied any responsibility for the landslide or landslides.." *Appellee's Brief* (01-1975, 4th Cir.), *Langdon v. Swain,* pp. 7-8 (Statement #26 )

When I first approached the NCDOT about this

situation, the NCDOT engineers fraudulently denied any

NCDOT responsibilty. When I filed a Complaint for the

taking of my property against the NCDOT (*Langdon v.

NCDOT*) in the state courts, NCDOT attorney  Mallonee

made several false statements denying NCDOT

responsibility. He flip-flopped between denying that a

taking had occurred and alleging that it was barred by a

statute of limitations.

"The Defendant-Appellee [the NCDOT] therefore submits that ..it came forward...establishing that the Plaintiff-Appellant's action accrued in July 1995." T.L. Mallonee, *Defendant-Appellees' Brief, Langdon v. NCDOT,* p. 16 (1-03-00) (Statement #27)

In layman's terms, Mallonee was asserting that the

taking of my property occurred in July, 1995. I agree that there was a taking [destruction] of my property, but at a later date. If the taking of my property did occur, as alleged by NCDOT attorney Mallonee, why did Roy Cooper, Crawford and Glover deny that a taking had occurred? Why did the NCDOT and its engineers deny in July, 1995, and afterwards that there was a taking?

A cause of action accrues when one has the right to sue. Mallonee alleged that my right to sue for a taking of my property accrued in July 1995. Roy Cooper, Crawford and Glover deny that I had the right to sue, and deny that there was a taking.

N.C. Department of Justice attorney Mallonee succeeded in the state courts by alleging that: the damage to my property was significant; my property was rendered useless; the damage was the result of a series of slides; and that my cause of action for a taking of my property without just compensation accrued in mid-July, 1995.

Cooper, Crawford and Glover succeeded in the federal courts by alleging that: the damage to my property was minor; the damage resulted from a single slide; and that my cause of action for a taking never accrued.

Therefore, the N.C. Department of Justice has taken exactly opposite positions, as to material facts, in different court proceedings. They have a habit of saying whatever is to their advantage at the time, regardless of how false it may be.

I have given Cooper, Crawford, Glover, and Mallonee numerous opportunities to correct their fraud, but they have refused to do so. The courts, state and federal, have simply ignored their fraud. Apparently, if you go into court without an attorney, you have no rights.

There are many more instances of fraud by the N.C. attorneys Cooper, Mallonee, Crawford and Glover, which will be included in future pages on this web site.

Chris Langdon, 1835 Edwin Blvd., Winter Park Fl. 32789 www.qiology@aol.com

Update-December 14th, 2005

Roy Cooper, Crawford and Glover perpetrated fraud on the U.S. Supreme Court and the lower courts regarding the default of the Defendants in *Langdon v. Swain, Martin & Murdock,* the three NCDOT engineers who were responsible for the taking of my property, committed fraud, blocked my right of meaningful access to the courts, and destroyed my business. The attorneys fraudulently stated:

"Plaintiff cannot show that Defendant had 'failed to plead or otherwise defend,' before his motions for default entry were filed. Fed. R. Civ. P. 55(a). default entry was thus not appropariate and the district court did not abuse its discretion by denying Plaintiff's motion." *Brief in Opposition* (02-12), pages 10-11 (Statement #28).

There is a great deal of fraud in that statement. The

defendants failed to file a timely answer, therefore, they

were in default.

# 000507

"Rule 55. Default (a) Entry. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default."

The entry of a default is mandatory, not discretionary,

as they fraudulently alleged. "Shall" in statutes is mandatory,

"may" is permissive.

"..the defendants are in a position of having failed to plead or otherwise to defend within twenty days..They are therefore in default..there has been no entry of default...But that entry is a purely formal matter." *Orange County Theater Corp. v. Rayhertz Amusement Corp.*, 130 F. 2d 185, 187[2] (3rd Cir. 1942)

" A party's default is not excused simply becuase it is not recorded in the docket." *Moore's Federal Practice*, 3d Ed., Section 55.11 [5] (2000).

The defendants filed a Rule 6 (b) motion for more time

that was mailed one day after the time for Murdock to

answer had expired. What the N.C. attorneys

fraudulently concealed from the Court was the fact

that their first motion contained factual errors and was

denied. Even *if* the first motion could have removed

the default, it was mailed one day after the time for

Murdock to answer had expired.

They filed subsequent Rule 6(b) motions for more

time to answer, one for Murdock and another for Swain

and Martin. Those motions could not have prevented

the default, as fraudulently alleged by the N.C.

attorneys, because they were mailed after the time to

answer had expired and they did not meet any of the

other requirements to prevent a default.

"Under no theory can a motion under Rule 30(b) extend a
defendant's time to answer. Rule 12(a) extends the time to
serve a responsive pleading only when a motion is made that
is permitted under Rule 12." *Atlantic Steamers Supply Co. v.
International Maritime Supply Co.,* 268 F. Supp. 2d 1009,
1011 (SDNY 1967)

*See also: Educational Services v. Maryland State*

*Board of Education,* 710 F. 2d 170, 176-177

(4th Cir. 1983), *citing Atlantic Steamers Supply,*

*supra.* A Rule 6(b) motion is not one of the motions

under Rule 12 that can prevent a default. Under some

circumstances a Rule 6(b) motion may be construed as

a motion to set aside a default. However, it must meet

all of the requirements of said motion.

   "In order to vacate entry of default, the moving party must show: good cause for default; quick action to correct it; and a meritorious defense." *Pretzel & Stouffer v. Imperial Adjusters,* 28 F. 3d 42, 43[2] (7th Cir. 1994)

   "Trial court properly required defendant.. to state underlying facts to support claim of meritorious defense." *Consolidated Masonry & Fireproof, Inc. v. Wagman Const. Co.,* 383 F. 2d 249 (4th Cir. 1967).

   The attorneys did not file an affidavit, as required,

nor an answer.

   "The defendant filed a written motion to set aside default and..the affidavit of general counsel. However, no answer was tendered for filing." *id.,* at 251.

   Affidavits are required. *Thompson v. Wooster,*

114 U.S. 104, 5 S.Ct. 788 (1885); *Park Corp. v.*

*Lexington Insur. Co., supra; Atlantic Steamers*

*Supply, supra.* The defendants did not utilize quick

action. Quick action means the filing of an answer, or

a motion to set aside a default, supported by affidavits,

alleging a meritorious defense, and providing a rational,

acceptable reason for the default. Crawford, Cooper,

and Glover failed to explain why there was a

miscalculation of the response date, who made it,

and who handled the Complaint, as required, before

a default may be set aside. *See: Park Corp. supra;*

*Heyman v. M.L. Market Co.,* 116 F. 3d 91 (4th Cir.

1997); *Robinson v. Bantam Books, Inc.* 49 F.R.D. 139

(SDNY 1970).

In Statement #28, *supra,* the N.C. attorneys

fraudulently alleged that I could not show that they had

failed to "plead or otherwise defend." Rule 55 states:

"plead or otherwise defend as provided by these rules."

That refers to an answer, or one of the motions allowed

under Rule 12 of the Fed. Rules of Civ. P.

> "The words 'otherwise defend' refer to the interposition of
> various challenges to such matters as service, venue and the
> sufficiency of the prior pleading, any of which might prevent a
> default if pursued in the absence of a responsive pleading."
> *Federal Practice & Procedure,* Vol. 10A, Section 2682, p. 15-
> 16, Wright , Miller & Kane (1998).

The N.C. attorneys met none of the criteria to

prevent, or, to set aside the default. They perpetrated

fraud on the courts by mis-representing the law regarding

defaults and by failing to cite the contrary case law.

> "..an advocate has a duty to disclose directly adverse
> authority in the controlling jurisdiction." *Model Rules of
> Professional Conduct,* Rule 4.

The N.C. attoneys fraudulently attempted to blame

the defaults on Murdock. They alleged that:

> "Mr. Murdock mistakenly disposed of Plaintiff's
> Complaint when first received by him, as he beleived it was
> related to an earlier case filed by Plaintiff in state court."
> Statement #29.

Murdock did not mistakenly throw out the summons

and Complaint. He deliberately threw them out, although
he knew that they were legal documents. Murdock did not
want to respond. Furthermore, the N.C. attorneys had a
copy of the Complaint ten days before the time to answer.
Therefore, they knew that Murdock was a defendant.
Statement #29 does not explain the failure of any of the
defendants to plead or otherwise defend. Magistrate
Judge Cogburn was derelict in his duties by not entering
the default. The Fourth Circuit was derelict in its duty
in upholding Cogburn. They accepted the fraudulent
position of the N.C. attorneys without question.

What is bizarre about all of this is that the N.C.
courts did not consider my federal claims under
42 U.S.C. 1983. If they had, my claims could not have
been barred by any limitations, even if they took the
fraudulent date alleged by Mallonee for the taking,
mid-July 1995. My state Complaint was filed in June
1998, less than three years later. The statute of
limitations for suits under 42 U.S.C. 1983 is three years.
In their pleadings in the federal courts, the N.C.
attorneys never denied this allegation, nor did they deny
that: I did not have a full and fair opportunity to litigate
my claims in the prior state case; and that the purported

judgment in the state case is void.

I have given the crooked lawyers, Cooper, Crawford and Glover ten weeks to deny the charges herein and they have failed to do so. They have never asked for a retraction of the allegations. What kind of "legal system" do we have in this country? - 1/08/05.

What's bizarre about all of this is that Cooper has spent more of the tax payer's money depriving me of my rights than it would have cost to fix the problem, which is still a threat to motorists and will have to be fixed someday anyway. 1/12/05



# FRAUD BY THE N.C. DEPARTMENT OF JUSTICE

Home
Fraud NC Courts
Judge Baker
Sham Courts
More Fraud

# How the NCDOT destroyed my property, covered it up, and got away with it (so far).

The North Carolina Department of Transportation (NCDOT) is responsible for the destruction of the value of my 6.83 acres of land in PolkCounty, North Carolina, near the Town of Tryon. The property has spectacular mountain views but has been rendered useless because NCDOT engineers J.J. Swain, Jack Murdock, Dave Henderson and F.D. Martin failed to perform their fiduciary duties to properly maintain the NCDOT's right of way [NCSR 1116, a.k.a. "Hogback Mtn. Rd."] that traverses my property. I was unable to obtain just compensation for the taking [destruction] of my property because of fraud and deceit by NCDOT engineers Swain, Henderson, Murdock and Martin. Swain, Murdock and other NCDOT engineers also libeled and/or slandered me and destroyed my business in the process. Swain also illegally denied me access to pertinent NCDOT construction records, contrary to the N.C. Public Records law.

NCDOT attorney T.L. Mallonee, a.k.a. T. "Liar"
Mallonee, used fraud, and fraud on the courts, to prevent
me from obtaining just compensation for my property. A
review of the pertinent events will bear out these
accusations.

On, or about, July 1st, 1995, a small (15 sq. ft.) chunk
of dirt broke loose from the NCDOT's bank, located within
its right of way. A former NCDOT employee warned me
that, if the NCDOT did not take corrective measures within
its right of way, there would be subsequent slides that
would eventually destroy my property beyond the
NCDOT's right of way.

Therefore, I asked the NCDOT District Engineer at
the time, J.J. Swain, to take corrective, preventative
measures within the NCDOT's right of way. He refused.
Instead, he recommended that I take corrective
measures within the NCDOT's right of way. He
recommended that I build a railroad tie retaining wall to
shore up the improperly sloped bank, and that I move the
outlet of the NCDOT's drainpipe that is located above
the NCDOT's improperly sloped bank.

In a letter dated July 26th, 1995, Swain again
recommended that I move the outlet of the NCDOT's

drainpipe.  He told me that I had to get the NCDOT's permission before undertaking any work within the NCDOT's right of way.  Swain attached a letter from NCDOT engineer Dave Henderson to his letter. Henderson's letter also recommended that I move the outlet of the NCDOT's drainpipe.  Swain and Henderson fraudulently denied any NCDOT responsibility.

Of course, why move the NCDOT's drainpipe if it is not a factor in the collapse of the NCDOT's bank?  Why build a retaining wall within the NCDOT's right of way, if the bank was properly constructed?  Under N.C. law, the maintenance of the NCDOT's right of way is the responsibility of the NCDOT, not the citizens!  It's clear that they wished to trick me into taking responsibility for their problem by undertaking *their responsibilities.* In his letter to me, he referred to it as *your problem.*

The engineers that I hired determined that the NCDOT's bank was not sloped according to acceptable engineering standards, and that the NCDOT's drainpipe added hydrostatic (water) pressure to the improperly sloped bank.  They agreed that if corrective measures were not taken, there would be future slides on my property beyond the NCDOT's right of way.  I sent their reports to

the NCDOT engineers.

The NCDOT, and NCDOT engineer Swain,
prevented me from viewing the NCDOT's construction
records for its easement traversing my property. However,
I learned later that their denial of my access to the records
was illegal and in violation of the N.C. Public Records Law.
I also learned later that the NCDOT's bank was not sloped
according to the NCDOT's *Design Manual*, a fact which
the NCDOT and its engineers (Swain, Henderson, Martin,
Murdock and others) intentionally, fraudulently concealed
from me.

There was a great deal of illegality and fraud,
regarding the concealing of the relevant NCDOT
construction records, by NCDOT attorneys Mallonee and
Crawford. They were working for Michael Easley at the
time, when he was the N.C. Attorney General. Therefore,
he shares responsibility for their fraud.

The engineers that I hired to assess the situation stated
that the causes of the slides within the NCDOT's right of
way were: the steepness of the NCDOT's bank; and the
NCDOT's drainpipe. I sent their reports to the NCDOT
but they still refused to take corrective, preventative
measures within their right of way. At the suggestion of

Swain, I contacted the N.C. Dept. of Health, Environment
and Natural Resources. Mr. Beck from that department
viewed the situation. He concluded that: I hadn't broken
any environmental laws; and that the NCDOT's drainpipe
was the main cause of the slides within the NCDOT's right
of way.

In the summer of 1997, an area of my property had
been physically destroyed by the slides, which had
progressed beyond the NCDOT's right of way. I had a
surveyor measure the area that had been destroyed by the
slides. I then asked him to draw a line through the
NCDOT's drainpipe and down through the destroyed area.
The line divided the destroyed land into two almost exactly
equal areas, which proves that the NCDOT's drainpipe was
a prime cause for the slides. This information, along with
my engineering reports,  were sent to the NCDOT, to no
avail.

J.J. Swain, Jack Murdock, F.D. Martin, and other
NCDOT engineers made false statements that indicated, or
strongly implied, that I was responsible for the slides.
Many of their statements contradicted each other, and
even themselves. I filed suit against them in the N.C.
Industrial Commission (NCIC). Their attorney, Michael

Warren, made inconsistent defensive arguments in a hearing. He argued that the defendants hadn't libeled me. He also argued that I couldn't recover because the libelous statements were false, and the engineers knew they were false when they made them. The NCIC only allows for the recovery of damages for negligent acts. The magistrate made Warren elect one of the inconsistent defenses. He elected the defense that the engineers intentionally made false statements that blamed me for the slides.

I then reached a small settlement agreement with Warren for the libel/slander  The agreement was to release the libel claims. However, when I received the agreement, I discovered that additional, new items had been added. I asked Warren why, and he stated that the new items were added at the request of NCDOT attorney T.L. Mallonee. That surprised me because Warren had told me that Mallonee was not involved in the case. Mallonee's additions to the agreement required me not to seek damages from the NCDOT, or its employees, for any damage to my property, resulting from a landslide of June, 1995, except in my lawsuit filed in N.C. (*Langdon v. NCDOT,* 98-CVS-139).

I agreed to the terms with the understanding that I would get a full and fair hearing in *Langdon v. NCDOT.*

I did not get a full and fair hearing in *Langdon v. NCDOT.*
Also, my complaint (*Langdon v. NCDOT*) was for damages
from a series of slides (not one), beginning in July, 1995.
It did not allege any damage from a slide (singular) in June,
1995.

There was no additional compensation for the additional
items in the settlement agreement. Furthermore, NCDOT
attorney Mallonee had consented, before I signed the
release, to depositions of the NCDOT engineers involved in
this matter. However, after the purported settlement
(release), Mallonee began dodging my phone calls. He
eventually informed me that he was reneging on the
agreement for depositions.

I would not have agreed to the release if I had known
that Mallonee was going to renege on the agreement for
depositions. I wouldn't have signed the release if I
had known that T. "Liar" Mallonee had illegally removed
the pertinent NCDOT engineering records, from the
NCDOT's district office in Henderson County, to his office
in Asheville, N.C. (Buncombe County). The NCDOT
district engineer, E. Green, faciltated the illegal removal of
the records, contrary to the N.C. Public Records Law.

Because the NCDOT failed to take corrective,

preventative measures within its right of way (r.o.w.), I

filed a Complaint in the superior court of Polk County,

N.C. (case no. 98-CVS-139) in June of 1988, I alleged that

the NCDOT had taken my property without just

compensation and due process of law, in violation of the

N.C. Constitution, Article I, Sections 18 & 19, and the U.S.

Constitution, Amendments V & XIV.

In his answer *to Langdon v. NCDOT*, T.L.

Mallonee fraudulently referred to the damage of a

"landslide" (singular). My suit correctly asserted that the

damage to my property was the result of a series of

landslides. Mallonee also fraudulently denied any NCDOT

responsibility and pled a statute of limitations (NCGS 136-

111). However, a plea of limitations presupposes that a

cause of action has accrued.

"The plea of limitations presuposes the existence of a right
of action which has become barred by the lapse of time, while
the plea of a prescriptive right denies that the alleged right
ever existed." *Hume v. Grand Trunk Western Ry. Co.*, 158
NW 840[4] (Mich. 1916).

"...stautes of limitation pre-suppose an established
substantive right, but forbid the plaintiff from enforcing it."
34 Am. Jur., *Limitations of Actions,* Section 410, p. 322 (1941)

"Statute of limitations bar claim which has arisen."
*Olympic Products Co. v. Roof Systems, Inc.*, 339 S.E. 2d 432
[2] (N.C. App.1986).

Therefore, the two defenses are inconsistent. There is

N.C. case law that holds that a defendant may not plead a

limitations, and deny that a taking has occured/and or deny

the plaintiff's ownership of the property in question. *See:*

*Mason v. Commissioners of Durham County,* 96 S.E. 110,

111 (N.C. 1918); *Whiting Manufacturing Co. v. Carolina*

*Aluminum Co.,* 175 S.E. 698 (N.C. 1934); *Kistler v. City*

*of Raleigh,* 136 S.E. 78, 80 [1] (N.C. 1964). Mallonee's

answer in *Langdon v. NCDOT* denied a taking had

occured and, for reasons unkown, denied my ownership.

The denial of a taking and a plea of limitations by

Mallonee in *Langdon v. NCDOT* are inconsistent defenses.

Even if they could have been pled under N.C. law, they were

not pled in the hypothetical, nor in the alternative, therefore,

they should have canceled each other out. *Schott Motorcycle*

*Supply Co. v. American Honda Motor Co.,* 976 F. 2d 58

(1st Cir. 1992).

The plea of limitations was not properly made

because it did not allege a date that my cause of action

accrued.

I believe that Mallonee wished to conceal the fact

that the plea of limitations was an admission that my cause

of action for a taking of my property had accrued.

Mallonee's answer also intentionally mis-represented

the law. He fraudulently stated that the right to just

compensation for the taking of property was a right created

by statute (NCGS 136-111). In reality, the right to just

compensation goes back 800 years and pre-dates the *Magna

Charta*. The N.C. Supreme Court, in many of its earliest,

most important decisions, acknowledged the right as implied

in the first N.C. Constitution, and in its subsequent revisions,

and was derived from the Magna Charta. *See: Trustees of

the University of North Carolina v. Foy,* 5 N.C.58, 73-80

(1805).

"The right to just compensation is an ancient one. it
reaches back before the Magna Carta and forms a part of the
common law." *Karp v. Urban Development Commission of
Stamford,* 294 A. 2d 633, 635 [5,6].

The right to just compensation is also included in the

U.S. Constitution, Amendments V & XIV. I believe that

Mallonee fraudulently asserted that just compensation was

a right created by statute to make it seem that the stautory

remedy (NCGS 136-111) was the exclusive remedy.

Mallonee never supplied any case law that indicates that

NCGS 136-111 was the exclusive remedy for a taking of

property without just compensation.

Mallonee filed a motion for summary judgment that

alleged that my Complaint was barred by an alleged statute

of limitations. His motion did not contain a denial of NCDOT responsibility, therefore, Mallonee had waived any reliance by the NCDOT on that defense. Mallonee elected the purported defense of a limitations. *See: Alpar v. Weyerhauser Co., Inc.,* 201 S.E. 2d 503, 503-04 (N.C. App. 1974) (election of a defense must be made before trial). Once a position has been taken, a party may not change that position later.

I responded to the NCDOT's motion for summary judgment with two pleadings that alleged that my Complaint, *Langdon v. NCDOT,* was filed in June, 1998, nine months after the taking of my property in September, 1997, when I was denied a septic tank permit for the property. Therefore, my cause of action could not be barred by the purported 2 years limitation in NCGS 136-111, *if* it had been properly pled.

I also filed several motions: a motion to amend my Complaint; a motion for a jury trial; a motion to join the note-holders and trustees; and a motion to compel discovery. The motions were properly noticed for the same day as the NCDOT's motion for summary judgment.

The motion to amend asked for leave to amend my Complaint to allege that the taking had occurred in

September, 1997. My original Complaint didn't allege a

specific date for the taking. The motion was un-opposed,

therefore, it should have been granted. Motions to amend

are to be liberally granted, especially in *pro se* civil rights

actions.

"A relaxed standard for the grant of leave to amend a
complaint applies with particular force to a pro se litigants,
and a pro se complaint is to be read liberally, and should not
be dismissed without granting leave to amend at least once..."
C.J.S., *Federal Civil Procedure,* Section 400, pp. 373-74

"A plaintiff may be allowed to amend the complaint in
order to show facts which mitigate against a defense, such as
limitations..." C.J.S., *Federal Civil Procedure,* Section 414, p.
388.

The motion to compel discovery was necessary

because Mallonee had reneged on my discovery request. I

wish to depose several NCDOT engineers and have them

bring the construction records to the depositions. At that

time I was not aware that Mallonee had illegally removed

them from the NCDOT's district office to Mallonee's office.

My motion to compel discovery was un-opposed. There

was a court order requiring discovery. Mallonee tricked

me into delaying the depositions. He asked me to delay the

depositions because the witnesses were scattered across the

state and the weather was bad in N.C. that January and

February. He then filed his motion for summary judgemnt

and reneged on the agrement for depositions.

My motion to join the noteholders and trustees was

made because, under N.C. law, they are necessary parties

in a suit for just compensation.

"In view of complaint, in inverse condemnation
action..trial court properly ordered joinder of trustee and
noteholder...Long v. City of Charlotte, 293 S.E. 2d 101 (N.C.
1982)." 29A C.J.S., Section 398, p. 783, n. 75 (1992).

"Trustee and Noteholder Necessary Parties in Inverse
Condemnation Action ..Long v. City of Charlotte." *General
Statutesof North Carolina, Annotated,* Vol. I, Section 1A-1,
Rule 19, p. 883, notation, Matthew Bender & Co.., Lexis-
Nexis Publishing (2002)

If the necessary parties are not joined, any purported

judgment is void. *J & B Slurry Seal v. Mid-South Aviation,*

363 S.E. 2d 812, 813 [10] (N.C. App. 1987). The joinder

of necessary parties can't be waived. *Commonwealth Land

Title Insurance Co. v. Stephenson,* 387 S.E. 2d 77, 78 [1]

(N.C.App. 1990) The motion to join the necessary parties

was un-opposed, and according to N.C. law, could not be

denied.

My motion for a jury trial should have been granted

because it was un-opposed and a plaintiff has a right to

have a jury determine issues of fraud. The NCDOT

engineers perpetrated fraud to prevent me from filing a suit

for just compensation. Also, under N.C. law, a plaintiff has

the right to have disputed issues of fact resolved by a jury.

The motions were scheduled for March 15th, 1999. In court that day I answered "here" when my name was called. The presiding judge noticed that I had a box with me. He sarcastically asked if it contained more motions. That clearly demonstrated his bias against me and my motions. The Judge, Claude Sitton, asked Mallonee if my case could be moved to the end of the session, and Mallonee agreed. Sitton didn't ask me if it was OK, once again demonstrating his bias.

Mallonee argued at the hearing that my Complaint was barred by a purported limitations, NCGS 136-111, although my Complaint was not filed under that statute. Mallonee did not supply any case law that alleged that NCGS 136-111 is the exclusive remedy for a taking.

Mallonee also fraudulently denied any NCDOT responsibility for the taking. Mallonee's denial of a taking was waived when he filed his motion for a summary judgment based on a limitations only. That was an election of a defense of a limitations. Once a defense is elected, a party may not switch to another defense later. However, at the so called hearing (3-15-05) Mallonee was arguing a purported defense for the NCDOT that had been waived.

Also, as stated previously herein, Under N.C, law, a
defendant may not deny that a taking has occurred and
allege a limitations. Those inconsistent arguments were
not made in the alternative, nor the hypothetical, therefore,
they should have cancelled each other out.

Mallonee's oral argument contradicted his anser by
conceding that there was a series of slides on my property,
beginning on July 1st, 1995. He fraudulently concealed the
fact that those slides began within the NCDOT's right of
way. They did not occur on my property beyond the right
of way until 1996. During his argument, Mallonee did not
allege a date for the taking. He argued that the statute of
limitations for a taking runs from the first injury, although
the statute that purportedly barred my claim, NCGS
136-111, states that the limitation runs from the taking, not
the first injury.

Mallonee's motion for summary judgment was
supported by a false affidavit by Swain. It appears that
Mallonee wrote the affidavit for Swain. Swain alleged in
his affidavit that:

"..as of mid-July, 1995, significant slope failure, or sliding
had occured on the Plaintiff's property and clear evidence
existed..that additional failure would occur if corrective
measures were not taken by the Plaintiff." *Affidavit,* J.J.
Swain, p. 2, Section 10 (2/20/99)

That is an admission that Swain, the NCDOT District
Engineer at the time, knew in July, 1995, that if corrective,
preventative, measures were not taken, serious damage
would occur to my property. What Swain's affidavit
fraudulently conceals, with the help of Mallonee, is the fact
that those corrective, preventative measures were those that
had to be undertaken within the NCDOT's r.o.w., the
responsibility of the NCDOT. Swain's verbal
recommendations, his letter of July 26th, 1995 and the
accompanying letter of NCDOT engineer Swain prove that.

Swains allegation that the damage to my property was
significant by mid-July, 1995, is intentionally false. I believe
that he and Mallonee intended to imply that the taking
occurred in mid-July, 1995. Later statements by Mallonee
susbtantiate my allegations. Neither before, nor during the
hearing of March 15th, 1999, did Mallone ever allege that the
taking ocured by mid-July, 1995, or by any date.
Mallonee appeared not to want to do anything that would
admit that a taking had ocurred, *i.e.,* allege a date for a
taking.

I demonstrated in my pleadings opposing summary
judgment that the first slide was within the NCDOT's r.o.w.
and was small, 15 sq, ft. out of the almost 300,000

sq. ft, that was taken. The first slide was on, or about July

1st, 1995. A second, smaller slide occurred within the

NCDOT's right of way several weeks later, in late August,

or early September. The first slide outside of the NCDOT's

r.o.w didn't occur until 1996. I did not file suit then

because I expected more slides, and the damage was not

signifiant enough to be a taking. Both federal and N.C. law

require that there be a substantial diminution in market value

to be considered a taking.


I testified at the "hearing" that: the taking did not occur

until September, 1997; the first slide was small and within

the NCDOT's right of way; and that Swain's affidavit was

perjury. Mallonee never disputed my testimony, except

to object to my testifying, without stating why he was

objecting, as required. The judge over-ruled him and

allowed me to continue to testify.

At the hearing I presented to the judge the appropriate

case law that states that the note-holders and trustees are

necessary parties and must be joined to a suit for just

compensation. I also presented to him a list of the note-

holders and trustees having a security interest in my

property at the time of the taking. I made NCDOT attorney

Mallonee aware of the noteholders and trustees well in advance of the hearing. It should also be noted that Mallonee was seeking a summary judgment based on the purported limitations in NCGS 136-111. NCDOT attorney Mallonee must have been well aware that before proceeding under NCGS 136-111, it is necessary for the court to proceed under NCGS 136-108. That statute requires the court to join any necessary parties, determine if a taking has occurred, and if so, what property was "taken," none of which was done.

Mallonee denied that there was taking while pleading the inconsistent defense of a limitations. He perpetrated fraud on the court because he must have known that the court had to undertake the procedures under NCGS 136-108 before proceeding under NCGS 136-111. Because the court did not undertake the procedures required under 136-108, it lacked jurisdiction to proceed under 136-111. Mallonee knew that, but kept quiet. Cooper, Crawford and Glover are aware that the court lacked jurisdiction in the state case, Langdon v. NCDOT, but they have used it to prevent me from obtaining relief in *Langdon v. Swain* and *Langdon v. Tippett*. They have also prevented me from getting relief from the alleged judgment in *Langdon v.*

*NCDOT*, although they know it is void and was procured

through fraud and fraud on the court. Their reliance on the

purported judgment in *Langdon v. NCDOT* in the federal

and state courts is fraud on those courts.

I also presented case law to the court that proves that

there is no statute of limitations for a taking without just

compensation in N.C .

"As the Supreme Court of North Carolina has indicated, there
is no statute of limitations applicable to a claim for just
compensation. Hoyle v. City of Charlotte, 172 S.E. 2d 1
(1970). If Plaintiff's property has been taken by defendants,
Plaintiff is entitled to just compensation under the N.C.
Constitution regardless of when the taking occurred. The time
of the taking is relevant only for purposes of valuing the 'just
comppensation due." *Ocean Acres v. Dare County Board of
Health*, 514 F. Supp. 1117, 1123 (E.D.N.C. 1981), affirmed
707 F. 2d 103 at 103 [3] (4th Cir. 1983)

The trial judge (Sitton) cut the so-called "hearing"

short because he was hungry. He did end the session with a

promise to review the entire case file. A few days later he

entered summary judgment for the NCDOT without ruling

on any of my motions. No explanation was given for his

purported ruling, and his order failed to even mention my

motions. He didn't address a single issue raised by me. He

merely stated that my Complaint was barred by a statute

of limitations, although the N.C. Supreme Court has ruled

that there is no staute of limitations for a suit for just

compensation for the taking of property. NCDOT attorney

Mallonee succeeded on a purported limitations, although he

never alleged a date for the taking. I alleged that the taking

occured in September, 1997, in my: pleadings opposing

summary judgment; in my un-opposed motion to amend;

and in my testimony at the summary judgment "hearing."

At no time did Mallonee allege any date for the taking.

Therefore, the court should have accepted the un-disputed

date that I alleged for the taking, September, 1997.

Mallonee's only argument at the "hearing" was that the

purported limitations runs from the first act in the taking.

However, when the first injury is minor, there is no taking.

"Minor physical intrusion is not 'physical taking' for purposes of takings clause." *Southview Associates, Ltd. v. Bongartz*, 980 F. 2d 84, 85 [7] (2nd Cir. 1992).

The problem I was confronted with was to determine

at what point the damage to my property rose to the level of

a taking. Even Swain admitted in his affidavit, *supra*, that

the damage to my property was not complete by mid-July,

1995. I supplied to the court case law holding that,

when the taking occurs over a period of time, any statute

of limitations (if there is one) runs from the last act in the

taking, when the taking is complete, not the first act.

That way, a plaintiff does not have to file suit when

each instance of damage occurs. The damage to my

property resulted from a series of slides over a long period

of time, which NCDOT-NCDOJ attorney Mallonee

admitted. However, NCDOT-NCDOJ attorneys Cooper,

Crawford and Glover fraudulently stated in the federal

courts that there was only a single, minor slide involved

(*See* page 1).

The Supreme Court addressed a similar situation in

*U.S. v. Dickinson* where the U.S. government flooded a

man's property for over six years. The government tried to

weasel out of paying him by alleging that the six year

limitation had run. The court held that:

" The Government could, of course, have taken appropriate
proceedings to condemn as early as it chose..it could have
fixed the time when the property was 'taken.' [It] chose not to
do so. It left the taking to physical events thereby putting on
the owner the onus of determining the decisive moment in the
process of acquisition by the United States when the the fact
of the taking could no longer be in controversy.. We are not
now called upon to decide whether in a situation like this a
landowner might be allowed to bring a suit as soon as
inundation threatens. Assuming that such an action would be
sustained, it is not a good enough reason why he must sue
then, or have, from that moment, the staute of limitations run
against him. If suit must be brought, lest he jeopardize his
rights, as soon as his land is invaded, other contingencies
would be running against him--for instance, the uncertainty of
damage and the risk of res judicata against recovering later for
damage as yet uncertain. The source of the entire claim..is not
a single event; it is continuous..there is nothing in reason, so
there is nothing in legal doctrine, to preclude the law from
meeting such a process by postponing suit until the situation
becomes stabilized..when dealing with a problem which arises

under such diverse circumstances procedural rigidities should be avoided...when the Government chooses not to condemn land but to bring about a taking by a continuing process of physical events, the owner is not required to resort either to piecemeal or to premature litigation to ascertain the just compensation for what is really "taken." *U.S. v. Dickinson*, 67 S.Ct. 1382, 1385 (1947).

*See also: Mac Donald, Sommer & Frates v. Yolo*

*Cnty.,* 106 S.Ct. 2561, 2566 (1986) reaffirming the

"Dickinson" rule. In Swain's affidavit, supplied by NCDOT

attorney Mallonee to the court at the summary judgment

hearing on 3-15-99, Swain stated that he warned me in July,

1995, that future damage would occur to my property if

corrective measures were not taken. That proves that the

taking was not complete by mid-July, 1995, and, according

to the Dickinson rule, no staute of limitations could begin to

run by mid-July, 1995, because the taking was not complete.

NCDOT attorney Mallonee never alleged that the taking

was complete by July, 1995, nor did he allege any date for

the taking. He argued that the purported limitations ran

from the first injury, not the last, contrary to the Dickinson

rule.

However, the U.S. Supreme Court based its decision

in Dickinson on Amendment V, U.S. Constitution, which

requires fairness (Due Process of Law). States courts are

required to supply at least the minimum amount of fairness

(due process) embodied in Amendment V. Also, my

Complaint sought relief under the U.S. Constitution,

Amendments V & XIV. "Taking's" claims under

Amendment XIV may be heard directly under the

Constitution, or under 42 U.S.C., Section 1983.

See: *Ocean Acres v. Dare Cnty., supra*. The staute of

limitations for Section 1983 suits in N.C. is three years.

My Complaint, *Langdon v. NCDOT*, was filed less than

three years after the initial slide in the NCDOT's right of

way. Therefore, *if* Mallonee had alleged that the taking had

occurred by mid-July, 1995, the taking still would not have

been barred by the limitations for Section 1983 suits. The

trial court never considered my federal claims (Amendments

V & XIV, Section 1983).

In his answer, Mallonee referred to a landslide

(singular), implying that the taking occured by a single

event. Since the first slide occured, on or about, July 1st,

1995, Mallonee was implying that the taking had occurred

on July 1st, 1995. At the summary judgment "hearing,"

Judge Sitton stated that he believed that Mallonee's position

was that I had alleged in my Complaint that the taking had

occured on July, 1st, 1995. I pointed out that my

Complaint had alleged that the taking had occured by a

series of slides that began on, or about, July, 1st, 1995.
My Complaint never alleged a date for the taking, which I
attempted to correct by my Motion to Amend, which
alleged September, 1997, as the date for the taking.
Mallonee did nothing to correct Judge Sittons mis-
conception, fostered by Mallonee, that I had alleged that
the taking had occured on July, 1st, 1995. Mallonee's
silence on the issue was also fraud on the court because he
could have corrected the mis-representation of my
Complaint. On appeal, Mallonee fraudulently assered that
the taking occured in mid-July, 1995, not July 1st, 1995, as
he misled the trial court.

   If the court had taken my un-disputed date for the
taking, September, 1997, my Complaint could not have
been barred by the alleged two year limitations in NCGS-
136-111 because my Complaint was filed nine months later,
in June, 1998. If the court had considered my claims under
Amendments V & XIV (Section 1983), my Complaint
could not have been barred because it was filed well within
three years of the taking. Even if the taking had occurred
on July 1st, 1995, as fraudulently implied, but never pled,
or argued, by Mallonee, then my federal claims could not
have been barred because my Complaint was filed in June,

1998, less than three years later.

The entry of summary judgment was improper for those reasons and because: necessary parties were not joined, rendering the judgment void; the court had not ruled on my motions; the court did not apply the Dickinson rule; the court did not consider my federal claims; the NCDOT did not dispute the date that I had alleged for the taking, and my Complaint was filed nine mos. after the undisputed date for the taking; I testified that Swain's affidavit was perjury; I was not allowed to depose Swain, or any other NCDOT engineer; there was no meaningful discovery; Mallonee pepretrated fraud on the court by changing his position as to a material fact (the number of slides); Mallonee perpetrated fraud on the court by supporting his motion for a summary judgment with a false affidavit by Swain, by implying that the taking ocuured on July 1st, 1995, and by not correcting that misconception at the hearing; no evidence was presented that NCGS-136-111 is an exclusive remedy for a taking, as fraudulently implied by Mallonee; the court failed to draw all inferences in my favor; the court did not consider that fraud by a fiduciary prevents the running of a statute of limitations;  and the trial court failed to consider a single

issue raised by me.

Additionally, the pleaings of *pro se* parties are to be liberally construed, especially in civil rights complaints, like mine. *See: Haines v. Kerner,* 404 U.S. 519, 520-21, 92 S.Ct. 594, 596 (1972). The trial court failed to liberally construe my Complaint.

I appealed the court's purported ruling and a "hearing" was set to settle the Record on Appeal had by telephone. No record of the proceeding was kept, which is a violaiton of due process of law. Mallonee had some of my evidence opposing summary judgment excluded from the Record on Appeal, without an explanation by the judge. After the purported settling of the Record on Appeal, Mallonee had an *ex parte* conversation with the trial judge. In that conversation, Mallonee got the judge to effectively remove all of my remaining evidence opposing summary judgment, without a full explanation. *Ex parte* conversations are a violation of the N.C. Canon of Judicial Conduct. It must be assumed that Mallonee was aware that his *ex parte* conversation was illegal and unethical, and, therefore, it was fraud on the court. Mallonee's purported changes to the Record on Appeal, fraudulently accepted by the judge after the Record on Appeal had been settled at the

purported hearing, intentionally deprived me of due process of law and equal protection under the law.

By the time I learned of the *ex parte* conversation and Mallonee's and Sittton's fraud, the time to perfect my appeal had almost expired. Therefore, I had no choice but to proceed with the appeal. Neither Mallonee, nor the NCDOT, have denied these allegations.

While my appeal was pending, I filed a motion seeking depositions and discovery pending appeal, because the court had not ruled on my motion to compel discovery and depositions. Rule 27 of the N.C. Rules of Civil Procedure is entitled to "Depositions Before Action or Pending Appeal." Clearly, I was allowed to seek depositions. However, Mallonee instructed the trial court administrator not to place my motions on the docket, although they had been properly noticed. The trial court adminstrator, Jerry Brewer, complied with Mallonee's request and unilaterally ruled that the court no longer had jurisdiction, which he had no authority to do. Cooper, Glover and Crawford later fraudulently alleged in federal court that Brewer was acting under the orders of the trial judge.

Mallonee's surreptitious, *ex parte* conversation, and his

blocking of my right to a hearing on my motions were
intentional acts designed to deprive me of my rights to:
due process of law; equal protection under the law; and
meaingful access to the courts. Mallonee had Sitton
defraud me of my right to present a defense to the
NCDOT's motion for summary judgment. Any purported
judgment entered without a true hearing is void. *Hovey v.
Elliot,* 167 U.S. 409, 17 S.Ct. 841 (1897); *Windsor v.
McVeigh,* 93 U.S. 277. Sham proceedings, like those I
was subject to, are not constitutionally adequate.
Therefore, the purported judgment in *Langdon v. NCDOT*
is void for a lack of due process of law. It is also void
because the necessary parties were not joined and no
proceedings were held under NCGS 136-108, as required.

I wondered if the NCDOT was barring everyone from
viewing the pertinent construction records, or, if only I was
barred from viewing them. I asked a friend to go to the
NCDOT District Engineer's office to view and copy the
records. The new District Engineer, Ed Green, said OK.
That proved to me that the NCDOT was only barring me
from viewing the records. When Green went to get the
records they were gone. Green then remembered that
the records had been removed to T.L. Mallonee's office

in Asheville, N.C. NCDOT attorney Mallonee had the
original records removed to his office, in violation of the
N.C. Public Records Law. The records were removed
shortly after I filed my Complaint in June, 1998.

Mallonee still had the original records more than a year
later. I asked Mallonee to return the records to the office
they were taken from, and to provide me copies of them.
Both requests are provided for in the records law.
Mallonee ignored my requests, therefore, I filed suit to
get certified copies of the record and to have the originals
returned to the office where they are normally kept, as
required by the records law.

NCDOT attorney Robert Crawford III defended the
suit. He had the former NCDOT district engineer,
J. Swain, collect the purported records, take them to
Swain's office in another district, and send me purported
copies. I objected because the copies were not certified.
Crawford refused to supply certified copies and responded
with a lie, stating that:

"The Public Records Act does not require that 'certified'
copies be provided. Again, its our position that you have
received eveything that you are entitled to under the Public
Records Act." *Letter of Robert O. Crawford III,* October 7th,
1999 (Statement #2).

That's a deliberate mis-representation of the law.

"Persons requesting copies of public records may request that the records be certified or uncertified." N.C.G.S. Section 132-6.2.

I did receive copies of the purported records, however, they were purportedly certified by Mallonee and Green not Swain, the person who collected them and was in possession of them. According to the records law, they were supposed to be certified by the official in control of them. Crawford refused to have Swain certify them and he refused to have Swain return them to the office they were taken from, in direct contravention to the records law.

I had originally asked to see the records back in 1995, but my request was denied by Swain. The records were illegally removed by Mallonee and Green to Mallonee's office in 1998. By 1999 I still had not received copies of the records that were certified by the official in control of them. I dropped my suit because it was clear that whatever incriminating evidence that was in the records was destroyed. Why else did they illegally conceal the records from me for over four years?

On appeal, I asked the N.C. Court of Appeals to allow my evidence, opposing the summary judgment motion, into the Record on Appeal. It had been accepted, and then illegally removed from the Record on Appeal, due to the

collusion of Sitton and Mallonee in their *ex parte*

conversation. It is error to grant summary judgment

without ruling on a plaintiff's motions, as was done in my

case. *See: Carolina Builders v. Gelder & Associates,*

289 S.E. 2d 628, 629 [2] (N.C.App. 1982). It is a violation

of a citizen's constitutional rights to deny one an

opportunity to present their case, or defend against a motion.

> "The right to notice and an opportunity to be heard on
> motions filed in a lawsuit is critically important to the non-
> movant and cannot be considered an insubstantial ..omission
> on the part of the ..court." *Pask v. Corbitt,* 220 S.E. 2d at 382.

> "Wherever one is assailed in his person or his property,
> there he may defend..This is a principle of natural justice.. A
> sentence of a court pronounced against a party without hearing
> him, or giving him an opportunity to be heard, is not a judicial
> determination of his rights, and is not entitled to respect in any
> other tribunal." *Windsor v. McVeigh,* 93 U.S. 274, 277 (1876).

The N.C. Court of Appeals refused to allow my evidence

into the Record on Appeal, without an explanation. Of

course, there was no legal, rational, explanation why my

evidence was excluded. They ignored the fact of Sitton's

illegal, *ex parte* conversation. Apparently, in N.C. one's

constitutional rights don't count if you don't have an attorney.

It is clear that Sitton's *ex parte* conversation with Mallonee

was in violation of the N.C. Code of Judicial Conduct,

Canon 3A(4). *Financial Services of Raleigh v.*

*Barefoot,* 594 S.E. 2d 37, 40 (N.C.App. 2004).

Before the N.C. Court of Appeals, Mallonee

fraudulently stated:

"The Defendant-Appellee therefore submits that..it came forward..establishing that the Plaintiff-Appellant's action accrued in July, 1995." T.L. Mallonee, *Defendant-Appellee's Brief, Langdon v. NCDOT*, p. 16 (January 3rd, 2000).

In the same brief, Mallonee denied that there was a

taking. If, as Mallonee alleged, he had established that my

cause of action for a taking had accrued, how could he

deny in the same brief that there was no taking? If the

taking of my property had accrued in mid-July, 1995,

why did the NCDOT engineers deny it in July, 1995,

and subsequently? Why was Mallonee allowed to

flip-flop between two inconsistent positions, even after

succeeding in one before the Superior Court?

I pointed out in my briefs that no statute of limitations

can run when the cause of action is fraudulently concealed

by a fiduciary. The NCDOT and its engineers and

attorneys have a fiduciary duty to inform a citizen if they

are responsible for the destruction (taking) of their property.

The NCDOT and its engineers fradulently concealed the

taking, thus preventing the running of any purported

statute of limitations. The N.C. Court of Appeals, like the

Superior Court, did not consider a single issue or argument

raised by me. Like the Superior Court, they drew all

inferences against me, contrary to the law. For example, I

was uncertain as to what date to ask for interest from. The

taking took place over a two year period. The NCDOT

engineers knew on July 1st, 1995, that if corrective

measures were not taken within the NCDOT's right of way

that my property would be eventually destroyed. I didn't

believe that it was fair to not get interest for the time that

the NCDOT sat by and failed to perform its fiduciary duties.

Therefore, I asked for interest from July 1st, 1995, when

the cover-up began. Federal courts hold that when a taking

occurs over a period of time, as in my sitaution, rather than

a single event, interest is calculated from the mid-point

of the taking. If I had asked for interest from the date that

the taking was complete, Sept., 1997, I would have

deprived myself of over a year's interest.

Alos, I had intended to amend my Complaint with

claims against the engineers for fraud, etc., once I had

deposed them. Swain's fraud began about July 1st, 1995.

In any case, the N.C. Supreme Court denied

*certiorari*. Therefore, I filed suit in federal court against

the NCDOT engineers responsible for the taking,

and/or covered it up: Swain, Martin and Murdock.

I had filed a complaint against several NCDOT engineers in the N.C. state courts. I filed a motion to join the noteholders and trustees to the case. The trial court administrator, Jerry Brewer, intentionally did not place the motion on the docket. He also failed to notify me of a important, potentially dispositive hearing. Brewer is the same individual who refused to place my motions for discovery and depositions, pending appeal, on the docket in *Langdon v. NCDOT.*

It was clear to me that I was unable to get a fair hearing in the N.C. courts, therefore, I took a voluntary dismissal without prejudice. I then filed my federal Complaint against several N.C.D.O.T. engineers, *Langdon v. Swain, Martin and Murdock.* The fraud on the courts used to prevent me from getting a fair hearing in that case is presented on Page 1 at the top. I also attempted to obtain relief from the purported judgment in *Langdon v. NCDOT.* I was prevented from doing so by the illegal actions of Judge James Baker and fraud by the N.C. attorneys: Cooper, Crawford and Glover. Their actions are described on Page 3.

# FRAUD BY THE N.C. DEPARTMENT OF JUSTICE



**Home**

**Fraud NC Courts**

**Judge Baker**

**Sham Courts**

**More Fraud**

## Judge Baker Denied My Rights to Meaningful Access to the Courts, Due Process of Law and Equal Protection Under the Law--- Chris Langdon qiology@aol.com

Judge Baker Denied My Constitutional Rights - Intentional or Un-intentional?

I attempted to obtain relief from the alleged judgment

in *Langdon v. NCDOT* in an Independent Action (case no.

03-CVS-173, Polk County N.C.). A careful reading of

Page 2 at the top of the menu clearly indicates why the

purported judgment in *Langdon v. NCDOT* is void. The

NCDOT, through attorneys Roy Cooper, Robert Crawford

and Lisa Glover filed a motion to dismiss my Independent

Action. The motion was granted because of fraud on the

court by the N.C. attorneys Roy Cooper, Robert Crawford

and Lisa Glover, and because of Judge James L. Baker

Jr.'s denial of my constitutional rights.

Judge James L. Baker Jr. Baker granted the motion to

dismiss in a sham proceeding, in violation of my

constitutional rights. I wrote N.C. Judge James L. Baker

Jr. a letter giving him the opportunity to explain his actions

before I made my charges against him public. The

letter states:

" I am writing you concerning your violations of my rights
to: due process of law; equal protection under the law; and
meaningful access to the courts, in case 03-CVS-173. Those
violations were intentional and/or you're incompetent. Before
I go public with my accusations, I wish to afford you with the
opportunity to respond, an opportunity you never afforded me
in court. Your granting of the defendant's motion to dismiss
violated the aforementioned rights for numerous reasons,
including the following: (1) you failed to liberally construe
my *pro se* pleadings and draw all inferences in my favor; (2)
you denied me an opportunity to amend my Complaint,
despite the liberal policy of allowing amendments to
complaints in N.C.; (3) you failed to take my factual
allegations as true; (4) you allowed the NCDOT attorneys to
plead for some who are not party to the case; (5) you refused
to join the necessary parties; (6) you refused to declare the
purported judgment void for failure to join necessary parties,
as required by N.C. law; (7) you failed to exercise the proper
legal standards when considering a motion to dismiss. The
movant must prove that the Plaintiff's complaint is a claim for
which relief cannot be granted. My complaint was an
Independent Action for relief from a void judgment which is a
claim for which relief may be granted. Whether or not the
relief should be granted is a separate question that cannot be
resolved by a motion to dismiss; (8) you converted the
defendant's motion to dismiss into one for summary judgment
by considering matters outside the pleading and by purporting
to rule on the merits of the case, without giving me the
required notice and time to respond; (9) you illegally moved
the hearing to settle the Record on on Appeal to another
county to, for your own conveneince twice. You had no
jurisdiction to do so. Furthermore, I had no written notice of
the purported hearing , only a few days verbal notice. I was
not given the street address and the city where the purported
hearing was held; and (10) you made the purported ruling
without adequate time for consideration. You intentionally
refused to apply the law because I was appearing *pro se* and I
was suing your employer, the State of North Carolina. If you
can't put your biases aside and rule fairly, you shouldn't be a
judge. It is obvious that you do not have the qualifications

required of a judge. I hope that you don't plan to to seek re-election. Sincerely, Christopher Langdon."

Judge Baker received that letter on January 6th, 2006 and he hasn't denied my charges, because they are true (I am writing this on January 25th, 2006). My letter did not include all of Baker's violations of my Constitutional rights. Judge Baker is like the other judges I have encountered in the North Carolina Courts. He won't allow a *pro se* party (someone acting as his own attorney) to have a fair hearing. He simply used whatever illegal excuse he could drum up to get rid of me. I believe that his failure to apply the law properly was intentional. He has had 22 days to deny my allegations and he hasn't done so. He hasn't even attempted to contact me to discuss it. In North Carolina, if you can't afford an attorney for a civil case, you have no rights. The same is true in the U.S. District Court for the Western District of North Carolina (Judge Thornburgh) and the U.S. Court of Appeals for the Fourth Circuit (*See:* Page 1 at the top of the menu).

I filed my Independent Action for relief from the purported judgment in *Langdon v. NCDOT,* 98-CVS-139. I asked for a 30 day continuance in order to amend my Complaint. At the time I was suffering from a severe

case of the flu. I was severely ill for a month. Also,

members of my family were, and are, suffering from more

serious illnesses. Additionally, I was engaged in prosecuting

my Complaints, *Langdon v. Swain* and *Langdon v. Tippett,*

in the federal courts (*See: Home Page*).

There are a large number of issues in this matter. The

fraud by the North Carolina Department of Transporation

(NCDOT) and its engineers, NCDOT attorneys Robert

Crawford, Lisa Glover, T.L. Mallonee, and North Carolina

Attorney General Roy Cooper, has made this matter

extremely complicated. Roy Cooper, Robert Crawford and

LisaGlover filed their motion to dismiss at the same time

they filed an answer, which is not proper, according to the

Federal Rules of Civil Procedure (North Carolina has modeled

its rules on the federal rules and follows the federal courts'

interpretations of those rules).

"Motion to dismiss must be filed before responsive
pleading (answer) is filed." *Aetna Life Insurance Co. v. Alla
Medical Service, Inc.,* 855 F.2d 1470, 1475 (9th Cir. 1988).

"Motion to dismiss for failue to state a claim was rendered
moot by filing of answer." *Brisk v. City of Miami Beach,
Florida,* 709 F. Supp. 1146, 1147 (S.D.Fla. 1989).

My Motion for a 30 day extension of time to amend

was filed 115 days after I filed my Independent Action for

relief from the purported judgment in *Langdon v. NCDOT.*

My motion for more time to amend was filed only 59 days

after the Defendants' Motion to Dismiss was filed.

Therefore, it was timeley filed. In *Estrada v. Jacques,* 321

SE 2d 240 (N.C.App. 1984), a party was allowed to amend

507 days after the Complaint was filed and after a summary

judgment motion was filed. In *Henry v. Deen,* 300 SE 2d

707 (N.C. App. 1983), the court held that it was error for

the trial court to deny a motion to amend, although it was

filed 158 days after the the Complaint was filed. In *Coffey v.*

*Coffey,* 381 SE 2d 467 (N.C.App. 1989), the court held

that it was error not to allow an amendment to a complaint

112 days after it was filed.

Amendments are allowed under Rule 15 of N.C. Rules

of Civ. Proc. The N.C. Courts look to the federal courts and

the New York Courts for interpretation of its rules. They

liberally allow amendments to Complaints, especially *pro se*

civil rights complaints like mine.

"..the Rules of Civil Procedure achieve their purpose of
insuring a speedy trial by providing for and encouraging
liberal amendments to pleadings under Rule 15." *Carolina*
*Builders v. Gelder & Associates,* 289 SE 2d 628, 629 (NC
App. 1982).

"..leave to amend shall be freeely given when justice so
requires is mandate to be heeded." *Foman v. Davis,* 83
S.CT. 227, 228 [5] (1962).

"What might be a meritorious claim on the part of a pro se

litigant unversed in the law should not be defeated without affording the pleader a reasonable opportunity to articulate his case... trial court erred in denying pro se plaintiff leave to amend his complaint, notwithstanding fact that plaintiff did not state in his motion for leave how he would cure the deficiencies in his pleadings." *Gordon v. Leake,* 574 F. 2d 1147, 1148 (4th Cir. 1978).

Motions to dismiss are not usually granted.

"Motions to dismiss pleadings are to be granted sparingly and with caution." *Kingwood Oil Co. v. Bell,* 204 F. 2d 8, 13 (7th Cir. 1953).

*See also: Hartley v. Wisconsin Bell, Inc.,* 167 F.R.D.

72 (E.D.Wisc. 1996) (Defendant allowed to amend answer

21 months after the answer was filed).

*Cornwall v. U.S. Const. Mfg. Co.,* 800 F. 2d 250 (Fed. Crt.

of App. 1986) (Defendant should have been allowed to

amend on the eve of the trial); *Island Creek Coal Co. v.*

*Lake Shore, Inc.,* 832 F. 2d 274 (4th Cir.1987) (Plaintiff

should have been allowed to amend his complaint 3 and

1/2 years after it was filed); *Eades v. Thompson,* 823

F. 2d 1055 (7th Cir. 1987) (inmate should have been

allowed to amend his complaint a third time). *Brandon v.*

*Holt,* 105 S.Ct. 873 (1985) (allowed to amend

before the U.S. Supreme Court); *Satchell v. Dillworth,*

745 F. 2d 781 (2nd Cir. 1984) ( *pro se* plaintiff should be

allowed to amend complaint, even if request is made after

dismissal); *Karim-Panari v. L.A. Police Dept.,* 839 F. 2d

621 (9th Cir. 1988) ( *pro se* party should be given

statement of complaint's deficiencies before dismissal).

The federal courts usually require that a *pro se* party be

given an opportunity to amend before a dismissal, even if

they haven't asked to amend.

"The motions and recomendations apprised Grayson of his
pleadings' deficiencies, but failed to inform him 'expressly'
that he could amend his compalint to fix the problem...the
District Court erred it should have told him that he had leave
to amend his compalint to cure its deficiencies and granted
him a set period of time to do so." *Grayson v. Mayview State
Hospital,* 293 F. 3d 103, 108-109 (3rd Cir. 2002).

Unfortunately, I was not allowed to amend my

complaint, before, or after, its dismissal. I was not given

a list of its purported deficiencies before its dismissal.

Judge Baker didn't give my Complaint, and the

motions in the case, a thorough consideration before

dismissing my Complaint the same day. He had never

reviewed the case until the day of the sham "hearing."

Clearly, he had prejudged the matter and gave the State of

North Carolina what ever it wanted, even if it

was illegal or unfair, presumably because I

did not have an attorney.

In ruling on a motion to dismiss, the court is supposed

to liberally cosntrue the Plaintiff's Complaint and take its

allegations as true. *Atlantic Research Corp. v. Metzer,* 330 F. 2d 946 at 946 [1] (4th Cir. 1964); *Ware v. Fort,* 478 SE 2d 218, 220 (N.C.App. 1996); *Flood v. New Hanover County,* 125 F. 3d 249, 251 (4th Cir. 1997). Judge Baker did not take my factual allegations as true and did not liberally construe my Complaint, as required, before dismissing it. Furthermore, a motion to dismiss is not supposed to decide the merits of a case, as judge Baker purported to do. A claim that a purported judgemnt is void is a claim upon which relief can be granted, as Judge Baker is well, aware. Whether or not the relief from the purported judgment should be granted is a separate question. Therefore, I can only conclude that Judge Baker intentionally dismissed my case for fraudulent reasons, or, that he is extremely ignorant of the law can't be that ignorant of the law.

Cooper, Crawford and Glover filed a motion to dismiss and an answer at the same time. That doesn't seem proper. A motion to dismiss must be filed before an answer is filed. *See: Aetna Life Insurance Co. v. Alla Medical Service, Inc.,* 855 F. 2d 1470, 1475 (9th Cir. 1988).

Update April 23rd, 2006---- There were many improprieties in the sham hearing in this case. Even worse

violations of my rights came after the sham hearing, when
I appealed the court's purported judgment (which is void).
A hearing was set to settle the Record on Appeal. That
hearing was illegally set in a distant county, not in
Polk County, where my property is located, and where
the so-called hearing was had.

  Judge Baker had purported to illegally move the
venue for the hearing to a distant county.  I
received notice of this illegal change of venue by
telephone, not in writing, as required by N.C. law.
 The verbal notice was made on a Friday for the
following Monday, giving me less than the 5 days
notice required by N.C. law.  Certainly, I wasn't
given enough notice to drop everything and travel
from Florida to North Carolina.  Also,  I was only told
what county the sham hearing was in. I was not
told the name of the city, nor the address of the
building the hearing was in.

  One can only come the conclusion that Judge Baker
is grossly ignorant of the law and/or that he is
grossly lacking in ethics. Judge Baker dsispenses
what is commonly referred to as "redneck justice."
That means that, regardless of the law, you're wrong.

He's not the first redneck judge to step all over the rights of citizens who can't afford an attorney.

I did write Judge Baker about this matter on December 31st, 2005. He didn't respond until five weeks after receiving it, on February 10th, 2006. He claimed he didn't remember the case. Considering how long he took to respond, it's clear that he didn't want to remember it.

**COMMUNIST CHINA IS EVIL**



Page 1 Name
Page 2 Name
Page 3 Name
Page 4 Name
Page 5 Name

# COMMUNIST CHINA HAS MURDERED MILLIONS---

# BOYCOTT CHINA

Not all Chinese people are evil, however, the Communist Chinese government has been, and is, a murderous one. The Communist Chinese slaughtered many during the Chinese revolution. After coming to powe they murdered thousands of landowners after mock trials. Subsequently, Commmunist China invaded Tibet and murdered a milllion Tibetans.

Communist China aided the North Koreans in their invasion of South Korea. When North Korea was on the verge of defeat, China invaded Korea and attacked American troops, murdering many wounded and surrendered Americans. Those that survived were abused, tortured, and some were brainwashed. Over two million people died during the war. North Korea would have collapsed long ago without Communist China's assistance. Although a million people might have died their from starvation over the last 15 years, North Korea continues to build a nuclear weapons program, with the assistance of Communist China. North Korea continues to threaten the U.S. and Japan.

During the "Great Leap Forward" China 30-40 million Chinese starved to death. During the "Cultural Revolution" China murdered a million of their own people simply for being intellectuals. Many more were imprisoned and tortured.

Just recently, over 70 Chinese peasants were murdered for protesting poor living conditions and a Chinese general threatened America if we should defend Taiwan.

This site will be updated in the future to expose how China is undermining the U.S. through, spying, spreading nuclear weapons technolgy and donating to American political campaigns  Chris Langdon, March, 29th, 2006

Subj:   **Sign up for the MSN adCenter U.S. Pilot**
Date:   4/4/2006 2:08:38 P.M. Eastern Standard Time
From:  msnactea@email.microsoft.com
To:     qiology@aol.com



Dear Christopher,

We're excited to let you know that you have been chosen to participate in the U.S. pilot of MSN® adCenter. Getting started early on MSN adCenter will provide you with many opportunities. You'll learn how to use audience intelligence to connect with search users through advanced targeting options that will help increase your ROI.

You are also invited to join a complimentary initial campaign set-up service called MSN adCenter QuickLaunch.* With this service, a Media Specialist will help you migrate and optimize your current P4P campaign, get you set up in the tool, and educate you on how to best manage your campaign performance in adCenter.

We encourage you to take advantage of this offering by signing up here.

If you prefer to start your campaign immediately, go to:
https://adcenter.msn.com/AuthorizeUser.aspx.

You will need to use qiology@aol.com to sign up.

As this is a pilot program we need and want your input so that we can make adCenter even better. Please feel free to provide feedback and suggestions to our adCenter Support Team through the link below.

We look forward to working with you.

Sincerely,

The MSN adCenter Team

To learn more about QuickLaunch, go to the QuickLaunch program page.

Share the benefits of adCenter - refer your friends and colleagues to the pilot today.

Please contact the adCenter Support Team if you encounter any trouble signing up  or would like to provide feedback.

*For a limited time, this service is offered free of charge.

This invitation is nontransferable and there is only one sign-up per invitation. In addition, there will be a 5¢ minimum CPC on keywords and a one-time $5 administrative sign up fee. During the U.S. pilot, MSN adCenter will be delivering text-based advertisements on up to 25 percent of MSN Search traffic.

View the system requirements for adCenter.

© 2006 Microsoft Corporation. All rights reserved. Microsoft and MSN are registered trademarks of Microsoft Corporation in the United States and/or other countries.

Wednesday, April 05, 2006 America Online: Qiology

# Pilot Signup

Thanks for your interest in the US Pilot of MSN adCenter!

Please complete the form below to apply to participate or if you would like to stay informed about the program. We are collecting the information to help us with the selection process. You will be invited via email if you are selected to participate.

Find out more about the US adCenter pilot

adCenter Pilot Signup Form
* = Required

System Information

**Which Web browser do you use? ***
Microsoft Internet Explorer ▾

Contact Information

**First Name ***
Chris

**Last Name ***
Langdon

**Your Job Title ***
Small Business Owner ▾

**Phone ***
407-647-7539

**E-mail ***
qiology@aol.com

**Company Name ***
Self-employed

**Street Address**
1835 Edwin Blvd.

**City**
Winter Park

**State**
Florida

**Postal Code**
32789

**Country ***
United States ▾

Company Information

**URL ***
www.chinaisevil.com

**Company Type ***
Advertiser ▾

**Which category best describes the Web content you want your keywords to drive to? ***
News ▾

**What other countries/regions would you be interested in targeting with paid search advertising? ***

| | | | |
|---|---|---|---|
| ☐ Australia | ☐ France | ☐ Latin America | ☐ South Africa |
| ☐ Austria | ☐ Germany | ☐ Malaysia | ☐ Spain |
| ☐ Belgium | ☐ Hong Kong SAR | ☐ Mexico | ☐ Sweden |
| ☐ Brazil | ☐ India | ☐ Netherlands | ☐ Switzerland |
| ☑ Canada | ☐ Indonesia | ☐ New Zealand | ☐ Taiwan |
| ☐ China | ☐ Ireland | ☐ Norway | ☐ Thailand |

☐ Denmark              ☐ Italy                ☐ Phillippines          ☐ Turkey

☐ Finland              ☐ Japan                ☐ Singapore             ☐ United Kingdom

**Is your target audience limited to a specific region within your country?**

No

**How much is your total search budget per month (USD)?**

$0 - $499    ▼

**How many years of P4P advertising experience do you have? ***

Less than one year    ▼

**How many keywords do you currently manage? ***

0 - 99    ▼

**Where are you currently buying search advertising?**

☐ Google

☐ Overture (Yahoo)

☐ FindWhat

☐ Kanoodle

☐ Other

☑ I am not currently buying search advertising.

**Are you currently buying search advertising on a local commerce site (Yellow Book, Citysearch.com, local newspaper)? If so, please specify**

Additional Information

**How did you hear about MSN adCenter?**

MSN Advertising Web site    ▼

**Are you interested in applying to participate in the U.S. Pilot of MSN adCenter?**

Yes    ▼

**If a source code was included on the communication you saw, please input it here**

msnactea@email.micrisoft.com

**Comments**

☐ I would like to receive updates on MSN adCenter information

Submit