IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CHRISTOPHER LANGDON, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 06-319 (JJF) |
| | : | |
| GOOGLE INC., d/b/a DELAWARE GOOGLE, | : | |
| INC., YAHOO! INC., TIME-WARNER | : | |
| COMPANIES, INC., and MICRO-SOFT | : | |
| CORPORATION, | : | |
| | : | |
| Defendants. | : | |

**OPENING BRIEF IN SUPPORT OF
DEFENDANT GOOGLE INC.'S MOTION TO DISMISS**

PROCTOR HEYMAN LLP
Kurt M. Heyman (# 3054)
Email:  kheyman@proctorheyman.com
Patricia L. Enerio (# 3728)
Email:  penerio@proctorheyman.com
1116 West Street
Wilmington, DE 19801
(302) 472-7300

Attorneys for Defendant Google Inc.

OF COUNSEL:

WILSON SONSINI GOODRICH & ROSATI PC
David H. Kramer
Colleen Bal
Bart E. Volkmer
650 Page Mill Road
Palo Alto, CA  94304
(650) 493-9300

Tonia Ouellette Klausner
12 East 49th Street, 30th Floor
New York, NY 10017
(212) 999-5800

Dated: July 24, 2006

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................1

FACTUAL ALLEGATIONS .................................................................................1

    A.    The Parties ..........................................................................................1

    B.    Plaintiff's Participation in Google's AdWords Program..........................2

    C.    The Current Lawsuit ...........................................................................4

I.     LEGAL STANDARD ...............................................................................6

II.    THE COMPLAINT FAILS TO STATE A CLAIM FOR VIOLATION OF THE U.S. OR DELAWARE CONSTITUTION ...........................................6

    A.    The Complaint Fails to State a Claim Under the First Amendment or the Delaware Constitution ................................................................7

         1.    Google is Not Obligated to Afford First Amendment Protections On or Through its Private Property ..........................9

         2.    Google is Not Entwined with the Government...........................11

         3.    The Delaware Constitution Does Not Expand First Amendment Protection Beyond the U.S. Constitution ...............12

    B.    The Remedy Requested by Plaintiff Would Violate Google's Free Speech Rights ...........................................................................14

    C.    The Complaint Fails to State A Claim for Violation of the Commerce Clause. ...........................................................................15

III.   THE COMPLAINT FAILS TO STATE AN ANTITRUST CLAIM UNDER U.S. OR DELAWARE LAW .......................................................15

    A.    Plaintiff Does Not State a Claim Under Section 1 of the Sherman Act...........................................................................................16

    B.    Plaintiff Does Not State a Claim Under Section 2 of the Sherman Act...........................................................................................16

         1.    Plaintiff's "Shared Monopoly" Claim is Not Cognizable ..........16

         2.    Plaintiff Has Not Alleged a Relevant Market..............................18

         3.    Defendants' Alleged Discriminatory Pricing is Not Actionable...........................................................................19

C.    Plaintiff Has No Private Right of Action Under Delaware's
Antitrust Law ...................................................................................20

IV.    THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE
COMMUNICATIONS ACT ...........................................................................20

V.    THE COMPLAINT FAILS TO STATE A CLAIM FOR FRAUD ...................23

A.    Google's Explanation for Rejecting Plaintiff's Ads Does Not
Support a Claim for Fraud. ..............................................................23

B.    Google's Alleged Removal of Plaintiff's Website From Its
Search Results Does Not Support a Claim for Fraud. ............................24

CONCLUSION.................................................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*America Online, Inc. v. GreatDeals.Net*, 49 F. Supp. 2d 851 (E.D. Va. 1999) ................................................................................................ 21

*Asociacion de Trabajadores Agricolas de Puerto Rico v. Green Giant Co.*, 518 F.2d 130 (3d Cir. 1975) .......................................................... 10

*Associates & Aldrich Co. v. Times Mirror Co.*, 440 F.2d 133 (9th Cir. 1971) ...................................................................................... 11, 14

*Avins v. Rutgers, State University of N. J.*, 385 F.2d 151 (3d Cir. 1967) ..................... 14

*Beyer Farms, Inc. v. Elmhurst Dairy, Inc.*, 2001-1 Trade Cas. ¶ 73,239 (E.D.N.Y. 2001) .......................................................................... 16

*Blatty v. N.Y. Times Co.*, 42 Cal. 3d 1033 (1986) ......................................... 26

*Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288 (2001) ............................................................................ 11, 12

*Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036 (9th Cir. 1999) ................................................................................ 8

*Brown Shoe Co. v. U.S.*, 370 U.S. 294 (1962) ............................................... 18

*Browne v. Robb*, 583 A.2d 949 (Del. 1990) ............................................ 24, 26

*Brzoska v. Olson*, 668 A.2d 1355 (Del. 1995) ............................................... 25

*CTS Corp. v. Dynamics Corp. of America*, 481 U.S. 69 (1987) .......................... 15

*Cable Investments, Inc. v. Woolley*, 867 F.2d 151 (3d Cir. 1989) ...................... 9, 10

*CompuServe Inc. v. Cyber Promotions, Inc.*, 962 F. Supp. 1015 (S.D. Ohio 1997) ................................................................................ 8, 21

*Cornelius v. NAACP Legal Defense and Educational Fund, Inc.*, 473 U.S. 788 (1985) ............................................................................ 10

*Cyber Promotions, Inc. v. America Online, Inc.*, 948 F. Supp. 436 (E.D. Pa. 1996) ...................................................................................... 7

*DiSabatino v. U.S. Fidelity & Guar. Co.*, 635 F.Supp. 350 (D.Del. 1986) ................... 25

*FCC v. Midwest Video Corp.*, 440 U.S. 689 (1979) ....................................................... 20

*Feuster v. Conrail*, No. 91C-09-013, 1994 Del. Super. LEXIS 472 (Del.
    Super. Sept. 16, 1994) .................................................................................... 12

*Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171 (3d Cir. 1992) ..................... 18

*Flash Electronics, Inc. v. Universal Music & Video Distribution Corp.*,
    312 F. Supp. 2d 379 (E.D.N.Y. 2004) ......................................................... 17, 18

*Floors-N-More Inc. v. Freight Liquidators*, 142 F.Supp.2d 496
    (S.D.N.Y. 2001) ................................................................................................. 16

*Floyd v. Brown & Williamson Tobacco Corp.*, 159 F. Supp. 2d 823 (E.D.
    Pa. 2001) ............................................................................................................ 23

*Gannett Co., Inc. v. State*, 571 A.2d 735 (Del. 1990) ................................................... 12

*Green v. America Online*, 318 F.3d 465 (3d Cir. 2003) ............................................. 7, 8

*Harman v. Masoneilan Intern., Inc.*, 442 A.2d 487 (Del. 1982) ................................... 24

*Helman v. State*, 784 A.2d 1058 (Del. 2001) ............................................................... 13

*Higgins v. Beyer*, 293 F.3d 683 (3d Cir. 2002) ............................................................ 13

*Howard v. America Online Inc.*, 208 F.3d 741 (9th Cir. 2000) ........................... 7, 21, 22

*Hudgens v. NLRB*, 424 U.S. 507 (1976) ............................................................... 7, 9, 10

*Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston,
    Inc.*, 515 U.S. 557 (1995) ................................................................................. 14

*ID Security Sys. Canada, Inc. v. Checkpoint Systems, Inc.*, 249 F. Supp.
    2d 622 (E.D. Pa. 2003) ..................................................................................... 17

*In re Second Computer Inquiry*, 77 F.C.C.2d 384, 1980 WL 233301
    (Apr. 7, 1980) .................................................................................................... 22

*Island Online, Inc. v. Network Solutions, Inc.*, 119 F. Supp. 2d 289
    (E.D.N.Y. 2000) ................................................................................................... 8

*Kirtley v. Rainey*, 326 F.3d 1088 (9th Cir. 2003) ....................................................... 11

*Kost v. Kozakiewicz*, 1 F.3d 176 (3d Cir. 1993) ........................................................... 6

*Langford v. Atlantic City*, 235 F.3d 845 (3d Cir. 2000) ................................... 6

*Leshko v. Servis*, 423 F.3d 337 (3d Cir. 2005) ............................................... 7

*Lloyd v. Tanner*, 407 U.S. 551 (1972) ......................................................... 10

*Lorain Journal Co. v. U.S.*, 342 U.S. 143, 72 S. Ct. 181 (1951) .................................. 20

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982) ........................................... 7

*Maddock v. Greenville Retirement Community, L.P.*, Civil Action No.
12564, 1997 Del. Ch. LEXIS 24 (Del. Ch., Feb. 26, 1997) ............................. 20

*Marsh v. Alabama*, 326 U.S. 501 (1946) ...................................................... 10

*Mathews v. Lancaster General Hospital*, 87 F.3d 624 (3d Cir. 1996) ........................ 16

*McCracken v. Raghbir*, 2004 WL 2326378 (D. Del. Oct. 7, 2004) .............................. 23

*Miami Herald Pub. Co. v. Tornillo*, 418 U.S. 241 (1974) ................................... 14

*Morrow v. USA Today Newspaper.*, 1988 WL 52833 (S.D.N.Y. 1988) ...................... 11

*Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 125 S. Ct.
2688 (2005) .................................................................................... 21, 22

*National Private Truck Council, Inc. v. Oklahoma Tax Com'n*, 515 U.S.
582 ............................................................................................. 15

*Noah v. AOL Time Warner, Inc.*, 261 F. Supp. 2d 532 (E.D. Va. 2003),
*aff'd*, 2004 WL 602711 (4th Cir. 2004) ....................................................... 7

*Novak v. Overture Servs., Inc.*, 309 F. Supp. 2d 446 (E.D.N.Y. 2004) ...................... 22

*Official Airline Guides, Inc. v. FTC*, 630 F.2d 920 (2d Cir. 1980) ............................. 19

*Pacific Gas & Elec. Co. v. Pub. Utilities Comm'n of Cal.*, 475 U.S. 1
(1985) ......................................................................................... 14

*Parker v. Google Inc.*, 422 F. Supp. 2d 492 (E.D. Pa. 2006) ......................................... 22

*Pastore v. Bell Telephone Co. of Pennsylvania*, 24 F.3d 508 (3d Cir.
1994) ........................................................................................... 18

*Pryor v. Nat'l Collegiate Athletic Assoc.*, 288 F.3d 548 (3d Cir. 2002) ......................... 2

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430 (3d Cir. 1997) .................................................................................................. 18

*Radich v. Goode*, 886 F.2d 1391 (3d Cir. 1989)................................................. 9

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 907 F. Supp. 1361 (N.D. Cal. 1995) ................................................................ 21

*Resident Participation of Denver, Inc. v. Love*, 322 F. Supp. 1100 (D. Colo. 1971) ..................................................................................... 11

*Rosman v. Fleet Bank Nat'l Assoc.*, 280 F.3d 384 (3d Cir. 2002)................... 2

*Santana Products, Inc. v. Sylvester & Assocs., Ltd.*, 249 F. Supp. 2d 463 (M.D. Pa. 2003) ................................................................................... 17

*Search King, Inc. v. Google Tech., Inc.*, 2003 WL 21464568 (W.D. Okla. May 27, 2003) ............................................................................. 25

*Sipple v. Kaye*, 1995 WL 654139 (Del. Super. Oct. 30, 1995)....................... 24

*Smith v. Delaware First Federal Credit Union*, 395 F. Supp. 2d 127 (D. Del. 2005) ............................................................................................. 12

*Standfacts Credit Sers., Inc. v. Experian Information Solutions, Inc.*, 405 F. Supp. 2d 1141 (C.D. Cal. 2005) .................................................... 17

*State v. Elliot*, 548 A.2d 28 (Del. 1988) .......................................................... 13

*Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069 (Del. 1983)........................ 23

*Sun Dun, Inc. v. Coca-Cola Co.*, 740 F. Supp. 381 (D. Md. 1990)................ 17

*Thomas v. Network Solutions, Inc.*, 176 F.3d 500 (D.C. Cir. 1999)................. 8

*Toner v. Allstate Ins. Co.*, 821 F. Supp. 276 (D. Del. 1993) .......................... 26

*Twin Coach Co. v. Chance Vought Aircraft, Inc.*, 163 A.2d 278 (Del. Super. 1960)........................................................................................... 25

*Ward v. Hildebrand*, 1996 WL 422336 (Del. Ch. July 8, 1996) .............. 24, 25

*Williams v. Potter*, 384 F. Supp. 2d 730 (D. Del. 2005)................................... 2

# STATUTES

42 U.S.C. § 1983.................................................................................................. 6, 13

§ 47 U.S.C. 230(c) ................................................................................................. 22

47 C.F.R. § 64.702(a) ........................................................................................... 22

47 U.S.C. § 223(e)(6) ........................................................................................... 22

47 U.S.C. § 230 ..................................................................................................... 22

Del. Code Ann. Tit. 6, §§ 2101-2114 (1993)...................................................... 20

Del. Code Ann. Tit. 6, § 2108 (1993) .................................................................. 20

Del. Const. art. I, § 5............................................................................................ 12

Fed. R. Civ. P. 9(b) .............................................................................................. 23

Fed. R. Civ. P. 12(b)(6) ......................................................................................... 6

## INTRODUCTION

*Pro se* plaintiff Christopher Langdon ("Plaintiff") believes he was somehow wronged by the North Carolina Attorney General ("Attorney General"). He took this discontent online, establishing an Internet website attacking the Attorney General. He then sought to bring his grievance to a wider audience by asking defendant Google Inc. ("Google") to display advertisements for the website across Google's advertising network. Specifically, Plaintiff asked Google to display advertisements calling the Attorney General corrupt and a fraud. Google declined, citing a general desire to avoid advertisements that advocate against a particular person or entity, and similarly rejected other ads that Plaintiff subsequently proffered. By this action, Plaintiff seeks to override Google's editorial discretion and asks this Court to commandeer Google's private property for Plaintiff's promotional purposes.

In a stream of consciousness Complaint, Plaintiff alleges that, by declining to carry his advertisements, Google is: (1) violating his Free Speech Rights; (2) violating the Commerce Clause; (3) violating the antitrust laws; and (4) violating provisions of the Communications Act applicable only to common carriers. For good measure, Plaintiff also includes the word "fraud," without any supporting allegations, in his Complaint. The claims are frivolous and Plaintiff comes nowhere close to pleading facts sufficient to support them. Accordingly, Plaintiff's Complaint should be dismissed with prejudice.

## FACTUAL ALLEGATIONS

### A.    The Parties

Plaintiff Christopher Langdon is an individual residing in Orange County, Florida. *See* Complaint at 1 and Civil Cover Sheet. Langdon publishes two Internet websites. Complaint at 1. His website located at www.ncjusticefraud.com purports to

"expose[] some of the fraud perpetrated on the U.S. Supreme Court and other courts" by North Carolina Attorney General Roy Cooper and certain of his colleagues. *Id.* Plaintiff's other website, located at www.chinaisevil.com, criticizes the Chinese government. *Id.*

Defendant Google, Inc. ("Google") operates a well-known Internet search engine and an advertising program known as "AdWords." *See* Complaint at 13-14. Advertisers who sign up to participate in the AdWords program seek to have their advertisements (often called "sponsored links") displayed alongside the search results that Google returns to users when hey search for particular terms or "keywords." *See id.* at 1-2.

### B.    Plaintiff's Participation in Google's AdWords Program

Early this year, Plaintiff opened an AdWords account with Google seeking to participate as an advertiser in Google's AdWords Program. *See* Complaint at 4. Throughout his Complaint, Plaintiff quotes from the Google policies that governed his participation in the AdWords Program. Notably, Plaintiff quotes from and attaches (as Appendix I to this Complaint) Google's Content Policy in which Google lists prohibited types of advertisements and explains that: "Application of our policies will always involve an element of discretion and we reserve the right to reject or approve any ads." Complaint, Appendix I ("Content Policy").[1]  The Content Policy also references the

---

[1]  In deciding a motion to dismiss, the Court may consider any exhibits attached to the complaint as well as documents attached to the motion to dismiss which form the basis of the plaintiff's claims. *See Rosman v. Fleet Bank Nat'l Assoc.*, 280 F.3d 384, 388 n. 4 (3d Cir. 2002). In addition, documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered. *Pryor v. Nat'l Collegiate Athletic Assoc.*, 288 F.3d 548, 559-60 (3d Cir. 2002) *quoting* 62 Fed. Proc., L.Ed. § 62:508; *Williams v. Potter*,  384 F. Supp. 2d 730, 733 n. 4 (D. Del. 2005) (considering defendant's written denial of benefits to plaintiff in evaluating motion to dismiss even though plaintiff did not rely on writing itself because plaintiff's claims were based upon denial).

AdWords Terms and Conditions, the controlling agreement between Plaintiff and Google, which makes clear that Google "may reject or remove an advertisement for any or no reason." *See* Declaration of David DiNucci, Ex. A at ¶ 2.  Thus, when Plaintiff signed up for the AdWords Program, he was on notice that Google might choose not to display his advertisements on Google's network.

Plaintiff first asked Google to display an advertisement promoting his website at www.ncjusticefraud.com.  Complaint at 1.  The text of Plaintiff's proposed ad read:

> Roy Cooper's Fraud
> Cooper's fraud on the Supreme Court
> Corruption within the N.C.D.O.J.
> www.ncjusticefraud.com

Complaint at 2 and Appendix I.  On March 3, 2006, Google rejected the ad because it found the content unacceptable.  Complaint at 2 and Appendix I.  In an email to Plaintiff, Google explained its decision:

> At this time, Google does not permit ad text that advocates against an individual, group or organization.  In addition, this policy does not permit the advertisement of websites that advocate against a group protected by law.  As noted in our advertising terms and conditions, we reserve the right to exercise editorial discretion when it comes to the advertising we accept on our site . . . .

*Id.*  Google asked Plaintiff to revise his ad consistent with its Content Policy.  Appx. I. Plaintiff then proposed another ad reading:

> Roy Cooper
> The truth about Roy Cooper
> the North Carolina Attorney General

Google rejected this second ad on March 6, 2006, citing the same reasons.  Complaint at 3 and Appendix I.

On March 29, 2006, Plaintiff attempted to place an ad promoting another website, www.chinaisevil.com, which he proposed to read:

> Communist China

Has Murdered Millions
Boycott China

Complaint at 4.  On April 4, 2006, Plaintiff cancelled his ad program and his entire Google AdWords Account because he believed Google had taken too long to review this ad for compliance under its Content Policy.  *Id.* at 5.  At Plaintiff's request, Google refunded his $5.00 enrollment fee.  *Id.* at 13.  According to Plaintiff, Google then dropped his website from certain of its search results.  *Id.* at 13-14.

### C.    The Current Lawsuit

It is difficult to ascertain the claims for relief asserted by Plaintiff in his Complaint because he does not separately identify them.  But construing his allegations liberally, Plaintiff appears to claim that by declining to display Plaintiff's ads for www.ncjusticefraud.com and www.chinaisevil.com, Google: violated Plaintiff's right to free speech under the United States Constitution and the Delaware Constitution; violated the Commerce Clause; violated federal and Delaware antitrust laws; violated the Communications Act; and possibly committed fraud.  Plaintiff, however, fails to allege facts sufficient to state any of these claims.

### SUMMARY OF THE ARGUMENT

1.    Plaintiff does not and cannot state a claim against Google for violation of his civil rights under the First and Fourteenth Amendments to the United States Constitution, for violation of his right to free speech under the Delaware Constitution, or for violation of the Commerce Clause, because Google is not a state actor.  The "public forum" doctrine Plaintiff relies upon applies only where private property becomes a substitute for government property, such as in the case of a company town. It does not apply to online service providers, particularly one that Plaintiff makes clear does not open its advertising space to the public for unfettered speech, but rather exercises editorial discretion over the ads it accepts.  The government entanglement

theory also does not save Plaintiff's free speech claims, because the Complaint does not and cannot allege in good faith that the government has any, much less significant, involvement in either the Google AdWords Program, or Google's decisions regarding Plaintiff's advertisements. Plaintiff's claim under the Delaware Constitution necessarily fails for the same reasons as his free speech claim under the federal Constitution fail, because the free speech provision of the Delaware Constitution has the same scope as the federal First Amendment. Additionally, because Plaintiff is a citizen of Florida and all the conduct at issue took place in California, there is no basis for his claim seeking redress under the Delaware Constitution. Finally, Plaintiff's free speech claims also must be dismissed because the relief sought would violate Google's First Amendment right to exercise editorial discretion over the advertisements it displays.

     2.    The Complaint fails to state an antitrust claim under either federal or Delaware law. Plaintiff does not state a claim under Section 1 of the Sherman Act because the Complaint does not contain allegations that, even if they could be proven, would amount to concerted illegal activity by the defendants. Plaintiff does not state a claim under Section 2 of the Sherman Act because Plaintiff impermissibly aggregates the market shares of all of the defendants—a theory that consistently has been rejected by the courts. Plaintiff also does not even attempt to define the relevant product and geographic market, a prerequisite to stating a Section 2 claim. Additionally, the Complaint independently fails to state a claim under the Sherman Act because the harm alleged is to small advertisers, and not to competition in the relevant market—here Internet search engines. There also can be no claim under the Delaware Antitrust Act, because that statute does not provide for a private right of action.

     3.    Plaintiff's attempt to assert a claim against Google under the Communications Act is specious because Google is not a "common carrier." In operating its search engine and displaying advertisements with search results, Google is

indistinguishable from an electronic newspaper.    Google does not provide communication facilities to the public through which individuals may communicate information of their own choosing.  Moreover, Google provides "enhanced" rather than basic services.

      4.    The Complaint also fails to state a claim for common law fraud because it does not allege facts supporting each element of a fraud claim, let alone with the specificity required by Rule 9(b).

## ARGUMENT

## I.    LEGAL STANDARD

      Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Under Rule 12(b)(6), courts "must accept as true the factual allegations in the [c]omplaint and all reasonable inferences that can be drawn therefrom."  *Langford v. Atlantic City*, 235 F.3d 845, 847 (3d Cir. 2000).  However, courts are "not required to accept legal conclusions either alleged or inferred from the pleaded facts." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

## II.    THE COMPLAINT FAILS TO STATE A CLAIM FOR VIOLATION OF THE U.S. OR DELAWARE CONSTITUTION

      Langdon first contends that by electing not to display his advertisements, Google has deprived him of his civil rights under the First and Fourteenth Amendments to the United States Constitution.  These claims under 42 U.S.C. § 1983, along with Langdon's free speech claim under the Delaware Constitution, fail because Google is not a state actor, and there is no exception to the "state action" requirement recognized under either the U.S. or the Delaware Constitution.  Indeed, in seeking through his claims to force Google to carry his advertisements, Langdon asks the Court to violate *Google's* First Amendment rights.

**A.    The Complaint Fails to State a Claim Under the First Amendment or the Delaware Constitution**

The First Amendment provides that "*Congress* shall make no law . . . abridging freedom of speech." U.S. Const. amend. I (emphasis added). Applied to the states through the Fourteenth Amendment, "the constitutional guarantee of free speech is a guarantee only against abridgement by government." *Hudgens v. NLRB*, 424 U.S. 507, 513 (1976). Put differently, the First Amendment governs state actors, not private parties. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982) ("Our cases have accordingly insisted that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State."). The state action requirement also applies to actions under Section 1983. *See Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) ("Section 1983 subjects to liability those who deprive persons of federal constitutional or statutory rights 'under color of any statute, ordinance, regulation, custom, or usage' of a state. We consider actions 'under color of law' as the equivalent of 'state action' under the Fourteenth Amendment.").

The determination of whether a party is a state actor and obligated to safeguard First Amendment rights of others is a pure question of law for the Court and is routinely decided under Rule 12(b)(6). *See, e.g., Green v. America Online*, 318 F.3d 465, 471 (3d Cir. 2003) (affirming motion to dismiss and ruling that plaintiff's First Amendment claim against AOL was meritless); *Howard v. America Online Inc.*, 208 F.3d 741, 754 (9th Cir. 2000) (affirming dismissal of First Amendment claim against Internet service provider on ground that it is not a state actor despite plaintiff's contention that it is a "quasi-public utility" that "involv[es] a public trust" and is responsible for Internet access and communications for millions of users); *Cyber Promotions, Inc. v. America Online, Inc.*, 948 F. Supp. 436, 441 (E.D. Pa. 1996) (dismissing First Amendment claim against AOL as a matter of law on ground that it is not a state actor); *Noah v. AOL*

*Time Warner, Inc.*, 261 F. Supp. 2d 532 (E.D. Va. 2003), *aff'd*, 2004 WL 602711 (4th Cir. 2004) (same); *CompuServe Inc. v. Cyber Promotions, Inc.*, 962 F. Supp. 1015, 1025-26 (S.D. Ohio 1997) (dismissing First Amendment claim against Internet service provider as a matter of law due to absence of state action).

In this case, the question is easily resolved. Plaintiff's allegations make clear that Google is a for-profit, private corporation owned by its shareholders. *See* Complaint at 1 (caption identifying Google as a corporation); 1-5 (describing Google's for-profit AdWords program); 5-12 (acknowledging Google's private property in its search engine); 15 (describing Google's business relationship with AOL); 25 (describing Google's market share in the search engine market). Google is not a state actor.[2]

Presumably recognizing that Google is a private party and not the government, Plaintiff contends that Google should be treated as a state actor because: (1) Google's private search engine is allegedly "a public forum"; and (2) Google's actions are

---

[2] In *Green*, the Third Circuit rejected the plaintiff's argument that AOL was transformed into a state actor because it provided an Internet connection permitting users to access government websites and allowed members of the public to communicate via email. 318 F.3d at 471. The same analysis and result apply with equal or greater force to Google, which, according to Plaintiff's own allegations, merely allows users to search for information on the Internet. *See, e.g.,* Complaint at 5-6 (describing Google as a search engine); *see also Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1045 (9th Cir. 1999) (describing a search engine: "When a keyword is entered, the search engine processes it through a self-created index of web sites to generate a (sometimes long) list relating to the entered keyword. Each search engine uses its own algorithm to arrange indexed materials in sequence, so the list of web sites that any particular set of keywords will bring up may differ depending on the search engine used."). Indeed, even companies involved in the operation of the Internet itself uniformly have been found not to be state actors. *See, e.g., Thomas v. Network Solutions, Inc.,* 176 F.3d 500 (D.C. Cir. 1999) (management of Internet domain name system not a "quintessential" government service); *Island Online, Inc. v. Network Solutions, Inc.*, 119 F. Supp. 2d 289, 304-307 (E.D.N.Y. 2000) (corporation with government-authorized monopoly over Internet domain name system not a state actor).

entwined or entangled with the government. These contentions are squarely foreclosed by longstanding Supreme Court precedent.

### 1.    Google is Not Obligated to Afford First Amendment Protections On or Through its Private Property

According to Plaintiff: "The internet, and search engines like Google, are public forums, therefore, Google cannot enforce its prior restraint of free speech . . . ." Complaint at 5. That is a gross misstatement of law. Decades ago the Supreme Court held that private property owners are not subject to the First Amendment by virtue of their property being "open to the public." *See Hudgens v. NLRB*, 424 U.S. 507, 513 (1976) ("while statutory or common law may in some situations extend protection or provide redress against a private corporation or person who seeks to abridge the free expression of others, no such protection or redress is provided by the Constitution itself."). The *Hudgens* Court categorically rejected the notion of a First Amendment right to access private property for speech. *See id.*, 424 U.S. at 520 (where a party claimed the right to speak in a publicly accessible, but privately owned shopping center, "the constitutional guarantee of free expression has no part to play"). As a result, under federal First Amendment law, a private property owner does not assume First Amendment obligations simply because it opens its property to public access. *See Radich v. Goode*, 886 F.2d 1391, 1398 (3d Cir. 1989) ("The first and fourteenth amendments, however, do not prevent an individual from restricting the exercise of free speech on private property. Private property has been treated as public property for first amendment purposes only when such property has all of the characteristics of a town."); *Cable Investments, Inc. v. Woolley*, 867 F.2d 151, 161-62 (3d Cir. 1989) (rejecting claim that apartment complex owners violated plaintiff's First Amendment rights by

refusing to permit plaintiff to offer cable television service to tenants because defendant's conduct was "not the conduct of the state or a municipality").[3]

Even if private property owners could theoretically assume free speech obligations by making their property publicly accessible, Plaintiff's claim against Google would still fail because Google's advertising space is not open to the public for unfettered speech. Plaintiff's own allegations emphasize the fact that Google restricts the ads appearing on its site to those that both meet its content guidelines and for which advertisers have paid. *See* Complaint at 2-3, 13 Appendix I at Google's AdWords Content Policy ("[W]e maintain high standards for ads accepted into the AdWords program....To run your ads on Google...you must adhere to both our content and editorial policies....Application of our policies will always involve an element of discretion and we reserve the right to reject or approve any ads"). Google's advertising space is thus the opposite of private property that has been dedicated as a public speech forum. It is private property over which Google expressly exercises editorial control. Under virtually identical circumstances, the Ninth Circuit Court of Appeals made plain

―――――――――――――

[3] Looking for something upon which to predicate an exception for private property open to the public, Plaintiff alleges that the Supreme Court has not overruled *Marsh v. Alabama*, 326 U.S. 501 (1946) (holding that owners of a company town were subject to constitutional constraints). Complaint at 5. *Marsh* does not help Plaintiff here. The Third Circuit has noted that "*Marsh* has been construed narrowly" and that the doctrine announced in that case is only applicable where a private party "become[s] a substitute for a municipal government . . . ." *Cable Investments*, 867 F.2d at 162. Because Google does not own a municipality or function as a government equivalent, *Marsh* has no applicability. Equally unavailing are Plaintiff's other cases. *Cornelius v. NAACP Legal Defense and Educational Fund, Inc.*, 473 U.S. 788 (1985) described the conditions in which the government may control access to speech depending on the classification of the government property at issue. It did not address whether opening private property to the public would somehow subject the owner to First Amendment constraints. Any dicta in *Lloyd v. Tanner*, 407 U.S. 551 (1972) supporting the contention that the First Amendment might apply to owners of private shopping centers in certain circumstances (*e.g.*, speech directed to the operation of the shopping center itself) was rejected by the Court in *Hudgens*. 424 U.S. at 514-21. *Asociacion de Trabajadores Agricolas de Puerto Rico v. Green Giant Co.*, 518 F.2d 130 (3d Cir. 1975), decided before *Hudgens*, is likewise inapposite for that reason.

that there is no basis under the constitution or otherwise to require a private party like Google to carry another's advertisements:

> We can find nothing in the United States Constitution, any federal statute, or any controlling precedent that allows us to compel a private newspaper to publish advertisements without editorial control of their content merely because such advertisements are not legally obscene or unlawful.

*See Associates & Aldrich Co. v. Times Mirror Co.*, 440 F.2d 133, 136 (9th Cir. 1971); *see also Morrow v. USA Today Newspaper.*, 1988 WL 52833 at * 1 (S.D.N.Y. 1988) ("The First Amendment places no limit on private conduct, absent a showing of state action. A private newspaper's refusal to carry a classified advertisement manifests no element of state action, and is thus not prohibited under the First Amendment."); *Resident Participation of Denver, Inc. v. Love*, 322 F. Supp. 1100, 1101-05 (D. Colo. 1971) (newspaper's refusal to print an advertisement did not violate the First Amendment). The same principle applies here.  Google does not, by virtue of enabling advertisers to display advertising messages on the pages of its website, become a state actor or assume Constitutional obligations.

## 2.    Google is Not Entwined with the Government

Plaintiff also claims that Google is obligated to extend First Amendment protections to him because Google is allegedly "entangled" with the government. Again, Plaintiff misapprehends the law.  Under an entanglement theory a private party must be so entwined with the government *with respect to the specific conduct at issue*, "that seemingly private behavior may be fairly treated as that of the State itself." *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (requiring "a close nexus between the State and the challenged action").  Whether an entity is so "entangled" to meet this test is routinely determined on a motion to dismiss. *See, e.g, Kirtley v. Rainey*, 326 F.3d 1088, 1094-95 (9th Cir. 2003) (affirming dismissal

where defendant's alleged actions not fairly attributable to the state under *Brentwood*); *Smith v. Delaware First Federal Credit Union*, 395 F. Supp. 2d 127, 130 (D. Del. 2005) (dismissing claim under Rule 12(b)(6) where credit union was not a state actor as a matter of law).

Plaintiff cites a laundry list of examples in which the government has been generally involved with the Internet. Complaint at 7-10 (alleging that the Internet was developed by the government, government employees access the Internet, the government allows access to the Internet and the government is involved with Internet infrastructure). These allegations are irrelevant because Google is not the Internet. Google simply operates a service that allows businesses to advertise on certain websites that participate in Google's network. This action arises from Google's choice not to display Plaintiff's advertisements on those websites. The government has no role, and is not alleged to have a role, either in Google's advertising operations in general or the specific decision upon which Plaintiff bases his claims. Accordingly, Google's actions cannot be fairly attributed to the state under *Brentwood*, and Google cannot plausibly be deemed a state actor. *See Brentwood,* 531 U.S. at 295.

### 3.    The Delaware Constitution Does Not Expand First Amendment Protection Beyond the U.S. Constitution

Because Plaintiff's First Amendment claim fails, so too does his Delaware free speech claim, as the two Constitutional provisions have the same scope. *See Gannett Co., Inc. v. State*, 571 A.2d 735, 741 n.9 (Del. 1990) (holding Del. Const. art. I, § 5 has the same scope as the federal First Amendment); *Feuster v. Conrail*, No. 91C-09-013, 1994 Del. Super. LEXIS 472 at *4-5 (Del. Super. Sept. 16, 1994) ("The free press provision of the Constitution of the State of Delaware has the same scope as the First Amendment.").

-12-

Plaintiff cites *State v. Elliot*, 548 A.2d 28, 29 (Del. 1988) in his Complaint for the proposition that private property owners must allow individuals access to their property for speech under Delaware's Constitution. Complaint at 21. *Elliot* stands for nothing of the sort. Indeed, the *Elliot* court made clear that it was not expanding the reach of the Delaware Constitution beyond the protection accorded by the First Amendment, or even interpreting the Delaware Constitution at all. *Elliot*, 548 A.2d at 31 n.5 ("This Court does not presently decide whether the Delaware Constitution provides equal or greater such leverage than the Federal Constitution. Since, at a minimum, Delaware's protection must be equal to the Federal Constitution, this case decision pertains only to the Federal Constitution").[4]

In any event, Plaintiff is a citizen of Florida, not Delaware, and does not allege that any of the events relevant to this case took place in Delaware. Plaintiff therefore has no claim under the Delaware Constitution. *See, e.g.,* Delaware Constitution, Article I, Section 5 (granting freedom of the press to *citizens*); *Helman v. State*, 784 A.2d 1058, 1071 (Del. 2001) (noting that the open courts clause "secures a Delaware *citizen's* right to seek redress in the Courts of this State for an injury done to him or her") (emphasis added).[5]

---

[4] The court in *Elliot* affirmed trespassing convictions of parties who sought to speak on private property ruling that the property owner had not "devote[d] its property to public use such that it was subject to expressional obligations." *Id.* at 34. Likewise, Google has not dedicated its advertising space to the public for free discourse. As Plaintiff's allegations make clear, Google alone controls the content of its advertising program. Thus, even if *Elliot* could be read to require private property owners to provide free speech guarantees in limited circumstances (which is certainly not a holding of the *Elliot* court), the *Elliot* decision would militate against such an accommodation here.

[5] The statute upon which Plaintiff bases his Constitutional claims, 42 U.S.C. § 1983, affords a private right of action only for violations of a *federal* right. *See Higgins v. Beyer*, 293 F.3d 683, 689 (3d Cir. 2002) ("In order to state a claim under § 1983, a plaintiff must allege a violation of a federal right . . . .") (citation and quotation omitted). For this reason as well,
(continued...)

**B.    The Remedy Requested by Plaintiff Would Violate Google's Free Speech Rights**

Plaintiff's claims actually turn the First Amendment on its head because the speech that is threatened in this case is Google's.  Plaintiff challenges Google's ability to exercise editorial discretion in choosing which advertisements to run on its website, *see* Complaint at 5 ("Google's rejection of all three of my ads denied my rights of free speech"), and seeks a court order requiring Google to place Plaintiff's ads "in prominent places on [its] search engines for searches of [plaintiff's] choosing." *Id.* at 28.   Courts have routinely found that a publisher's exercise of its editorial discretion is protected speech and that interference with such discretion would violate the compelled speech doctrine of the First Amendment.  *See, e.g., Miami Herald Pub. Co. v. Tornillo*, 418 U.S. 241, 258 (1974) (a law that required newspapers to conspicuously publish replies to attacks on an election candidate's character "fails to clear the barriers of the First Amendment because of its intrusion into the function of editors"); *Associates & Aldrich*, 440 F.2d at 136 (private newspaper has a right to control the content of published advertisements); *Avins v. Rutgers, State University of N. J.*, 385 F.2d 151, 153 (3d Cir. 1967) (rejecting claim that author had a First Amendment right to publish in the law review of a state-run university); *Pacific Gas & Elec. Co. v. Pub. Utilities Comm'n of Cal.*, 475 U.S. 1, 20-21 (1985) (striking down an order requiring utility company to allow a political group to use its envelopes to distribute its speech).  Indeed, "[s]ince all speech inherently involves choices of what to say and what to leave unsaid, one important manifestation of the principle of free speech is that one who chooses to speak may also decide what not to say." *Hurley v. Irish-American Gay, Lesbian and Bisexual*

---

(...continued from previous page)
Plaintiff cannot seek any redress under the statute for an alleged violation of the Delaware Constitution.

*Group of Boston, Inc.*, 515 U.S. 557, 573-74 (1995) (citations and quotations omitted). In short, the relief that Plaintiff seeks is barred by the First Amendment. For this reason as well, his free speech claims must fail.

**C.    The Complaint Fails to State A Claim for Violation of the Commerce Clause.**

Plaintiff also claims that Google's alleged refusal to carry his ads violates the Commerce Clause of the U.S. Constitution. But like the constitutional free speech guarantee, the Commerce Clause governs only state actors, not private parties. *See National Private Truck Council, Inc. v. Oklahoma Tax Com'n*, 515 U.S. 582, 585 ("one of the 'rights, privileges or immunities' protected by § 1983 [is] the right to be free from *state action* that violates the dormant Commerce Clause.") (emphasis added) (citations and quotations omitted). Again, Google is not a state actor. Plaintiff's Commerce Clause claim should go no further.[6]

**III.    THE COMPLAINT FAILS TO STATE AN ANTITRUST CLAIM UNDER U.S. OR DELAWARE LAW**

Paragraph XV of Plaintiff's Complaint alleges that Google, AOL, MSN and Yahoo monopolize the U.S. Internet search engine advertising market by means of a stated and/or *de facto* policy of rejecting advertisements by small advertisers and accepting advertisements by larger, more profitable advertisers. *See* Complaint at 26 ("Discriminatory advertising practices, in order to maintain monopoly power, are

---

[6]    Because Google is not a state actor, Plaintiff's claim under the Commerce Clause is nonsensical. Suits under the commerce clause are directed to actions through which a state discriminates in favor of the interests of its own residents. *See CTS Corp. v. Dynamics Corp. of America*, 481 U.S. 69, 87 (1987). Plaintiff has not identified the state to which Google's actions should be attributed, or explained how Google has discriminated against out-of-staters in any regard.

illegal."). Plaintiff alleges that Defendants' refusals to place his advertisements violate both U.S. and Delaware antitrust laws. *Id.* These claims are legally deficient and should be dismissed.

### A.    Plaintiff Does Not State a Claim Under Section 1 of the Sherman Act

To allege a violation of Section 1 of the Sherman Act, a plaintiff would have to show, *inter alia*, concerted action among the defendants, and that the concerted action was illegal. *Mathews v. Lancaster General Hospital*, 87 F.3d 624, 639 (3d Cir. 1996). Plaintiff has made no such allegation of illegal concerted activity here. The only agreement of any kind pled in the Complaint, the alleged search engine "partnership" between AOL and Google, Complaint at 15, is not one that Plaintiff alleges is unlawful or caused him antitrust injury. Moreover, even if Plaintiff had made a bare allegation of unlawful conspiracy, such a bare allegation, devoid of supporting facts, would not be sufficient to state a claim under Section 1. *See, e.g.*, *Beyer Farms, Inc. v. Elmhurst Dairy, Inc.*, 2001-1 Trade Cas. ¶ 73,239, at 90,079-80 (E.D.N.Y. 2001) ("naked statement that the defendant 'conspired' . . . without some factual allegation as to what constituted the conspiracy" insufficient); *Floors-N-More Inc. v. Freight Liquidators*, 142 F.Supp.2d 496, 501 (S.D.N.Y. 2001) (allegation that competitors "acted in concert" in refusing to deal with plaintiff was "utterly conclusory" and failed to allege sufficient *facts* to support a Section 1 claim).

### B.    Plaintiff Does Not State a Claim Under Section 2 of the Sherman Act

#### 1.    Plaintiff's "Shared Monopoly" Claim is Not Cognizable

Plaintiff alleges that Defendants jointly monopolize the U.S. search engine advertising market because "they have control of 82% of the market" based on

allegations that Google-AOL has a 49% share, Yahoo! a 22% share, and MSN an 11% share. Complaint at 25. According to Plaintiff, Defendants maintain their shared monopoly by means of a bar against small advertisers. *Id.* at 26.

This kind of "shared monopoly" theory has been consistently rejected by the courts. For example, in *Flash Electronics, Inc. v. Universal Music & Video Distribution Corp.*, 312 F. Supp. 2d 379 (E.D.N.Y. 2004), where the complaint alleged comparable market shares (50% for one defendant, 25% for another), the court dismissed the claim at the pleading stage. As the *Flash Electronics* court recognized, "the idea of a 'shared monopoly' giving rise to Section 2 liability repeatedly has been received with skepticism by courts who have squarely addressed the issue." *Id.* at 396-97 (citing cases). The court noted that even where courts have not rejected the theory outright, its possible application has been limited to an alleged conspiracy to form a single entity or an agreement to divide up markets. *Id.* at 397. The court concluded that even under the most generous reading of Section 2, an allegation that the defendants had "agreed to divvy up a few accounts," but not the entire market, was not sufficient to survive Rule 12(b)(6). *Id.*[7]

_____

[7] *See also ID Security Sys. Canada, Inc. v. Checkpoint Systems, Inc.*, 249 F. Supp. 2d 622, 649-50 (E.D. Pa. 2003) ("those courts that have squarely addressed the issue have determined that Section 2 of the Sherman Act applies to the conduct of single firms only"); *Standfacts Credit Sers., Inc. v. Experian Information Solutions, Inc.*, 405 F. Supp. 2d 1141, 1152 (C.D. Cal. 2005) ("Since section 2 prohibits only monopolization by a single entity, as opposed to shared monopolization, an allegation of conspiracy to create a shared monopoly does not plead a claim for conspiracy under section 2"); *Santana Products, Inc. v. Sylvester & Assocs., Ltd.*, 249 F. Supp. 2d 463, 519 (M.D. Pa. 2003) (conspiracy between competitors to monopolize in which market power continues to be shared among otherwise unrelated entities does not state a claim under section 2.); *Sun Dun, Inc. v. Coca-Cola Co.*, 740 F. Supp. 381, 391-92 (D. Md. 1990) (idea of shared monopoly is inconsistent with legislative history of Sherman Act).

Here Plaintiff has not, and cannot, allege even as much as the claim rejected as legally insufficient in *Flash Electronics*. The claim therefore should be dismissed under Section 2.[8]

### 2.    Plaintiff Has Not Alleged a Relevant Market

Even if Plaintiff's shared monopoly claim were otherwise legally sufficient, dismissal would be warranted based on Plaintiff's failure to define the relevant market, as required to state a claim under Section 2 of the Sherman Act. Third Circuit authority makes clear that the plaintiff in a Section 2 case has the burden of defining the relevant product and geographic market at the pleading stage. *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997), *citing Pastore v. Bell Telephone Co. of Pennsylvania*, 24 F.3d 508, 512 (3d Cir. 1994). The outer boundaries of a product market "are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it." *Brown Shoe Co. v. U.S.*, 370 U.S. 294, 325 (1962). Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, "the relevant market is legally insufficient and a motion to dismiss may be granted." *Queen City Pizza*, 124 F.3d at 436 (affirming grant of motion to dismiss for failure to plead relevant market).

---

[8] Nor can Plaintiff rescue his claim by alleging monopolization against Google alone. *See Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 201-202 (3d Cir. 1992) ("As a matter of law, absent other relevant factors, a 55% market share will not prove the existence of monopoly power.").

The Complaint here alleges an "internet search engine advertising business," Complaint at 25, and a "U.S. Search engine advertising market" *Id.* The Complaint makes no effort to explain why either of these constructs might comprise a valid relevant product or geographic market, and makes no reference to reasonable interchangeability of use or the cross-elasticity of demand. Plaintiff's Sherman Act allegations therefore fail to state a claim.

### 3.     Defendants' Alleged Discriminatory Pricing is Not Actionable

Plaintiff's claim is also legally deficient because he cannot allege that the ostensible discrimination against small advertisers has harmed competition in the relevant market. The decision in *Official Airline Guides, Inc. v. FTC*, 630 F.2d 920 (2d Cir. 1980), is on point. In that case, the monopolist publisher of flight listings allegedly discriminated in its listings against commuter airlines in a way that placed them at a competitive disadvantage to large carriers. The court held that competitive harm in the airline market was not sufficient to support a claim against the defendant, because it was not a market in which the defendant itself participated.[9]

Here, Plaintiff cannot plausibly allege that discriminatory pricing against small advertisers has resulted in competitive harm to *Defendants'* rivals (other search engine

---

[9] *Accord, Soap Opera Now, Inc. v. Network Publishing Corp.*, 737 F. Supp. 1338, 1348-49 (S.D.N.Y. 1990) (plaintiff not a competitor of defendant in any market). *See also Mathews*, 87 F.3d at 641 (antitrust plaintiff must prove challenged conduct affected the prices, quantity or quality of goods or services, not just his own welfare).

competitors), even if it allegedly harmed Plaintiff and other small advertisers. Plaintiff accordingly has failed to state a claim.[10]

### C.    Plaintiff Has No Private Right of Action Under Delaware's Antitrust Law

Plaintiff closes the antitrust portion of his Complaint by alleging that Defendants' refusals to place his ads violate Delaware's Antitrust Act. Complaint at 26; DEL. CODE ANN. Tit. 6, §§ 2101-2114 (1993). This claim necessarily fails because the Act provides no private right of action. DEL. CODE ANN. Tit. 6, § 2108 (1993); *Maddock v. Greenville Retirement Community, L.P.,* Civil Action No. 12564, 1997 Del. Ch. LEXIS 24, *22-23 (Del. Ch., Feb. 26, 1997) (court lacked jurisdiction over claim brought by a private individual). Plaintiff's claim under Delaware's Antitrust Act must therefore be dismissed.

### IV.    THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE COMMUNICATIONS ACT

Plaintiff's claim against Google under the Communications Act is frivolous. The Communications Act only applies to "common carriers," like telephone companies, that make "a public offering to provide communications facilities whereby all members of the public who choose to employ such facilities may *communicate or transmit intelligence of their own design and choosing." FCC v. Midwest Video Corp.,* 440 U.S.

---

[10] Plaintiff's invocation of *Lorain Journal Co. v. U.S.,* 342 U.S. 143, 72 S. Ct. 181, 187 (1951), only serves to highlight this deficiency. In *Lorain Journal,* the newspaper refused to accept advertising from merchants who also placed advertisements with its new radio-station rival. The Court found that the purpose and effect of the newspaper's practice was to force numerous advertisers to refrain from advertising with the radio station, thereby undermining the new competitor's viability and restoring to the newspaper its monopoly over advertising in *Lorain.* 342 U.S. at 149-150. The Court's holding that the newspaper's conduct constituted an attempt to monopolize was clearly based on harm to the newspaper's competitors and is therefore of no help to Plaintiff here.

689, 701 (1979) (interpreting definition of "common carrier" in 47 U.S.C § 153(h)) (emphasis added); *Nat'l Cable & Telecomm. Ass'n  v. Brand X Internet Servs.*, 125 S. Ct. 2688, 2697 (2005) (affirming FCC's determination that broadband Internet service providers are not common carriers under the Communications Act); *Howard*, 208 F.3d 741, 752-53 (affirming dismissal of alleged discriminatory practices claim against Internet service provider under Communications Act as a matter of law on grounds that ISP was not a common carrier).  Google does no such thing.  It simply operates a website offering an advertising-supported internet search engine.  Complaint at ¶ 2. Google does not, and is not alleged to, provide communications facilities.  Indeed, it does not, and is not alleged to, "carry" anything.  Google's search engine certainly does not, and is not alleged to, enable all users to communicate material of their choosing to others.  To the contrary, Google alone selects the search results to be displayed to users and strictly limits advertising in a host of ways.  *See* Complaint, Appendix I (Google's "Content Policy").  Google is thus indistinguishable from a newspaper publishing its own content supported by advertising over which it exercises editorial control.  It is not a common carrier.[11]

In addition, the Federal Communications Commission, charged with interpreting and enforcing the Communications Act has made clear that providers of "enhanced services are not regulated as common carriers" under Title II of the [Communications] Act."  *Id.*     An enhanced service is one which employs "computer processing

---

[11]   Courts have uniformly held that even Internet Service Providers are not common carriers, though they carry user-created communications, such as email, and carry user requests for information from one point to another. *See, e.g., America Online, Inc. v. GreatDeals.Net*, 49 F. Supp. 2d 851, 855-57 (E.D. Va. 1999); *CompuServe Inc.*, 962 F. Supp. 2d at 1025; *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 907 F. Supp. 1361, 1369 n.12 (N.D. Cal. 1995).  If ISPs that actually serve to transport user communications are not common carriers, advertiser-supported search engines like Google certainly cannot be.

applications that act on the format, content, code, protocol or similar aspects of the subscriber's transmitted information; provide the subscriber additional, different, or restructured information; or involve subscriber interaction with stored information." *See In re Second Computer Inquiry*, 77 F.C.C.2d 384, 417-23, 1980 WL 233301 (Apr. 7, 1980) (final decision); 47 C.F.R. § 64.702(a). Plaintiff's own allegations regarding Google's operations make clear that Google provides "enhanced" rather than basic services to its users by collecting user queries and returning search results and relevant advertising in response. Complaint at 1-2, 13-14. Because it provides these "enhanced services," Google simply is not a common carrier. *See Howard*, 208 F.3d at 752-53 (ISP not a common carrier because it provides enhanced rather than basic services); *Brand X*, 125 S. Ct. at 2697 (cable provider not a common carrier because it provides enhanced services).[12]

The analysis need go no further. Google is not a common carrier and Plaintiff's claim for violation of the Communications Act cannot stand.

---

[12] A recent amendment to the Communications Act furthers the point, as it makes clear that Congress does not intend for online service providers like Google to be regulated as common carriers. In the Telecommunications Act of 1996 (amending the Communications Act and codified at § 47 U.S.C. 230(c)), Congress stated that: "Nothing in this section [of the Communications Act] shall be construed to treat interactive computer services as common carriers...." 47 U.S.C. § 223(e)(6). No such statement would have been necessary if, as Plaintiff contends, interactive computer services, like Google, were ever intended to be classified as common carriers in the first place. Since "there is no doubt that Google qualifies as an 'interactive computer service'" under Section 230(c), it is certainly not a common carrier. *See Parker v. Google Inc.*, 422 F. Supp. 2d 492, 501 (E.D. Pa. 2006); *See also Novak v. Overture Servs., Inc.*, 309 F. Supp. 2d 446, 452-53 (E.D.N.Y. 2004) (Google is an interactive computer service subject to the protections of 47 U.S.C. § 230).

## V.  THE COMPLAINT FAILS TO STATE A CLAIM FOR FRAUD

While Plaintiff invokes the term "fraud" in his complaint, it is not at all clear that he is attempting to assert a fraud claim.  To state a claim for fraud, a plaintiff must allege facts from which it could be found that: (1) the defendant made a material false representation of fact to the plaintiff; (2) with knowledge of its falsity; (3) the defendant had an intent to induce the plaintiff to act or to refrain from acting; (4) the plaintiff acted in justifiable reliance upon the representation; and (5) the plaintiff was damaged as a result of such reliance.  *See, e.g., Stephenson v. Capano Dev., Inc.,* 462 A.2d 1069, 1074 (Del. 1983).  Moreover, fraud must be pled with particularity, even by *pro se* litigants. *See* Fed. R. Civ. P. 9(b); *McCracken v. Raghbir*, 2004 WL 2326378, *2-3 (D. Del. Oct. 7, 2004) (finding a *pro se* defendant did not meet the particularity requirement of Rule 9(b)); *Floyd v. Brown & Williamson Tobacco Corp.*, 159 F. Supp. 2d 823, 832 (E.D. Pa. 2001) (stating that *pro se* plaintiffs are not relieved of the requirements of Rule 9(b)).  Plaintiff's allegations fall far short of meeting his pleading obligations.

### A.  Google's Explanation for Rejecting Plaintiff's Ads Does Not Support a Claim for Fraud.

Plaintiff first asserts that Google committed fraud when it informed him that his advertisements were rejected pursuant to Google's policy banning ads advocating for or against a particular person or entity.   Complaint at 22.[13]  Beyond identifying this supposed misrepresentation by Google, Plaintiff does not come close to satisfying any

---

[13] Plaintiff does not allege why he believes Google's explanation for rejecting his advertisements is false (or what he believes the "true" explanation was). He simply points to other instances in which he claims Google did not enforce its policy.

of the other elements of a fraud claim. Plaintiff does not and could not allege that Google's supposed misstatement was made with knowledge of its falsity; that it was intended to induce him to act in a particular way; that he did, in fact, justifiably act in that way;[14] or that he was damaged because of his justifiable reliance.[15]    In short, Plaintiff's fraud claim based upon Google's supposedly false explanation fails at virtually every turn.

**B.    Google's Alleged Removal of Plaintiff's Website From Its Search Results Does Not Support a Claim for Fraud.**

Plaintiff also states that Google has committed fraud because its supposed removal of plaintiff's website from Google's search results somehow misrepresents the amount of "traffic" (*i.e.*, the number of visitors) to his Internet website. Complaint at 22. Again, nothing resembling a claim for fraud is, or could be, based on such an allegation. Indeed, Plaintiff is not even complaining, as he must, about a supposed

---

[14] Plaintiff's own allegations refute any claim that he somehow relied on Google's grounds for rejecting his ads. Plaintiff alleges that within days after Google advised him of its rejection of his ads, he quickly terminated his AdWords account because he did not believe the reason Google stated for the rejection and because Google did not give him a chance to explain why he thought his ads should be allowed. Complaint at 12. If Plaintiff believed that Google's explanation was false, he could not possibly have justifiably relied upon it. *Ward v. Hildebrand*, 1996 WL 422336, *4 (Del. Ch. July 8, 1996) ("the recipient of a fraudulent misrepresentation is not justified in relying upon its truth if he knows that it is false or if its falsity is obvious to him"); *Sipple v. Kaye*, 1995 WL 654139, * 1 (Del. Super. Oct. 30, 1995) ("Plaintiff could not have, as a matter of law, reasonably relied on [defendant's] statements that her door lock was 'adequate' because plaintiff herself knew that it was broken").

[15] Plaintiff claims only that he was damaged because Google rejected his ads. *See* Complaint at 13 ("My website cannot get the exposure it should have on Google, and I do not have a meaningful alternative to advertising on the internet."). He does not allege that Google's supposed misrepresentation caused him any harm, as is required to state a claim for fraud. *See Browne v. Robb*, 583 A.2d 949, 955-56 (Del. 1990) (to plead claim for fraud, must allege "reliance damaged the defendant"); *see also Harman v. Masoneilan Intern., Inc.*, 442 A.2d 487, 499 (Del. 1982) (damages available for fraudulent misrepresentation limited to those which are the direct and proximate result of the false representation).

misrepresentation *to him.* *DiSabatino v. U.S. Fidelity & Guar. Co.*, 635 F.Supp. 350, 353 (D.Del. 1986) ("In an action based on fraud . . . [t]he deceiver must make a false representation of a material fact to the victim.") *quoting Twin Coach Co. v. Chance Vought Aircraft, Inc.*, 163 A.2d 278, 284 (Del. Super. 1960); *Brzoska v. Olson*, 668 A.2d 1355, 1366 (Del. 1995) (same).  To the contrary, his allegation suggests that *others* might construe the absence of his website as a false indication concerning the amount of traffic to his site.  But if Plaintiff himself did not receive an alleged misrepresentation from Google, the other elements of a fraud claim (Google's intent to induce Plaintiff's reliance, Plaintiff's justifiable reliance, and Plaintiff's damages caused by that reliance) could not possibly be established.  Not surprisingly, Plaintiff makes no attempt even to plead these elements, let alone with the specificity required to state a fraud claim.[16]

In any event, Google's search results, and its supposed exclusion of Plaintiff's website from them, could not be actionable as fraud, because the results are merely Google's *opinion* of the websites that it believes will most likely be relevant to the user conducting a search.  *See, e.g., Search King, Inc. v. Google Tech., Inc.*, 2003 WL 21464568 at *4 (W.D. Okla. May 27, 2003) ("PageRanks are opinions – opinions of the significance of particular web sites as they correspond to a search query . . . . [o]ther

---

[16] If Plaintiff is claiming that Google made an alleged misrepresentation to him about the traffic on Plaintiff's own website, the claim still fails.  Plaintiff not only has failed to plead any of the required elements to support the claim, but Plaintiff could not rely on an alleged misrepresentation about traffic to his website, when he was in a far better position than Google to monitor that traffic.  *Ward*, 1996 WL 422336, at *4 ("the recipient of a fraudulent misrepresentation is not justified in relying upon its truth if he knows that it is false or if its falsity is obvious to him").

search engines express different opinions, as each search engine's method of determining relative significance is unique."); *Blatty v. N.Y. Times Co.*, 42 Cal. 3d 1033, 1045-48 (1986) (defendant's decision not to include plaintiff's book in its "Best Sellers" list protected as opinion). As a matter of law, an expression of opinion cannot support a claim for fraud. *Browne v. Robb*, 583 A.2d 949, 956 (Del. 1990) (alleged fraudulent statement was "a mere expression of opinion, which is not actionable.... such expressions generally are recognized to be matters upon which individual judgments may be expected to differ"); *Toner v. Allstate Ins. Co.*, 821 F. Supp. 276, 281 (D. Del. 1993) (same). For this reason as well, no fraud claim is, or could be, stated.

## CONCLUSION

For all the foregoing reasons, Defendant Google Inc. respectfully requests that the Court dismiss Plaintiff's Complaint with prejudice.

PROCTOR HEYMAN LLP

Kurt M. Heyman (# 3054)
Email: kheyman@proctorheyman.com
Patricia L. Enerio (# 3728)
Email: penerio@proctorheyman.com
1116 West Street
Wilmington, DE 19801
(302) 472-7300

Attorneys for Defendant Google Inc.

OF COUNSEL:

WILSON SONSINI GOODRICH & ROSATI PC
David H. Kramer
Colleen Bal
Bart E. Volkmer
650 Page Mill Road
Palo Alto, CA  94304
(650) 493-9300

Tonia Ouellette Klausner
12 East 49th Street, 30th Floor
New York, NY 10017
(212) 999-5800


DATED:       July 24, 2005

## CERTIFICATE OF SERVICE

Kurt M. Heyman, Esquire, hereby certifies that on July 24, 2006, copies of the foregoing Motion to Dismiss were served as follows:

### VIA FEDERAL EXPRESS

Mr. Christopher Langdon
1835 Edwin Boulevard
Winter Park, FL 32789

Kurt M. Heyman (# 3054)