## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CHRISTOPHER LANGDON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. 06 - 319 (JJF) |
| GOOGLE, INC., d.b.a DELAWARE | ) | |
| GOOGLE INC., YAHOO! INC., AOL | ) | |
| LLC, and MICROSOFT CORP., | ) | |
| | ) | |
| Defendants. | ) | |

**OPENING BRIEF IN SUPPORT OF DEFENDANT YAHOO! INC.'S MOTION TO
DISMISS FOR FAILURE TO STATE A CLAIM**


**DUANE MORRIS LLP**
Daniel Folt (Del. Bar No. 3143)
Matt Neiderman (Del. Bar No. 4018)
1100 North Market Street
Suite 1200
Wilmington, DE 19801-1246

Dated: July 24, 2006                    Attorneys for Defendant Yahoo! Inc.

**TABLE OF CONTENTS**

**Page**

FACTUAL BACKGROUND ................................................................................................. 1

ARGUMENT ...................................................................................................................... 3

    1.   No Fraud. .......................................................................................................... 3

    2.   No Commerce Clause Violation. ....................................................................... 4

    3.   No Sherman Act Violation.................................................................................. 6

    4.   No First Amendment Violation. ......................................................................... 7

    5.   No Communications Act Claim.......................................................................... 11

CONCLUSION ................................................................................................................... 12

# TABLE OF AUTHORITIES

## <u>CASES</u>

*Barclays Bank, PLC v. Franchise Tax Bd. of Cal.*,
   512 U.S. 298 (1994)........................................................................................5

*Blum v. Yaretsky*,
   457 U.S. 991 (1982)......................................................................................10

*Columbia Broadcasting System, Inc. v. Democratic Nat'l Committee*,
   412 U.S. 94 (1973).....................................................................................8, 11

*Conley v. Gibson*,
   355 U.S. 41 (1957)........................................................................................3

*Cooley v. The Board of Wardens*,
   53 U.S. 299 (1851)........................................................................................5

*Cowell v. Palmer Township*,
   263 F.3d 286 (3d Cir. 2001)..........................................................................3

*Cyber Promotions, Inc. v. America Online, Inc.*,
   948 F. Supp. 436 (E.D. Pa. 1996) ...............................................................10

*Dennis v. Higgins*,
   498 U.S. 439 (1991)......................................................................................5

*Dussouy v. Gulf Coast Investment Corporation*,
   660 F.2d 594 (5th Cir. 1981) ........................................................................7

*Eastman Kodak Co. v. Image Technical Services, Inc.*,
   504 U.S. 451 (1992)......................................................................................6

*FCC v. Midwest Video Corp.*,
   440 U.S. 689 (1979)....................................................................................11

*Fidelity & Deposit Co. v. Maryland v. Hudson United Bank*,
   653 F.2d 766 (3d Cir. 1981)..........................................................................7

*Friedmann v. U.S.*,
   107 F. Supp. 2d 502 (D.N.J. 2000) ...........................................................6, 7

*Gaffin v. Teledyne, Inc.*,
   611 A.2d 467 (Del. 1992) .............................................................................4

*Gandy v. Trans World Computer Tech. Group*,
   787 So. 2d 116 (Fla. Ct. App. 2001).............................................................4

*Gannett Co., Inc. v. State*,
   571 A.2d 735 (Del. 1990) ..................................................................................8

*Giannone v. U.S. Steel Corp.*,
   238 F.2d 544 (3d Cir. 1956)..............................................................................7

*Green v. America Online*,
   318 F.3d 465 (3d Cir. 2003)..............................................................................9

*HSMY, Inc. v. Getty Petroleum Marketing, Inc.*,
   417 F. Supp. 2d 617 (D. Del. 2006)..................................................................3

*Hardy v. Johns-Manville Sales Corp.*,
   851 F.2d 742 (5th Cir. 1988) ............................................................................7

*Harvey v. Harvey*,
   949 F.2d 1127 (11th Cir. 1992) ........................................................................8

*Helman v. State*,
   784 A.2d 1058 (Del. 2001) ............................................................................7, 8

*Household Intern, Inc. v. Westchester Fire Ins. Co.*,
   286 F. Supp. 2d 369 (D. Del. 2003)..................................................................4

*Howard v. America Online Inc.*,
   208 F.3d 741 (9th Cir. 2000) ..........................................................................11

*Hudgens v. NLRB*,
   424 U.S. 507 (1976)..........................................................................................8

*Jackson v. Metropolitan Edison Co.*,
   419 U.S. 345 (1974)........................................................................................10

*Kirtley v. Rainey*,
   326 F.3d 1088 (9th Cir. 2003) ........................................................................10

*Kost v. Kozakiewicz*,
   1 F.3d 176 (3d Cir. 1993)..................................................................................3

*Langdon v. T.L. Mallonee, et al.*,
   543 U.S. 1058 (2005)........................................................................................8

*Life Partners, Inc. v. Miller*,
   420 F. Supp. 2d 422 (E.D. Va. 2006) ...............................................................5

*Lloyd Corp. v. Tanner*,
   407 U.S. 551 (1972)......................................................................................8, 9

*In re ML-Lee Acquisition Fund II, L.P.*,
    848 F. Supp. 527 (D. Del. 1994)..........................................................................4

*Maio v. Aetna, Inc.*,
    221 F.3d 472 (3d Cir. 2000).................................................................................3

*Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*,
    125 S. Ct. 2688 (2005)........................................................................................11

*National Private Truck Council, Inc. v. Oklahoma Tax Com'n*,
    515 U.S. 582 (1995).............................................................................................5

*Neitzke v. Williams*,
    490 U.S. 319 (1989).............................................................................................3

*Pruneyard Shopping Center v. Robins*,
    447 U.S. 74 (1980)...............................................................................................9

*Reeves, Inc. v. Stake*,
    447 U.S. 429 (1980).............................................................................................6

*Rendell-Baker v. Kohn*,
    457 U.S. 830 (1982).............................................................................................8

*San Francisco Arts & Athletics, Inc. v. United States Olympic Committee*,
    483 U.S. 522 (1987)...........................................................................................10

*Smith v. Del. First Fed. Credit Union*,
    395 F. Supp. 2d 127 (D. Del. 2005)..............................................................10, 11

*Sobratti v. Tropical Shipping and Construction Co., Ltd.*,
    267 F. Supp. 2d 455 (D.V.I. App. Div. 2003) .....................................................7

*Southern Pacific Co. v. Arizona ex rel. Sullivan*,
    325 U.S. 761 (1945).............................................................................................5

*Southwest Community Resources, Inc. v. Simon Prop. Group, L.P.*,
    108 F. Supp. 2d. 1239 (D.N.M. 2000) .................................................................9

*United States v. Colgate & Co.*,
    250 U.S. 300 (1919).............................................................................................6

*United States v. Grinnell Corp.*,
    384 U.S. 563 (1966).............................................................................................6

*Verizon Communications Inc. v. Law Offices of Curtis V. Trinko, LLP*,
    540 U.S. 398 (2004).............................................................................................6

*Zenith Radio v. Hazeltine Research,*
  401 U.S. 321 (1971)............................................................................................................7

## **STATUTES**

42 U.S.C. § 1983............................................................................................................4, 8

15 U.S.C. § 2............................................................................................................6

U.S. Const. Art. I., § 8, cl. 3............................................................................................................5

Plaintiff Christopher Langdon ("Langdon") is an unusually experienced *pro se* litigant who unsuccessfully prosecuted several civil claims against various North Carolina governmental officials up to and through the United States Supreme Court. *See, e.g., Langdon v. T.L. Mallone, et al.*, 543 U.S. 1058 (2005) (just one of <u>seventeen</u> citations attributable to Langdon, this one denying *certiorari*).  In addition, Langdon is the publisher of two special interest internet sites, <u>www.ncjusticefraud.com</u> and <u>www.chinaisevil.com</u>.  The first concerns the very same matters addressed in the foregoing lawsuit, wherein he decried various officials as "miscreants" and "crooked lawyers."  The second contains editorial material critical of the Chinese government.

Undaunted by prior failures, Langdon now has a new set of targets.  Today he attacks three popular internet search engines, including defendant Yahoo!, Inc. ("Yahoo") – all for purposes of renewing interest in his failed claims.  Although his claims remain frivolous, and his litigiousness knows no bounds, the scant *few* factual allegations made against Yahoo bear special attention here *because* they consist of nothing more than mere whispers of innuendo and suspicion – *i.e.,* that Langdon "*understands*" that Yahoo only permits hosted advertising (<u>wrong</u>) and that Yahoo misrepresents his website ranking (<u>nonsensical</u>).  Such illusory statements are <u>not</u> facts and cannot sustain the claims made, no matter how liberally construed.

## FACTUAL BACKGROUND

It bears repeating that there are very few, Yahoo-specific factual allegations made in the Complaint.  Langdon alleges that he is the publisher of two different internet websites, <u>www.ncjusticefraud.com</u> and <u>www.chinaisevil.com</u>.  (C-1)  According to Langdon, the internet search market is dominated and monopolized by four companies:  Google, AOL, Yahoo and Microsoft.  (C-6, 25)[1]  Yahoo has a 22% share of the U.S. Search engine advertising market.  (C-

---

[1] All page citations to Christopher Langdon's Complaint are set forth herein as (C-#).

25)  The internet, Google, AOL and Yahoo have millions of visitors each day.  (C-6)  Yahoo and others supposedly misrepresent the ranking of Langdon's websites.[2]  (C-22)

Langdon claims that he "attempted" to place an ad on Yahoo.  (C-22)  Langdon allegedly was informed that Yahoo does not accept ads for websites that aren't hosted by Yahoo and that his websites are hosted by Network Solutions.  (C-22, 23)  Langdon wrote a certified letter to the president of Yahoo asking if it was the Company's policy to refuse to accept ads for websites not hosted by Yahoo.[3]  (C-23)  That letter was received by Yahoo on March 18, 2006, but Langdon never received an answer.  (C-23)  Langdon has somehow reached an "understanding" that Yahoo discriminates against small advertisers by discouraging and/or effectively banning them.  (C-24)  Finally, Langdon claims that Yahoo "wishes" to curry favor with the Chinese Communist government.  (C-26)

Simply put, Langdon alleges only two potentially harmful events.  First, he claims that Yahoo – a company that he admits holds a minority position in the internet search market – *may* not accept ads for websites that are hosted on third-party networks.  Langdon does not know whether that is true or not, and Langdon does not state how he attempted to place an ad, whether he completed the ad application process, and whether his ad was ever accepted or rejected.  Second, Langdon claims that Yahoo misrepresents his website ranking (whatever that means) and that Yahoo seeks to curry favor with the Chinese government.

---

[2] Perhaps Langdon will report honestly in his brief what happens when the searches *Roy Cooper, the N.C. Department of Justice* and *Communist China murders* are run on Yahoo, rather than the other internet sites.  The day we filed this brief, those searches produced his websites as the second and first hits reported, respectively, on the first page of the returns made.

[3] Had Langdon actually reviewed the terms and conditions posted on Yahoo's website, easily available for public viewing, he would have found no such network restriction in either Yahoo's sponsored ad or its Express program.

**ARGUMENT**

"Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint for failure to state a claim upon which relief may be granted."  *HSMY, Inc. v. Getty Petroleum Marketing, Inc.*, 417 F.Supp.2d 617, 621 (D. Del. 2006).  "When considering a motion to dismiss, a court must accept as true all allegations in the complaint and must draw all reasonable factual inferences in the light most favorable to the plaintiff." *Id.* (citing *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989); *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255 (3d Cir. 1994)). Although *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers ... Courts are still 'not required to accept legal conclusions either alleged or inferred from the pleaded facts.'" *Id.* (citing *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993)). Dismissal with <u>prejudice</u> therefore is "appropriate when 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief,'" *Id.* (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)), <u>and</u> amendment would be futile.  *Cowell v. Palmer Township,* 263 F.3d 286, 296 (3d Cir. 2001) (*citing Maio v. Aetna, Inc.,* 221 F.3d 472 (3d Cir. 2000)).

Dismissal with prejudice against Yahoo is justified *now* – as a matter of *law* based upon resolution of purely legal questions – because Langdon has pled <u>no facts</u> upon which his any of his various theories might be sustained.  Rather than repeat those many arguments already well developed by the other defendants, each of which Yahoo joins in, endorses, and incorporates by reference, this memoranda will focus exclusively on several discrete and easily identified reasons why <u>each</u> claim arguably brought against Yahoo merits immediate dismissal.

1.    <u>No Fraud</u>.  Langdon has pled <u>no facts</u> stating that Yahoo made any false statements to him, or otherwise did anything to fraudulently induce his justifiable reliance.

Under Delaware law,[4] the elements of a common law fraud are: 1) a false representation, usually one of fact, made by the defendant; 2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; 3) an intent to induce the plaintiff to act or refrain from acting; 4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and 5) damage to the plaintiff as a result of such reliance. *Gaffin v. Teledyne, Inc.,* 611 A.2d 467, 472 (Del.1992).   But Langdon never alleges that Yahoo made <u>any</u> representations to him – whether true or false, overt or tacit – nor does he allege knowledge of falsity, intent to induce, or justifiable reliance.[5]   The facts pled against Yahoo merely state that Langdon "understands" (whatever that means) that Yahoo accepts ads from hosted sites only. Langdon does not and *cannot plead* that he submitted an ad that was refused, nor does he *or could he* allege that his site ranking was erroneous.

Such allegations fail under even the most liberal construction of the material pleading standard.  "While conclusory allegations that do nothing more than mirror language of statutes and rules are not sufficient under Rule 9(b), the requirement of particularity does not require 'an exhaustive cataloging of facts but only <u>sufficient factual specificity</u> to provide assurance that plaintiff has investigated the alleged fraud and reasonably believes that a wrong has occurred.'" *Household Intern, Inc. v. Westchester Fire Ins. Co.*, 286 F. Supp. 2d 369, 374 (D. Del. 2003) (citing *In re ML-Lee Acquisition Fund II, L.P.,* 848 F. Supp. 527, 555 (D. Del. 1994)) (emphasis added).

2.    <u>No Commerce Clause Violation</u>.  Langdon pled <u>no facts</u> asserting that Yahoo has taken any action that favors one state's economic interests over another.  "One of the 'rights, privileges or immunities' protected by § 1983 was the right to be free from state action that

---

[4] The elements of common law fraud are the same in the State of Florida.  *See Gandy v. Trans World Computer Tech. Group*, 787 So. 2d 116, 118 (Fla. Ct. App. 2001).

[5] Langdon's fraud allegations focus on the conduct of several North Carolina state officials. (C15-17)

violates the dormant Commerce Clause." *National Private Truck Council, Inc. v. Oklahoma Tax Com'n,* 515 U.S. 582, 585 (citing *Dennis v. Higgins,* 498 U.S. 439 (1991)). The Commerce Clause of the United States Constitution thus provides "Congress shall have Power ... [to] regulate Commerce ... among the several states." U.S. Const. Art. I., § 8, cl. 3. Congress's authority to regulate commerce pursuant to the Constitution inherently carries with it a prohibition to the states to refrain from enacting laws which impede the flow of interstate commerce. *See Cooley v. The Board of Wardens*, 53 U.S. 299, 318 (1851). This authority, known as the dormant Commerce Clause, "has long been understood ... to provide 'protection from state legislation inimical to the national commerce [even] where Congress has not acted.'" *Barclays Bank, PLC v. Franchise Tax Bd. of Cal.,* 512 U.S. 298, 310, 114 S. Ct. 2268 (1994) (quoting *Southern Pacific Co. v. Arizona ex rel. Sullivan,* 325 U.S. 761, 769 (1945)).

The dormant Commerce Clause thus "limits the power of the States to erect barriers against interstate trade." *Dennis,* 498 U.S. at 446 (emphasis added). As the United States Supreme Court has explained, over and over again, Commerce Clause jurisprudence is designed to protect the states and "to benefit those who ... are engaged in interstate commerce." *Dennis v. Id.* at 460.  *Life Partners, Inc. v. Miller*, 420 F. Supp. 2d 422, 459-60 (E.D. Va. 2006).  But Yahoo is not a state*, Langdon conducts no interstate commerce, *and* internet search engines do nothing to advance or favor the economies of one state over another.  The dormant Commerce Clause does not apply to private businesses like Yahoo, or activists like Langdon and, as a consequence, private companies like Yahoo may rely upon "the long recognized right of [a] trader or manufacturer, engaged in an entirely private business, [to] freely to exercise his own independent discretion as to parties with whom he will deal." *Reeves, Inc. v. Stake*, 447 U.S. 429, 439 (1980) (citing *United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919)).

3.    No Sherman Act Violation.    Langdon pled no facts establishing any anticompetitive conduct by Yahoo.  "'The offense of monopoly under § 2 of the Sherman Act has two elements: (1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident.'"  *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451, 480 (1992) (citing *United States v. Grinnell Corp.,* 384 U.S., at 570-71).  Even *if* Langdon somehow pled any antitrust claim at all, he *must* do so under § 2 of the Sherman Act, 15 U.S.C. § 2, which declares that a firm shall not "monopolize" or "attempt to monopolize."  *Verizon Communications Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407-08 (2004).  "It is settled law that this offense requires, in addition to the possession of monopoly power in the relevant market, "the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident."  *Id.* (citing *Grinnell Corp.,* 384 U.S. at 570-71).  Just as in the case of the dormant Commerce Clause, "the Sherman Act 'does not restrict the long recognized right of [a] trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal.'"  *United States v. Colgate & Co.,* 250 U.S. 300, 307 (1919).

One of the few facts Langdon did plead – and which therefore must be accepted as true for purposes of this motion – is that Yahoo controls just 22% of the internet search engine market.  (C-25)  No facts were pled (or could be pled) to establish collusion, conspiracy, or partnership between or among the other internet search engine providers.  Nor can Langdon change course now, and seek leave to amend to assert contradictory facts.  "[U]nequivocal averments of fact constitute judicial admissions that are conclusively binding."  *Friedmann v. U.S.*, 107 F. Supp. 2d 502, 510-11 (D.N.J. 2000) (citing *Fidelity & Deposit Co. v. Maryland v.*

*Hudson United Bank*, 653 F.2d 766, 777 (3d Cir. 1981)).  "This is because pleadings generally constitute 'a statement of the pleader [*i.e.,* Langdon] as to the occurrence of <u>certain historical facts</u> in the real world' [*i.e.,* Yahoo's minority market share], and if both sides agree to that historical fact, then there is no issue as to that fact's existence."  *Id.* (citing *Hardy v. Johns-Manville Sales Corp.*, 851 F.2d 742, 746 (5th Cir. 1988) (emphasis added).

Langdon may not now disassociate himself *selectively* from allegations made in his complaint.[6]  "Because a complaint is intended to summon the resources of the court, and given the responsibility placed on parties to ensure that claims filed with the court are properly based on fact, a party's pleadings are viewed with solemnity."  *Sobratti v. Tropical Shipping and Construction Co., Ltd.*, 267 F. Supp. 2d 455, (D.V.I. App. Div. 2003).  "[P]leadings are supposed to be factual rather than fictional."  *Giannone v. U.S. Steel Corp.*, 238 F.2d 544, 547 (3d Cir. 1956).  "Given the seriousness of pleadings, and to 'preserve the integrity of the courts by preventing the litigants from playing fast and loose with the courts' in offering intentional self-contradictions, factual assertions made in pleadings are binding on the party asserting the fact. . . ."  *Sobratti*, 267 F. Supp. 2d. 455, 463.  The record for purposes of this motion thus establishes that Yahoo possesses no monopoly power at all and, as a result, could not possibly have committed any Sherman Act violation.

    4.    <u>No First Amendment Violation</u>.  The First Amendment to the United States Constitution and the free speech clause of the Delaware[7] Constitution both govern only state

---

[6] "In such a case, where the movant first presents a theory difficult to establish but favorable and, <u>only after that fails</u>, a less favorable theory, denial of leave to amend on the grounds of bad faith may be appropriate."  *Dussouy v. Gulf Coast Investment Corporation*, 660 F.2d 594, 599 (5th Cir. 1981) (citing *Zenith Radio v. Hazeltine Research*, 401 U.S. 321, 332-33 (1971)) (emphasis added).

[7] Langdon's Complaint fails to plead any facts suggesting that the Delaware Constitution applies to his claims. *Langdon* does not allege that any of the acts at issue took place in Delaware, that he was harmed in Delaware or that there are any significant ties between Delaware and any of the events complained of.  *See Helman v. State*, 784 A.2d 1058, 1071 (Del. 2001) (explaining that open courts clause of Delaware Constitution "secures a <u>Delaware citizen's</u>

actors, not private entities. *See, e.g., Rendell-Baker v. Kohn*, 457 U.S. 830, 837 (1982). Apparently recognizing this fact, Langdon alleges that the Internet, like a mall, is a public forum, and that Yahoo, which is an internet search engine, must therefore be a state actor. Even accepting that the Internet is a public forum, Yahoo, a for-profit commercial entity that simply uses the Internet as its medium, is not a state actor and the First Amendment has no application. Ultimately, the question here is not whether Langdon has the ability to post his messages on the Internet – he admits that he has two active websites – the question is whether he can force commercial entities such as Yahoo to direct its patrons to his websites simply because Yahoo also utilizes the Internet. *Columbia Broadcasting System, Inc. v. Democratic Nat'l Committee*, 412 U.S. 94, 130 (1973) ("The question here is not whether there is to be discussion of controversial issues of public importance on the broadcast media, but rather who shall determine what issues are to be discussed by whom, and when."). The overwhelming weight of authority answers that question in the negative.

Langdon's First Amendment claim hinges on the erroneous notion that the Internet is a public forum akin to a shopping mall, and that Internet search engines must therefore be state actors. (C-5-6) Langdon's reasoning is flawed on several levels. First, the United States Supreme Court has long rejected the notion that private shopping centers such as malls are public forums simply because they invite the public to visit for a specific commercial purpose. *See, e.g., Lloyd Corp. v. Tanner*, 407 U.S. 551, 569 (1972); *Hudgens v. NLRB*, 424 U.S. 507 (1976). The Supreme Court has only recognized the right of individual states, consistent with their own

---

right to seek redress in the Courts of this State for an injury done to him or her") (emphasis added). Even if applicable, the First Amendment to the Delaware Constitution is no more broad than its Federal counterpart, *see Gannett Co., Inc. v. State*, 571 A.2d 735, 741, n.9 (Del. 1990), and the same arguments therefore warrant dismissal of Langdon's claim under the Delaware constitution. Because a claim under 42 U.S.C. § 1983 likewise requires state action, Langdon's § 1983 must also be dismissed. *See Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992) ("Only in rare circumstances can a private party be viewed as a 'state actor' for section 1983 purposes.").

constitutions, to declare some private properties to be public forums for limited purposes. *See, e.g., Pruneyard Shopping Center v. Robins*, 447 U.S. 74, 80-81 (1980).

Even assuming that the Internet is a public forum, the public nature of the Internet does not transform commercial parties into state actors merely because they use the Internet, any more than the use of commercial space in a public shopping center transforms individual retailers into state actors. *See Lloyd Corp.*, 407 U.S. at 569 ("[the] essentially private character of a store and its privately owned abutting property does not change by virtue of being large or clustered with other stores in a modern shopping center"). Nor does the fact that Yahoo invites consumers to its website to perform internet searches make Yahoo a public forum for purposes of political or social expression. *See Southwest Community Resources, Inc. v. Simon Prop. Group, L.P.*, 108 F. Supp. 2d. 1239, 1256 (D.N.M. 2000) ("Plaintiffs' argument ultimately fails because the nature of the malls invitation to the public is only to do business with the malls tenants (including the government facilities), not to engage in any expressive activities. Such an invitation would be insufficient to create a designated public forum if issued by the government.").

Langdon's entwinement claim is equally flawed. Such a claim requires a plaintiff to allege that a private party is "so entwined with governmental policies or so impregnated with a governmental character as to become subject to the constitutional limitations placed upon state action." *Id*. at 134, n.2. Langdon's Complaint lists several tasks that can be accomplished on the Internet, notes that the government was involved in creating the Internet and points to the manner in which the Internet can be accessed (*e.g.*, by telephone)[8], but Langdon pleads no facts whatsoever showing any state entwinement specifically involving Yahoo. Langdon does not

---

[8] A host of cases hold, as a matter of law, that companies who provide access to the Internet are not state actors. *See, e.g., Green v. America Online*, 318 F.3d 465, 471 (3d Cir. 2003); *Cyber Promotions, Inc. v. America Online, Inc.*, 948 F. Supp. 436, 441 (E.D. Pa. 1996). If companies that provide access to the Internet are not state actors, then neither should a company be that allows users to search the Internet.

allege that Yahoo was created using state funds, that Yahoo was endowed with state authority or power or that the state directly benefited from Yahoo's allegedly discriminatory activities. *Kirtley v. Rainey*, 326 F.3d 1088, 1093 (9th Cir. 2003) ("Under the joint action test, we consider whether the state has so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity.").  Instead, Langdon's argument again rests on the misguided idea that because Yahoo uses the Internet (an allegedly public forum) as its commercial medium, its activities are necessarily entwined with those of the state.

Taken to its logical conclusion, Langdon's argument would make every broadcaster, Internet service provider, Internet merchant and every other private merchant or entity licensed or regulated by the government a state actor – a conclusion that courts repeatedly have rejected. *See, e.g., San Francisco Arts & Athletics*, Inc. *v. United States Olympic Committee*, 483 U.S. 522, 547 n.29 (1987) (no entanglement between federal government and the United States Olympic Committee even though government gave Committee exclusive right to use the word "Olympic"); *Blum v. Yaretsky*, 457 U.S. 991, 1011-12, 1027 (1982) (state licensing of nursing homes, subsidization costs, and payment of medical expenses of most patients did not establish symbiotic relationship); *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 358 (1974) (no entwinement between utility company and state even though company was heavily regulated and enjoyed partial monopoly and state approved tariff setting forth challenged method of terminating service); *Columbia Broadcasting System*, 412 U.S. at 118-19 (holding that radio and television broadcaster was not partner of the government for purposes of editorial content and that the broadcaster's refusal to accept editorial advertisements was not governmental action violative of the First Amendment); *Smith v. Del. First Fed. Credit Union*, 395 F. Supp. 2d 127, 130 (D. Del. 2005) ("While governments may regulate credit unions, regulation alone is not

enough to make a private entity and a government agency interdependent."). Langdon's allegation that Yahoo is a large Internet search engine, without more, is simply not enough as a matter of law to make Yahoo a state actor governed by the First Amendment.

5.     No Communications Act Claim. Langdon's Communications Act claim is baseless. The Communications Act applies only to "common carriers," such as telephone companies, who make a public offering to provide communications facilities. *See FCC v. Midwest Video Corp.*, 440 U.S. 689, 701 (1979). Langdon fails to allege any facts indicating that Yahoo serves as a communication facility to the general public, rather he alleges only that Yahoo is an Internet search engine. If, as numerous courts have held, an internet service provider (the means by which the consuming public has access to the Internet) is not a common carrier, then Yahoo's status a search engine certainly cannot make it a common carrier. *See, e.g., Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.,* 125 S. Ct. 2688, 2697 (2005) (affirming FCC determination that broadband Internet service providers are not common carriers under the Communications Act); *Howard v. America Online Inc.*, 208 F.3d 741 (9th Cir. 2000) (holding as matter of law that Internet service provider was not common carrier).

## CONCLUSION

For all the forgoing reasons, considered both cumulatively and independently, all claims and counts brought against defendant Yahoo! Inc. should be dismissed with prejudice.

**DUANE MORRIS LLP**

/s/ Daniel V. Folt
Daniel V. Folt (Del. Bar No. 3143)
Matt Neiderman (Del. Bar No. 4018)
1100 North Market Street
Suite 1200
Wilmington, DE 19801-1246

Dated: July 24, 2006                    Attorneys for Defendant Yahoo! Inc.

12

## CERTIFICATE OF SERVICE

I, Daniel V. Folt, do hereby certify that on July 24, 2006, copies of the foregoing "Opening Brief in Support of Yahoo! Inc.'s Motion to Dismiss for Failure to State a Claim" were served on the following parties via e-filing and United States Mail:

Christopher Langdon
1835 Edwin Blvd.
Winter Park, FL 32789

Kurt Michael Heyman, Esq.
Proctor Heyman LLP
1116 West Street
Wilmington, DE 19801
(302) 472-7300


/s/ Daniel V. Folt (Del. Bar No. 3143)


DM1\669844.1