## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CHRISTOPHER LANGDON,
    Plaintiff,

    versus                     Case no. 1:06-CV-319-J.J.F.

GOOGLE, INC, d.b.a DELAWARE GOOGLE, INC., YAHOO! INC,
and MICRO-SOFT CORPORATION
    Defendants

## AMENDED CIVIL RIGHTS COMPLAINT FOR DAMAGES, INJUNCTIVE AND DECLARATORY RELIEF, AND DEMAND FOR A JURY TRIAL

### I. BACKGROUND

I am the publisher of an internet website, www.NCJusticeFraud.com.

that exposes the fraud perpetrated on the U.S. Supreme Court, and other

courts, by N.C. Attorney General Roy Cooper, and his associates, Lisa Glover,

T.L. Mallonee and Robert O. Crawford III (now in private practice). It also ex-

poses fraud by the N.C. Department of Transportation (NCDOT) and its employ-

ees, J.J. Swain, Jack Murdock and F.D. Martin. It has been in continuous

existence since October 27th, 2005. I also publish a second site, that deline-

ates atrocities by the Chinese Communists, www.ChinaIsEvil.com.

My Complaint centers around the Defendants' refusals to run my ads for

my websites. The ads are:

> "Roy Cooper's Fraud
> Cooper's fraud on the Supreme Court
> Corruption within the N.C.D.O.J.
> www.ncjusticefraud.com "
> (herein referred to as *Cooper Ad #1, See Appendix #1*)

"Roy Cooper
The truth about Roy Cooper
The North Carolina Attorney General
www.ncjusticefraud.com "
(herein referred to as *Cooper Ad #2, See: Appendix #2*)

"Communist China
Has Murdered Millions
Boycott China
www.chinaisevil.com "
(herein referred to as *China Ad* )

Defendant Google gave a fraudulent excuse for not running *Cooper Ad*

*#1* and *Cooper Ad #2.* Those purported reasons don't appear on Google's

website, nor in their Content Policy for ads. Google has never given a pur-

ported reason for not running my *China Ad.* Microsoft has refused to run any

of my ads, and has not given a purported reason why it won't run my ads.

Yahoo has refused to run my ads because my websites are not hosted by

Yahoo.

It is my contention that the Defendants' refusals to allow my ads violate

my rights under the U.S. Constitution, Amendments I & XIV, and the

Constitution and laws of the State of Delaware (diversity and supplemental

jurisdiction).

## II.  GOOGLE

I paid the $5 fee to join Google's Adword program. I attempted to place

*Cooper Ad #1* with Google, on March 3rd, 2006 but it was rejected (*See:*

*Appendix I*) for the following, purported, fraudulent reasons:

-2-

"Your ad in campaign #1 was just disapproved for the following issues: Unacceptable content -POLICY DEFINITIONS-Unacceptable Content: At this time, Google policy does not permit ad text that advocates against an individual, group, or organization. In addition, this policy does not permit the advertisement of websites that advocate against a group protected by law... Please note that both your ads and your keywords have been suspended at this time" (*See: Appendix #1,* herein referred to as *Google's Statement #1* ).

Subsequently, I attempted to place *Cooper Ad #2* with Google. That ad was rejected on March 6th, 2006, for the same purported reasons that the first ad was rejected. Subsequently, I attempted to place my *China Ad.* Normally, ads appear on Google a few minutes after they are submitted, according to Google. When my *China Ad* did not appear on Google by the next morning, I e-mailed Google, and they responded that my ad was under review to determine if it met their policy guidelines.

When I did not receive an approval for my ad, I e-mailed Defendant Google again, and I still did not receive an approval, or a disapproval for the ad. I then withdrew my ad for consideration, and Google asked that I re-submit it, which I did. However, after waiting a week and submitting numerous requests that Google make a decision on the ad, I canceled my Google AdWords program. It is clear that Defendant Google was stalling because it could not come up with a plausible lie for rejecting the ad.

The purported reasons given by Defendant Google, in *Google's Satement #1,* for rejecting my ads for my website about Roy Cooper and his associates, are fraudulent for several reasons:

-3-

(a)  Google does allow ad text that advocates against individuals, con-
trary to *Google's Statement #1*.  For example, I Google-searched the phrase
"Impeach George Bush" and found a number of ads with text that was anti-
Bush.  I also discovered ad text on Google that was: anti-Kerry; anti-Barry
Bonds; anti-New York Yankees; anti- Congressman Tom Delay; anti-Jewish;
anti goy; anti-Irish; anti-Japan; anti-France; and numerous other ads that
advocate against individuals and groups.

(b) *Google's Statement #1, supra,* fraudulently asserts that Google does
not permit the advertisement of websites that advocate against a group
protected by law.  In the United States, no individual or group is protected by
law from criticism; and

(c) the purported reasons given for the rejection of my ads do not appear
on Google's website when one attempts to advertise on Google, therefore, I
wasn't given any  notice of the purported advertising conditions that were
given in *Google's Statement #1, supra.*

However, when one seeks to advertise with Google, a section entitled
*Editorial Guidelines* does appear.  It consists only of matters related to format
and syntax.  Google also has a section called *Content Policy,* that purports to
set standards for advertising on Google's search engine.  It is my contention
that, because Google never alleged in *Google's Statement #1, supra,* that my ads
violated its *Content Policy,* or it *Editorial Guidelines,* they are inapplicable to me.

-4-

I do not want to litigate, by implied consent, whether or not my ads meet
Google's *Content Policy* or *Editorial Guidelines*, unless I am required to. How-
ever, the defendants have argued, wrongly, in their motions to dismiss that I
did not allege fraud with enough specificity. Google's purported *Content Policy*
is a part of Google's pattern of fraud, deceit and mis-representation regarding
its advertising policies and search engine results. Google's *Content Policy* is
quoted herein to demonstrate Google's pattern of fraud.

"Content Policy—Advertisements and associated websites may not
promote violence or advocate against a protected group. A protected group is
distinguished by their: *Race or ethnic origin *Color *National Origin *Religion *
Disability *Sex *Age *Veteran Status *Sexual orientation/Gender identity-- A
text advocating against any organization or person (public, private, or pro-
tected) is not permitted. Stating disagreement with or campaigning against
a candidate for public office, a political party or public administration is
generally admissible. This standard applies to everyone who wants to advertise
on Google, whether we agree with their viewpoint or not. " (herein referred to
as, *Google's Statement #2, See: Appendix #1*).

Google's *Content Policy* and *Google's Statement #1,* are shams because
Google allows ads, and ads for websites, that violate either, or both, purported
policies. In my original Complaint, *Appendix II,* I included a large number of
products from *Sloganation,* an advertiser with Google. Those ads advocate
against politicians and others. On July 16th, 2006, I Google-searched "Impeach
George Bush" and found an ad for *Sloganation,* and I connected to their web-
site, where I found the following messages, emblazoned on T-shirts, mugs, etc.,
for sale: "ILLUMINAZIS" (contains an altered photo depicting President Bush,
Vice-President Cheney and others in Nazi uniforms); "HISTORY ALWAYS

REPEATS ITSELF" (shows a picture of Adolph Hitler on the left and a photo of President Bush on the right; "BUSH VOTERS HAVE BLOOD ON THEIR HANDS" ; "BUSH-CHENEY-MEN OF MURDER" ; "MOTHER OF MURDERERS" (contains a picture of Barbara Bush and accuses the President and his brothers of being a murderers; "BENEDICT ARNOLD" (contains a picture of Governor Arnold Schwarzenegger and accuses him of being a traitor); "TUBBY TRAITOR" (contains a picture of Karl Rove); "GOVERNOR SWASTIKA" (contains a photo of Governor Schwarzenegger super-imposed on a Nazi uniform; "CONDOLEEZA REICH" ; "BUTCHERS OF BAGHDAD" (contains photos of President Bush and Saddam Hussein); "BUSH ON BLOW?" (suggests that the President is a cocaine user); "SONS OF SATAN-george-marvin-neil-jeb" (accuses the President and his brothers of being the sons of Satan); "BUSH-CHENEY-STEALING FROM US" ; "MEN OF MENDACITY" (accuses President Bush and Vice-President Cheney of theft).

In my original Complaint, Google was made aware of the ads by *Sloganation*, and the accusations made on Sloganation's website, that advocate against individuals and groups. While *Sloganation* and other advertisers on Google are still allowed to accuse people of: murder, treason, theft, being Nazis and being Satanic, I am not allowed to advertise on Google. My China site merely states historical facts, that the Communist Chinese government has murdered between 40 to 73 million people. My N.C. site accuses the N.C.

Attorney General, and his associates of lying to the U.S. Supreme Court.  Both sites are backed up by evidence.

There are numerous ads on Google for websites that advocate against individuals and groups, including those that are supposedly "protected" by Google's *Content Policy*.  While linking to Sloganations' website through Google, I came across the following ads that violate Defendant Google's *Content Policy,* as folows:

"SHITCAN THE QURAN" (advocates against a religious group, supposedly a "protected group" under Google's Content Policy;  "IF YOU'RE BLACK OR BROWN YOU'RE GOING DOWN" (advocates against, and threatens violence against, racial, ethnic, and colored groups, supposedly protected by Google);  "I'M WHITE-I'M RIGHT" (racist content).  "ARCHES OF EVIL" (anti-McDonalds, a group);  "HOMOS DON'T LIKE BUSH" ( advocates against people based on their sexual orientation;  "NUKE THEIR ASS & TAKE THEIR GAS" (advocates violence against Arabs);  "MENDACITY BEGINS WITH MEN" (advocates against a gender);  "FOX NEWS-FACIST & UNBALANCED" (advocates against a group).

Another advertiser on Google is *Café Press.*  Google has partnered with *Café Press* in Google's Froogle program by selling impeach George Bush material together.  *Café Press* sells a large number of products that violate Google's purported Content Policy, by emblazoning on their products the

-7-

following:

"I DO NOT BRAKE FOR TURBANS" (advocates violence against Arabs;

"ASK ME WHY I HATE WOMEN" (advocates against people based on their

gender); "PILLORY HILLARY" (depicts Senator Clinton in the stocks with blood

oozing out of her); "NUKE MEXICO" (advocates the murder of millions based on

their ethnic origin); "NUKE CANADA' (same); "ANTI-CHRIST SUPERSTAR-

POPE BENEDICT XVI" (advocates against Catholics); "Cheney, Please Take

Scalia on Another Hunting Trip" (depicts Justice Scalia's head super-imposed

on a bird and advocates the assassination of Justice Scalia); "KILL 'EM ALL-

LET ALLAH SORT 'EM OUT" (advocates the murder of several million Muslims);

"I'D RATHER BE CHOKING REPUBLICANS" ; "FUCK GOD" ; "REPUBLI-

CANS DON'T CARE ABOUT BLACK PEOPLE" ; "GUNS DON'T KILL PEOPLE-

REPUBLICANS DO" ; SO MANY CHRISTIANS...SO FEW LIONS" ; 8,000,000

INACTIVE MORMONS CAN'T BE WRONG" ; "RELIGION KILLS" ; "GOD

DOESN'T EXIST- So I guess No One Loves You" ; "MESSIANIC JUDAISM IS A

LIE" ; "JESUS IS A WHORE" ; "I WANTED AN ABORTION" (includes a picture

of Barbara Bush); "STALIN IS COOL" ; and "JOIN THE ARMY-vacancies

available" (contains the depiction of a soldier's grave, and advocates against

veterans, supposedly a protected group); "EXTERMINATE LIBERAL VERMIN."

*Café Press* also has sells items that depict: Senator Clinton urinating on

the word "everyone";  President Bush urinating on the U.S. Constitution; and

-8-

the devil urinating on the word "religion."

Other advertisers also violate Google's sham *Content Policy,* as demonstrated in the following ads on Google.

"Anti Hillary - Whatever you're looking for you can get on e-Bay" ; "Anti-Capitalist - Whatever you're looking for you get it on e-Bay" ; "Anti-God - (*id*)" "Anti-Jew *(id.*)" ; "Anti-America (*id*)" ; "Anti-Irish" (*id.*)" ; "Anti France (*id.*)" "Anti-Islam (*id*)" ; "Suck Yankees (*id*)." There are thousands, of products, ads, and websites on Google that violate Google's purported *Content Policy.*

Google's rejection, or acceptance, of ads is often based on whether or not the political viewpoint of the ads, and the related websites, agree with those of its executives and employees, contrary to Google's fraudulent *Content Policy.*

"This standard applies to everyone who wants to advertise on Google. whether we agree with their viewpoint or not." *Content Policy, Google's Statement # 2, supra.*

In reality, Google regularly rejects ads that advocate against political candidates that it supports. Google executives and employees have a pattern of supporting Democratic candidates, which, of course, is their right. According to one news report, 98% of all political contributions by Google employees have gone to Democratic candidates. It is my understanding that Google's has donated a million dollars to MoveOn.org., a Democratic advocacy group. Former Vice President Al Gore, a Democrat, is, or was, employed by Google as a senior advisor. It is my understanding that he is a member of the Democratic

Leadership Conference, as is N.C. Attorney General Roy Cooper, whom I criticize on my website.  It is also my understanding that they are close political allies, which is one reason that Google won't allow my Cooper ads.  As far as I know, ads advocating against Vice President Gore are not allowed on Google, while ads that attack President Bush are allowed.

I have never voted for President Bush, or Vice-President Gore,  therefore, my observations are not clouded by personal bias.  I am not now, nor have I ever been, a member of any political party, nor have I ever donated money to any political candidate, or party.  I am non-partisan.  However, Google is partisan, which affects the way it approves, or dis-approves, ads, contrary to its stated standards in its fraudulent *Content Policy, Google's Statement #2, supra.*

There are a number of other examples of Google's political bias in its ad policy.  According to a news report on *World Net Daily*, June 19th, 2006, ads for the book, *Their Lives: The Women Targeted by the Clinton Machine,* were rejected by Google for "unacceptable content."  Predictably, Google does allow ads for other books, *i.e. Mein Kampf,* by Adolph Hitler, *Mao's Little Red Book,* and *The Communist Manifesto,* by Marx and Engels.

The *World Net Daily* article also states that ads by RightMarch.com., advocating against House Minority Leader Nancy Pelosi, were not allowed.  However, at the same time Google allowed ads advocating against House Majority Leader Tom Delay.  It is my understanding that Google execu-

-10-

itives and employees have financially supported Ms. Pelosi, who represents
a district in northern California, where Google is located.

Google has been criticized by many for its hypocrisy in that matter, yet it
continues to discriminate. On July 10th, 2006, I Google-searched "Abramoff"
and "Tom Delay," and I found ads advocating against Delay. However, I found
no ads advocating against Nancy Pelosi, when searching her name on Google.

Google co-founder and executive Larry Page has publicly encouraged
website owners to advertise on Google, rather than attempt to artificially boost
the ranking of their site's search results.

"If your spending time, trouble and money promoting your results, why not
just buy advertising? We sell it, and its effective. Use that instead.
Advertising is more predictable and probably more effective." Larry Page,
*Playboy,* September, 2004 (hereafter, *Google 's Statement #3).*

That is an open invitation to advertise on Google. However, Page fraudu-
lently concealed from the public in his preceding statement, the fact that
Google often won't allow advertising, based on Google's personal whims,
prejudices and political viewpoints, as in my case. It is fraudulent and
deceptive of Larry Page to encourage people to advertise on Google, and then
not allow their ads for so-called "reasons" that are contrary to their own
*Content Policy,* while, at the same time, allowing other ads that do not comply
with their *Content Policy.* The public has the right to rely on the public
statements of Google and its executives.

Google and its executives have also made a large number of public

-11-

statements that assert that its search results are objective and based on

the popularity of the websites.  Those statements are fraudulent.

For example, Google has been criticized by some because, when Google

searching "Jew," the website *Jew Watch* is prominently listed in the search

results, usually in the top three.  Google replied in a statement, which is still

posted on the internet, and that I was able to download on Jun 16th, 2006.

"Google-An explanation of our search results..Our search results are
generated completely objectively and are independent of the beliefs and pref-
erences of those that work at Google.  Some people concerned with this issue
have created online petitions to encourage us to remove particular links or
otherwise adjust search results.  Because of our objective and automated
ranking system, Google cannot be influences by those petitions.  *The only sites
we omit are those we are legally compelled to remove or those maliciously
attempting to manipulate our results* [emphasis added.... www.Google.com
/explanation.html."  (hereafter *Google's Statement # 4*)

In another response to the issue of its search results, Google touted its

purported lack of bias.

"A [Google] spokesman told *Cnet* that...'Google's search results are solely
determined by computer algorithms that essentially reflect the popular opinion
of the Web..Our search results are not manipulated by hand.  We're not able to
make any manual changes to the results." *The Inquirer*, April 7th, 2004 (herafter
*Google's Statement #5*)

Google has made other, similar, fraudulent statements.

"..Google is able to determine which sites have been 'voted' the best sources
of information by those most interested in the information they offer.."
www.google.com/corporate/tenthings.html.  (herafter *Google's Statement #6*)

"Our users trust Google's objectivity.."  *id.* (hereafter *Google's Statement # 7*)

In their Initial Public Offering, Google co-founders and executives Larry

Page and Sergey Brin included a letter that stated:

"We ask that you read this letter in conjunction with the rest of this pro-
spectus .. We also believe that searching and organizing all the world's infor-
mation was an unusually important task that should be carried out by a
company that is trustworthy and interested in the public good. We believe a
well functioning society should have abundant, free and *unbiased* [emphasis
added] access to high quality information... Google users trust our sysytems to
help them with important decisions: medical, financial and many others. Our
search results are the best we know how to produce. They are *unbiased and
objective* [emphasis added].." (herafter *Google's Statement # 8*)

" [LARRY] PAGE: In general we are trying to use the web's self-organizing
properties to decide which things to present. We don't want to be in the
position of having to decide these things. We take the responsibility seriously."
*Playboy,* September 2004 (herafter *Google's Statement #9*)

According to an article on the BBC News' website:

"Mr. Page and Mr. Brin ..created a software system whereby the search
engine would list results according to the popularity of the pages, after realizing
that more times than not the most popular result would also be the most
useful." BBC News, April 30th, 2004.

Google's search results are not un-biased, and are not merely based on the

popularity of the sites, as Google has fraudulently mis-led the public. Google

delisted my website, www.ncjusticefraud.com, for no reason. When it rejected

my ads for that site, Google added that:

"..your ad and keywords have been suspended at this time." *Google's
Statement #1, supra,* p. 3. herein.

Apparently, that meant that Google was removing my website from its

search results for "Roy Cooper," and "Attorney General Roy Cooper." I did a

Google search for "Roy Cooper" on March 13th, 2006, and my website was

result #35. On March 15th, 2006, I did a Google search for "Roy Cooper

Attorney General Roy Cooper," and my website was listed at result #16.
However, by March 19[th], www.ncjusticefraud.com was eliminated from Google's
search results when searching "Roy Cooper," or, "Attorney General Roy
Cooper."

At the same time, other search engine ranked my site highly. A search of
"Roy Cooper Attorney General" on MSN (Microsoft) showed my website ranked
at #8. Other search engines ranked my site as follows: *Search.com-* #24 (3-19-
06); *All the Web* - #59; *Metacrawler* - #43. All of the aforementioned search
engines, except MSN, based their rankings on the accumulated results of
other search engines. Google's elimination of my website site from its search
results hurt its ranking in other search engines.

According to Google, it will only de-list websites from its search results for
two reasons:

"The only sites we omit are those we are legally compelled to remove or
those that maliciously attempting to manipulate our results.." *Google's
Statement #4, supra.*

Google has never alleged that I was trying to manipulate its search results
for my website. It did allege that my website advocated against a group pro-
tected by law. Google fraudulently implied that it was legally compelled to
remove my website from its search results (*Google's Statement #1, supra,* p. 3)
in order to justify its de-listing.

However, after I filed my initial Complaint, Google reinstated my website,

-14-

www.ncjusticefraud.com.   The last time I checked, my site was ranked within the top 30, when Google searching "Attorney General Roy Cooper." It has been ranked as high as #7 on Yahoo and #8 on MSN.  Google's rein-statement of my website in its search results proves that the initial de-listing was fraudulent, arbitrary, and punitive.

However, it was not an isolated incident.  Defendant Google's de-listing of websites that it dis-agrees with, including mine, is a common practice. According to *The New Media Journal*, a conservative internet news site, it was de-listed from Google News and Google's search engine results. Google alleged that the site contained "hate speech."

According to a blog posted on NewsBusters.org by Noel Shephard,   May 22nd, 2006, Google has purged other Conservative News websites.  In addition to de-listing *The New Media Journal,* Google has also de-listed *The Jawa Report, MichNews.com,* and *PHXnews.com.*  All of those websites were de-listed for pur-portedly expressing hate speech contained in articles critical of radical Islam. Google never alleged that it was compelled by law to de-list the aforementioned sites, nor did it allege that the sites were attempting to manipulate Google's search results, the only two reasons that Google alleges that will result in a de-listing.  *See: Google Statement # 4, supra.*

It is my understanding that NewsBusters, and/or, the NewsBusters article on Google's censorship was also de-listed by Google.  According to the article,

-15-

some of the articles, labeled as "hate speech," that got those sites censored (de-listed), continue to appear on other websites that were not de-listed. The main reason that those websites were censored is that they are often critical of Democratic politicians and organizations that Google, and its executives and employees, support.

My site, www.ncjusticefraud.com, is not conservative, nor is it liberal. It criticizes a politician, Roy Cooper, who happens to be a Democrat (if he had been a Republican, my criticism would have been the same). That's what my site has in common with the other sites that were censored.

According to an article on www.theregister.com.co.uk (January 27th, 2006), the following question and answer appeared on *Google Help Center*:

"Does Google censor search results?  Google does not censor search results for any search term...We believe strongly in the democracy of the web to determine the inclusion and ranking of sites in our search results." (hereafter *Google's Statement #10*)

As far as I know, Google has deleted Statement #10 from its website because it is false.  Google censored my website, and the other sites mentioned herein.  Google also allows the Chinese government to censor Google's search results in China.

Google has made other fraudulent statements to deceive the public into believing that its search results are objective and neutral.

"[Sergey] BRIN:  We don't try to put our sense of ethics into search results, but we do when it comes to advertising" *Playboy*, September, 2004 (herafter *Google's Statement # 11*)

-16-

That statement is fraudulent because Google's so-called "ethics" *are* determinative as to whether, or not, a website is included in its search results, or not.

Google executives Sergey Brin and Larry Page have also fraudulently asserted that Google's encourages diversity in its search results.

"PLAYBOY: If we research a controversial topic, how can Google be certain to point us to sites that reflect both sides of an issue?
BRIN: I agree that diversity of sources is a desirable goal, and in fact the results naturally tend to be diverse. We do some simple things to increase the diversity. If you check almost any topic, you will get diverging viewpoints....We think its good for us to encourage diverse viewpoints, and the search engine presents them. It happens naturally as response to queries....
PAGE: Actually..opposition groups do well in search results. Thus their sites will be prominent in the listings.. We take the responsibility seriously. People depend on us." *Playboy*, September, 2004 (Google Statement #).

In reality, Google discourages diversity by censoring sites that it does not agree with. It censors sites by not allowing them to advertise and, sometimes, by de-listing the sites.

As far as I know, Google does not allow the advertisement of any website that is critical of the Communist Chinese government. It is not part of their stated *Content Policy,* however, it is part of its *de facto* Content Policy.

If one Google-searches "Attorney General Roy Cooper," it is difficult to find any results that are critical of Cooper. The search results are full of articles (press releases) that are favorable to Cooper and websites set up by Cooper. If Google truly wanted diversity, it would allow the advertisement of my websites. It has already been demonstrated herein that Google is more likely to reject

-17-

ads advocating against Democrats, than those that advocate against Republicans. Google does not seek diversity in its search results, as fraudulently claimed by Google executives Brin and Page.

Google spokesman Steve Langdon [no relation] has stated publicly that Google doesn't allow "hate speech," and has used that as a reason for de-listing sites, contrary to *Google's Statement #4.* Google does allow advertising for MoveOn.org, which ran a video on its website comparing President Bush to Adolph Hitler. Eventually, MoveOn removed the ad, but not because of Google. Jewish groups asked them to remove it because they found it offensive. MoveOn was never de-listed from Google's search results, and its advertisng was never banned. Instead Google and/or its executives donated a million dollars to them. I have already demonstrated herein that Google allows *Café Press* and *Sloganation* to advertise, although their sites profess hate and advocate violence. Neither site has been de-listed by Google.

I, and anyone else, should be able to rely on the public representations of Google, and its executives, regarding the conduct of its business.

### III. MICROSOFT

Defendant Microsoft made it known that it wanted potential advertisers to to advertise on its search engine. I applied, and was accepted for Microsoft's Pilot Ad program.

"We're excited to let you know that you have been chosen to participate in the U.S. pilot of MSN adCenter..as this is a pilot program we need and want

your input so that we can make adCenter even better..We look forward to working with you." *See: Appendix IV, Original Complaint*

However, after I submitted my *China Ad,* I never received a response, a *de facto* refusal to run my ad. To this day, I have never been given a reason as to why. My original Complaint offered to settle this lawsuit for $6,500, if Microsoft, and the other defendants, would run my ads for both sites. Microsoft has never offered to run any of my ads under any condition.

Microsoft's attorney, Mr. Folt, fraudulently alleged in his pleadings that my Complaint never alleged that Yahoo or Microsoft refused to run my ads. I proved that false in my response to Folt's consolidated opposition, etc., and my response to Yahoo's and Microsoft's motions to dismiss. Folt's fraud on the court is a continuation of Microsoft's fraud. I was told that I was accepted into Microsoft's pilot ad program, but they refused to run my ads by ignoring me. Microsoft is using fraud to breach its contract.

## IV. YAHOO

I attempted to advertise on Defendant Yahoo's search engine. However, Yahoo places obstacles in the way of small advertisers. I was told by a Yahoo representative named Terrence, that Yahoo does not accept advertising for websites not hosted by Yahoo. I then wrote a certified letter to the President of Yahoo, which was Yahoo's attorney Folt has admitted they received, yet I got no response. My letter included Terrence's name and the reference number he gave me for the call. *See: Appendix IV. Appendices I-IV,* from my original

Complaint, which are incorporated herein by reference.

Yahoo also effectively de-listed www.ncjusticefraud.com from its search

results when searching "Roy Cooper, " or, "Attorney General Roy Cooper."

However, after I filed my Complaint, they re-instated it.

## V.  DELAWARE CLAIMS

Google, Yahoo and Microsoft have used fraud in order to induce me to

advertise with them, and to breach their contracts with me to advertise on their

respective engines.  They have also engaged in deceptive business practices, in

violation of the common law and Title 6, Chapter 2517, of the Delaware States.

Furthermore, internet search engines are public forums, and have been

dedicated as such by the Defendants.  Under Delaware law, a shopping mall

is considered a public forum.

"Owners of private property held out for public purposes, such as
shopping malls, are not entitled to prevent individuals from picketing on
landowners private property."  *State v. Elliot*, 548 A. 2d 28, 29 Del. Supr. 1988).

The Defendants search engines are shopping centers, and more.  There

are more free speech activities on their search engines than in any mall. The

Delaware Constitution guarantees the right of a free press and the right to

petition the government for a redress of grievances.

Additionally, the Defendants are engaged in a public calling.  Delaware

is a common law state, and under the common law, anyone engaged in a public

calling may not discriminate.  *See: The Law of Public Callings as a Solution to*

*the Trust Problem,* 17 Harvard Law Review 156 (1903). My allegations in

my Complaint demonstrate that Google and Yahoo discriminated against me by

not allowing my ads and de-listing one of my websites. Microsoft has

discriminated against me by not allowing me to advertise. Their discrimina-

tion is based on political bias, and/or advertising budgets.

## VI. FEDERAL CLAIMS

The Defendants actions and inaction has denied my rights of free

speech and to petition the government for a redress of grievances, as guar-

anteed by the Constitution of the United States, Amendments I and Amend-

ment XIV. Internet search engines are public forums, and have been dedicated

such, by the Defendants. In *Marsh v. Alabama,* 326 U.S. 501, 66 S.Ct. 276

(1946) the Court held that private property that is opened to the public may be

subject to the First Amendment.

"The more an owner, for his advantage opens up his property to for use by
the public in general, the more do his rights become circumscribed by
statutory and constitutional rights of those who use it..In balancing the
constitutional rights of property owners against those of the people to enjoy
freedom of press and religion the latter occupy a preferred position." *Marsh v.
Alabama,* 66 S.Ct. 276 at 276 [3-5] (1946).

The Court has re-affirmed the principle that public property may be

dedicated to public use.

"...a speaker must seek access to public property or to *private property
dedicated to public* use to evoke First Amendment concerns.." *Cornelius v.
NAACP Legal Defense & Education Fund,* 105 S.Ct. 3439, 3448 (1985).

There are more First Amendment activities occurring on the internet,

-21-

through search engines, than in any mall. Several states have held that a

shopping mall is a public forum. *Pruneyard Shopping Center v. Robins,*

447 U.S. 74, 100 S.Ct. 2035. The mall in *Pruneyard* had 25,000 visitors a day.

The internet, Google, Microsoft and Yahoo! have millions of visitors each day.

According to *U.S.A. Today* (June 14th, 2006, p. B-1) 58% of all internet searches

are done through Google. In May alone, Google had 100 million searches. If

one cannot advertise on Google, they are effectively barred from the most im-

portant market in America. There are thousands of shopping centers in the

U.S. However, the internet search engine market is dominated by three

companies: Google, Yahoo! and Microsoft (MSN). It is my understanding that

approximately 93% of al searches are done through those three companies.

Shopping malls are primarily devoted to retail activities. The internet and

search engines are used for retail activities, and for: chat rooms, presenting

news, polling on government/political matters; providing information on

government agencies, services and officials; accessing public records, including

court records; filing court documents (*i.e.* the Pacer System); obtaining

government forms; petitioning the government (*i.e.* Google search "impeach

George Bush"); paying taxes; applying for jobs (including government jobs);

purchasing U.S. Postal Service Stamps; e-mailing; tracking mail deliveries

(public & private); taking state approved driving courses; advertising; taking

public and private college courses; political fund-raising; religious fund-raising;

-22-

tracking-down criminals; weather information; medical information; registering to vote; and voting.

Defendant Google has an e-mail system that it calls "G-Mail." It is my understanding that it is free. Yahoo! and Microsoft also have e-mail service. The internet is also used to broadcast radio programs, religious events, press conferences by government officials, television shows, sports events, *etc.* There is a symbiotic relationship between traditional broadcasters and the internet. For example, NBC news allows viewers to vote *via* the internet for news stories it wishes to see on the NBC nightly news.

Furthermore, the internet was developed by the U.S. Government and public universities, and was eventually made available to the public. Government employees access the internet, and e-mail each other, in government buildings with computers purchased by governments. There was a scandal in North Carolina several years ago when employees of the North Carolina Department of Transportation racked up thousands of dollars in expenses accessing pornographic web-sites.

Many colleges, state and private, require students to have computers in order to access the internet for research projects. Some elementary schools in California require students to have a computer in order to access the internet. Public universities and libraries make computers available to the public to access the internet. The Pennsylvania courts have held that a mall is not

public forum, however, their courts have also held that a private university is a public forum. *Commonwealth v. Tate,* 432 A. 2d 1382 (Penn. 1981).

The internet is accessed *via* telephone lines throughout the country. The rights of ways for those lines, strung along the public streets and highways, were procured through the power of eminent domain. Streets, including the shoulders and sidewalks, have always been open for picketing, leaf-letting, protesting and other First Amendment activities. *Hague v. C.I.O.,* 307 U.S. 496, 59 S.Ct. 954, 955 (1939). Telephone companies are quasi-public corporations with government granted monopolies, further proof of the internet's symbiotic relationship with governments.

Some people access the internet via cable companies, whose lines are also strung along public streets. Cable companies have government granted monopolies, are highly regulated, and are required to provide public access channels. *See: Turner Broadcast Systems, Inc. v. FCC,* 117 S.Ct. 174 (1997).

The internet is also accessed via satellite dishes. Those signals are transmitted by satellites that have been launched by the government (NASA) from government property (Kennedy Space Center) by rockets developed by the U.S. government. It is my understanding that the launching and orbits of satellites are highly regulated by U.S. and International Law.

According to USA Today (April 28th, 2006, p. 3A) the California Public Utilities Commission approved a plan to allow the transmission of internet data

through power lines. A test program has been utilized with the help of Southern California Edison and the Los Angeles Department of Water and Power.

Google also has blog sites open to the public. It is my understanding that Google has an entity called Blogger which allows access to blogs discussing various public issues. Google is also working with private and public universities (Harvard University, The University of Michigan, *et alia*) to scan their book holdings.

Whenever there is government entwinement with a ostensibly private entity, there is state action, as required by 42 U.S.C. 1983. *Brentwood Academy v. Tennessee Secondary School Athletic Association,* 121 S.Ct. 924, 925 [5-6] (2001). Certainly, there is more government entwinement in the internet than in the company town in *Marsh.* The internet is the greatest public forum ever created, and Google, Yahoo and Microsoft are the primary search engines for the internet. When courts examine First Amendment rights, they must adapt those rights to technological and economic changes.

Once private property is dedicated as a public forum, it may not discriminate, as the Supreme Court in *Lloyd v. Tanner* stated:

"First and Fourteenth Amendments safeguard rights of free speech and assembly by limitations on state action, not on action by owner of private property used *non-discriminatorily* [emphasis added] for private purposes only... Courts properly have shown special solicitude for guarantees of First Amendment" *Lloyd Corp., Ltd. v. Tanner,* 407 U.S. 551, 33 L. Ed 2d 131, 92 S.Ct. 2219 at 2219 [1-2] (1972).

"The basic issue in this case is whether respondents, in the exercise of asserted First Amendment rights, may distribute handbills on Lloyd's private property contrary to a policy enforced against *all* [Court's emphasis] hand-billing." *Lloyd, supra*, at 92 S.Ct. 228 [1], 407 U.S. at 567.

The Court made it clear that if Lloyd had opened the mall to handbilling

it could not discriminate, as the U.S. Court of Appeals for the Third Circuit

noted:

"The third suggested factor in *Lloyd* is that a demonstration of discriminatory denial of access might create an enforceable right of entry." *Asociacion de Trabajadores, v. Green Giant*, 518 F. 2d 130, 137 (3rd. Cir. 1975).

"..in certain circumstances private property might become subject to First Amendment demands." *Asociacion de Trabajadores, supra*, at 131 [5].

"Property does become clothed with a public interest when used in a manner to make it of public consequence, and affect the community at large. When, therefore, one devotes his property to a use in which the public has an interest, he, in effect, grants to the public an interest in that use, and must submit to be controlled by the public for the common good, to the extent of the interest he has thus created." *Munn v. Illinois*, 94 U.S. 113, 126 (1877).

In *Niemetko v. State of Maryland,* 340 U.S. 268, 71 S.Ct. 325, the Court

held that the Jehova's Witnesses should be allowed to use a public park which

other religious organizations were allowed to use. In *Laguna Publishing Co. v.*

*Golden West Publishing Corp.,* 177 Cal. Rptr. 703, 715-716 (Cal.App. 1981), the

court held that a private residential complex could not discriminate by allowing

handbilling by some, and not others, relying on *Lloyd. See also: Burton v.*

*Wilmington Parking Authority,* 365 U.S. 715, 81 S.Ct. 856 (1961). Thus, a

discriminatory ban of my political expressions by Google is unconstitutional.

Google gave no reasons for not running my ad for my *Chinaisevil* website.

-26-

It has been well established that the Defendants have curried favor with the Chinese Communist government by censoring its search engine in China. It is my understanding that information on Chinese dissidents was collected by Google and given to the government, resulting in their imprisonment. It is my understanding that Google has agreed to censor certain words in its Chinese operations, including "democracy" and "freedom."

My website, www.ncjusticefraud.com, contains allegations, includ-ing, but not limited to, the following:

(a) N.C. Attorney General Roy Cooper, and his associates, Lisa Glover and Robert O. Crawford III, perpetrated fraud on the U.S. Supreme Court, and other courts, in *Langdon Cooper & Tippett* and in *Langdon v. Swain, Martin and Murdock*. Their fraud on the courts includes: lying about material facts; misrepresenting the pertinent law; failing to cite the contrary, controlling case law; concealing critical information; and misrepresenting my Complaints. They also violated the principles of equitable and judicial estoppel.

(b) North Carolina Department of Justice attorney T.L. Mallonee procured the purported judgment in *Langdon v. NCDOT* (98-CVS-139) in the state courts of N.C. by fraud on the courts and by violating the principles of equitable and judicial estoppel.

(c) The NCDOT, and its employees, Swain, Martin and Murdock, used fraud to prevent me from obtaining just compensation for the taking of my property

-27-

in the state and federal courts, thereby denying my Constitutional rights to

mean-ingful access to the courts; due process of law; and equal protection

under the law.

(d) Lisa Glover and Robert O. Crawford III used fraud in the N.C. Courts in

order to prevent me from obtaining relief from the void, purported judgment in

*Langdon v. NCDOT.*

(e) Several examples of their fraud on the U.S. Supreme Court are given at

www.ncjusticefraud.com. *See: Appendix #3.* For instance, Cooper, Glover and

Crawford stated in their *Brief in Opposition,* filed with the U.S. Supreme Court:

"Plaintiffs Complaints were properly dismissed as frivolous on the grounds
of res judicata and/or failure to state a claim and qualified immunity." *Brief in
Opposition,* case no. 02-12, p. 14.

That statement is false for several reasons: Neither of my complaints

(*Langdon v. Tippett et alia* and *Langdon v. Swain et alia* ) were dismissed

because of qualified immunity, as falsely alleged by Cooper and his associates;

Cooper, Crawford and Glover falsely alleged in their preceding statement,

filed with the U.S. Supreme Court, that my Complaints were properly

dismissed because of *res judicata.* However, they contradicted themselves by

later admitting in the same *Brief in Opposition* that it was not proper to dismiss

*Langdon v. Swain* because of *res judicata.*

" Thus, it may not have been proper for the lower courts to dismiss
Plaintiff's Complaint in *Langdon v. Swain* on the grounds of res judicata." *Brief
in Opposition* (case 02-12), p. 20.

-28-

There are numerous other examples of their fraud on the U.S. Supreme Court, many of which, but not all, have been exposed at www.ncjusticefraud.com  for 6 months.  *See: Appendix #3.*

None of the Defendants has ever stated that it was refusing to place my ads because they were false, or, because my websites contained information that was false, or, potentially false.  Also, Cooper, Crawford and Glover, and others mentioned on my website,  consented to the allegations against them by not objecting to their publication.

Without waiving those objections, I am willing to dismiss my Complaint, with prejudice,  *if* the defendants can prove that the courts ever mentioned the term qualified immunity in their orders and opinions dismiSsing my Complaints [*Langdon v. Swain et alia*  and *Langdon v. Tippett ]*.  None of the defendants has done so because Cooper did lie to the U.S. Supreme Court on the purported issue.

I made Cooper, Crawford, Mallonee and Glover aware of my web-site, and the nature of my allegations before, and after, the inception of the site.  In a letter dated July 20th, 2005, I outlined some of the fraud on the courts by Cooper, Crawford Mallonee and Glover.  The letter was also mailed to Governor Easley.  I sent a subsequent letter to Cooper and attached a detailed exposition of at least twenty instances of fraud on the court by Cooper, Crawford, Glover and Mallonee.  Those allegations of fraud on the courts have since been posted

-29-

on my website, www.ncjusticefraud.com. *See: Appendix #3.* A copy of my letter

and supporting documents were sent to Governor Easley, and they both

received the documents on September 8th, 2005. I offered to discuss the

situation with Cooper in person, or by telephone, however, he appears to be

unwilling to do so.

Cooper responded through a NCDOJ attorney, Elizabeth Mc Kay, in letters

dated September 1st and September 16th, 2005. Neither letter denied the

charges, however, the second letter threatened me with consequences if I took

"any action" (whatever that means) alleging fraud by the NCDOJ attorneys. I

took the letter as a hollow threat. I responded in a letter dated September 23rd,

2005, and informed Mc Kay that I would not be bullied and that I had informed

members of the media about the allegations.

Another of my letters, dated October 27th, 2005, informed each of the U.S.

Supreme Court Justices of my website and its allegations. I also sent copies of

the letter to Roy Cooper, Robert O. Crawford, Lisa Glover and T.L. Mallonee.

I also called and left voice mail messages for Glover, Cooper (via Mc Kay)

and Crawford  Those messages informed them of the existence and nature of

my website. My subsequent letter of October 31st, 2005 to Cooper, Crawford,

Glover and Mallonee asked them to write me if they disputed any of my

assertions of fraud by them  on my website. The letter was received by the

NCDOJ attorneys on the following dates:  Robert Crawford III, November 4th,

2005;  Roy Cooper, November 9th, 2005;  Lisa Glover,  November 9th, 2005; and T.L. Mallonee, November 11th, 2005.

They never responded to the letter, therefore, they waived any right to object to the publication of the accusations on my website. Beginning in November, 2005, I wrote and/or e-mailed every member of the North Carolina General Assembly about my website and the nature of its allegations. I also began e-mailing hundreds of attorneys, reporters, and Cooper contributors in North Carolina with the same information.

On January 12th, 2006, I wrote Chief Justice Roberts a lengthy letter informing him again, in more detail, of Cooper, Crawford and Glover's fraud on the Supreme Court. I affirmed, under the penalty of perjury, that my allegations in the letter, and the accompanying printouts from my website, were true and correct. I also affirmed, under the penalty of perjury, that copies were mailed to Crawford, Cooper, Glover and Mallonee. Copies of the letter were also sent to each of the other eight Justices.

My allegations were published in letter form, and circulated, at least since July, 20th, 2005, approximately nine months ago. My allegations have been published on my website since October 27th, 2005, approximately six months ago.

None of the individuals accused of fraud, and/or fraud on the courts on my website, or in my letters, has denied the charges, or, asked for a retraction.

-31-

If my allegations were false, the named individuals could have objected to the publication of the allegations, demanded a retraction, and sued for libel if the allega-tions were not withdrawn.   However, they have not done so, therefore, the alle-gations should be deemed admitted and acceptable for publication.  If *Google* had provided me with contact information after the rejection of my ads, I could have provided them with the preceding information.

Defendant Google has never asserted that the allegations on my website, www.ncjusticefraud. com, are false, or, that they might be false.  Unlike the broad allegations of criminal acts by President Bush and Senator Clinton, made by commercial advertisers on Google, my allegations are well supported factually.

According to Delaware law, a shopping mall is a public forum.  *State v. Elliot, supra,* adopted the analysis that the New Jersey courts use to determine what is a public forum.  *State v. Eliot supra,* at 32-33.  Other states have reached similar conclusions.  *Bock v. Westminster Mall Co.,* 819 P. 2d 55 (Colo. 1991)*; Alderwood Assocs. v. Washington Environmental Council,* 635 P. 2d 108 (1981); *Pruneyard Shopping Center v. Robins,* 447 U.S. 74, 100 S.Ct. 2035 (1980); *Batchelder v. Allied Stores International,* 445 N.E. 2d 590 (Mass. 1983); *Lloyd Corp. v. Whiffen,* 849 P. 2d 446 Ore. 1993);  *State v. Cargill,* 786 P. 2d 208 (Ore. App. 1990). *See also: New Jersey Coalition v. JMB,* 650  A. 2d 757 (N.J. 1994);  *State v. Shack,* 277 A. 2d 369 (N.J. 1971).

-32-

The state courts cited above agree that: either, there is no state action requirement in their constitutions for access to private property for First Amendment purposes; or, they have held that the state action requirement has been met because the private property has been dedicated to public use. *See: Golden Gateway Center v. Golden Gateway Tenants Association,* 111 Cal. R. 2d 336 (Cal. 2001), *re-affirming Pruneyard, supra.*

The U.S. Supreme Court stated that:

The authority to regulate the conduct of a business ..does not exist in respect of merely private property or business..but exists only where the business has become 'affected with a public interest.' This phrase, used by Lord Hale 200 years ago (Munn v. Illinois, 94 U.S. 113, 126) includes,[businesses] like common carriers, telegraph and telephone companies, ferries, wharfage etc." *Tyson & Bro.–United Theatre Ticket Offices, Inc., v. Banton,* 47 S.Ct. 428[4] (1927).

## VII.  JURY TRIAL; NON MAGISTRATE; JURISDICTION; PRO SE PLEADINGS

I respectfully demand a jury trial for all issues so triable. I do not agree to the determination of any issues by a magistrate judge, unless required to do so by law. The court has jurisdiction to determine the U.S. Constitutional questions under 42 U.S.C., Section 1983; 28 U.S.C., Sections 1331 and 1343. The Court has jurisdiction to determine the Delaware constitutional and law issues under diversity of citizenship, 28 U.S.C., Section 1332, and under supplemental jurisdiction.

I ask that my *pro se* pleadings be liberally construed and held to a lesser standard than those prepared by an attorney.

"In civil rights cases where the plaintiff appears pro se, the court must construe the pleadings liberally and must afford the plaintiff the benefit of any doubt." *Karim Panahi v. L.A. Police Dept.*, 839 F. 2d 621, 623 (9th Cir. 1988).

*See also: Haines v. Kerner,* 404 U.S. 519, 520-521, 92 S.Ct. 594, 595-596 (1972); *Satchell v. Dilworth,* 745 F. 2d 781 (2nd Cir. 1984); *Gibbs v. Roman,* 16 F. 3d 83 (3rd Cir. 1997); and *Sellers v. M.C. Floorcrafters, Inc.,* 842 F. 2d 639 (2nd Cir. 1988).

## VIII.  OTHER CRITERIA

I have no viable alternative than advertising on the defendants search engines.  My websites criticize the conduct of the defendants.

## IX.  RELIEF SOUGHT

Therefore, I ask for the following relief:

(a)  A declaratory judgment that internet search engines are public forums under federal law;  (b)  a declaratory judgment that internet search engines are public forums under Delaware law;  (c)  that Google, Yahoo! and Microsoft be required to place my ads for my websites, www.ncjusticefraud.com and www.chinaisevil.com, in prominent places on their search engine results;  (d) that Defendants Google and Yahoo! honestly rank my websites, www.chinaisevil.com and www.ncjusticefraud.com, in their search results, as Microsoft does;  (e)  compensatory damages in the amount of $95,000 from each of the Defendants for the violation of my federal rights, as described in this Complaint;  (f) compensatory damages of $95,000 from Google and Yahoo!

and Microsoft for the violation of my rights under the Constitution and laws of Delaware; (g) Punitive damages from each of the Defendants of $95,000 for the violation of my federal rights; (h) punitive damages from Google, Microsoft and Yahoo! of $95,00 each for the violation of my rights under the Delaware Constitution and laws.

Respectfully submitted, this the 20th day of September, 2006.

Christopher Langdon
1835 Edwin Blvd.
Winter Park, Fl. 32789
407-647-7539

VERIFICATION ATTACHED

-35-

UNITED STATES DISTRICT COURT
DISTRICT COURT OF DELAWARE

CHRISTOPHER LANGDON,
    Plaintiff,

      v.                case no. 1:06-CV-319-J.J.F.

GOOGLE, INC. d.b.a. GOOGLE DELAWARE, INC.,
YAHOO!, INC. and MICROSOFT CORPORATION,
    Defendants.

## VERIFICATION

I hereby solemnly affirm, under oath, that everything contained in my

*Amended Civil Rights Complaint For Damages, Injunctive and Declaratory Relief,*

*and Demand for Jury Trial,* is true and correct, except those matters asserted

on information and belief, and those matters I believe to be true and correct.

    Christopher Langdon, Plaintiff
1835 Edwin Blvd., Winter Park, Fl. 32789
407-647-7539—qiology@aol.com


STATE OF FLORIDA
COUNTY OF _Orange_

The foregoing instrument was acknowledged before me this 20th day of September
2006, by Christopher D. Langdon.

           Notary Public

Personally Known_____ OR Produced ID _✓_ Type of ID Produced FL DL.



DANIELLE MARTIN
Comm# DD0491363
Expires 11/16/2009
Bonded thru (800)432-4254
Florida Notary Assn., Inc