# EXHIBIT F

**To the Opening Brief In Support Of Google Inc.'s
Motion To Dismiss The Amended Complaint**

Westlaw.

Not Reported in A.2d     Page 1

Not Reported in A.2d, 2006 WL 1134170 (Del.Ch.)
(Cite as: Not Reported in A.2d)

C
American Homepatient, Inc. v. CollierDel.Ch.,2006.Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.
Court of Chancery of Delaware.
AMERICAN HOMEPATIENT, INC., Plaintiff,
v.
Joseph J. COLLIER and Med-Equip, Inc., Defendants.
No. Civ.A. 274-N.

Submitted March 21, 2006.
Decided April 19, 2006.

**Background:** Employer brought action against former employee and former employee's present employer for breach of non-compete agreement and settlement agreement.

**Holdings:** The Court of Chancery, New Castle County, Chandler, Chancellor, held that:

(1) non-compete agreement and settlement agreement were enforceable contracts;

(2) former employee's delivery of non-respiratory durable medical equipment (DME) to present employer's patients did not constitute breach of non-competition agreement;

(3) in obtaining execution of stale certificates of medical necessity (CMNs), former employee did not breach non-compete and settlement agreements;

(4) former employee's use of cell phone, in his work as respiratory therapist, did not violate terms of settlement agreement;

(5) employer could not state action against former employee's present employer for tortious interference with contractual relationship;

(6) employer failed to establish that former employee and former employee's present employer engaged in unfair competition; and

(7) employer failed to establish claim of tortious interference with prospective economic advantage.

Judgment for defendants.

[1] **Compromise and Settlement** 89 ⇌7.1

89 Compromise and Settlement
   89I In General
      89k7 Validity
         89k7.1 k. In General. Most Cited Cases

**Contracts** 95 ⇌116(1)

95 Contracts
   95I Requisites and Validity
      95I(F) Legality of Object and of Consideration
         95k115 Restraint of Trade or Competition in Trade
            95k116 In General
               95k116(1) k. In General. Most Cited Cases

**Contracts** 95 ⇌117(2)

95 Contracts
   95I Requisites and Validity
      95I(F) Legality of Object and of Consideration
         95k115 Restraint of Trade or Competition in Trade
            95k117 General or Partial Restraint
               95k117(2) k. Limitations as to Time and Place in General. Most Cited Cases
Non-compete agreement between employer and former employee, and settlement agreement between employer, former employee, and former

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                              Page 2
Not Reported in A.2d, 2006 WL 1134170 (Del.Ch.)
(Cite as: Not Reported in A.2d)

employee's current employer, were enforceable contracts; agreements were result of mutual assent, agreements were supported by consideration, and agreements, which were limited to one year and radius of 50 miles, were of reasonable scope and duration.

Non-compete agreement between employer and former employee, and settlement agreement between employer, former employee, and former employee's current employer, were enforceable contracts; agreements were result of mutual assent, agreements were supported by consideration, and agreements, which were limited to one year and radius of 50 miles, were of reasonable scope and duration.

**[2] Compromise and Settlement 89 ⇌20(1)**

89 Compromise and Settlement
    89I In General
        89k20 Performance or Breach of Agreement
            89k20(1) k. In General. Most Cited Cases

**Contracts 95 ⇌312(4)**

95 Contracts
    95V Performance or Breach
        95k312 Acts or Omissions Constituting Breach in General
            95k312(4) k. Contract Not to Engage in or Injure Business Carried on by Another. Most Cited Cases
Former employee's delivery of non-respiratory durable medical equipment (DME) to present employer's patients did not constitute breach of non-competition agreement between employer and former employee, or of settlement agreement between employer, former employee and present employer; settlement agreement did not specify equipment or services provided by former employee, as respiratory therapist, must be respiratory in nature, there was no recognized distinction between respiratory and non-respiratory DME, present employer's practice had always been to require full time respiratory therapists to deliver all DME, and former employee followed present employer's practice.

Former employee's delivery of non-respiratory durable medical equipment (DME) to present employer's patients did not constitute breach of non-competition agreement between employer and former employee, or of settlement agreement between employer, former employee and present employer; settlement agreement did not specify equipment or services provided by former employee, as respiratory therapist, must be respiratory in nature, there was no recognized distinction between respiratory and non-respiratory DME, present employer's practice had always been to require full time respiratory therapists to deliver all DME, and former employee followed present employer's practice.

**[3] Compromise and Settlement 89 ⇌20(1)**

89 Compromise and Settlement
    89I In General
        89k20 Performance or Breach of Agreement
            89k20(1) k. In General. Most Cited Cases

**Contracts 95 ⇌312(4)**

95 Contracts
    95V Performance or Breach
        95k312 Acts or Omissions Constituting Breach in General
            95k312(4) k. Contract Not to Engage in or Injure Business Carried on by Another. Most Cited Cases
In obtaining execution of stale certificates of medical necessity (CMNs), former employee was only acting as liaison, as respiratory therapist, between present employer and patient's doctor, and thus there was no breach of non-compete and settlement agreements between employer, former employee, and former employee's current employer.

In obtaining execution of stale certificates of medical necessity (CMNs), former employee was only acting as liaison, as respiratory therapist, between present employer and patient's doctor, and thus there was no breach of non-compete and settlement agreements between employer, former employee, and former employee's current employer.

**[4] Compromise and Settlement 89 ⇌20(1)**

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                Page 3
Not Reported in A.2d, 2006 WL 1134170 (Del.Ch.)
(Cite as: Not Reported in A.2d)

89 Compromise and Settlement
    89I In General
        89k20 Performance or Breach of Agreement
            89k20(1) k. In General. Most Cited Cases
Former employee's use of cell phone, in his work as respiratory therapist, did not violate terms of settlement agreement between employer, former employee, and former employee's present employer; former employee's use of cell phone was indispensable in promptly responding to patients' need, medical representatives' inquiries, and present employer's customer service, and such general responsibilities were clearly permitted by settlement agreement.

**[5] Labor and Employment 231H ⇌904**

231H Labor and Employment
    231HIX Interference with the Employment Relationship
        231Hk904 k. Elements. Most Cited Cases
Former employee's actions did not constitute breach of non-compete agreement between employer and former employee, and thus employer could not state action against former employee's present employer for tortious interference with contractual relationship.

**[6] Antitrust and Trade Regulation 29T ⇌54**

29T Antitrust and Trade Regulation
    29TII Unfair Competition
        29TII(A) In General
            29Tk54 k. Miscellaneous Particular Practices. Most Cited Cases
Employer failed to establish that former employee and former employee's present employer engaged in unfair competition; home respiratory and medical equipment services industry was field of robust competition, employer's expectation of business relationships with customers was not reasonable in absence of written contract with customers, and former employee and present employer could not have wrongly interfered with relationships between employer and customers given that former employee's activities were expressly permitted by terms of settlement agreement between employer, former employee, and former employee's present employer.

**[7] Torts 379 ⇌241**

379 Torts
    379III Tortious Interference
        379III(B) Business or Contractual Relations
            379III(B)2 Particular Cases
                379k241 k. Business Relations or Economic Advantage, in General. Most Cited Cases
Employer failed to establish claim of tortious interference with prospective economic advantage against former employee's current employer; employer's expectancy of maintained business from its customers was not reasonable in light of competitive market in which employer operated, and employer failed to demonstrate any intentional interference by former employee or his present employer that caused termination of business employer had reasonably expected.

John H. Newcomer, Jr., of Duane Morris LLP, Wilmington, Delaware, for Plaintiff.
Charles Gruver III, of Charles Gruver III, P.A., Wilmington, Delaware, for Defendants.

*MEMORANDUM OPINION*
CHANDLER, Chancellor.
*1 American Homepatient, Inc. ("AHOM") brought this action to enforce the terms of a Confidentiality and Non-Compete Agreement (the "Non-Compete Agreement") between AHOM and its former employee, defendant Joseph J. Collier, and a Settlement Agreement (the "Settlement Agreement" and, together with the Non-Compete Agreement, the "Agreements") among AHOM, Collier, and Med-Equip, Inc. ("Med-Equip"), Collier's present employer. AHOM alleges breach of contract and tortious interference with contract and prospective business relations. AHOM seeks damages and injunctive relief, including specific performance of a covenant not to compete.

This matter was tried over three days in August and September, 2005. The parties completed post-trial briefing on March 21, 2006. This Memorandum Opinion reflects the Court's post-trial findings of fact and conclusions of law. For the reasons set forth later, the Court concludes that the Agreements are valid and enforceable but were not breached by

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                   Page 4
Not Reported in A.2d, 2006 WL 1134170 (Del.Ch.)
(Cite as: Not Reported in A.2d)

Collier and Med-Equip, and that Collier and Med-Equip did not tortiously interfere with AHOM's contracts and prospective business relationships.

## I. FACTUAL BACKGROUND

AHOM provides home respiratory and medical equipment services, focusing its business on in-home patient care, developed through referral sources such as hospitals, physicians and home health care agencies. Marketing efforts are not directed towards individual patients because there is no effective means of identifying an individual who may need services or equipment, and presumably because the patient will oftentimes defer to a physician's recommendation. Therefore, targeting the physician, nurse, or other individual (the "referral source") empowered to place such an order is an integral part of AHOM's business.

Collier was employed by AHOM from 1996 to 2003, working principally from the company's Newark branch. The Newark branch provides durable medical equipment ("DME"), such as walkers, wheelchairs, hospital beds, and commodes; the branch also provided respiratory services, such as oxygen and related equipment.

Collier began his employment with AHOM as a respiratory therapist, but at his request in 2000 he began working as an account executive. Account executives develop relationships with referral sources that are invaluable to the success of the company; no different from any other account executive at AHOM, Collier executed a form Non-Compete Agreement on August 8, 2001. Once on the job, Collier soon discovered he was a natural born salesman. His forward manner of approaching potential referral sources apparently lacked inhibition. For example, patrolling the hallways of Christiana Hospital, where he served as AHOM's liaison, he would bluntly ask people he knew "Do you have anybody going home today? Do you have a patient for me?" and he was often rewarded with referrals.

Med-Equip is a competitor of AHOM, based in Folsom, Pennsylvania. Having attempted for some time to expand in the Delaware market, Med-Equip hired Collier as the branch manager of its Milford, Delaware location. AHOM quickly brought suit, and following initial discovery, a Settlement Agreement was agreed upon and signed on November 13, 2003. The Settlement Agreement effectively permitted Collier to work as a respiratory therapist, as defined in an exhibit to the Settlement Agreement, while maintaining the force and effect of the Non-Compete Agreement in all other respects.

*2 Over the course of the period covered by the Non-Compete and Settlement Agreements, Collier was involved in the ordering or delivery of DME that was both respiratory and not respiratory in nature. Collier was also the recipient of a company Nextel cell phone that had the capability of receiving and sending direct communications from Med-Equip's office, including customer service, and the ability to be "tweaked" (*i.e.*, used as a walkie-talkie).

In his activity logs, Collier reported contacting referral sources for certificates of medical necessity ("CMN") on a number of occasions, when prior CMNs had gone stale, and a new CMN was required. Those CMNs were therefore obtained only in respect to patients who were already Med-Equip patients. Doctors who executed such stale CMNs were already referral sources of Med-Equip before Collier became employed.

## II. ANALYSIS

### A. Breach of Contract

Plaintiff alleges that Collier breached the Non-Compete Agreement and that both Collier and Med-Equip breached the Settlement Agreement. The Court must first determine whether AHOM had enforceable contracts with Collier and Med-Equip and, if so, whether they were breached.[FN1] Though the Agreements were enforceable, defendants did not breach the contracts.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                          Page 5
Not Reported in A.2d, 2006 WL 1134170 (Del.Ch.)
(Cite as: Not Reported in A.2d)

FN1. *See All Pro Maids, Inc. v. Layton,* 2004 Del. Ch. LEXIS 116 (Aug. 9, 2004).

### 1. *Enforceability*

[1] To be enforceable, a covenant not to compete must (1) meet general contract law requirements, (2) be reasonable in scope and duration, both geographically and temporally, (3) advance a legitimate economic interest of the party enforcing the covenant, and (4) survive a balance of the equities. FN2 When seeking specific performance of a covenant not to compete, the plaintiff has the burden of establishing her case by clear and convincing evidence. FN3

FN2. *TriState Courier & Carriage, Inc. v. Berryman,* 2004 Del. Ch. LEXIS 43, at *35 (Apr. 15, 2004).

FN3. *Id.*

The Agreements satisfy the general requirements of a valid contract. Those requirements are mutual assent and consideration. FN4 AHOM offered Collier a new position and continued employment in consideration of the Non-Compete Agreement, which Collier executed. Collier and Med-Equip executed the Settlement Agreement in consideration of AHOM dismissing the original lawsuit.

FN4. *See Research & Trading Corp. v. Pfuhl,* 1992 Del. Ch. LEXIS 234, at *16 (Nov. 19, 1992); *Delaware Express Shuttle, Inc. v. Older,* 2002 Del. Ch. LEXIS 124, at *40 (Oct. 23, 2002).

The Agreements are of reasonable scope and duration. They are limited to a duration of one year and a radius of fifty miles. FN5 Further, the Agreements advance the legitimate economic interest of AHOM to protect relationships cultivated by Collier while an AHOM employee, and survive a balance of the equities.

FN5. Non-compete agreements covering limited areas for two or fewer years generally have been held to be reasonable. *See All Pro Maids,* 2002 Del. Ch. LEXIS 116, at *18 (one year restriction found reasonable); *Delaware Express Shuttle,* 2002 Del. Ch. LEXIS 124, at *54 (finding three years unreasonable because of rapid customer turnover, and reducing duration of covenant to two years); *COPI of Delaware, Inc. v. Kelly,* 1996 Del. Ch. LEXIS 136, at *12 (Oct. 25, 1996) (two year restriction reasonable for company officers and sales personnel).

### 2. *Alleged Breaches*

Plaintiff has failed, however, to establish the breach of the Agreements. The Settlement Agreement clearly states that the Non-Compete Agreement would be subject to the express terms of the Settlement Agreement. FN6 The Settlement Agreement expressly permitted Collier to work for Med-Equip as a respiratory therapist. Collier's activities that have been challenged by AHOM were in fact permitted by this proviso of the Settlement Agreement. Descriptions of certain of these challenged activities follow, with an explanation of how Collier's credible trial testimony and other evidence in the record have cast sufficient doubt on Plaintiff's allegation that Collier was acting in capacities other than as a respiratory therapist.

FN6. Settlement Agreement, ¶ 3.

#### a. The DME Deliveries

*3 [2] Plaintiff alleges that Collier's delivery of non-respiratory DME to Med-Equip patients alone constituted a breach of the Agreements. As mentioned above, however, the Settlement Agreement permits Collier to act as a respiratory therapist, and an attendant responsibility of a respiratory therapist is to deliver DME. The Settlement Agreement's Exhibit A does not specify that the equipment or services provided by the respiratory therapist must be respiratory in nature. Furthermore, there is no distinction between respiratory and non-respiratory DME recognized in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                         Page 6
Not Reported in A.2d, 2006 WL 1134170 (Del.Ch.)
(Cite as: Not Reported in A.2d)

the industry, and Med-Equip's practice has always been to require its full time respiratory therapists to deliver all DME. Finally, Collier testified that there were only certain types of circumstances in which he delivered DME, all following Med-Equip's practice of having full time respiratory therapists deliver all DME.

b. Obtaining Execution of Stale CMNs

[3] Plaintiff alleges that in obtaining the execution of stale CMNs, Collier breached the Agreements. Close examination of the circumstances of obtaining the CMNs casts sufficient doubt on plaintiff's claim, and demonstrates that Collier was only acting as a liaison between Med-Equip and a patient's doctor, as permitted by the Settlement Agreement's description of a respiratory therapist. As discussed above, all challenged CMNs dealt with existing patients of Med-Equip, most of whom suffered from chronic pulmonary problems. The doctors executing such stale CMNs were already referral sources of Med-Equip before Collier became employed. Although plaintiff points to one entry in Collier's daily worksheets dated December 2, 2003 relating to Dr. Valoria, Collier convincingly testified that he did not actually meet with Dr. Valoria on that occasion, but only wrote the doctor's name because he did not know the names of any of Dr. Valoria's office staff at the time of the visit. Furthermore, Collier was called upon to obtain execution of stale CMNs when he was already going to be in the geographical area for other job responsibilities unchallenged by AHOM, and Collier never met with an actual doctor in such circumstances. Finally, pursuit of executed CMNs is viewed by the doctor's office as a nuisance or hindrance of their daily flow so such effort would do little to effectively solicit, market, or otherwise build goodwill. Collier's pursuit of a CMN as a respiratory therapist differed dramatically from AHOM account executives, who would host lunch meetings with doctors as part of their marketing presentation and only after would the doctor execute the CMN. Collier's obtaining the execution of stale CMNs was only the activity of a respiratory therapist and permitted by the Settlement Agreement.

c. Use of Cell Phone

[4] Plaintiff alleges that Collier's use of the cell phone violated the Settlement Agreement's prohibitions on soliciting new business, and contacting physicians or other referral sources regarding new patients (i.e., patients who aren't at that point existing patients of Med-Equip). Collier's use of the cell phone proved indispensable in responding to patients' needs, medical representatives' inquiries, and Med-Equip's customer service, all on a moment's notice. These general responsibilities of Collier as a respiratory therapist were clearly permitted by the Settlement Agreement.

*4 Plaintiff points specifically to the Nextel records of the cell phone to attempt to demonstrate that certain communication exchanges and transactions were initiated by Collier. In its billing records, however, Nextel does not report tweaking and related incoming calls. Due to this lack of evidence, combined with credible testimony by Collier, and Med-Equip's customer service department daily activities worksheet, I cannot find as plaintiff urges me that Collier placed a number of soliciting calls to Christiana Care between December 5 and 7; rather, these calls were more likely in response to questions regarding the care of Med-Equip patients at the hospital. Therefore, Collier's use of his cell phone did not violate the Settlement Agreement.

B. Tortious Interference with a Contractual Relationship

[5] Plaintiff argues that Med-Equip's actions in hiring Collier in the face of knowledge that he was subject to the Non-Compete Agreement, as well as fostering Collier's breach of the Non-Compete Agreement, constitutes tortious interference. The elements of a claim of tortious interference with contract are: (i) the existence of a valid contract; (ii) the interferer's knowledge of the contract; (iii) intentional interference that induces or causes a breach of the contract; and (iv) damages.[FN7] Without a breach of contract, there can be no tortious interference. As discussed above, the Settlement Agreement expressly permitted Collier

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                           Page 7
Not Reported in A.2d, 2006 WL 1134170 (Del.Ch.)
(Cite as: Not Reported in A.2d)

to work for Med-Equip as a respiratory therapist. Because Collier's activities that have been challenged by AHOM were in fact permitted by this proviso of the Settlement Agreement, there was no breach of either agreement. In other words, because plaintiff did not prove that Collier violated the terms of the Non-Compete Agreement, plaintiff has likewise failed in proving tortious interference.

FN7. *All Pro Maids*, 2002 Del. Ch. LEXIS 116, at *25.

### C. Unfair Competition

[6] Plaintiff alleges that by trading on the relationships that Collier developed while employed at AHOM in order to obtain new business for Med-Equip, defendants engaged in unfair competition. The elements of the tort of unfair competition are that plaintiff has a reasonable expectancy of entering a valid business relationship, with which defendant wrongfully interferes and, thereby, defeats plaintiff's legitimate expectancy and causes him harm.[FN8] The home respiratory and medical equipment services industry enjoys robust competition, and any expectation of business relationships might be a bit unreasonable without a written contract with the customer. AHOM argues that past referrals of AHOM could be expected to continue to use the company in the future absent some outside interference; such argument, however, ignores the possibilities of price and service competition, and assumes that consumers base their choice of medical equipment provider solely on incumbency. Additionally, defendants could not have wrongly interfered with such relationships when Collier's activities were expressly permitted by the Settlement Agreement that plaintiff was a party to. Finally, without delving into unnecessary detail, defendants failed to prove that their loss of business was proximately caused by Med-Equip, let alone by Collier's activities working for Med-Equip.

FN8. *Total Care Physicians, P.A. v. O'Hara*, 798 A.2d 1043 (Del.Super.2001).

### D. Interference with a Prospective Economic Advantage

*5 [7] Plaintiff alleges that Med-Equip's actions constituted tortious interference with AHOM's prospective business relationship with its referral sources. The elements of a claim of tortious interference with prospect business relation are: (i) the existence of a reasonable probability of a business expectancy; (ii) the interferer's knowledge of the expectancy; (iii) intentional interference that induces or causes termination of the business expectancy; and (iv) damages.[FN9] Once again, AHOM's expectancy of maintained business from customers was not reasonable in light of the competitive market in which it operated. Plaintiff has failed to demonstrate any intentional interference by Collier or by Med-Equip that caused a termination of the business plaintiff had reasonably expected. Additionally, plaintiff did not demonstrate damages that were proximately caused by defendants.

FN9. *All Pro Maids*, 2002 Del. Ch. LEXIS 116, at *25.

### III. CONCLUSION

Based on the findings of fact and conclusions of law made herein, judgment is hereby entered in favor of the defendants on all counts. An Order has been entered consistent with this Memorandum Opinion.

Del.Ch.,2006.
American Homepatient, Inc. v. Collier
Not Reported in A.2d, 2006 WL 1134170 (Del.Ch.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.