# EXHIBIT G

**To the Opening Brief In Support Of Google Inc.'s
Motion To Dismiss The Amended Complaint**

Dockets.Justia.com

Westlaw.

Not Reported in A.2d                                                                 Page 1

Not Reported in A.2d, 2002 WL 537691 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

▷
Delaware Solid Waste Authority v. Eastern Shore Environmental, Inc.Del.Ch.,2002.Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.
Court of Chancery of Delaware.
DELAWARE SOLID WASTE AUTHORITY, a body politic and corporate constituting a public instrumentality of the State of Delaware, Plaintiff,
v.
EASTERN SHORE ENVIRONMENTAL, INC., a Delaware corporation, Defendant.
No. CIV.A. 1472-K.

Submitted: Dec. 17, 2001.
Decided: March 28, 2002.

Waste authority brought lawsuit against waste management company for order enjoining company from operating dry and municipal solid waste transfer station located on unincorporated county property. Company moved to dismiss lawsuit. The Chancery Court, Kent County, held that: (1) authority did not have standing to bring suit against company under provision of statute permitting suits to prevent buildings to be constructed in violation of county zoning laws or regulations; (2) company did not violate provision in Deceptive Trade Practices Act providing remedy for advertising which created likelihood of confusion concerning trademarks or trade names; (3) company did not violate provision in Act providing remedy for advertising which dealt with false advertising of goods, services or businesses; (4) company did not violate provision in Act providing remedy against new kinds of deceptive trade practices; and (5) authority did not adequately pled elements of unfair competition claim against company.

Motion to dismiss granted.
West Headnotes
**[1] Zoning and Planning 414 ☞761**

414 Zoning and Planning
　414XI Enforcement of Regulations
　　414XI(A) In General
　　　414k761 k. Power and Duty to Enforce. Most Cited Cases
Waste authority did not have standing to bring suit against competitor waste management company under provision of statute permitting suits to prevent buildings to be constructed in violation of county zoning laws or regulations, where statute conditioned standing to sue on ownership of real estate in district, and company's waste transfer site at issue in lawsuit was in I-G zoning district classification in county, but authority owned real estate outside I-G zoning district, though also on unincorporated county land. 9 Del.C. § 4919(b).

**[2] Zoning and Planning 414 ☞761**

414 Zoning and Planning
　414XI Enforcement of Regulations
　　414XI(A) In General
　　　414k761 k. Power and Duty to Enforce. Most Cited Cases
Case law did not entitle any county resident to sue to redress zoning violation under statute permitting suits to prevent buildings to be constructed in violation of county zoning laws or regulations, without regard to whether resident resided within the same zoning district as the defendant. 9 Del.C. § 4919(b).

**[3] Trademarks 382T ☞1427**

382T Trademarks
　382TVIII Violations of Rights
　　382TVIII(A) In General
　　　382Tk1423 Particular Cases, Practices, or Conduct
　　　　382Tk1427 k. Advertising or Marketing. Most Cited Cases
　　(Formerly 382k870(1) Trade Regulation)
Waste management company did not violate provision in Deceptive Trade Practices Act

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                      Page 2

Not Reported in A.2d, 2002 WL 537691 (Del.Ch.)
(Cite as: Not Reported in A.2d)

providing remedy for advertising which created likelihood of confusion concerning trademarks or trade names, where competitor waste authority did not claim that company used false or misleading trademarks or service marks, but rather that advertising was deceptive and misleading because embedded within each of company's advertisements was implied representation that company was operating with appropriate county zoning approvals, where under no set of circumstances would company's alleged violation of zoning ordinance be likely to produce confusion among consumers caused by use of trademark or trade name. 6 Del. C. §§ 2532(a)(2), (3).

**[4] Antitrust and Trade Regulation 29T ⇐163**

29T Antitrust and Trade Regulation
    29TIII Statutory Unfair Trade Practices and Consumer Protection
        29TIII(B) Particular Practices
            29Tk163 k. Advertising, Marketing, and Promotion. Most Cited Cases
    (Formerly 382k870(1) Trade Regulation)
Waste management company did not violate provision in Deceptive Trade Practices Act providing remedy for advertising which dealt with false advertising of goods, services or businesses, where competitor waste authority did not specify any particular advertisement that it claimed was explicitly false, but only that company could legally operate in county, a status that was in contention at time claim was brought; ruling for authority would mean that whenever any company was charged with having violated any legal requirement, that alleged violation, unless disclosed, would constitute a deceptive trade practice. 6 Del. C. § 2532(a)(5).

**[5] Antitrust and Trade Regulation 29T ⇐162**

29T Antitrust and Trade Regulation
    29TIII Statutory Unfair Trade Practices and Consumer Protection
        29TIII(B) Particular Practices
            29Tk162 k. Omissions and Other Failures to Act in General; Disclosure. Most Cited Cases
    (Formerly 382k870(1) Trade Regulation)
Waste management company did not violate provision in Deceptive Trade Practices Act providing remedy against new kinds of deceptive trade practices, where theory that company was not disclosing to its customers that it was involved in zoning dispute over waste transfer station, even though company was presently operating transfer station lawfully, did not allege deceptive advertising in any legally meaningful sense. 6 Del. C. § 2532(a)(12).

**[6] Antitrust and Trade Regulation 29T ⇐76**

29T Antitrust and Trade Regulation
    29TII Unfair Competition
        29TII(B) Actions and Proceedings
            29Tk74 Pleading
                29Tk76 k. Particular Cases. Most Cited Cases
    (Formerly 382k564 Trade Regulation)
Waste authority did not adequately plead elements of unfair competition claim against competitor waste management company in connection with company's alleged operation of transfer station in violation of zoning ordinances, where even if company did solicit authority's customers, as alleged, authority had not pled facts that would establish that company's conduct was "wrongful" or "malicious;" general assertion that company's conduct was willful and malicious was not supported by any specifically pled facts.

F. Michael Parkowski and Mark F. Dunkle, Esquires of Parkowski & Guerke, P.A., Dover, Delaware; Attorneys for Plaintiff.
William E. Manning, Richard A. Forsten and Francis X. Gorman, Esquires of Klett Rooney Lieber & Schorling, Wilmington, Delaware; Attorneys for Defendant.

MEMORANDUM OPINION
JACOBS, Vice Chancellor.
*1 The plaintiff, Delaware Solid Waste Authority (" DSWA"), has brought this lawsuit against defendant Eastern Shore Environmental, Inc. (" Eastern Shore"), for an order enjoining Eastern Shore from operating a dry and municipal solid waste transfer station (the "transfer station") located on a property in unincorporated Kent County, Delaware (the "property"). DSWA asserts three

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                 Page 3
Not Reported in A.2d, 2002 WL 537691 (Del.Ch.)
(Cite as: Not Reported in A.2d)

claims. In Count I, DSWA claims that Eastern Shore's operation of the transfer station violates 6 *Del. C.* §§ 2531-2536, which prohibits certain deceptive trade practices. In Count II, DSWA claims that Eastern Shore's operation of the transfer station violates the Kent County Zoning Ordinance. And in Count III, DSWA claims that Eastern Shore is engaging in unfair competition.[FN1]

>    FN1. Count IV is a claim for an award of attorney's fees.

Eastern Shore has moved to dismiss the complaint in its entirety. For the reasons set forth below, Eastern Shore's motion is meritorious and will be granted.

## I. FACTS

The facts recited below are derived from the well-pled allegations of the complaint.[FN2] On July 3, 2000 the Delaware Department of Natural Resources and Environmental Control ("DNREC") issued a permit authorizing Eastern Shore to operate the transfer station. The DNREC permit authorized the processing (*i.e.*, dumping, washing, sorting and hauling away) of 160 tons per day, and as much as 192,400 tons per calendar year, of various kinds of municipal waste.[FN3]

>    FN2. *Weinberger v. UOP, Inc.*, 409 A.2d 1262, 1263-64 (Del.Ch.1979).

>    FN3. Before the permit was issued DNREC had authorized the processing of only smaller volumes of dry waste. In 1999, for example, the transfer station processed only 18,648 tons of dry waste.

DSWA claims that the transfer station contains "pathogens ... and offensive odors," and "disease, water resource contamination, pest control, noise, road damage, unacceptable levels of traffic and other health and safety concerns." Complaint ¶¶ 5, 9. Although extensively discussed in the complaint, the effect of the transfer station on the health and safety of the community at large is not at issue in this action, and this Court is not required to consider those concerns for the purposes of this motion.

Contrary to the representations Eastern Shore made in its application for a DNREC permit, a transfer station is not a permitted use of the property under the property's current zoning-I-G (Industrial). To operate a transfer station under the property's current zoning, Eastern Shore was required to apply for a conditional use permit from Kent County (the "County").[FN4] The relevant application process includes two public hearings, a submission of the transfer station site plan to the Regional Planning Commission, and a review of the site plan by the Kent County Development Advisory Committee agencies.[FN5] Eastern Shore, however, has never undergone any of those public-hearing procedures, nor has it ever obtained conditional use approval.[FN6]

>    FN4. *Kent County, Del., Zoning Ordinance* art. 6, § 5.103.

>    FN5. *Id.* at art. 9, § 7.

>    FN6. Nor has any previous owner of the property ever obtained conditional use approval for a transfer station from the County.

In a letter dated July 12, 2000, the Kent County Planning Director, Constance Holland, notified Eastern Shore that to comply with the County Zoning Ordinance its transfer station required conditional use site plan approval. Eastern Shore made no effort to apply for such approval, however. Instead, it brought a related lawsuit against the County for injunctive relief and monetary damages.[FN7]

>    FN7. *Eastern Shore Envtl. v. Kent County Dep't of Planning*, C.A. No. 1464-K. That case is currently pending before this Court.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                  Page 4
Not Reported in A.2d, 2002 WL 537691 (Del.Ch.)
(Cite as: Not Reported in A.2d)

DSWA, the plaintiff, is a public instrumentality of the State of Delaware. Because it owns and operates a solid waste transfer station in unincorporated Kent County, DSWA is a direct competitor of Eastern Shore.

## II. THE ISSUES AND CONTENTIONS

DSWA seeks to enjoin Eastern Shore's use of the transfer station under three distinct theories. First, DSWA claims that Eastern Shore has violated the Delaware Deceptive Trade Practices Act, 6 *Del. C.* § § 2531-2536, in that Eastern Shore's advertisements are likely to confuse and deceive the public into believing that Eastern Shore has obtained the necessary County regulatory approval to operate its transfer station, when in fact that is not the case. Eastern Shore responds that the Act applies primarily to deceptive advertising claims caused by the misuse of a trademark or trade name. Because DSWA's claim does not involve a trademark or trade name, and because no legal authority supports DSWA's claim that a regulatory dispute must be disclosed in a company's advertisements or else be deemed a deceptive trade practice, Eastern Shore argues that DSWA's claim must be dismissed. I find that Eastern Shore's contention has merit.

*2 Second, DSWA is seeking to bring a private enforcement action under 9 *Del. C.* § 4919(b), which allows certain property owners to enforce a county zoning law or regulation against any property owner located within the same district. The only issue on this motion is whether DSWA has standing to sue under Section 4919(b). DSWA contends that any owner of property located within unincorporated Kent County has standing to sue under that Section. Eastern Shore argues, however, that the statute permits suits only by persons who own property situated within the specific zoning district where the offending property is located. I agree with Eastern Shore's interpretation of Section 4919(b), and thus conclude that DSWA does not have standing under that Section.

Third, DSWA claims that Eastern Shore is engaging in unfair competition with DSWA because it is soliciting DWSA's customers to use the transfer station that Eastern Shore is currently operating without the proper regulatory approval. Eastern Shore responds that DSWA has failed to state a legally cognizable claim of unfair competition. Again, and for the reasons discussed *infra,* I agree.

The basis for my conclusions is next discussed.

## III. ANALYSIS

A. Does DSWA Have Standing to Enforce a Zoning Regulation Under 9 *Del. C.* § 4919(b)?

1. *DSWA Lacks Standing to Bring Suit Under 9 Del. C. § 4919(b)*

[1] In Count II, DSWA seeks relief under 9 *Del. C.* § 4919(b). The issue presented is whether DSWA has standing to bring suit under that provision. I conclude that it does not.

Section 4919(b) authorizes certain persons (including private parties) to bring suit in order to " prevent, enjoin, abate or remove" any building or structure that is "proposed to be erected, constructed, reconstructed, altered, maintained or used" in violation of a county zoning law or regulation. The persons entitled to bring suit under the statute are: (i) the County and (ii) "an owner of real estate [located] *within the district* in which such building, structure or land is situated." [FN8] Thus, unless DSWA is the "owner of real estate within the district," it has no standing to sue under Section 4919(b).

> FN8. 9 *Del. C.* § 4919(b) (emphasis added).

Eastern Shore argues that "district" refers to a specific zoning classification district designated by the County. That is, the County is statutorily authorized to divide itself into specifically zoned areas, which are referred to in the statute as " districts." That being the case, Eastern Shore argues, only those persons who own property within

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                          Page 5

Not Reported in A.2d, 2002 WL 537691 (Del.Ch.)
(Cite as: Not Reported in A.2d)

the I-G zoning district in Kent County may bring an enforcement action against Eastern Shore, and DSWA is not such a property owner.[FN9]

FN9. Eastern Shore is the only owner of property within that zoning district.

DSWA disputes that interpretation. It argues that "district" means *all* of unincorporated Kent County. As a consequence, any person who owns property situated in unincorporated Kent County would have standing to bring an enforcement action under Section 4919(b). DSWA's argument runs as follows: (i) The term "district" is used ambiguously in Chapter 49 of the Delaware Code; (ii) in Chapter 48, however, "district" is defined as "the Regional Planning District of Kent County," [FN10] which encompasses "that portion of Kent County which is not included within the corporate limits of any city or town." [FN11] Thus, under Chapter 48, "district" means all of unincorporated Kent County. From that premise DSWA next argues that (iii) because this Court has held that Chapters 48 and 49 must be read *in pari materia*,[FN12] the term "district" as used in Chapter 49 must be interpreted consistent with the meaning in Chapter 48. Therefore, DSWA concludes, (iv) because DSWA owns property in unincorporated Kent County, it has standing to bring this enforcement action under Section 4919(b).

FN10. 9 *Del. C.* § 4801(5).

FN11. *Id.* § 4802.

FN12. *Scarborough v. Mayor and Council of Cheswold,* 303 A.2d 701, 706 (Del.Ch.1973) ("[Chapters 48 and 49] are *in pari materia,* treating the same general subject, and reference may be made to the one in construing the other."); *see also Coastal Barge Corp. v. Coastal Zone Indus. Control Bd.,* 492 A.2d 1242, 1245 (Del.1985) ("A statute is passed by the General Assembly as a whole and not in parts or sections. Consequently, each part or section should be read in light of every other part or section to produce a harmonious whole.").

*3 The difficulty with this argument is that DSWA's definition of "district" as encompassing all of unincorporated Kent County conflicts with the meaning of "district" as that term is used elsewhere in Chapter 49. That is, as used elsewhere in Chapter 49, "district" means the zoning classification district designated by the County. Section 4902, for example, states that "the county government may divide the territory of Kent County into *districts* or zones ... and within such *districts* ... may regulate the erection, construction, reconstruction, alterations and uses of buildings and structures and the uses of land." [FN13] Section 4911, which is entitled "changes in zoning *district;* plan or regulation; procedure," provides that the "county government may, from time to time, make amendments ... with respect to the number, shape, boundary or area of any *district or districts*." [FN14] Thus, in those Sections, "district" means a divided area of Kent County where the County regulates land use. Consequently, "district" cannot mean all of unincorporated Kent County without ignoring the actual language of Chapter 49 and producing an absurd reading of that Chapter.[FN15]

FN13. 9 *Del. C.* § 4902 (emphasis added).

FN14. *Id.* § 4911 (emphasis added).

FN15. *See Snell v. Eng'd Sys. & Designs, Inc.,* 669 A.2d 13, 20 (Del.1995) (holding that courts should interpret statutes to achieve a common sense result and to avoid unreasonable or absurd results). Furthermore, "district," a defined term, is always capitalized in Chapter 48, but is never capitalized in Chapter 49. The purposeful capitalization of "district" throughout Chapter 48 is evidence of the General Assembly's intent to give the same term different meanings in each Chapter.

Because DSWA has not shown that it owns property "within the [same] district" as Eastern Shore's transfer station, DSWA has no standing to assert its claim under Section 4919(b).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d

Page 6

Not Reported in A.2d, 2002 WL 537691 (Del.Ch.)
(Cite as: Not Reported in A.2d)

*2. Delaware Case Law Does Not Give DSWA Standing to Sue Under 9 Del. C. § 4919(b)*

[2] DSWA next argues that *Scarborough v. Mayor and Council of Cheswold* [FN16] entitles any County resident to sue to redress a zoning violation under Section 4919(b), regardless of whether that plaintiff resided within the same zoning district as the defendant. DSWA misreads *Scarborough*, however.

FN16. 303 A.2d 701 (Del.Ch.1973).

In *Scarborough*, the plaintiffs were residents of the town of Cheswold who sought to enjoin the construction of a drive-in theater within that town. After the lawsuit commenced, the parties discovered that Cheswold had never properly adopted *any* zoning regulations. The plaintiffs then argued that because Cheswold had not adopted its own zoning regulations, zoning issues pertinent to the town should be governed by the Kent County Zoning Ordinance. Because Kent County failed to provide specifically for any zoning regulations for the town, the County Zoning Ordinance mandated that the town be zoned A-C (Agriculture-Conservation) by default. That zoning classification prohibited the drive-in theater from being built.[FN17]

FN17. That is, the plaintiffs were arguing that the County was statutorily bound to regulate zoning within Cheswold, but had failed to do so. Under the County Zoning Ordinance, if the County fails to provide zoning for a property within its jurisdiction, that property will be classified A-C. *Scarborough*, 303 A.2d at 705 (citing *Kent County, Del., Zoning Ordinance* art. 1, § 4). Under 9 Del. C. § 4901, Kent County may apply its own Zoning Ordinance to municipalities that have no zoning code, at the request of the municipality. Cheswold never made such a request.

The *Scarborough* Court first addressed the defendants' procedural argument that if the Kent County Zoning Ordinance applied, the plaintiffs were obligated to follow the administrative zoning procedures and appeal to the County Board of Adjustment. The Court ruled that the plaintiffs were entitled to seek relief under § 4919(b), without addressing the issue of whether the plaintiffs owned property in the same district as the drive-in theater. DSWA contends that because the Court held that the plaintiffs were found to be entitled to proceed, *Scarborough* must be viewed as holding that any property owner of Kent County has standing to bring suit under Section 4919(b).

*4 Although the *Scarborough* Court allowed the plaintiffs to sue under Section 4919(b), it did not do so on the basis that any Kent County property owner had standing to bring an enforcement action under Section 4919(b). Rather, the holding in *Scarborough* is consistent with Eastern Shore's interpretation of the word "district." In *Scarborough*, there were two possible outcomes: (i) no zoning regulations applied to Cheswold, in which case the suit would be dismissed because without any zoning regulations there could be no zoning violation; or (ii) the entire town was subject to the Kent County Zoning Ordinance, in which case all of Cheswold would be zoned A-C (Agriculture-Conservation). Therefore, by allowing the suit to go forward, the Court implicitly held that *if* the Kent County Zoning Ordinance applied to Cheswold (as the plaintiffs argued), the plaintiffs would have standing to sue under Section 4919(b) because the entire town would be zoned entirely as Agriculture-Conservation,[FN18] and the plaintiffs owned property within the same district as the drive-in theater. Because *Scarborough* does not compel the conclusion that DSWA advocates, it does not support DSWA's standing to seek enforcement of the Kent County Zoning Ordinance.

FN18. The Court ultimately held that the Kent County Zoning Ordinance did not apply to Cheswold, and therefore, the case was dismissed. *Scarborough*, 303 A.2d at 708.

B. Has Eastern Shore Violated the Delaware Deceptive Trade Practices Act?

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                       Page 7

Not Reported in A.2d, 2002 WL 537691 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

[3] DSWA's next claim is that Eastern Shore has violated the Delaware Deceptive Trade Practices Act, 6 *Del. C.* §§ 2531-2536 (the "Act"). The complaint alleges violations of subsections 2532(a)(2), (a)(3), (a)(5) and (a)(12) of the Act, which state:
(a) A person engages in a deceptive trade practice when, in the course of a business, vocation, or occupation, that person:

(2) Causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;
(3) Causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another;

(5) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;

(12) Engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

The Act "codifies [the 1964] Uniform Deceptive Trade Practices Act [ (the "Uniform Act") ], which in turn, codifies the common law of unfair competition." [FN19] To understand the scope of the Act, it is helpful to review the pertinent Delaware case law, and also the text and related Comments of the Uniform Act.

> FN19. *Young v. Joyce,* 351 A.2d 857, 859 (Del.1975).

The Uniform Act was intended to provide a remedy "to persons likely to suffer pecuniary harm for conduct involving either misleading identification of business or goods or false or deceptive advertising." [FN20] The Uniform Act thus encompasses two broad areas: (i) false or misleading use of trademarks or other trade identification and (ii) deceptive advertising.

> FN20. *Unif. Deceptive Trade Practices Act,* prefatory note (1964).

*5 DSWA does not claim that Eastern Shore used false or misleading trademarks or service marks. Rather, its claim is that Eastern Shore's advertising is deceptive and misleading because embedded within each of Eastern Shore's advertisements [FN21] is an implied representation that Eastern Shore is operating with the appropriate County zoning approvals. Because Eastern Shore is not operating with the appropriate County zoning approvals, members of the public (*i.e.,* present and future Eastern Shore customers) are being misled to believe that Eastern Shore is operating its transfer station legally.

> FN21. Eastern Shore has placed advertisements for its services in various publications, including the Bell Atlantic Yellow Pages.

Although DSWA's claim is of an "implied misrepresentation" is novel, it unfortunately finds no legal justification in the Uniform Act or Delaware case law for the reasons next discussed. [FN22]

> FN22. DSWA argues that the Uniform Act is based upon the Lanham Act, and then proceeds to argue that Eastern Shore's advertising practices violate the Lanham Act. The Lanham Act is not the Uniform Act, however, and DSWA has cited no authority adequate to support its proposition that the Uniform Act is based on the Lanham Act, or that a possible violation of the Lanham Act would also be a violation of the Uniform Act. Because

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d

Page 8

Not Reported in A.2d, 2002 WL 537691 (Del.Ch.)
(Cite as: Not Reported in A.2d)

DSWA has not brought a claim under the Lanham Act, this Court will not consider whether Eastern Shore's conduct has violated that Act.

### 1. DSWA's Claim Under 6 Del. C. §§ 2532(a)(2) and (a)(3)

First, DSWA's claims under Sections 2532(a)(2) and (a)(3) of the Act are not legally cognizable. The Comments to the Uniform Act state that claims brought under those Sections-which use a "likelihood of confusion" standard-are to be based on the "approval, endorsement, or certification of goods or services caused by *trademarks, service marks, certification marks, or collective marks* likely to be associated with preexisting trade symbols," [FN23] or by "misleading *trade names.*" [FN24]

FN23. *Unif. Deceptive Trade Practices Act* § 2(a)(2), cmt. (emphasis added).

FN24. *Id.* § 3(a)(2), cmt. (emphasis added).

The difficulty is that even if DSWA's claims are assumed to be factually true, under no set of circumstances would Eastern Shore's alleged violation of County Zoning Ordinance (and any related misrepresentation on its DNREC application) be likely to produce confusion among consumers *caused by the use a trademark or a trade name.* DSWA has cited no authority supporting its argument that misrepresentations in advertising that are related to a zoning violation are actionable under Sections 2532(a)(2) and (a)(3). DSWA's claims under those statutory provisions are not legally cognizable and must be dismissed.

### 2. DSWA's Claim Under 6 Del. C. § 2352(a)(5)

[4] Similarly defective is DSWA's claim under 9 Del. C. § 2353(a)(5), which "deals with false advertising of goods, services or businesses." [FN25] In its complaint DSWA does not specify any particular advertisement that it claims is *explicitly* false. Rather, DSWA contends that all of Eastern Shore's advertising falsely *implies* that Eastern Shore "can legally operate in Kent County." [FN26] Specifically, DSWA argues that "[b]y failing to disclose Kent County's objection, Eastern [Shore] falsely conveys to its potential customers, and in particular, the City of Milford, that it can legally provide the waste hauling services that it solicits." [FN27] I find this claim legally insufficient.

FN25. *Id.* § 2(a)(5), cmt.

FN26. DSWA Ans. Br. at 17.

FN27. *Id.* at 18.

One major problem with this claim is Eastern Shore's position that it is operating legally. Eastern Shore has filed an action in this Court against Kent County to establish its right to operate the transfer station,[FN28] and the County has indicated that it will take no enforcement action against Eastern Shore during the pendency of the litigation.[FN29] Furthermore, no zoning violation has been determined by any competent tribunal. Those being the circumstances, on what basis can it be claimed that there is "implicit falsity" in Eastern Shore's advertisements? It would be an odd result if this Court were to announce a rule that when a dispute arises over a company's permit to operate and while the dispute is pending the company is permitted to operate, the company has a duty to disclose the existence of the dispute in all its advertisements, or else be found to have committed a deceptive trade practice. Such a rule, taken to its logical conclusion, would mean that whenever a company is charged with having violated any legal requirement, that alleged violation, unless disclosed, would constitute a deceptive trade practice. DSWA has cited no authority that supports that interpretation of our statute. Even assuming the truth of DSWA's well-pled facts, Eastern Shore's mere advertisement of its services, at a time it is claimed to be in violation of a County zoning ordinance, cannot constitute a deceptive trade practice under the Act.

FN28. *Eastern Shore Envtl. v. Kent County Dep't of Planning,* C.A. No.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                           Page 9
Not Reported in A.2d, 2002 WL 537691 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

1464-K.

FN29. Eastern Shore Reply Br. at Ex. A (oral argument transcript).

### 3. DSWA's Claim Under Section 9 Del. C. § 2532(a)(12)

*6 [5] DSWA's claim under Section 2532(a)(12) is similarly defective. That Section prohibits "any other conduct which similarly creates a likelihood of confusion or misunderstanding." The intent of Section 2532(a)(12) is to enable courts to prevent "new kinds of deceptive trade practices." [FN30] By asserting a claim under this Section, DSWA is asking this Court to find that Eastern Shore has engaged in a "new kind of deceptive trade practice," namely, not disclosing to its present and potential customers that it is involved in a zoning dispute over the transfer station, even though Eastern Shore is presently operating the transfer station lawfully. Again, DSWA cites no authority and makes no reasoned argument that would persuade this Court to find that such advertising is deceptive, or that it creates "a likelihood of public deception" [FN31] in any legally meaningful sense. The Act ought not to be used as a backdoor way for a party to enforce the County Zoning Ordinance indirectly, where that same party would have no standing to enforce the Zoning Ordinance directly. Therefore, DSWA's claim under the Act also fails.

FN30. Unif. Deceptive Trade Practices Act § 2(a)(12), cmt.

FN31. Id.

### C. Has DSWA Stated a Claim for Unfair Competition?

[6] Lastly, DSWA claims that Eastern Shore has engaged in unfair competition by operating "a transfer station without conditional use approval, and [by soliciting] DSWA's customers [causing] DSWA to lose or be threatened to lose its current business." [FN32] DSWA also claims that Eastern Shore's conduct was "willful, malicious and without regard to the consequence of its actions." [FN33] In short, DSWA claims that Eastern Shore engaged in unfair competition by: (i) operating without proper zoning approval where DSWA, its competitor, is in compliance with the County zoning regulations and (ii) soliciting DSWA's customers.

FN32. Compl. ¶ 35.

FN33. Id. ¶ 36. In its answering brief, DSWA argues that Eastern Shore "solicited the City of Milford's business and in turn the City of Milford terminated its contractual relationship with DSWA before the end of the contract." DSWA Ans. Br. at 19.

To state a claim for unfair competition, the plaintiff must allege that it has a reasonable expectancy of entering a valid business relationship with which the defendant wrongfully interferes, thereby defeating the plaintiff's legitimate expectancy and causing the plaintiff harm.[FN34] "Only wrongful interferences will satisfy the tort, as some interferences are seen as justified or privileged under the aegis of competition.... Unfair competition, which is not privileged, includes fraud, intimidation, or disparagement." [FN35]

FN34. Rypac Packaging Mach. Inc. v. Coakley, 2000 WL 567895, at *8 (Del.Ch.) (citing Int'l Bus. Machs. Corp. v. Comdisco, Inc., 1993 WL 259102 (Del.Super.Ct.)).

FN35. Int'l Bus. Machs. Corp., 1993 WL 259102, at *22.

Given the applicable legal standard, DSWA has not adequately pled the elements of an unfair competition claim. Even if DSWA's pled facts are assumed to be true, DSWA's claim is that Eastern Shore (i) willfully misrepresented on DNREC permit application that the property could be used as a transfer station as currently zoned,[FN36] and then (ii) "solicited customers of DSWA and commenced doing business with those customers." [FN37] But even if Eastern Shore did solicit DSWA's

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Page 10
Not Reported in A.2d, 2002 WL 537691 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

customers, DSWA has not pled facts that would establish that Eastern Shore's conduct was "wrongful" or "malicious." DSWA does assert that Eastern Shore's conduct generally was willful and malicious, but this conclusory assertion is not supported by any specific pled facts.

> FN36. Compl. ¶ 10. As noted above, it is undisputed that Eastern Shore is currently legally entitled to operate the waste transfer station during this litigation, and the transfer station is currently operating under a valid permit from the DNREC.
>
> FN37. *Id.* ¶ 19.

*7 It follows that DSWA's claim-that Eastern Shore fraudulently or wrongfully interfered with DSWA's contractual relationship-is not supported by its pleadings. Even DSWA's cited cases require a plaintiff to "plead with particularity sufficient facts to support a claim of malicious interference with contract." [FN38] The only fact properly pled here is that Eastern Shore solicited DSWA's customers-an act that without more cannot amount to a malicious interference with a contract. A bald assertion of maliciousness without supporting allegations of fact will not sustain an unfair competition claim. [FN39] DSWA's unfair competition claim must therefore be dismissed. [FN40]

> FN38. *Elder v. El Di, Inc.*, 1997 WL 364049, at *14 (Del.Super.Ct.). *Elder* specifically addresses a claim for malicious interference with contractual relationships, and DSWA frames its unfair competition claim as such. *See, e.g.*, Compl. ¶¶ 35, 37 (alleging a malicious interference with DSWA's relationship with its customers); DSWA Ans. Br. at 19 (arguing Eastern Shore intentionally interfered "with the performance of an existing contract."). In any event, those two claims are treated in a similar (though not identical) manner in Delaware. *Int'l Bus. Machs. Corp.*, 1993 WL 259102, at *21.
>
> FN39. *See, e.g.*, *Elder v. El Di, Inc.*, 1997 WL 364049, at *14 ("In his complaint, [the plaintiff] has asserted with sufficiency that [the defendant] knowingly and intentionally interfered with [the plaintiff's] lease agreements without justification ...."); *Regal Home Distributors v. Gordon*, 66 A.2d 754, 755 (Del.Super.Ct.1949) ("The improper means [of obtaining a contract from a competitor's customer] stated in the complaint consist of statements by defendant relating to plaintiff's secret connection with another corporation of which its customers would not have approved and (2) imputations of plaintiff's financial irresponsibility. The complaint fails to allege that the statements were false [and therefore summary judgment will be granted].")."
>
> FN40. There is also no authority to support DSWA's claim that operating a business while in violation of a regulation constitutes unfair competition. Indeed, at least one case in Delaware can be reasonably read to hold the opposite. *See Delaware Optometric Corp. v. Sherwood*, 128 A.2d 812 (Del.1957) (holding that a licensed optometrist could not enjoin an unlicensed person from practicing optometry under the licensing statute).

## V. CONCLUSION

For the above reasons, Eastern Shore's motion to dismiss DSWA's complaint is granted. IT IS SO ORDERED.

Del.Ch.,2002.
Delaware Solid Waste Authority v. Eastern Shore Environmental, Inc.
Not Reported in A.2d, 2002 WL 537691 (Del.Ch.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.