# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CHRISTOPHER LANGDON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 06 – 319 (JJF) |
| v. | ) |
| | ) |
| GOOGLE, INC., d.b.a DELAWARE GOOGLE INC., | ) |
| YAHOO! INC., and MICROSOFT CORP., | ) |
| | ) |
| Defendants. | ) |

## DEFENDANT YAHOO! INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT

**DUANE MORRIS LLP**
Daniel V. Folt (Del. Bar No. 3143)
Gary W. Lipkin (Del. Bar No. 4044)
Matt Neiderman (Del. Bar No. 4018)
1100 North Market Street
Suite 1200
Wilmington, DE 19801-1246

*Attorneys for Defendant Yahoo! Inc.*

Dated: October 16, 2006

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................ii

INTRODUCTION................................................................................................................ 1

NATURE AND STAGE OF THE PROCEEDINGS................................................................ 2

STATEMENT OF FACTS..................................................................................................... 3

ARGUMENT ...................................................................................................................... 5

I.      THE LEGAL STANDARD ................................................................................. 5

II.     CHOICE OF LAW .............................................................................................. 6

III.    THE AMENDED COMPLAINT FAILS TO STATE VIABLE COMMON
        LAW AND STATUTORY LAW CLAIMS UNDER DELAWARE LAW........... 7

        A.      No Fraud.................................................................................................. 7

        B.      No Breach Of Contract......................................................................... 11

        C.      No Consumer Fraud ............................................................................. 12

                1.      Langdon Alleged No Misconduct In Delaware............................ 13

                2.      Langdon Alleged No Sale, Lease Or Advertisement
                        Of Merchandise ......................................................................... 14

        D.      No Public Calling ................................................................................. 15

IV.     THE AMENDED COMPLAINT FAILS TO STATE ANY REMOTELY
        VIABLE COMMERCE CLAUSE, RIGHT TO PETITION OR FREE
        SPEECH CLAIMS ............................................................................................ 16

        A.      No Commerce Clause Violation ........................................................... 17

        B.      No First Amendment Violation............................................................. 18

        C.      Langdon Has No Standing To Bring Delaware Constitutional
                Claims.................................................................................................... 22

CONCLUSION ................................................................................................................ 23

# TABLE OF AUTHORITIES

## CASES

*Abbott Laboratories, Inc. v. General Electric Capital*,
 765 So.2d 737 (Fla. Dist. Ct. App. 2000) ........................................................................ 11

*American Library Control v. Pataki*,
 969 F. Supp. 160 (S.D.N.Y. 1997) .................................................................................... 18

*Barclays Bank, PLC v. Franchise Tax Bd. of Cal.*,
 512 U.S. 298 (1994) ........................................................................................................... 17

*Blum v. Yaretsky*,
 457 U.S. 991 (1982) ........................................................................................................... 21

*Careau & Co. v. Security Pacific Business Credit, Inc.*,
 222 Cal. App. 3d 1371 (1990) ........................................................................................... 11

*Cliff House Condominium Council v. Capaldi*,
 1991 Del. Ch. LEXIS 146 (Aug. 26, 1991) ...................................................................... 14

*Columbia Broadcasting System, Inc. v. Democratic Nat'l Committee*,
 412 U.S. 94 (1973) ...................................................................................................... 20, 21

*Cooley v. The Board of Wardens*,
 53 U.S. 299 (1851) ............................................................................................................. 17

*Corning Inc. v. SRU Biosystems, LLC*,
 292 F. Supp. 2d 583 (D. Del. 2003) .................................................................................... 6

*Cowell v. Palmer Township*,
 263 F.3d 286 (3d Cir. 2001) ............................................................................................... 5

*Cyber Promotions, Inc. v. America Online, Inc.*,
 948 F. Supp. 436 (E.D. Pa. 1996) ..................................................................................... 18

*Dennis v. Higgins*,
 498 U.S. 439 (1991) ........................................................................................................... 18

*Dreier v. The UpJohn Company*,
 492 A.2d 164 (Conn. 1985) ............................................................................................... 10

*Dussouy v. Gulf Coast Investment Corporation*,
 660 F.2d 594 (5th Cir. 1981) ............................................................................................. 10

*Fidelity & Deposit Co. v. Maryland v. Hudson United Bank,*
    653 F.2d 766 (3d Cir. 1981) ................................................................... 10

*Friedmann v. U.S.,*
    107 F. Supp. 2d 502 (D.N.J. 2000) ........................................................ 10

*Gannett Co., Inc. v. State,*
    571 A.2d 735 (Del. 1990)........................................................................ 22

*Giannone v. U.S. Steel Corp.,*
    238 F.2d 544 (3d Cir. 1956) ................................................................... 11

*Gonsalves v. Hodgson,*
    237 P.2d 656 (Cal. 1951) .......................................................................... 8

*Goodrich v. E.F. Hutton Group, Inc.,*
    542 A.2d 1200 (Del. Ch. 1988) .............................................................. 13

*Green v. America Online,*
    318 F.3d 465 (3d Cir. 2003)................................................................... 18

*HSMY, Inc. v. Getty Petroleum Marketing, Inc.,*
    417 F. Supp. 2d 617 (D. Del. 2006) ......................................................... 5

*Hudgens v. NLRB,*
    424 U.S. 507 (1976) ............................................................................... 20

*Island Online, Inc. v. Network Solutions, Inc.,*
    119 F. Supp. 2d 289 (E.D.N.Y. 2000)................................................... 16

*Jackson v. Metropolitan Edison Co.,*
    419 U.S. 345 (1974) ............................................................................... 21

*Kirtley v. Rainey,*
    326 F.3d 1088 (9th Cir. 2003)................................................................ 21

*Langdon v. T.L. Mallonee, et al.,*
    543 U.S. 1058 (2005) ............................................................................... 1

*Life Partners, Inc. v. Miller,*
    420 F. Supp. 2d 422 (E.D. Va. 2006)..................................................... 17

*Lloyd Corp. v. Tanner,*
    407 U.S. 551 (1972) ............................................................................... 20

*Malpiede v. Towson,*
    780 A.2d 1075 (Del. 2001) ............................................................................................. 9

*McCracken v. Raghbir,*
    2004 U.S. Dist. LEXIS 20819 (D. Del. Oct. 7, 2004) ................................................. 8, 9

*National Private Truck Council, Inc. v. Oklahoma Tax Comm'n,*
    515 U.S. 582 (1995) ..................................................................................................... 18

*National Western Life Insurance Co. v. Merrill Lynch Pierce, Fenner & Smith,*
    175 F. Supp. 2d 489 (S.D.N.Y. 2000) ......................................................................... 11

*Pennsylvania State Troopers Ass'n v. Commonwealth of Pennsylvania,*
    2006 U.S. Dist. LEXIS 59537 (M.D. Pa. Aug. 23, 2006) ............................................ 12

*Pruneyard Shopping Center v. Robins,*
    447 U.S. 74 (1980) ....................................................................................................... 20

*Reeves, Inc. v. Stake,*
    447 U.S. 429 (1980) ..................................................................................................... 17

*Register.com v. Verio,*
    126 F. Supp. 2d 247 (S.D.N.Y. 2000) ......................................................................... 16

*Rendell-Baker v. Kohn,*
    457 U.S. 830 (1982) ..................................................................................................... 18

*Samuels v. King Motor Co. of Ft. Lauderdale,*
    782 So.2d 489 (Fla. Dist. Ct. App. 2001) ...................................................................... 8

*San Francisco Arts & Athletics, Inc. v. United States Olympic Committee,*
    483 U.S. 522 (1987) ..................................................................................................... 21

*Smith v. Del. First Fed. Credit Union,*
    395 F. Supp. 2d 127 (D. Del. 2005) ............................................................................. 21

*Sobratti v. Tropical Shipping and Construction Co., Ltd.,*
    267 F. Supp. 2d 455 (D.V.I. App. Div. 2003) ............................................................... 14

*Snyder v. Pasack Valley Hosp.,*
    303 F.3d 271 (3d Cir. 2002) ........................................................................................... 2

*Soo Line R.R. Co. v. St. Louis Southwester Ry. Co.,*
    125 F.3d 481 (7th Cir. 1997) ........................................................................................ 10

*Southern Pacific Co. v. Arizona ex rel. Sullivan,*
    325 U.S. 761 (1945) ..................................................................................................... 17

*Southwest Community Resources, Inc. v. Simon Prop. Group, L.P.*,
    108 F. Supp. 2d. 1239 (D.N.M. 2000) ............................................................ 20

*Sprout v. Ellenburg Capital Corp.*,
    1997 Del. Super. LEXIS 470 (Aug. 26, 1997) .................................................. 15

*State v. Brown*,
    195 A.2d 379 (1963) ......................................................................................... 15

*Stephenson v. Capano Dev., Inc.*,
    462 A.2d 1069 (Del. 1983)................................................................................... 8

*Sumito Mitsubishi Silicon Corp. v. Memc Electronic Materials, Inc.*,
    2005 U.S. Dist. LEXIS 5174 (D. Del. Mar. 30, 2005)........................................ 2

*Travelers Indemnity Co. v. Lake*,
    594 A.2d 38 (Del. 1991)...................................................................................... 6

*U.S. ex rel. Carroll v. JFK Med. Ctr.*,
    2002 WL 31941007 (S.D. Fla. Nov. 15, 2002) .................................................. 9

*United States v. Colgate & Co.*,
    250 U.S. 300 (1919) .......................................................................................... 17

*VLIW Tech., L.L.C. v. Hewlett-Packard Co.*,
    840 A.2d 606 (Del. 2003)................................................................................... 12

*Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*,
    901 A.2d 106 (Del. 2006)................................................................................... 13

*Willis v. City of Rehoboth Beach*,
    2005 Del. Super. LEXIS 224 (June 24, 2005) ................................................. 14

*Wuxi Multimedia, Ltd. v. Koninklijke Philips Electronics, N.V.*,
    2006 U.S. Dist. LEXIS 9160 (S.D. Cal. Jan. 5, 2006) ....................................... 9

*Zenith Radio v. Hazeltine Research*,
    401 U.S. 321 (1971) .......................................................................................... 10

## STATUTES

6 *Del. C.* § 2513 .............................................................................................. 12, 14

6 *Del. C.* § 2517 ................................................................................................... 12

6 *Del. C.* § 2532 ................................................................................................... 12

Fed. R. Civ. P. 8(e)(2) ........................................................................................... 10

Fed. R. Civ. P. 8(f) ................................................................................................ 10

Fed. R. Civ. P. 9(b) ................................................................................................. 8

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 2

## OTHER AUTHORITY

Fed. Prac. and Proc. § 1476 (2d ed. 1990) ............................................................. 2

## INTRODUCTION

Plaintiff Christopher Langdon ("Langdon") should never be mistaken for an ordinary *pro se* litigant.  Far from it, Langdon is an unusually experienced *pro se* plaintiff who unsuccessfully prosecuted several inflammatory claims against various North Carolina governmental officials up to the United States Supreme Court.  *See, e.g., Langdon v. T.L. Mallonee, et al.*, 543 U.S. 1058 (2005) (just one of <u>seventeen</u> cites attributable to Langdon, this one denying *certiorari*).  Langdon also publishes two obscure Internet sites, www.ncjusticefraud.com and www.chinaisevil.com.  The first accuses the North Carolina Attorney General of fraud and denounces other government officials as "miscreants" and "crooked lawyers."  The second accuses the Chinese government of being evil and murdering millions of people.

Undeterred by prior rulings critical of his claims, Langdon returns to the federal court with a revised strategy and new set of targets.  Today, Langdon seeks to revive publicity for his prior failed claims via an indirect attack on the same parties made under the guise of suing three popular Internet search engine companies, including defendant Yahoo! Inc. ("Yahoo").  The pretext for this action consists solely of Langdon's fact-less allegations that Yahoo wrongfully refused to advertise his two websites.  Although Langdon's claims remain frivolous, and his litigiousness unwavering,[1] the scant *few* allegations made against Yahoo bear special attention here because they consist of nothing more than innuendo and suspicion – *i.e.,* that Yahoo only permits hosted advertising and that Yahoo delisted or misrepresented his website ranking.  Such illusory statements are <u>not</u> facts and cannot sustain the claims made, no matter how liberally construed.

---

[1] The Amended Complaint is the *nineteenth* filing by Langdon during the pleading stage in this case alone.  Those filings include meritless motions for default judgment, motions to strike and gratuitous affidavits accusing various counsel – including those cautious enough never to have spoken with him – of committing fraud.

## NATURE AND STAGE OF PROCEEDINGS

The original complaint in this action was filed on May 17, 2006. Since that time, numerous preliminary motions were filed, and the Court issued an Order dated August 24, 2006, directing exactly what remaining papers could be filed and when. Four weeks later, Langdon filed an Amended Complaint. The filing of an Amended Complaint terminated all pending motion practice but Langdon still continued to file papers hoping to avoid the waiver occasioned by his filing of the Amended Complaint.

Despite all that, Defendants' Motions to Dismiss, Plaintiff's Motions for Default (D.I. 25 and D.I. 28) and Plaintiff's Motion to Strike (D.I. 30, D.I. 31 and D.I. 32) were mooted, *as a matter of law,* because Langdon exercised his right to file an Amended Complaint. The filing of an "amended complaint renders the original complaint a legal nullity." *Pennsylvania State Troopers Ass'n v. Commonwealth of Pennsylvania*, 2006 U.S. Dist. LEXIS 59537 (M.D. Pa. Aug. 23, 2006), at *1 (citing *Snyder v. Pasack Valley Hosp.*, 303 F.3d 271, 276 (3d Cir. 2002)). "An amended complaint supersedes the original version in providing the blueprint for the future course of the lawsuit." Alan Wright, *et al.*, FED. PRAC. AND PROC. § 1476 (2d ed. 1990). "Since plaintiff filed an amended complaint, its original complaint <u>and all motions related to that original complaint</u> are moot." *Sumito Mitsubishi Silicon Corp. v. Memc Electronic Materials, Inc.*, 2005 U.S. Dist. LEXIS 5174, at *2 n.2 (D. Del. Mar. 30, 2005) (emphasis added).

In lieu of answering, Yahoo now moves to dismiss the Amended Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). This is Yahoo's opening brief in support of its motion to dismiss.

**STATEMENT OF FACTS**

Despite his claims that Yahoo refused to do business with him, Langdon asserts a series of inherently antagonistic and contradictory claims under Delaware law including breach of contract, fraudulent inducement and deceptive practices.  The entirety of Langdon's Yahoo-directed state claims consist of two conclusory sentences with no supporting factual allegations.  Langdon also asserts various state and federal constitutional claims against all defendants.  Langdon's constitutional claims are dependent upon acceptance of <u>both</u> the *false premise* that the Internet is identical to a shopping mall <u>and</u> the *non sequitur* that for-profit Internet search companies are therefore converted into state actors.  Langdon's claims should be dismissed with prejudice for failure to state a claim as a matter of law.

The handful of factual allegations[2] specific to Yahoo in the Amended Complaint (D.I. 44) are as follows.  Langdon alleges that he is the publisher of two Internet websites.  The first, www.ncjusticefraud.com, supposedly exposes various frauds committed by a number of public officials and the North Carolina Department of Transportation. (Am. Compl., p. 1)  The second, www.chinaisevil.com, criticizes the communist leadership of China.  (*Id*.)  In his own words, Langdon's Amended Complaint centers on the alleged refusal of Yahoo and its co-defendants to "run [Langdon's] ads or [his] websites."  (*Id*.)

Langdon claims, with respect to Yahoo, that he "attempted" to advertise on its search engine.  (Am. Compl., p. 19)  Langdon allegedly was told by a Yahoo representative that Yahoo does not accept ads for websites not hosted by Yahoo.  (*Id*.)  Langdon wrote a certified letter to the president of Yahoo asking if it was the Company's policy to refuse to accept ads for websites not

---

[2] The facts contained herein are derived solely from the limited allegations of the Amended Complaint and, as a consequence, are accepted as true for purposes of this Motion only.

3

hosted by Yahoo, but Langdon never received an answer.  (*Id*.)  Langdon now also claims that Yahoo somehow "de-listed his www.ncjusticefraud.com website, but that after he filed his Complaint, Yahoo re-instated it."  (Am. Compl., p. 20)  Most important, Langdon never alleges that he (i) submitted an application to Yahoo for advertising, (ii) paid any monies to Yahoo for advertising, or (iii) that he signed any contract with Yahoo for advertising.  Langdon did not make those allegations because – despite a second bite at the pleading apple – he simply cannot do so.

Yahoo's alleged refusal to allow Langdon to advertise on its search engine[3] is the *only* wrongful act attributed to Yahoo in the Amended Complaint.  Langdon, nevertheless, goes on to assert claims against Yahoo for fraudulently inducing him to advertise with Yahoo, for breaching some nameless contract never alleged to be written, agreed-upon or executed, and for engaging in deceptive trade practices.   Key to understanding these claims is the recognition that Langdon never explains (i) how Yahoo deceived or induced him into doing anything or (ii) what contract he purports to have entered into with Yahoo.  Langdon also asserts free speech claims against Yahoo under the Delaware and United States Constitutions under the theory that Yahoo is a public forum indistinguishable from a shopping mall.  For the reasons set forth below, each of these theories fails to state a claim upon which relief can be granted.

---

[3] Langdon still refuses to acknowledge in his Amended Complaint what happens when the searches *Roy Cooper, the N.C. Department of Justice* and *Communist China murders* are run on Yahoo.  For example, the day this brief was filed, his websites appeared as the second and first hits reported, respectively, on the first page of the returns made.

## ARGUMENT

## I.    THE LEGAL STANDARD

"Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint for failure to state a claim upon which relief may be granted." *HSMY, Inc. v. Getty Petroleum Marketing, Inc.*, 417 F. Supp. 2d 617, 621 (D. Del. 2006). "When considering a motion to dismiss, a court must accept as true all allegations in the complaint and must draw all reasonable factual inferences in the light most favorable to the plaintiff." *Id.* (citing *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989); *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255 (3d Cir. 1994)). Although *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers ... Courts are still 'not required to accept legal conclusions either alleged or inferred from the pleaded facts.'" *Id.* (citing *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993)). Dismissal with prejudice therefore is "appropriate when 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief,'" *Id.* (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)), and amendment would be futile. *Cowell v. Palmer Township*, 263 F.3d 286, 296 (3d Cir. 2001).

Dismissal with prejudice against Yahoo is justified *now* – as a matter of *law* based upon resolution of purely legal questions – because Langdon has plead <u>no facts</u> upon which any of his various theories might be sustained <u>and</u> because the few facts pled by Langdon actually undermine his theories. In the interests of judicial economy, rather than repeat those arguments already well developed by the other defendants, each of which Yahoo joins in, endorses and incorporates by reference, this memoranda will focus principally on several discrete and easily identified reasons why <u>each</u> claim arguably brought against Yahoo merits immediate dismissal.

## II.    CHOICE OF LAW

Langdon – an experienced interstate litigant and Florida domiciliary – made a personal and strategic choice to file suit in *Delaware* <u>and</u> to bring several *Delaware* state law claims against Yahoo, a California-based Internet company.  Such decision is consequential and Langdon should be held accountable notwithstanding his *pro se* status.  Once Langdon learns that his amended claims are not viable, he doubtless will claim naiveté with respect to choice-of-law principles just to try to move his private war to yet another state.  Such tactics should be rejected for many reasons, not the least of which is that Langdon's amended claims would be dismissed with prejudice no matter which states' law applies.  Langdon should not be permitted to exploit choice-of-law to escape a dismissal with prejudice, and defendants should not be burdened with a third round of motion practice in this or  any other jurisdiction.

As this Court recognized, "Delaware courts apply the most significant relationship test." *Corning Inc. v. SRU Biosystems*, LLC, 292 F. Supp. 2d 583, 584-85 (D. Del. 2003) (citing *Travelers Indemnity Co. v. Lake,* 594 A.2d 38, 47 (Del. 1991)).  "The relevant factors a court must consider when determining the state with the most significant relationship to the action include 1) the place where the injury occurred, 2) the place where the conduct causing the injury occurred, 3) the place of incorporation and principal place of business of the parties, and 4) the place where the relationship between the parties is centered." *Id.* (citing Restatement (Second) of Conflicts § 145 (1971)).  "When evaluating these factors, a court must not simply 'add up the interests on both sides of the equation and automatically apply the law of the jurisdiction meeting the highest number of contacts listed in Section[ ] 145.'" *Id.*  "Instead, a court is to evaluate the contacts in accordance with their relative importance to the particular issue." *Id.*  Inasmuch as all factors apart from the *mere incorporation* of Yahoo in Delaware strongly militate in favor of the application of

Florida or California law, rather than the law of Delaware, as explained further below, Langdon may not avail himself of any Delaware state law or constitutional remedies.

Langdon twice pled no facts that would support the application of Delaware law according to the most significant relationships test. Langdon did not allege anywhere in the Amended Complaint that he acted in reliance on Yahoo's representations in Delaware, that he received the representations in Delaware, that the representations were made in Delaware or that there is any other connection between Delaware and the subject matter of Langdon's fraud claim. In view of these failings, it is fortuitous that questions concerning choice-of-law make no real difference. We therefore will honor Langdon's choice by analyzing his *common-law* claims under Delaware law (without conceding its application), but we also will footnote those cases from Florida and California that would cause the exact same result. As for those few claims that are Delaware-specific, Langdon's cause appropriately rises or falls on his choice of forum.

## III.    THE AMENDED COMPLAINT FAILS TO STATE VIABLE COMMON LAW AND STATUTORY LAW CLAIMS UNDER DELAWARE LAW

### A.    No Fraud

Langdon has pled <u>no facts</u> stating that Yahoo made any false statements to him, or otherwise did anything to fraudulently induce his justifiable reliance. Instead, Langdon's fraud claim consists of the use of the word "fraud" in a single sentence of his Amended Complaint. Langdon alleges, despite asserting that Yahoo wrongfully refused to advertise his websites, that Yahoo "used fraud" to induce him to advertise with Yahoo. <u>That is it</u>. Langdon does not allege what "fraud" Yahoo used to induce him, when it used the fraud, what inducements Yahoo used to promote the fraud or how he relied upon or was harmed by any fraud. This single and unsupported allegation, which is internally inconsistent with Langdon's other allegations, fails to state any viable claim for fraud.

The elements of a claim for fraud are: "1) a false representation, usually one of fact, made by the defendant; 2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; 3) an intent to induce the plaintiff to act or to refrain from acting; 4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and 5) damage to the plaintiff as a result of such reliance." *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983).[4]  Federal Rule Of Civil Procedure 9(b) requires a party alleging fraud to plead with particularity the circumstances constituting his or her claims. The "intent behind Rule 9(b) is to give defendants notice of the claims against them and to <u>reduce the number of frivolous actions</u>."  *See McCracken v. Raghbir*, 2004 U.S. Dist. LEXIS 20819, at *5-6 (D. Del. Oct. 7, 2004) (emphasis added) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997)).  Although Rule 9(b) does not require the recitation of "every material detail of the fraud such as date, location and time," a plaintiff nevertheless "must use alternative means of injecting precision and some measure of substantiation into their allegations of fraud."  *Id.* (citing *In re Rockefeller Ctr. Props. Secs. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002)).

Langdon's Amended Complaint never comes even close to pleading a claim for fraud, let alone one with the particularity required by Rule 9(b). We repeat – Langdon never alleges that Yahoo made any representations to him – whether true or false, overt or tacit – nor does he allege knowledge of falsity, intent to induce or justifiable reliance.  Langdon does not describe what fraudulent statements or omissions were made by Yahoo, or when, nor does he identify anyone from Yahoo whom he believes was responsible for making such false or misleading statements. Langdon also fails to allege how or why he relied on the statements or omissions to his detriment

---

[4] *See also Samuels v. King Motor Co. of Ft. Lauderdale,* 782 So.2d 489 (Fla. Dist. Ct. App. 2001) (same); *Gonsalves v. Hodgson* (Cal. 1951) 237 P.2d 656 (same).  5 Witkin, Summary of Cal. Law Torts, § 676, p. 778 (9th ed. 1988).

or what harm he suffered as a result of the alleged fraud. In short, the allegations of the Amended Complaint aver no fraud and dismissal is warranted. *McCracken*, 2004 U.S. Dist. LEXIS 20819, at \*6 (dismissing fraud claim as lacking particularity because the plaintiff "failed to state the identity of the person who made any fraudulent statement to him, or the time, place, and content of the misrepresentation").

It is equally important to note that Langdon's fraud claim is internally antagonistic and irreconcilable. Langdon claims on one hand that Yahoo wronged him with its "refusal to run my ads or my websites," yet Langdon later claims that Yahoo used fraud to "induce him to advertise with them." (Am. Compl., pp. 1-2, 20) If, as Langdon alleges, Yahoo refused to advertise his websites, then it follows that Yahoo never intended to induce his business, and there can be no harm stemming from any non-inducement. Langdon's irreconcilably inconsistent factual averments alone provide a basis for dismissal of his claim. *See, e.g., Malpiede v. Towson*, 780 A.2d 1075, 1083 (Del. 2001) ("a claim may be dismissed if allegations in the complaint or in the exhibits incorporated into the complaint effectively negate the claim as a matter of law"); *U.S. ex rel. Carroll v. JFK Med. Ctr.*, 2002 WL 31941007, at \*2 (S.D. Fla. Nov. 15, 2002) ("Courts need not accept facts that are internally inconsistent, facts that run counter to facts which the Court may take judicial notice of, conclusory allegations, unwarranted deductions or mere legal conclusions"); *Wuxi Multimedia, Ltd. v. Koninklijke Philips Electronics, N.V.*, 2006 U.S. Dist. LEXIS 9160, at \*27 (S.D. Cal. Jan. 5, 2006) ("Because these allegations are internally inconsistent, the Court need not accept them as true.").

Even taking into account the leniency understandably shown to appropriate *pro se* litigants,

on a *case-by-case* basis, this is just <u>not</u> a case in which further amendment should be permitted.[5]

In this case, where Langdon first presented "a theory difficult to establish but favorable and, only

after that fails, a less favorable theory, denial of leave to amend on the grounds of bad faith may

be appropriate." *Dussouy v. Gulf Coast Investment Corporation*, 660 F.2d 594, 599 (5th Cir.

1981) (citing *Zenith Radio v. Hazeltine Research*, 401 U.S. 321, 332-33 (1971)) (emphasis added).

"Pleadings are not treated as judicial admissions <u>only</u> when they are made in the alternative or are

hypothetical in nature." *Id.* Even though Fed. R. Civ. P. 8(e)(2) expressly permits alternative and

inconsistent pleading, "unequivocal averments of fact" contained therein "constitute judicial

admissions that are conclusively binding on the Plaintiffs in this action." *Friedmann v. U.S.*, 107

F. Supp. 2d 502, 510-11 (D.N.J. 2000) (citing *Fidelity & Deposit Co. v. Maryland v. Hudson

United Bank*, 653 F. 2d 766, 777 (3d Cir. 1981)). The simple truth is that a "plaintiff can plead

himself out of court by alleging facts which show that he has no claim, even though he was not

required to allege those facts."[6] *Soo Line R.R. Co. v. St. Louis Southwester Ry. Co.*, 125 F.3d 481,

483 (7th Cir. 1997) (emphasis added). This is so because "judicial efficiency demands that a party

not be allowed to controvert what it has already unequivocally told a court by the most formal and

considered means possible." *Id.* (emphasis added). While "Rule 8(e)(2) clearly allows pleading

of inconsistent theories or statements of a claim, there is no authority for the proposition that

---

[5] "The liberal construction accorded a pleading under Rule 8(f) does not require the courts to fabricate claim that a plaintiff has not spelled out in his pleadings." 5 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE, § 1286 at 558 (2d. ed. 1990).

[6] "While alternative and inconsistent pleading is permitted, it would be an abuse of such permission for a plaintiff to make an assertion in a complaint that he does not reasonably believe to be true." *Dreier v. The UpJohn Company*, 492 A.2d 164, 166 (Conn. 1985) (emphasis added). "Our pleading rules were designed to avoid the pitfalls of unnecessary formality, not to allow a plaintiff to engage in fantasy." *Id.* (emphasis added).

within a statement of a given claim a party may assert as fact two assertions that directly contradict each other." *National Western Life Insurance Co. v. Merrill Lynch Pierce, Fenner & Smith*, 175 F. Supp. 2d 489, 492 (S.D.N.Y. 2000).

Langdon did not cure the contradictions in his complaint during amendment and his failure to do so establishes the absence of mistake. "Such clashing factual assertions, stated in the context of the same claim rather than as conceptually distinct alternative theories of liability, may be deemed judicial admissions." *Id.* (emphasis added). "Because a complaint is intended to summon the resources of the court, and given the responsibility placed on parties to ensure that claims filed with the court are properly based on fact, a party's pleadings are viewed with solemnity." *Sobratti v. Tropical Shipping and Construction Co., Ltd.*, 267 F. Supp. 2d 455, (D.V.I. App. Div. 2003) (emphasis added). "[P]leadings are supposed to be factual rather than fictional." *Giannone v. U.S. Steel Corp.*, 238 F.2d 544, 547 (3d Cir. 1956) (emphasis added). "Given the seriousness of pleadings, and to 'preserve the integrity of the courts by <u>preventing the litigants from playing fast and loose</u> with the courts' in offering intentional self-contradictions, factual assertions made in pleadings are binding on the party asserting the fact. . . ." *Sobratti*, 267 F. Supp. 2d. 455, 463 (emphasis added).

**B.    No Breach Of Contract**

Langdon made no allegation that he even had a contract with Yahoo, let alone alleged any facts establishing a breach. In order to survive a motion to dismiss for failure to state a contract claim under Delaware law[7], Langdon must demonstrate: <u>first</u>, the existence of the contract, whether express or implied; <u>second</u>, the breach of an obligation imposed by that contract; and

---

[7] *See also Abbott Laboratories, Inc. v. General Electric Capital,* 765 So.2d 737, 740 (Fla. Dist. Ct. App. 2000) (same); *Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal. App. 3d 1371, 1388, (1990) (same).

<u>third</u>, the resultant damage to the plaintiff. *VLIW* Tech*., L.L.C. v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).

Langdon failed to plead <u>any</u> of the elements necessary to support a breach of contract claim. Langdon's breach of contract claim, like his fraud claim, consists of a single reference in one sentence of the Amended Complaint. Langdon specifically alleges that Yahoo "breached [its] contract with [him] to advertise on [Yahoo's engine]." (Am. Compl., p. 20) Langdon's allegation is purely conclusory and is mutually antagonistic with other allegations in the Amended Complaint. The first and worst omission is Langdon's failure to allege the existence of any contract between him and Yahoo. Langdon instead alleges the contrary – that Yahoo refused to do business with him. (Am. Compl., pp.1-2) Langdon also failed to identify any contractual terms or obligations – not to mention those contractual terms or provisions he believes Yahoo supposedly breached, how or when Yahoo breached those terms, and how he sustained harm proximately caused by Yahoo's breach. Having failed to allege, in even the most cursory fashion, any of the elements necessary to support his claim, Langdon's breach of contract claims against Yahoo should be dismissed with prejudice.

### C.     No Consumer Fraud

Langdon next makes a Delaware-specific, statutory allegation that Yahoo "engaged in deceptive business practices, erroneously citing to 6 *Del. C.* § 2517,[8] yet Langdon still fails to

---

[8] Langdon names the statute he relies upon, or the number, *or both*, incorrectly. There is no prohibition against deceptive trade practices in 6 *Del. C.* § 2517. Neither § 2517 (a statute governing Attorney General investigative demands) nor § 2532 (a statute governing deceptive trade practices between competitors that has no private right of action) concern consumer fraud or unlawful business practices. The other defendants thus argue that dismissal with prejudice is warranted on that basis alone, <u>and we agree</u>. Out of an abundance of caution, however, we note that 6 *Del. C.* § 2513 does provide a private right of action intended to protect consumers from fraudulent business practices. Allowing for the possibility that Langdon may seek to avoid dismissal on the basis of mistake, ever-reliant upon his *pro se* status, we take time below to identify two reasons why, even had Langdon sought relief under § 2513, that his claim still should be dismissed as a matter of law. Our point – further amendment is <u>futile</u> and should be denied.

identify any actionable misconduct occurring within the State of Delaware that could even possibly sustain a Delaware statutory claim for deception or fraud. Once again, aside from one cursory sentence, Langdon pled no facts in support of a claim for fraud or deception, nor does he explain why any provision of the Delaware Consumer Fraud Act might apply in this case.

### 1.    Langdon Alleged No Misconduct in Delaware

Langdon's statutory claim for fraud or deception must be dismissed because Langdon has failed to plead any facts even inferring that the Delaware Consumer Fraud Act applies. The purpose of the Delaware Consumer Fraud Act (the "Act") is to protect Delaware consumers from acts occurring within this state:

> The purpose of this subchapter shall be to protect consumers and legitimate business enterprises from unfair or deceptive merchandising practices in the conduct of any trade or commerce in part or wholly <u>within this State</u>.

6 *Del. C.* § 2512 (emphasis added). Delaware courts have consistently held that to state a claim under the Act, a plaintiff must allege that the conduct at issue took place in Delaware. *See, e.g., Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 901 A.2d 106, 117 (Del. 2006) ("The statutory claim [under the Delaware Consumer Fraud Act] fails, however, because it requires that the unfair practice occur in part or wholly within this State. The Amended Complaint does not allege that any of the conduct at issue took place in Delaware.") *Goodrich v. E.F. Hutton Group, Inc.*, 542 A.2d 1200, 1202 (Del. Ch. 1988) ("This claim must also be dismissed because the plaintiff has failed to allege any facts which, if true, could infer any unfair or deceptive trade practice occurring in part or wholly within this State."). Langdon does not identify any act that could form the basis for a Consumer Fraud Act claim, <u>let alone connect such an act to Delaware</u> – and he cannot cure that omission by amendment. Langdon alleges that he resides in Winter Park, Florida (*see* Am.

Compl., p. 35), so one cannot even infer any legitimate connection to Delaware. In short, there are no allegations in the Amended Complaint whatsoever that support the applicability of the Act.

2.    Langdon Alleged No Sale, Lease or Advertisement of Merchandise

Langdon's claim under the Consumer Fraud Act must also be dismissed because Langdon has failed to plead, and he cannot plead, another key element of that claim. The Act prohibits "deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise." 6 *Del. C.* § 2513. (Emphasis added).

The main problem here is that Langdon failed to plead deception or fraud made *in connection with* the sale, lease or advertising of "*merchandise*." Langdon has now twice failed to allege that Yahoo deceived him into advertising or that he even paid Yahoo for any services that conceivably might qualify as "merchandise." Far from it, Langdon plead that Yahoo refused to let him advertise. If we accept that allegation as true, as is customary on preliminary motion practice, then it follows that Langdon has plead himself out of court *because* any company that *allegedly* rejected non-hosted content-provider advertising *by definition* cannot possibly have sought to deceive or defraud a non-hosted content-provider into advertising.

Absent allegations that Langdon was deceived or defrauded with respect to the sale, lease or advertisement of any merchandise, no deceptive trade practice claim exists. If, on the other hand, we liberally construe Langdon's statutory fraud claim to be that his site was "de-listed," or not ranked "honestly," *rather than that he was defrauded into advertising with Yahoo*, then the same problem occurs. In this construct, it is a practical reality that the operation of an Internet search engine is just as dissimilar to "merchandise" as a building permit – and building permits do not constitute "merchandise" under Delaware law. *See Willis v. City of Rehoboth Beach*, 2005

14

Del. Super. LEXIS 224 (June 24, 2005) (ruling that a building permit did not constitute "merchandise," as that term was meant under the statute.);  *see also Sprout v. Ellenburg Capital Corp.*, 1997 Del. Super. LEXIS 470 (Aug. 26, 1997) (ruling that leased real property is not "merchandise" for purposes of the Act.); *Cliff House Condominium Council v. Capaldi*, 1991 Del. Ch. LEXIS 146 (Aug. 26, 1991) (holding that the preparation of misleading financial reports that might be relied upon prospective purchasers of condominium units did not constitute the sale or advertising of "merchandise" under the Act.).   As vague and indefinite as Langdon's allegations have twice proven to be, it is undisputed that Langdon did not buy anything from Yahoo, and Yahoo did not ever try to sell, lease or advertise any merchandise to him.   Accordingly, no statutory claim for deceptive practices exists regardless of the subchapter cited.

### D.     No Public Calling

No unique cause of action based upon a "public calling" exists under Delaware law. Langdon nonetheless claims that Yahoo should be liable to him because it is engaged in a "public calling."  The sole authority Langdon offers for such a farcical proposition is a one-hundred year old law review article from Harvard that presently is unavailable through either Westlaw or Lexis. It is not easy to defend a claim *never before heard* in Delaware courts, nor mentioned in thousands of Delaware cases dating back *over two hundred years*, and it is no less challenging to prove a negative.  Try as we might, having run extensive searches on both Lexis and Westlaw, and having reviewed many secondary authorities, we were unable to confirm that a claim for "public calling is part of established Delaware jurisprudence."[9]

---

[9] Microsoft analogizes Langdon's public calling claim to the type of the claim long ago discussed in *State v. Brown*, 195 A.2d 379, 382 (Del. 1963).  Should Langdon embrace that analogy, then Yahoo joins in and incorporates by reference the well-developed argument made by Microsoft in opposition to that claim.

Assuming, for argument, that Langdon relies on the phrase "public calling" to somehow impose special legal duties on Yahoo akin to those potentially imposed upon common carriers or innkeepers, courts in other states long ago have rejected that argument.  *See e.g., Register.com v. Verio*, 126 F. Supp. 2d 247 (S.D.N.Y. 2000) (denying the defendant privilege to access plaintiff's web site on grounds of web sites being a public utility); *Island Online, Inc. v. Network Solutions, Inc.*, 119 F. Supp. 2d 289, 306-07 (E.D.N.Y. 2000) ("the Internet is, by no stretch of the imagination, a traditional and exclusive public function").  Dismissal of this claim is therefore warranted.

## IV.    THE AMENDED COMPLAINT FAILS TO STATE ANY REMOTELY VIABLE COMMERCE CLAUSE, RIGHT TO PETITION OR FREE SPEECH CLAIMS

We pause to note that two of these three constitutional claims are particularly puzzling. First of all, the Commerce Clause claim is puzzling because Langdon previously represented to the Court and parties that he no longer was making claims under the Commerce Clause[10] (*See* D.I. No. 43).  Still, inasmuch as his use of Commerce Clause verbiage in his Amended Complaint may signal a change of heart, we will very briefly revisit the reason why no Commerce Clause claim has been effectively plead.  Second, the undeveloped reference to the right to petition the federal government for redress of grievances is puzzling because the rights and remedies so implicated have no connection to Langdon's complaints against Yahoo.  Such impossibly vague assertions merit no further argument.

---

[10] Langdon was less equivocal with respect to his prior claims for violation of the Sherman Act and Communications Act, each of which has been dropped in the Amended Complaint.

### A.     No Commerce Clause Violation

The Commerce Clause of the United States Constitution provides "Congress shall have Power ... [to] regulate Commerce . . . among the several states."  U.S. Const. *Art. I., § 8, cl. 3.* Congress's authority to regulate commerce pursuant to the Constitution inherently carries with it a prohibition to the states to refrain from enacting laws which impede the flow of interstate commerce.  *See Cooley v. The Board of Wardens*, 53 U.S. 299, 318 (1851).  This authority, known as the dormant Commerce Clause, "has long been understood . . . to provide 'protection from state legislation inimical to the national commerce [even] where Congress has not acted.'"  *Barclays Bank, PLC v. Franchise Tax Bd. of Cal.,* 512 U.S. 298, 310 (1994) (quoting *Southern Pacific Co. v. Arizona ex rel. Sullivan,* 325 U.S. 761, 769 (1945)).

The dormant Commerce Clause thus "limits the power of the States to erect barriers against interstate trade." *Dennis,* 498 U.S. at 446 (emphasis added).  As the United States Supreme Court has repeatedly explained, Commerce Clause jurisprudence is designed to protect the states and "to benefit those who . . . are engaged in interstate commerce." *Id.* at 460.  *Accord Life Partners, Inc. v. Miller*, 420 F. Supp. 2d 422, 459-60 (E.D. Va. 2006).  But Yahoo is not a state*,* Langdon conducts no interstate commerce, *and* there is no allegation (nor could there be) that Internet search engines favor the economies of one state over another.  The dormant Commerce Clause does not apply to private businesses like Yahoo, or political activists like Langdon and, as a consequence, private companies like Yahoo may rely upon "the long recognized right of [a] trader or manufacturer, engaged in an entirely private business, [to] freely exercise his own independent discretion as to parties with whom he will deal." *Reeves, Inc. v. Stake*, 447 U.S. 429, 439 (1980) (citing *United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919)).

In addition, Langdon has not and cannot plead any facts suggesting that Yahoo has taken any action that favors one state's economic interests over another.  "One of the 'rights, privileges

or immunities' protected by § 1983 was the right to be free from state action that violates the dormant Commerce Clause." *National Private Truck Council, Inc. v. Oklahoma Tax Comm'n,* 515 U.S. 582, 585 (1995) (citing *Dennis v. Higgins,* 498 U.S. 439 (1991)). No coercive state action is present here, and Langdon's Commerce Clause claim should therefore be dismissed.

### B.     No First Amendment Violation

The First Amendment to the United States Constitution governs only state actors, not private entities. *See, e.g., Rendell-Baker v. Kohn*, 457 U.S. 830, 837 (1982). In presumed deference to that restriction, Langdon <u>first</u> alleges that the Internet is a public forum *because* it is equivalent to a shopping mall and, <u>second</u>, *eschewing logic*, Langdon alleges that Internet search companies like Yahoo must *somehow* become state actors. <u>Nonsense</u>.

The Internet is nothing like a shopping mall – the Internet is an almost ethereal network of over four billion computers, cables, routers and radio signals loosely and inconsistently connected via cyberspace throughout the world.[11] In contrast, Yahoo is a for-profit commercial entity that just uses the Internet as a medium to conduct business. That is a distinction with a real difference. Individual companies that simply <u>do business</u> over the Internet are not synonymous with the Internet <u>itself</u>. Indeed, many courts have determined as a matter of law that companies who provide access to the Internet are <u>not</u> state actors. *See, e.g., Green v. America Online*, 318 F.3d 465, 471 (3d Cir. 2003); *Cyber Promotions, Inc. v. America Online, Inc.*, 948 F. Supp. 436, 441 (E.D. Pa. 1996). If companies that provide access to the Internet are not state actors, then neither should be a company whose web site includes an external search engine.

---

[11] "The Internet is a network of networks – a decentralized, self-maintaining series of redundant links among computers and computer networks, capable of rapidly transmitting communications without direct human involvement or control." *American Library Control v. Pataki*, 969 F. Supp. 160, (S.D.N.Y. 1997). "<u>No organization or entity controls the Internet</u>; [*least of all Yahoo*,] in fact, the chaotic, random structure of the Internet precludes any exercise of control." *Id.* (Emphasis added).

Any contrary result would convert a host of private companies that do business on the Internet into state actors – and permit worldwide web searching from their own sites – into a public forum.  If that were the rule, *then* it bears repeating that thousands of Internet content providers with external search capabilities – including major content providers like CNN, ESPN, Bravo TV and Mapquest as well as small content providers like TheWeirdcrap.com – would be forced to insure against the risk of future complaints of bias, *real or imagined*, from activists, special interest groups and others like Langdon who will pursue any angle in search of an audience.[12]

Ultimately, the question here is not whether Langdon has the ability to post his messages on the Internet – he admits that he does and he has two active websites that appear when searched for on Yahoo – the question is whether he can exploit free speech conventions applicable to state actors to compel commercial entities such as Yahoo to direct its patrons to his websites simply because Yahoo also utilizes the Internet.  *Columbia Broadcasting System, Inc. v. Democratic Nat'l Committee*, 412 U.S. 94, 130 (1973) ("The question here is not whether there is to be discussion of controversial issues of public importance on the broadcast media, but rather who shall determine what issues are to be discussed by whom, and when.").  The overwhelming weight of authority answers that question in the negative.

The United States Supreme Court has long rejected the notion that private shopping centers such as malls are public forums simply because they invite the public to visit for a specific commercial purpose.  *See, e.g., Lloyd Corp. v. Tanner*, 407 U.S. 551, 569 (1972); *Hudgens v.*

---

[12] Hard words, but true.  Just look at the Amended Complaint.  The vast majority of text is devoted to repeating Langdon's criticism of China and the claims dismissed in his former lawsuit.  Allegations of fact are few and far between but demands for cash settlement payments and endorsement of his political views appear regularly.

*NLRB*, 424 U.S. 507 (1976).  The Supreme Court has only recognized the right of individual states, consistent with their own constitutions, to declare some private properties to be public forums for limited purposes.  *See, e.g., Pruneyard Shopping Center v. Robins*, 447 U.S. 74, 80-81 (1980).

The public nature of the Internet does not transform commercial parties into state actors merely because they use the Internet, any more than the use of commercial space in a public shopping center transforms individual retailers into state actors.  *See Lloyd Corp.*, 407 U.S. at 569 ("[the] essentially private character of a store and its privately owned abutting property does not change by virtue of being large or clustered with other stores in a modern shopping center").  Nor does the fact that Yahoo invites consumers to its website to perform Internet searches make Yahoo a public forum for purposes of political or social expression.  *See Southwest Community Resources, Inc. v. Simon Prop. Group, L.P.*, 108 F. Supp. 2d. 1239, 1256 (D.N.M. 2000) ("Plaintiffs' argument ultimately fails because the nature of the mall's invitation to the public is only to do business with the mall's tenants (including the government facilities), not to engage in any expressive activities. Such an invitation would be insufficient to create a designated public forum if issued by the government.").

Langdon's entwinement claim fares no better.  Such claims require a plaintiff to allege that a private party is "so entwined with governmental policies or so impregnated with a governmental character as to become subject to the constitutional limitations placed upon state action."  *Columbia Broadcasting System*, 412 U.S. at 134, n.3.  Langdon's Complaint lists several tasks that can be accomplished on the Internet, notes that the government was involved in creating the Internet, and points to the manner in which the Internet can be accessed (*e.g.*, by telephone), but Langdon pleads no facts whatsoever showing any state entwinement specifically involving Yahoo.  Langdon does not allege that Yahoo was created using state funds, that Yahoo was endowed with

state authority or power, or that the state directly benefited from Yahoo's allegedly discriminatory activities. *Kirtley v. Rainey*, 326 F.3d 1088, 1093 (9th Cir. 2003) ("Under the joint action test, we consider whether the state has so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity."). Instead, Langdon's argument again rests on the misguided idea that because Yahoo uses the Internet as its commercial medium, its activities are necessarily entwined with those of the state.

Taken to its logical conclusion, Langdon's argument would make every broadcaster, Internet service provider, Internet merchant and every other private merchant or entity licensed or regulated by the government a state actor – a conclusion that courts repeatedly have rejected. *See, e.g., San Francisco Arts & Athletics*, Inc. *v. United States Olympic Committee*, 483 U.S. 522, 547 n.29 (1987) (no entanglement between federal government and the United States Olympic Committee even though government gave Committee exclusive right to use the word "Olympic"); *Blum v. Yaretsky*, 457 U.S. 991, 1011-12, 1027 (1982) (state licensing of nursing homes, subsidization costs, and payment of medical expenses of most patients did not establish symbiotic relationship); *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 358 (1974) (no entwinement between utility company and state even though company was heavily regulated and enjoyed partial monopoly and state approved tariff setting forth challenged method of terminating service); *Columbia Broadcasting System*, 412 U.S. at 118-19 (holding that radio and television broadcaster was not a partner of the government for purposes of editorial content and that the broadcaster's refusal to accept editorial advertisements was not governmental action violative of the First Amendment); *Smith v. Del. First Fed. Credit Union*, 395 F. Supp. 2d 127, 130 (D. Del. 2005) ("While governments may regulate credit unions, regulation alone is not enough to make a private entity and a government agency interdependent."). The mere allegation that Yahoo is a large

Internet search engine, without more, is insufficient as a matter of law to infer that Yahoo is a state actor governed by the First Amendment.

**C.    Langdon Has No Standing To Bring Delaware Constitutional Claims**

Langdon's Complaint fails to plead any facts that would establish his right to bring claims under the Delaware Constitution.  Langdon is not a resident of Delaware.  He does not allege that any wrongful acts took place in Delaware, nor does he ever claim that he was harmed in Delaware. His Amended Complaint demonstrates no connection to Delaware, no constitutional injury-in-fact, and it articulates no reason why he would be entitled to relief under the state constitution of Delaware – as opposed to the constitution of his home state.  As a Florida resident who has a business dispute with a company operated in California, Langdon has no more right or standing to assert any unique rights arising under the constitution of the State of Delaware than he would have to rely rights arising under the constitution of states of Iowa, Texas or Alaska.[13]

Of course, the rights afforded under the Delaware Constitution are not unique and no more broad than its Federal counterpart, *see Gannett Co., Inc. v. State*, 571 A.2d 735, 741, n.9 (Del. 1990), and so the exact same arguments made before apply with equal force and warrant dismissal of Langdon's constitutional claims no matter where those claims arise.

---

[13] Langdon has not pled nor argued that he possesses any state constitutional rights that are greater than those provided under the U.S. Constitution.  Of course, had Langdon even thought to claim such rights under Delaware law, those claims would still fail because Delaware law would not apply no matter how liberally the choice-of-law analysis is construed.   See Argument, § II, *supra*.

**CONCLUSION**

For the foregoing reasons, Defendant Yahoo! Inc. respectfully requests that the Court enter an order dismissing all claims against Yahoo with prejudice.

**DUANE MORRIS LLP**

/s/ Daniel V. Folt
Daniel V. Folt (Del. Bar No. 3143)
Matt Neiderman (Del. Bar No. 4018)
1100 North Market Street
Suite 1200
Wilmington, DE 19801-1246

Dated: October 16, 2006                    *Attorneys for Defendant Yahoo! Inc.*

## CERTIFICATE OF SERVICE

I, Daniel V. Folt, do hereby certify that on October 16, 2006, I caused to be served copies

of the foregoing document to be served on the following parties in the manner indicated below:

<u>Via Federal Express (signature required)</u>:

Christopher Langdon
1835 Edwin Blvd.
Winter Park, F: 32789


<u>Via e-filing</u>:

Kurt Michael Heyman, Esq.
Proctor Heyman LLP
1116 West Street
Wilmington, DE 19801


<u>Daniel V. Folt (Del. Bar No. 3143)</u>
