# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

CHRISTOPHER LANGDON,                     )
                                         )
    Plaintiff,                          )
                                         )   Case No. 06 – 319 (JJF)
    v.                                  )
                                         )
GOOGLE, INC., d.b.a DELAWARE GOOGLE INC.,)
YAHOO! INC., and MICROSOFT CORP.,        )
                                         )
    Defendants.                         )

## OPENING BRIEF IN SUPPORT OF DEFENDANT MICROSOFT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR REPEATED FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6)

Dated: October 16, 2006

**DUANE MORRIS LLP**
Daniel V. Folt (Del. Bar No. 3143)
Gary W. Lipkin (Del. Bar No. 4044)
Matt Neiderman (Del. Bar No. 4018)
1100 North Market Street
Suite 1200
Wilmington, DE 19801-1246
(302) 657-4900

*Of Counsel*:
**PROSKAUER ROSE LLP**
Christopher Wolf
Stephen D. Solomon
Rachel Faith Glickman
1001 Pennsylvania Avenue, N.W.
Suite 400 South
Washington, D.C. 20004-2533

*Attorneys for Defendant Microsoft*

# TABLE OF CONTENTS

Preliminary Statement................................................................................................1

Summary of Argument .............................................................................................3

Statement of Facts....................................................................................................4

Argument ..................................................................................................................5

     I.     Legal Standard for Motions to Dismiss .........................................5

     II.    The Amended Complaint Fails to Allege Plaintiff Was
          Directly Injured by Microsoft ..........................................................5

     III.   The Doctrine of Public Calling Applies only to Innkeepers
          and Does Not Regulate Microsoft's Business Decisions..................6

          A.    Microsoft is a Private Party and Has No Duty to
                 Protect Free Speech ..............................................................6

          B.    The First Amendment Does Not Provide an
                 Absolute Right to Place Advertisements in a
                 Venue of the Advertiser's Choosing ......................................8

          C.    Plaintiff's Rights to Free Speech Were not Violated
                 Under the Delaware Constitution ........................................10

     IV.   The Amended Complaint Fails to State a Claim Under
          the First Amendment or the Delaware Constitution for a
          Violation of the Right to Free Speech.............................................12

     V.    Plaintiff Cannot Properly Allege a Breach of Contract
          Claim Because No Contract Existed With Microsoft ......................14

     VI.   The Amended Complaint Fails to Plead the Most Basic
          Elements of a Fraud Claim and Fails to Plead Fraud
          With the Requisite Particularity......................................................17

     VII.  The Amended Complaint Does Not Properly Allege
          that Microsoft Engaged in Deceptive Business Practices...............18

     VIII. The Communications Decency Act Grants Microsoft
          Immunity for Any Decisions to Screen Content..............................19

Conclusion ..............................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

### FEDERAL CASES

*Almeida v. Amazon.com, Inc.*,
    456 F.3d 1316 (11th Cir. 2006) ...................................................................................19

*Asociacion de Trabajadores Agricolas de Puerto Rico v. Green Giant Co.*, 518
    518 F.2d 130 (3d Cir. 1975)..........................................................................................8

*Associates & Aldrich Co. v. Times Mirror Co.*,
    440 F.2d 133 (9th Cir. 1971) ........................................................................................9

*Avins v. Rutgers State University of New Jersey*,
    385 F.2d 151 (3d Cir. 1967), *cert. denied*, 390 U.S. 920......................................9

*Ben Ezra, Weinstein & Co. v. America Online, Inc.*,
    206 F.3d 980 (10th Cir. 2000) ...................................................................................19

*Blum v. Yaretsky*,
    457 U.S. 991 (1982)......................................................................................................6

*In re Burlington Coat Factory Securities Litigation*,
    114 F.3d 1410 (3d Cir. 1997)......................................................................................15

*Cable Investments, Inc. v. Woolley*,
    867 F.2d 151 (3d Cir. 1989)..........................................................................................8

*Channel Home Ctrs. v. Grossman*,
    795 F.2d 291 (3d Cir. 1986)........................................................................................14

*Columbia Broadcasting System v. Democratic National Committee*,
    412 U.S. 94 (1973)........................................................................................................8

*CompuServe Inc. v. Cyber Promotions, Inc.*,
    962 F. Supp. 1015 (S.D. Ohio 1997) ...........................................................................8

*Cyber Promotions, Inc. v. America Online, Inc.*,
    948 F. Supp. 436 (E.D. Pa. 1996) .....................................................................7, 10, 12

*Don's Hydraulics, Inc. v. Colony Insurance Co.*,
    417 F. Supp. 2d 601 ...................................................................................................17

*Frazier v. America Airlines, Inc.*,
    434 F. Supp. 2d 279 (D. Del. 2006)..............................................................12, 14, 15

*Gomez v. Toledo*,
   446 U.S. 635 (1980)........................................................................................................5

*Green v. America Online*,
   318 F.3d 465 (3d Cir. 2003)..............................................................2, 7, 12, 19

*Hill v. Nassberg*,
   130 Fed Appx. 615 (3d Cir. 2005).............................................................................5

*Howard v. America Online Inc.*,
   208 F.3d 741 (9th Cir. 2000) ....................................................................................7

*Hudgens v. NLRB*,
   424 U.S. 507 (1976)...............................................................................................6, 10

*Island Online, Inc. v. Network Solutions, Inc.*,
   119 F. Supp. 2d 289 (E.D.N.Y 2000) ...................................................................8

*Jordan v. Fox, Rothschild, O'Brien & Frankel*,
   20 F.3d 1250 (3d Cir. 1994)........................................................................13, 15, 18

*Kost v. Kozakiewicz*,
   1 F.3d 176 (3d Cir. 1993) ...........................................................................................5

*Lloyd Corp. v. Tanner*,
   407 U.S. 551 (1972)......................................................................................................7

*Lugar v. Edmondson Oil Co.*,
   457 U.S. 922 (1982)......................................................................................................6

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)......................................................................................................5

*Markowitz v. Northeast Land Co.*,
   906 F.2d 100 (3d Cir. 1990).......................................................................................5

*Marsh v. Alabama*,
   326 U.S. 501 (1946)......................................................................................................8

*McDowell v. Del. State Police*,
   88 F.3d 188 (3d Cir. 1996)..........................................................................................4

*Morrow v. USA Today Newspaper.*,
   1988 WL 52833(S.D.N.Y. 1988).................................................................................9

*In re NAHC Securities Litigation*,
    306 F.3d 1314 (3d Cir. 2002)....................................................................4

*National A-1 Adver., Inc. v. Network Solutions, Inc.*,
    121 F. Supp. 2d 156 (D.N.H. 2000)...........................................................8

*Noah v. AOL Time Warner, Inc.*,
    261 F. Supp. 2d 532 (E.D. Va. 2003), *aff'd*, 2004 WL 602711 .........................7

*Novak v. Overture Services, Inc.*,
    309 F. Supp. 2d 446 (E.D.N.Y. 2004) ......................................................20

*Parker v. Google Inc.*,
    422 F. Supp. 2d 492 (E.D. Pa. 2006) .......................................................20

*Pruneyard Shopping Ctr. v. Robins*,
    447 U.S. 74 (1980)...............................................................................11

*Resident Participation of Denver, Inc. v. Love*,
    322 F. Supp. 1100 (D. Colo. 1971)...........................................................9

*Schrod v. Patterson*,
    948 F.2d 1402 (3d Cir. 1991)..................................................................5

*The Pitt News v. Fisher*,
    215 F.3d 354 (3d Cir. 2000).....................................................................5

*Thomas v. Network Solutions, Inc.*,
    176 F.3d 500 (D.C. Cir. 1999) .................................................................8

*Tsau v. National Science Foundation*,
    2000 U.S. Dist. LEXIS 14580 (N.D. Ill. Sept. 28, 2000) ..................................9

## STATE CASES

*Bock v. Westminster Mall Co.*,
    819 P.2d 55 (Colo. 1991)......................................................................11

*Brown v. Robb*,
    583 A.2d 949 (Del. 1990), *cert. denied* 499 U.S. 953 (1991)..........................14

*Citizens for Ethical Government v. Gwinnett Place Associate*,
    260 Ga. 245 (1990) ............................................................................10

*Cologne v. Westfarms Associates*,
    192 Conn. 48 (1984) ...........................................................................10

*Emerald Partners v. Berlin*,
    811 A.2d 788 (Del. 2001) ...................................................................................15

*Fiesta Mall Venture v. Mechan. Recall Committee*,
    159 Ariz. 371 (Ariz. Ct. App. 1989) ...............................................................10

*Fuester v. Conrail*,
    1994 Del. Super. LEXIS 472 (Del. Super. Sept. 16, 1994) ..............................11

*Gannett Co., Inc. v. State*,
    571 A.2d 735 (Del. 1990) .................................................................................10

*Goodrich v. E.F. Hutton Group, Inc.*,
    542 A.2d 1200 (Del. Ch. 1988)........................................................................17

*Hindes v. Wilmington Poetry Society*,
    138 A.2d 501 (Del. Ch. 1958)..........................................................................14

*Hoffman v. Cohen*,
    538 A.2d 1096 (Del. 1988) ...............................................................................15

*Int'l Equity Capital Growth Fund, L.P., v. Clegg*,
    1997 WL 208955 (Del. Ch. 1997) ..............................................................10, 14

*Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.*,
    854 A.2d 121 (Del. Ch. 2004)..........................................................................15

*N.J. Coal. Against War in the Middle E. v. JMB Realty Corp.*,
    650 A.2d 757 (Del. 1994) .................................................................................10

*In re Opinion of the Justices*,
    324 A.2d 211(Del. 1974) ..................................................................................10

*Plummer v. Sherman*,
    861 A.2d 1238 (Del. 2004) ..............................................................................15

*Salisbury v. Credit Serv., Inc.*,
    199 A. 674 (Del. Super. 1937)..........................................................................12

*State v. Brown*,
    195 A.2d 379 (Del. 1963) .................................................................................18

*State v. Elliott*,
    548 A.2d 28 (Del. 1988) .........................................................................11, 12, 14

*State v. Schmid*,
   423 A.2d 615 (Del. 1980) ..................................................................................12

*Wal-Mart Stores, Inc. v. AIG Life Insurance Co.*,
   901 A.2d 106 (Del. 2006) ..................................................................................17

## STATUTES AND OTHER AUTHORITIES

15 U.S.C. § 41 *et seq*. ..................................................................................................18

47 U.S.C. § 230 ..............................................................................................................3

47 U.S.C. § 230(c) ........................................................................................................19

47 U.S.C. § 230(f) .........................................................................................................20

Fed. R. Civ. P. 9 ........................................................................................................3, 15

Fed. R. Civ. P. 12(b) .......................................................................................................5

U.S. Const. amend. I ........................................................................................................6

6 *Del. C.* § 2513 ........................................................................................................4, 18

6 *Del. C.* §§ 2532-2533 ...............................................................................................17

Del. Const., art. I, § 5 ....................................................................................................10

D. Del. L.R. 7.1.3 .............................................................................................................9

I E. Allan Farnsworth, *Farnsworth on Contracts*, § 3.10 ...........................................13

## PRELIMINARY STATEMENT

Faced with motions that threatened the dismissal of his original, fatally-flawed Complaint, plaintiff has filed an Amended Complaint that suffers from the same, and additional, legal deficiencies requiring dismissal of this case.  Plaintiff has had more than his day in Court to try to state a claim for which relief could be granted.  Having had two chances, and with all doubts resolved in his favor, there is no basis on which this action can proceed.  Defendant Microsoft Corp. ("Microsoft") thus respectfully submits this brief in support of its motion under Fed. R. Civ. P. 12(b)(6) for an order dismissing the Amended Complaint in this action in its entirety for failure to state a claim for which relief can be granted.

As pointed out in Microsoft's original motion, and as evident in both the original and Amended Complaint, the plaintiff, appearing *pro se*, is a self-styled political activist who operates web sites criticizing, variously, officials of the State of North Carolina and the government of the People's Republic of China.  Defendant Microsoft, as well as co-defendants Google, Inc. ("Google") and Yahoo!, Inc. ("Yahoo"), each operate Internet search engine web sites that include paid advertising.  Plaintiff, by his own allegations is, at best, simply a disappointed advertiser whose proposed paid advertising for his web sites were not accepted by defendants to appear on their respective search engines.

In yet another blunderbuss Complaint that asserts a host of patently inapplicable legal theories, plaintiff seeks to impose liability upon Microsoft because of his unhappiness over the alleged rejection of his proposed online advertising.  Applying the most liberal reading of this Amended Complaint, plaintiff's renewed effort to characterize Microsoft's alleged commercial decisions as a violation of his Constitutional

rights or under various state laws and common law doctrines still fails to state any claim for relief as a matter of law.[1]

Microsoft, as a non-governmental entity that operates an Internet search engine, maintains the right to determine with whom it will do business and to establish policies and procedures governing its business decisions.  Indeed, as discussed below, similar First Amendment Constitutional claims by disappointed advertisers repeatedly have been rejected by the courts, including the Third Circuit.  *See Green v. America Online,* 318 F.3d 465, 471 (3d Cir. 2003).  Further, although the plaintiff appears to also claim that Microsoft breached a contract with the plaintiff, the alleged "contract" referenced by plaintiff is no more than an e-mail solicitation that does not even constitute an offer and thus no contract was ever in place to be breached.  Additional purported state law claims alleging that Microsoft engaged in fraud and deceptive business practices are entirely conclusory and do not plead requisite elements of these offenses.  Plaintiff's final claim, that Microsoft cannot discriminate under the doctrine of "public calling," is wholly inapplicable to Microsoft as the doctrine only governs innkeepers.  Each of plaintiff's theories of liability fail and the Amended Complaint should be dismissed in its entirety with prejudice.

---

[1] Plaintiff's original Complaint was filed on May 17, 2006.  Microsoft, as well as the other defendants Google, Yahoo, and AOL LLC ("AOL"), timely moved to dismiss that Complaint on July 24, 2006.  On August 1, 2006, plaintiff moved for an extension of time to respond to the motions to dismiss and to amend the Complaint.  Subsequently, plaintiff filed motions for a default judgment and motions to strike the motions to dismiss of AOL, Microsoft, and Yahoo as untimely filed, although the docket clearly indicated otherwise.  Defendants AOL, Microsoft, and Yahoo opposed these motions on August 21, 2006.  On September 12, 2006, plaintiff responded to this consolidated opposition, and then filed his Amended Complaint on September 21, 2006, which mooted these pending motions.  On September 19, plaintiff voluntarily dismissed all claims against AOL and any claims that the remaining defendants violated the Commerce Clause, the Federal Communications Act, and state or federal antitrust laws, all claims alleged in the original complaint.

## SUMMARY OF ARGUMENT

In sum, the various legal theories in the Amended Complaint must fail, as a matter of law, because:

1. Plaintiff failed to allege he was injured by Microsoft, *see* Section II;

2. Microsoft is a private party and has no duty to protect First Amendment Rights under the facts alleged, *see* Section III(A);

3. The First Amendment does not provide an absolute right to place advertisements in a venue of the advertiser's choosing, *see* Section III(B);

4. The scope of speech rights under the Delaware Constitution is the same as those granted by the Constitution of the United States, thus plaintiff has no greater protection under Delaware state law, *see* Section III(C);

5. Plaintiff never entered into a contract with Microsoft so the claim of breach of contract fails, *see* Section IV;

6. The allegations of fraud in the Amended Complaint do not identify any misrepresentation by Microsoft or detrimental reliance by the plaintiff and fail to provide the particularity for pleading fraud required by Fed. R. Civ. P. 9(b), *see* Section V;

7. Plaintiff fails to sufficiently to state a claim for "deceptive business practices" under Del. Code Ann. Tit. 6 § 2513(a) because there are no allegations that any activity took place in Delaware and the Consumer Fraud Act does not apply to activities regulated by the Federal Trade Commission, such as advertising on the Internet, *see* Section VI;

8. The doctrine of public calling only applies to those engaged in running a hotel or inn and is inapplicable to the allegations against Microsoft; *see* Section VII; and

9. The Communications Decency Act, 47 U.S.C. § 230(c)(2)(A), grants Microsoft's search engine, as an interactive computing service, immunity from all claims relating to its editorial decisions about content, including advertisements, *see* Section VIII.

No amount of deference to a *pro se* litigant and no amount of re-pleading can remedy the many legal deficiencies in the Amended Complaint. This is particularly true in this instance where the plaintiff already has amended his Complaint and added a host

of new legal theories in an attempt to cure the fatal problems with his previous
Complaint.  Therefore, this Amended Complaint should be dismissed with prejudice.[2]

## STATEMENT OF FACTS

The Amended Complaint fails to allege any affirmative action by Microsoft with
respect to plaintiff's advertisements.  Plaintiff merely alleges that after being accepted to
participate in the "U.S. pilot of MSN adCenter" he submitted an application for
permission to advertise his website "China is Evil" and "never received a response, a *de
facto* refusal to run my ad."  *See* Am. Compl. at Sec. III (page 19).  Plaintiff contends that
Microsoft's failure to respond to his alleged request to place the advertisement amounts
to (1) a violation of plaintiff's free speech rights under the United States and Delaware
Constitutions, *see* Am. Compl. at Sec. VI (pages 21-26, 32-33); (2) fraud, *see* Am.
Compl. at Sec. V (page 20); (3) breach of contract, *see* Am. Compl. at Sec. V (page 20);
(4) a deceptive business practice in violation of 6 *Del. C.* § 2513, *see* Am. Compl. at Sec.
V (page 20); and (5) unlawful discrimination because Microsoft is allegedly involved in
"public calling," *see* Am. Compl. at Sec. V (pages 20-21).

---

[2]  Third Circuit law is clear that complaints should be dismissed with prejudice when any efforts
to amend would be futile.  *In re NAHC Secs. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002)
(affirming district court's dismissal of claims without leave to amend); *see also McDowell v. Del.
State Police,* 88 F.3d 188, 189 (3d Cir. 1996) (internal citations omitted) (appellate court will
affirm a dismissal for failure to state a claim if "under the allegations of the *pro se* complaint,
which we hold to less stringent standards than formal pleadings drafted by lawyers, it appears
beyond doubt that the plaintiff can prove no set of facts in support of his claim which would
entitle him to relief.").  As demonstrated below, there are no facts the plaintiff could allege that
would state a claim for actionable conduct.

**ARGUMENT**

**I.     Legal Standard for Motions to Dismiss**

A motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted serves to test the sufficiency of the complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir. 1993). "While all well-pled allegations are accepted as true and reasonable inferences are drawn in the plaintiff's favor, the Court may dismiss a complaint where, under any set of facts which could be shown to be consistent with a complaint, the plaintiff is not entitled to relief." *Gomez v. Toledo*, 446 U.S. 635, 636 (1980); *Schrod v. Patterson*, 948 F.2d 1402, 1405 (3d Cir. 1991) (same); *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir. 1990) (same). For the following reasons, application of this standard demands dismissal of the Amended Complaint.

**II.     The Amended Complaint Fails To Allege
Plaintiff Was Directly Injured By Microsoft**

At the most basic level, the Amended Complaint must be dismissed as to Microsoft because it fails to satisfy the requirements of Article III of the U.S. Constitution that "plaintiffs must demonstrate that they have suffered an injury-in-fact." *See The Pitt News v. Fisher*, 215 F.3d 354, 359 (3d Cir. 2000). Here plaintiff simply alleges that he "never received a response" for his application to place an advertisement. These allegations of speculative harm are insufficient to demonstrate the necessary "concrete and particularized, actual or imminent, injury in fact" demanded by Article III. *See Hill v. Nassberg*, 130 Fed. Appx. 615, 616 (3d Cir. 2005) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)) (dismissing claims for failure to plead an injury when plaintiff, claiming a county tax assessment was unlawful, failed to plead that he

owned any real estate subject to the reassessment). For this fundamental pleading deficiency alone the Amended Complaint must be dismissed in its entirety.

**III.    The Amended Complaint Fails To State A Claim Under The First Amendment Or The Delaware Constitution For A Violation Of The Right To Free Speech**

      **A.    Microsoft Is A Private Party And Has No Duty To Protect Free Speech**

Plaintiff fails to comprehend that the First Amendment does not govern private companies in their business decisions or that the decision of an Internet company to accept or reject advertising is not subject to First Amendment review.[3] Applied to the states through the Fourteenth Amendment, it is beyond dispute that "the Constitutional guarantee of free speech is a guarantee only against abridgement by government." *Hudgens v. NLRB*, 424 U.S. 507, 513 (1976); *see also Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937 (1982) ("Our cases have accordingly insisted that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State."); *Blum v. Yaretsky,* 457 U.S. 991, 1004 (1982) (private action can only be considered state action when "there is a sufficiently close nexus between the State and the challenged action of [the private entity] so that the action of the latter may be fairly treated as that of the State itself.").

As a matter of law, none of the defendants here are state actors and for that basic reason plaintiff's First Amendment claims must be rejected. The determination of whether a party is a state actor required to protect the First Amendment rights of others is a pure question of law for the Court and is routinely decided on motions to dismiss. *See,*

---

[3] The First Amendment provides that "Congress shall make no law . . . abridging freedom of speech." U.S. Const. amend. I.

*e.g., Green v. America Online*, 318 F.3d 465, 471 (3d Cir. 2003).  In *Green* the Third

Circuit directly addressed the issue, critical to the sufficiency of the Amended Complaint

here, of whether Internet service providers are state actors for purposes of the First

Amendment.  The Court had no difficulty dismissing the Complaint for failure to state a

claim and rejecting the same allegations of state action by an Internet service provider,

AOL, relied upon by the plaintiff here.  The Court held:

> [C]laims that AOL's Community Guidelines violated [the] First
> Amendment right to free speech are meritless.  *AOL is a private, for profit
> company and is not subject to constitutional free speech guarantees. It is a
> fee-based Internet service provider that runs a proprietary, content-based
> online service.*  We are unpersuaded by [plaintiff's] contentions that AOL
> is transformed into a state actor because AOL provides a connection to the
> Internet on which government and taxpayer-funded websites are found,
> and because AOL opens its network to the public whenever an AOL
> member accesses the Internet and receives email or other messages from
> non-members of AOL.  *See Lloyd Corp. v. Tanner*, 407 U.S. 551, 569
> (1972) (private property does not lose its private character merely because
> the public is generally invited to use it for designated purposes).

*Green v. America Online,* 318 F.3d at 471(emphasis added); *see also Cyber Promotions,*

*Inc. v. America Online, Inc.*, 948 F. Supp. 436, 441-42 (E.D. Pa. 1996) (applying the

Third Circuit's "state actor" jurisprudence to determine that AOL, as an operator of

computer services, was not a state actor charged with protecting First Amendment rights).

        These holdings are consistent with the findings of other federal courts that have

addressed this issue.  Resoundingly, federal courts have reached the conclusion that

Internet-related private businesses are not state actors for purposes of the First

Amendment.  *See Howard v. America Online Inc.*, 208 F.3d 741, 754 (9th Cir. 2000)

(affirming dismissal of First Amendment claim against AOL over plaintiff's argument

that AOL is a "quasi-public utility" that "involv[es] a public trust"); *Noah v. AOL Time*

*Warner, Inc*., 261 F. Supp. 2d 532, 546 (E.D. Va. 2003) (dismissing First Amendment

claims because there was no evident basis that AOL is a state actor), *aff'd*, 2004 WL 602711 (4th Cir. 2004); *CompuServe Inc. v. Cyber Promotions, Inc.*, 962 F. Supp. 1015, 1025-26 (S.D. Ohio 1997) (dismissing First Amendment claim against Internet service provider as a matter of law due to absence of state action).[4]

In view of this well-established precedent, broadly holding that Internet service providers are not state actors charged with protection of First Amendment rights, state action certainly cannot be found in the far more narrow operation by Microsoft of an Internet search engine that is at issue here.[5]   Plaintiff's First Amendment claims, therefore, must be dismissed.

**B.      The First Amendment Does Not Provide An Absolute Right
To Place Advertisements In A Venue Of The Advertiser's Choosing**

Contrary to any implications by the plaintiff, *see* Am. Compl. at Sec. VI (page 21), the right to free speech does not guarantee an advertiser a particular vehicle for his or her message.  For example, the Supreme Court specifically held that broadcasters are not required to accept paid editorial advertisements.  *Columbia Broadcasting Sys. v.*

---

[4]  Even in the arena of Internet domain names -- where one company, Network Solutions, was granted a government-authorized monopoly -- courts consistently have held that there is no state action present for First Amendment purposes.  *See Thomas v. Network Solutions, Inc.*, 176 F.3d 500, 511 (D.C. Cir. 1999); *Island Online, Inc. v. Network Solutions, Inc.*, 119 F. Supp. 2d 289, 207 (E.D.N.Y. 2000); *Nat'l A-1 Adver., Inc. v. Network Solutions, Inc.*, 121 F. Supp. 2d 156, 169 (D.N.H. 2000).

[5] The cases cited by the plaintiff, *see* Am. Compl. at Sec VI (pages 21, 26), finding owners of private property responsible for protecting First Amendment rights, are inapposite because the principle in each of those cases that imposed that responsibility, government entwinement, is not applicable to Microsoft.  Government entwinement exists only when a private party "become[s] a substitute for a municipal government."  *Cable Investments, Inc. v. Woolley*, 867 F.2d 151, 62 (3d Cir. 1989) (rejecting claim that apartment complex owners violated plaintiff's First Amendment rights by refusing to permit plaintiff to offer cable television service to tenants because defendant's conduct was "not the conduct of the state or a municipality").  Both *Marsh v. Alabama*, 326 U.S. 501, 502 (1946), and *Asociacion de Trabajadores Agricolas de Puerto Rico v. Green Giant Co.*, 518 F.2d 130, 133 (3d Cir. 1975) dealt with the limited circumstance of a company owned and operated town and have no bearing on Microsoft as a private operator of an Internet search engine.

*Democratic Nat'l Committee*, 412 U.S. 94, 132 (1973) (upholding Federal Communications Commission decision allowing CBS to refuse to sell broadcast time for anti-war editorial advertisements). The Third Circuit also specifically has upheld the right of publishers to control the content of their publications. *See Avins v. Rutgers, State Univ. of New Jersey*, 385 F.2d 151 (3d Cir. 1967) (upholding the right of a law review to refuse to publish an article critical of a Supreme Court decision), *cert. denied*, 390 U.S. 920 (1968).

Federal courts around the country similarly have applied this principle. *See, e.g., Associates & Aldrich Co. v. Times Mirror Co.*, 440 F.2d 133, 136 (9th Cir. 1971) (the court found no precedent forcing it to "compel a private newspaper to publish advertisements without editorial control of their content merely because such advertisements are not legally obscene or unlawful"); *Tsau v. Nat'l Science Found.*, 2000 U.S. Dist. LEXIS 14580 (N.D. Ill. Sept. 29, 2000) (plaintiff had no First Amendment right to force defendants to publish his scientific work); *Morrow v. USA Today Newspaper.,* 1988 WL 52833 (S.D.N.Y. 1988) ("The First Amendment places no limit on private conduct, absent a showing of state action. A private newspaper's refusal to carry a classified advertisement manifests no element of state action, and is thus not prohibited under the First Amendment."); *Resident Participation of Denver, Inc. v. Love*, 322 F. Supp. 1100, 1101-05 (D. Colo. 1971) (newspaper's refusal to print an advertisement did not violate the First Amendment).[6] The rationale of these holdings clearly apply to plaintiff's baseless allegation that an Internet search engine must accept his paid

---

[6] Copies of all unreported decisions are annexed hereto in accordance with D. Del. L.R. 7.1.3(a)(G).

advertisements.   For this additional reason, the alleged determination not to accept plaintiff's advertisement does not result in a violation of the First Amendment.

Furthermore, the plaintiff's speech has not been suppressed, or even affected, by not being advertised on the search engine of his choice.  His views continue to be shared through his websites, regardless of whether or where his advertisements are placed.  *See, e.g., Cyber Promotions, Inc.* 948 F. Supp. at 443 (in dismissing claims of a First Amendment violation, the court noted that alternative mechanisms for advertising existed, including web sites, the United States mail, telemarketing, television, cable, newspapers, magazines, and passing out leaflets, as alternatives to e-mailing AOL customers).  The First Amendment simply is not an absolute guarantee for the speech venue of one's choosing.

### C.      Plaintiff's Rights To Free Speech Were Not Violated Under the Delaware Constitution

Plaintiff's attempt to rely on the free speech protections available under the Delaware Constitution, *see* Am. Compl. at Sec. V (page 20), is equally unavailing.  Like the majority of states, Delaware has determined that its Constitution does not provide free speech protection greater than the First Amendment.[7]  *See Gannett Co., Inc. v. State*, 571 A.2d 735, 741 n.9 (Del. 1990) (holding Del. Const. art. I, § 5 has the same scope as the federal First Amendment); *In re Opinion of the Justices,* 324 A.2d 211, 213 (Del. 1974)

---

[7] Delaware's Constitution is consistent with the majority of state courts which have determined that their state constitutions do not extend free speech beyond the First Amendment and that there is no right of access to privately-owned property for free speech purposes.  *See N.J. Coal. Against War in the Middle E. v. JMB Realty Corp.*, 650 A.2d 757, 769 (Del. 1994) (surveying state law on this issue); s*ee, e.g., Fiesta Mall Venture v. Mechan. Recall Comm.*, 159 Ariz. 371 (Ariz. Ct. App. 1989) (holding that state constitution should not be interpreted to permit free speech access to private property); *Cologne v. Westfarms Assocs.*, 192 Conn. 48 (1984) (same); *Citizens for Ethical Gov't v. Gwinnett Place Assoc.*, 260 Ga. 245 (1990) (same); *accord Hudgens v. NLRB*, 424 U.S. 507, 518 (1976) (limiting First Amendment-based right of access to private property).

(same); *Fuester v. Conrail*, 1994 Del. Super. LEXIS 472, at *4-5 (Del. Super. Ct. Sept. 16, 1994) (same).  Indeed, the 1988 case upon which plaintiff relies to suggest the existence of greater free speech rights under Delaware law than under federal law, *see* Am. Compl. at Sec. V (page 20), in fact only reserved judgment on this issue.  *See State v. Elliott*, 548 A.2d 28, 31 n. 5 (Del. 1988) ("This Court does not presently decide whether the Delaware Constitution provides equal or greater such leverage than the Federal Constitution.  Since, at a minimum, Delaware's protection must be equal to the Federal Constitution, this case decision pertains only to the Federal Constitution.").[8]

Given that the scope of speech rights under the Delaware Constitution is coextensive with the rights granted by the First Amendment and, as discussed above, courts, including the Third Circuit, repeatedly have rejected the notion that the First Amendment obligates Internet service providers to protect private speech, plaintiff's state Constitutional claim must be dismissed.

Furthermore, applying the test adopted by the Delaware Supreme Court to determine whether an entity is a state actor obligated to protect free speech under

---

[8] The cases cited by plaintiff, *see* Am. Compl. at Sec VI (page 32), from other jurisdictions holding that shopping malls and other public spaces serve "public functions" and must cater to free speech concerns are inapposite because the decisions were based upon state Constitutional provisions specifically found to provide greater free speech protection than the federal First Amendment.  *See, e.g., Bock v. Westminster Mall Co.*, 819 P.2d 55, 59-60 (Colo. 1991) (more than 100 years of case history holding that its state constitution "provides greater protection of free speech than does the First Amendment"); *Pruneyard Shopping Ctr. v. Robins*, 447 U.S. 74, 81 (1980) (California's constitution confers "more expansive" individual liberties than those of the First Amendment).  In contrast, as noted above the Delaware Constitution's free speech provisions do not provide greater protections that the First Amendment.

Plaintiff also incorrectly quotes *Elliot* to assert that Delaware courts consider a shopping center to be a public forum.  Am. Compl. Sec. V (page 20).  In fact, *Elliot* does not reference shopping centers and the quotation relied on by plaintiff -- "such landowners should not be entitled to prevent individuals from picketing on the landowner's private property" -- is only a review of claimants' arguments, which were ultimately rejected, not the court's holding.  *Elliot*, 548 A.2d at 31 n. 4.

Delaware's Constitution, the Third Circuit specifically held that Internet service providers, like AOL and Microsoft, have no duty to protect speech rights under the New Jersey Constitution.  *See Green*, 318 F.3d at 471 (applying *State v. Schmid,* 423 A.2d 615 (N.J. 1980)), to determine that "AOL's service is not sufficiently 'devoted to public use'" to implicate free speech rights).[9]  Thus, even without regard to the First Amendment jurisprudence of the Third Circuit, the application of state law demands dismissal of the Amended Complaint.

### IV.    Plaintiff Cannot Properly Allege A Breach Of Contract Claim Because No Contract Existed With Microsoft

Plaintiff's assertion that he has a basis for a breach of contract claim against Microsoft fails for the fundamental reason that as a matter of law no contract existed between him and Microsoft to be breached.  "To sustain a claim for breach of contract, the plaintiff must first establish the existence of a valid contract.  A valid contract requires (1) an offer, (2) acceptance, and (3) consideration." *Frazier v. Am. Airlines, Inc.*, 434 F. Supp. 2d 279, 286 (D. Del. 2006) (citing *Salisbury v. Credit Serv., Inc.*, 39 Del. 377, 199 A. 674, 681 (Del. Super. 1937)).  Plaintiff, predictably, has not pointed to allegations supporting any of the required elements nor can he.

The purported breach of contract claim hinges on an e-mail invitation received from Microsoft regarding a pilot program to test its new program, MSN adCenter.  *See* Am. Compl. at Sec. III (pages 18-19), referencing "Appendix IV, Original Complaint" in which the e-mail is reproduced in full.  At most, however, this e-mail may only be characterized as inviting potential advertisers to make an offer, not an offer itself.

---

[9] The Delaware Supreme Court adopted the *Schmid* analysis to determine whether private property is sufficiently dedicated to private use "such that it is subject to such expressional obligations" in *State v. Elliott*, 548 A.2d 28, 33 (Del. 1988).

Indeed, the plaintiff, concedes that Microsoft "never offered to run any of my ads." *See* Am. Compl. at Sec. III (page 19).

It is black letter contract law that "proposals made to the public through advertisements, posters, circulars, and the like . . . are generally held not to be offers." I E. Allan Farnsworth, *Farnsworth on Contracts*, § 3.10 (3d ed. 2004); *see Salisbury*, 199 A. at 682 (stating that when the purported offer  "is in the form of a general advertisement in a newspaper, or a circular, couched in general language and proper to be sent to all persons interested in a particular trade or business, . . . the construction that it was merely intended for an invitation to make an offer has perhaps been applied in most of the reported cases considering the question."). Microsoft's e-mail to plaintiff was merely an advertisement or promotion of its pilot for the adCenter program, and on its face cannot constitute an offer to contract with plaintiff. Further, the "Pilot Signup" included in the e-mail instructs users to "complete the form below to *apply* to participate . . . We are collecting the information below *to help us with the selection process. You will be invited via email if you are selected to participate.*" Pl. App. IV (emphasis added) (relevant e-mail attached hereto as Exhibit 1).[10] Therefore, Microsoft's e-mail can only be interpreted at most as an invitation for an offer. Because plaintiff received no reply from Microsoft, no contract was formed.

Even if the e-mail could be construed as an offer, there was no contract between plaintiff and Microsoft because there was an absence of sufficient material terms included in the e-mail. In order for an agreement to be binding, it must contain sufficiently

---

[10] Analyzing a document attached or referred to in a Complaint does not convert a motion to dismiss into a motion for summary judgment. *See, e.g., Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

defined material terms. *Frazier*, 434 F. Supp. 2d 288 (citing *Channel Home Ctrs. v. Grossman*, 795 F.2d 291 (3d Cir. 1986), *Hindes v. Wilmington Poetry Soc'y*, 138 A.2d 501 (Del. Ch. 1958)). The e-mail from Microsoft, however, merely describes the "MSN adCenter U.S. Pilot" and solicits general information about the person completing the "Pilot Signup" form. *See* Exh. 1. While the e-mail does mention some price terms, it does not include an overall price or duration of the program, nor does it include any terms of use. *Id.* A price term, alone, in any event, is insufficient to support a conclusion that a contract was formed. *See Int'l Equity Capital Growth Fund, L.P., v. Clegg*, 1997 WL 208955, at *9 (Del. Ch. Apr. 22, 1997) ("Plaintiff alleges Diamond has announced its intention to make such an acquisition at a particular price. Price is not the only material term in such a contract, and consequently no contractual obligation has been created."). Thus, the e-mail and "Pilot Signup" form do not contain sufficiently defined material terms to constitute a binding agreement between Microsoft and the plaintiff. Without such a contract the allegations in the Amended Complaint fail and must be dismissed.

## V.    The Amended Complaint Fails To Plead The Most Basic Elements Of A Fraud Claim And Fails To Plead Fraud With The Requisite Particularity

Plaintiff's assertions that Microsoft "used fraud" to induce him to advertise with MSN adCenter do not remotely state a claim for common law fraud. "The general elements of common law fraud under Delaware law are: (1) defendant's false representation, usually of fact, (2) made either with knowledge or belief or with reckless indifference to its falsity, (3) with an intent to induce the plaintiff to act or refrain from acting, (4) the plaintiff's action or inaction resulted from a reasonable reliance on the representation, and (5) reliance damaged the defendant." *Brown v. Robb*, 583 A.2d 949, 953 (Del. 1990), *cert. denied* 499 U.S. 953 (1991); *Metro Commc'n Corp. BVI v.*

*Advanced Mobilecomm Techs. Inc.*, 854 A.2d 121, 143 (Del. Ch. 2004). Fed. R. Civ. P. 9(b) requires that any complaint alleging fraud must be pled with particularity. Plaintiffs must accompany their legal theory with factual allegations that make their theoretically viable claim plausible. *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1418 (3d Cir. 1997).[11]

Here, the plaintiff has not even pled each of the basic elements of fraud, let alone pled them with the particularity required by Rule 9(b). The Amended Complaint simply asserts that "Microsoft made it known that it wanted potential advertisers to advertise on its search engine," that he applied and was accepted for Microsoft's Pilot Ad program after which he submitted his "China Ad" and he never received a response to this submission. *See* Am. Compl. at Sec. III (page 18-19). Plaintiff contends that Microsoft "refused to run my ads by ignoring me," and that Microsoft did not give him a reason for not running the ads. *Id.* This description of alleged events does not constitute the particularity necessary to state a cognizable claim of fraud as the plaintiff never even articulates Microsoft's alleged false representation. There are no allegations that Microsoft falsely promised to run his "China Ad," or any other advertisement, or acted with the requisite scienter, intending to induce plaintiff to act in any certain manner. Certainly, the plaintiff does not allege that he relied upon any of Microsoft's actions to his detriment. There is no discussion of any sort of damage to the plaintiff-- either that he

---

[11] The same particularity requirements for pleading fraud exist under Delaware state law. Superior Court Civil Rule 9(b). Delaware Rules of Civil Procedure "are patterned after the Federal Rules of Civil Procedure." *Plummer v. Sherman*, 861 A.2d 1238, 1242 (Del. 2004); *Emerald Partners v. Berlin*, 811 A.2d 788, 791 (Del. 2001); *Hoffman v. Cohen*, 538 A.2d 1096, 1097 (Del. 1988). The interpretation of federal rules by federal courts is persuasive in construing Delaware rules of procedure. *Plummer*, 861 A.2d at 1242; *Emerald Partners*, 811 A.2d at 791; *Hoffman*, 538 A.2d at 1097.

suffered monetary loss or refrained from seeking to place his advertisements elsewhere. To the contrary, the Complaint is replete with examples of plaintiff's attempts to advertise with other entities.

In support of his fraud claim, plaintiff filed a *Second Affidavit Re Microsoft's Fraud* as Exhibit A to his Amended Complaint.[12]  The exhibit purports to be Microsoft's content guidelines for advertising.  According to the exhibit, Microsoft will not accept advertisements containing, among other things, sexually explicit adult content, libelous statements, hate speech, or profanity.  With this affidavit the plaintiff filed numerous exhibits showing various websites located by using Microsoft's search engine, Windows Live Search, that he alleges contain content that violate the guidelines.  These exhibits do nothing, however, to overcome the Amended Complaint's failure to allege a fraudulent representation, intent on the part of Microsoft, damages suffered by the plaintiff, or to otherwise specify any facts that support a fraud claim.

Furthermore, accepting the plaintiff's implication that Microsoft content guidelines have not been complied with at times, any failure to do so, as alleged in the affidavit and exhibits, does not establish an inference of fraud with respect to plaintiff. Far from indicating fraudulent conduct, the exhibits filed by plaintiff demonstrate that Microsoft puts all potential advertisers on notice that it "reserves the right to not accept advertising content at its discretion."  Pl. Second Aff. Exh. A.  There could be any

---

[12] This affidavit was filed on September 28, 2006, seven days after the Amended Complaint was filed.  Microsoft objects to the review of this affidavit and its exhibits as improper documents upon which to assess this motion to dismiss because under Rule 12(b)(6) "a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record."  *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

number of reasons, none of which is based on fraud, for Microsoft not to follow the guidelines in a particular situation.

**VI.    The Amended Complaint Does Not Properly Allege that Microsoft Engaged in Deceptive Business Practices.**

Plaintiff also claims the defendants engaged in "deceptive business practices" in violation of Delaware law.[13]    *See* Am. Compl. at Sec. V (page 20).    Delaware's Consumer Fraud Act ("CFA") makes it an unlawful practice to employ

> deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression, or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby.

6 *Del. C.* § 2513(a).  Plaintiff cannot state a claim under this statutory provision.

In order to state a claim under the CFA, the conduct at issue must have taken place in Delaware.  *See, e.g., Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 901 A.2d 106, 117 (Del. 2006) ("The statutory claim [under the Delaware Consumer Fraud Act] fails, however, because it requires that the unfair practice occur in part or wholly within this State.  The Amended Complaint does not allege that any of the conduct at issue took place in Delaware."); *Goodrich v. E.F. Hutton Group, Inc.*, 542 A.2d 1200, 1202 (Del. Ch. 1988) (dismissing claim "[b]ecause no transaction occurred in Delaware").  Plaintiff,

---

[13] In the Amended Complaint the plaintiff actually cites to "Title 6, Chapter 2517 of the Delaware Stat[ut]es."  *See* Am. Compl. at Sec. V (page 20).  This section of the Consumer Fraud Act refers to the Attorney General's investigative demands and the issuance of protective orders.  Microsoft assumes that plaintiff intended to invoke Section 2513.  To the extent that plaintiff was invoking the Delaware Deceptive Trade Practices Act, 6 *Del. C.* §§ 2532-2533, it is clearly inapplicable to his claims as there is no private right of action under this provision.  *See, e.g., Don's Hydraulics, Inc. v. Colony Ins. Co.*, 417 F. Supp. 2d 601, 612 (D. Del. 2006) (the Deceptive Trade Practices Act "is not intended to redress wrongs between a business and its customers.") (internal citations omitted).

a resident of Florida, *see* Am. Compl. (page 35), has not alleged any facts which, if true, demonstrate any activity connected to Delaware, let alone fraudulent conduct.

Moreover, the Consumer Fraud Act explicitly does not apply "[t]o any advertisement or merchandising practice which is subject to and complies with the rules and regulations, of the statutes administered by the Federal Trade Commission." 6 *Del. C.* § 2513(b). The Federal Trade Commission regulates ("FTC") advertising practices, including those on the Internet. *See* 15 U.S.C. § 41 *et seq.*[14] Because the advertising practices of Microsoft's Windows Live Search are regulated by the FTC Act, the Delaware CFA is inapplicable to the plaintiff's claims.

## VII. The Doctrine Of Public Calling Applies Only To Innkeepers And Does Not Regulate Microsoft's Business Decisions

Microsoft's search engine is not bound by the "public calling" doctrine, as plaintiff also claims. *See* Am. Compl at Sec. V (pages 20-21). The common law rule of public calling required innkeepers "to receive all travelers who conducted themselves with propriety and had the ability to pay for a meal and lodging." *State v. Brown*, 195 A.2d 379, 382 (Del. 1963). As the *Brown* court noted, the rule applied solely to the narrow category of inns and hotels, and "the owner of a restaurant or other place of public refreshment, amusement, or entertainment was free to select patrons upon any basis deemed satisfactory to him." *Id.* at 382. Thus, not only is this doctrine inapplicable, under this precedent, Microsoft is well within its rights to reject plaintiff's advertisement "upon any basis" and this claim also must be dismissed.

---

[14] *See generally* Federal Trade Comm'n, *Advertising and Marketing on the Internet: Rules of the Road* (2000), http://www.ftc.gov/bcp/conline/pubs/buspubs/ruleroad.htm.

**VIII.  The Communications Decency Act Grants Microsoft
Immunity For Any Decisions To Screen Content**

Finally, none of these claims against Microsoft withstand the immunity from suit granted by federal law for any screening or censoring of third party content by interactive computer services, like Microsoft's search engine.  This immunity bars all of plaintiff's claims because they each stem from Microsoft's alleged editorial control of the advertisements on its search engine.  Section 230 of the Communications Decency Act ("CDA") grants this immunity, stating:

> No provider … of an interactive computer service shall be held liable on account of … any action taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing or otherwise objectionable, whether or not such material is constitutionally protected.

47 U.S.C. § 230(c)(2)(A).  The Third Circuit has interpreted Section 230 to prohibit "lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions – such as deciding whether to publish, withdraw, postpone, or alter content.'"  *Green v. America Online*, 318 F.3d 465, 471 (3d Cir. 2003) (internal citations omitted).  In *Green*, the Third Circuit ruled that the plaintiff could not "hold AOL liable for decisions relating to the monitoring, screening, and deletion of content from its network" because "Section 230 specifically proscribes liability in such circumstances."  *Id.* at 471 (internal citations omitted).  Other Circuits similarly have applied Section 230 to grant immunity to interactive computer service providers for screening content and other editorial decisions.  *See, e.g., Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 n.3 (11th Cir. 2006) ("The language of section 230(c)(2) is clearly inconsistent with state law that makes interactive service providers liable based on their efforts to screen content.");  *Ben Ezra, Weinstein & Co. v. America Online, Inc.,* 206 F.3d 980, 986 (10th Cir. 2000) ("Congress clearly enacted § 230 to forbid the imposition of

publisher liability on a service provider for the exercise of its editorial and self-regulatory functions.").

Under this precedent, Section 230 grants immunity to Microsoft for a decision to screen content, including decisions as to which advertisements to place on its search engine. Microsoft's search engine plainly falls within the broad statutory definition of "interactive computer service," which is "any information service, system or access software provider that provides or enables computer access to by multiple users to a computer server." 47 U.S.C. § 230(f)(2). Courts routinely find that search engines are interactive computer services. *See, e.g.*, *Parker v. Google Inc.*, 422 F. Supp. 2d 492, 501 (E.D. Pa. 2006) (finding that Google's search engine was an interactive computer service and protected by 47 U.S.C. § 230); *Novak v. Overture Servs., Inc.*, 309 F. Supp. 2d 446, 452-53 (E.D.N.Y. 2004) (same). None of plaintiff's claims relating to Microsoft's alleged editorial decisions about his advertisements survive the statutory bar provided by the Communications Decency Act.

## CONCLUSION

Each of plaintiff's claims for relief are wholly without merit. Without even alleging a direct injury by Microsoft, plaintiff attempts to hold it liable for a host of federal and state Constitutional and statutory violations which fail as a matter of law. As a private, for-profit Internet service provider Microsoft is not responsible under the United States or Delaware Constitutions for protecting the plaintiff's right to speak freely. Plaintiff's additional claims of breach of contract, fraud, deceptive business practices, and public calling are equally invalid.

Although plaintiff is acting *pro se*, and his Amended Complaint therefore is to be construed liberally, his legal theories are so flawed that even expert lawyering cannot

rescue them.  There is simply no cause of action available to a disgruntled advertiser whose advertising has been rejected under the circumstances alleged by plaintiff.  For the foregoing reasons, and the reasons set forth by defendants Google and Yahoo in their respective opening briefs, defendant Microsoft respectfully requests that the Court dismiss the Amended Complaint in its entirety with prejudice.

Dated: October 16, 2006                              **DUANE MORRIS LLP**


                                                     /s/ Daniel V. Folt
                                                     Daniel V. Folt (Del. Bar No. 3143)
                                                     Gary W. Lipkin (Del. Bar No. 4044)
                                                     Matt Neiderman (Del. Bar No. 4018)
                                                     1100 North Market Street
                                                     Suite 1200
                                                     Wilmington, DE 19801-1246
                                                     (302) 657-4900

                                                     *Attorneys for Defendant Microsoft*

*Of Counsel*:
**PROSKAUER ROSE LLP**
Christopher Wolf
Stephen D. Solomon
Rachel Faith Glickman
1001 Pennsylvania Avenue, N.W.
Suite 400 South
Washington, D.C. 20004-2533

## <u>CERTIFICATE OF SERVICE</u>

I, Daniel V. Folt, do hereby certify that on October 16, 2006, I caused copies of the foregoing document to be served on the following parties in the manner indicated below:

Via Federal Express (signature required):

Christopher Langdon
1835 Edwin Blvd.
Winter Park, FL 32789

Via e-filing:

Kurt Michael Heyman, Esq.
Proctor Heyman LLP
1116 West Street
Wilmington, DE 19801

<u>/s/ Daniel V. Folt (Del. Bar No. 3143)</u>

# EXHIBIT 1

**Subj:** **Sign up for the MSN adCenter U.S. Pilot**
**Date:** 4/4/2006 2:08:38 P.M. Eastern Standard Time
**From:** msnactea@email.microsoft.com
**To:** qiology@aol.com

 adCenter

Dear Christopher,

We're excited to let you know that you have been chosen to participate in the U.S. pilot of MSN® adCenter. Getting started early on MSN adCenter will provide you with many opportunities. You'll learn how to use audience intelligence to connect with search users through advanced targeting options that will help increase your ROI.

You are also invited to join a complimentary initial campaign set-up service called MSN adCenter QuickLaunch.* With this service, a Media Specialist will help you migrate and optimize your current P4P campaign, get you set up in the tool, and educate you on how to best manage your campaign performance in adCenter.

We encourage you to take advantage of this offering by signing up here.

If you prefer to start your campaign immediately, go to:
**https://adcenter.msn.com/AuthorizeUser.aspx.**

You will need to use qiology@aol.com to sign up.

As this is a pilot program we need and want your input so that we can make adCenter even better. Please feel free to provide feedback and suggestions to our adCenter Support Team through the link below.

We look forward to working with you.

Sincerely,

The MSN adCenter Team

To learn more about QuickLaunch, go to the QuickLaunch program page.

Share the benefits of adCenter - refer your friends and colleagues to the pilot today.

Please contact the adCenter Support Team if you encounter any trouble signing up, or would like to provide feedback.

*For a limited time, this service is offered free of charge.

This invitation is nontransferable and there is only one sign-up per invitation. In addition, there will be a 5¢ minimum CPC on keywords and a one-time $5 administrative sign up fee. During the U.S. pilot, MSN adCenter will be delivering text-based advertisements on up to 25 percent of MSN Search traffic.

View the system requirements for adCenter.

© 2006 Microsoft Corporation. All rights reserved. Microsoft and MSN are registered trademarks of Microsoft Corporation in the United States and/or other countries.

Wednesday, April 05, 2006 America Online: Qiology

# Pilot Signup

## Thanks for your interest in the US Pilot of MSN adCenter!

Please complete the form below to apply to participate or if you would like to stay informed about the program. We are collecting the information to help us with the selection process. You will be invited via email if you are selected to participate.

Find out more about the US adCenter pilot

### adCenter Pilot Signup Form
* = Required

### System Information

**Which Web browser do you use? ***

[ Microsoft Internet Explorer  ▼ ]

### Contact Information

**First Name ***

[ Chris ]

**Last Name ***

[ Langdon ]

**Your Job Title ***

[ Small Business Owner        ▼ ]

**Phone ***

[ 407-647-7539 ]

**E-mail ***

[ qiology@aol.com ]

**Company Name ***

[ Self-employed ]

**Street Address**

[ 1835 Edwin Blvd. ]

[ ]

[ ]

**City**

[ Winter Park ]

**State**

[ Florida ]

**Postal Code**

[ 32789 ]

**Country ***

[ United States    ▼ ]

### Company Information

**URL ***

[ www.chinaisevil.com ]

**Company Type ***

[ Advertiser                          ▼ ]

**Which category best describes the Web content you want your keywords to drive to? ***

[ News        ▼ ]

**What other countries/regions would you be interested in targeting with paid search advertising? ***

| | | | |
|---|---|---|---|
| ☐ Australia | ☐ France | ☐ Latin America | ☐ South Africa |
| ☐ Austria | ☐ Germany | ☐ Malaysia | ☐ Spain |
| ☐ Belgium | ☐ Hong Kong SAR | ☐ Mexico | ☐ Sweden |
| ☐ Brazil | ☐ India | ☐ Netherlands | ☐ Switzerland |
| ☑ Canada | ☐ Indonesia | ☐ New Zealand | ☐ Taiwan |
| ☐ China | ☐ Ireland | ☐ Norway | ☐ Thailand |

☐ Denmark          ☐ Italy          ☐ Phillipines          ☐ Turkey
☐ Finland          ☐ Japan          ☐ Singapore          ☐ United Kingdom

**Is your target audience limited to a specific region within your country?**
| No |

**How many years of P4P advertising experience do you have?** *
| Less than one year ▼ |

**Where are you currently buying search advertising?**
☐ Google
☐ Overture (Yahoo)
☐ FindWhat
☐ Kanoodle
☐ Other
☑ I am not currently buying search advertising.

**How much is your total search budget per month (USD)?**
| $0 - $499 ▼ |

**How many keywords do you currently manage?** *
| 0 - 99 ▼ |

**Are you currently buying search advertising on a local commerce site (Yellow Book, Citysearch.com, local newspaper)? If so, please specify**
| |

**Additional Information**

**How did you hear about MSN adCenter?**
| MSN Advertising Web site ▼ |

**If a source code was included on the communication you saw, please input it here**
| msnactea@email.micrisoft.com |

**Comments**
| |

**Are you interested in applying to participate in the U.S. Pilot of MSN adCenter?**
| Yes ▼ |

☐ I would like to receive updates on MSN adCenter information

| Submit |