IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

CHRISTOPHER LANGDON,                   :
                                       :
                    Plaintiff,         :
                                       :
        v.                             :        C.A. No. 06-319 (JJF)
                                       :
GOOGLE INC., d/b/a DELAWARE GOOGLE,    :
INC., YAHOO! INC., and MICROSOFT       :
CORPORATION,                           :
                                       :
                    Defendants.        :

**REPLY BRIEF**
**IN FURTHER SUPPORT OF GOOGLE INC.'S**
**MOTION TO DISMISS THE AMENDED COMPLAINT**

PROCTOR HEYMAN LLP
Kurt M. Heyman (# 3054)
Email:  kheyman@proctorheyman.com
Patricia L. Enerio (# 3728)
Email:  penerio@proctorheyman.com
1116 West Street
Wilmington, DE 19801
(302) 472-7300
Attorneys for Defendant Google Inc.

OF COUNSEL:

WILSON SONSINI GOODRICH & ROSATI PC
David H. Kramer
Colleen Bal
Bart E. Volkmer
650 Page Mill Road
Palo Alto, CA  94304
(650) 493-9300

Tonia Ouellette Klausner
Emily Shepard Smith
12 East 49th Street, 30th Floor
New York, NY 10017
(212) 999-5800

Dated: December 22, 2006

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................1

ARGUMENT .............................................................................................................1

I.   PLAINTIFF HAS NOT AND CANNOT OVERCOME GOOGLE'S FIRST
     AMENDMENT AND 230(c)(2) PROTECTIONS ...............................................1

II.  THE AMENDED COMPLAINT FAILS TO STATE A CLAIM ...........................3

     A.   Plaintiff Cannot State a Claim for Violation of the First Amendment ............3

     B.   Plaintiff Cannot State a Claim for Violation of the Delaware Constitution ...................6

     C.   Plaintiff Cannot State a Claim for Fraud, Deceptive Trade Practices, Breach of Contract
          or Discrimination by One Engaged in a Public Calling....................................6

III. PLAINTIFF MAY NOT ENGAGE IN DISCOVERY WHERE HE HAS FAILED TO
     STATE A CLAIM........................................................................................8

CONCLUSION.........................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Blumenthal v. Drudge*, 992 F. Supp. 44 (D.D.C. 1998)....................................................................3

*Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288 (2001)............................5

*Cable Invs., Inc. v. Woolley*, 867 F.2d 151 (3d Cir. 1989) ..............................................................5

*Consol. Edison Co. of N.Y. Inc. v. Pub. Serv. Comm'n*, 447 U.S. 530 (1980) ...............................3

*Doug Grant v. Greate Bay Casino Corp.*, 232 F.3d 173 (3d Cir. 2000) ..........................................4

*Fiat Motors of N. Am. v. Mayor and Council of Wilmington*, 619 F. Supp. 29
    (D. Del. 1985) ............................................................................................................................6

*Figueroa v. U.S. Postal Serv.*, 422 F. Supp. 2d 866 (N.D. Ohio, 2006)..........................................2

*Gannett Co. v. State*, 571 A.2d 735 (Del. 1989) ..............................................................................6

*Green v. Am. Online (AOL)*, 318 F.3d 465 (3d Cir. 2003) ......................................................3, 5-6

*Hudgens v. N.L.R.B.*, 424 U.S. 507 (1976) ...................................................................................4-5

*Jones v. Capital Cities/ABC Inc.*, 168 F.R.D. 477 (S.D.N.Y. 1996) ...............................................9

*Lee v. Minner*, 369 F. Supp. 2d 527 (D. Del. 2005), *aff'd*, 458 F.3d 194
    (3d Cir. 2006)..............................................................................................................................6

*Leonard F. v. Israel Discount Bank of New York*, 199 F.3d 99 (2d Cir. 1999) ...............................9

*Lloyd Corp. v. Tanner*, 407 U.S. 551 (1972) ...............................................................................4-5

*Marsh v. Alabama*, 326 U.S. 501 (1946) .........................................................................................5

*McLaughlin v. Copeland*, 455 F. Supp. 749 (D. Del. 1978), *aff'd*, 595 F.2d 1213
    (3d Cir. 1979)...........................................................................................................................8-9

*Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902 (3d Cir. 1997) ....................................................7

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192 (3d Cir. 1993) ...........7

*Radich v. Goode*, 886 F.2d 1391 (3d Cir. 1989)..............................................................................5

*Rossman v. Fleet Bank (R.I.) Nat'l Ass'n*, 280 F.3d 384 (3d Cir. 2002) ........................................7

*Satellite Fin. Planning Corp. v. First Nat'l Bank of Wilmington*, 643 F. Supp. 449
    (D. Del. 1986) ........................................................................................................9

*Scognamillo v. Credit Suisse First Boston LLC*, 2005 WL 2045807
    (N.D. Cal. Aug. 25, 2005).......................................................................................2

*State v. Brown*, 195 A.2d 379 (Del. 1963)......................................................................8

*State v. Elliott*, 548 A.2d 28 (Del. Super. 1988) ...........................................................6

*Tillman v. Pepsi Bottling Group, Inc.*, 2005 WL 2127820 (D. Del. Aug. 20, 2005).....................2

*Valentino v. Cont'l Cas. Co.*, 2000 WL 33341979 (W.D. Pa. June 29, 2000) ...............................2

*Williams v. Potter*, 384 F. Supp. 2d 730 (D. Del. 2005)....................................................7

## STATUTES

47 U.S.C. § 230(c) *et seq.* ............................................................................... 1, 2-3

## RULES

Fed. R. Civ. P. 8................................................................................................8

## MISCELLANEOUS

141 Cong. Rec. H8460 (daily ed. Aug. 4, 1995) ...........................................................3

**INTRODUCTION**

In its Opening Brief in Support of its Motion to Dismiss the Amended Complaint ("Opening Brief" or "Op. Br.") (D.I. 53), Google Inc. ("Google") detailed why Plaintiff Christopher Langdon's Amended Complaint is subject to dismissal. As Google explained, the claims, to the extent they can be discerned, are barred by Google's First Amendment protections as well as by 47 U.S.C. § 230(c), which immunizes Google for exercising editorial control over content accessible through its service. In addition, Google highlighted deficiencies in the Amended Complaint that demonstrate Plaintiff has failed to state a claim upon which relief can be granted.

Plaintiff's "Response to the Defendants' Motions to Dismiss" ("Response") (D.I. 61) does nothing to rebut Google's arguments. Indeed, for the most part, Plaintiff does not even attempt to respond to them. What little he has provided is a rehash of his allegations, together with legal analysis that is badly misguided to the extent it is even coherent.

Plaintiff has already amended his complaint once. His factual allegations are clear but patently deficient, and no further leave to amend is warranted. For the reasons set forth in Google's Opening Brief and elaborated on herein, the Amended Complaint should be dismissed with prejudice.

**ARGUMENT**

**I.    PLAINTIFF HAS NOT AND CANNOT OVERCOME GOOGLE'S FIRST AMENDMENT AND 230(C)(2) PROTECTIONS**

In Google's Opening Brief, it argued that Plaintiff could not assert claims based upon Google's refusal to carry his advertisements or its supposed removal of Plaintiff's site from its search results, because such conduct falls squarely within the protections of the First Amendment to the United States Constitution. *See* Op. Br. at 11-13. Plaintiff's response was to simply ignore the argument altogether. His failure to meet Google's argument is a concession of its

1

validity. *See, e.g., Tillman v. Pepsi Bottling Group, Inc.*, 2005 WL 2127820, at *1, n.1 (D. Del. Aug. 20, 2005) (granting motion to dismiss a claim "as it is unopposed") (attached hereto as Exhibit A); *Figueroa v. U.S. Postal Serv.*, 422 F. Supp. 2d 866, 879 (N.D. Ohio 2006) (deeming failure to respond to defendant's arguments to be a concession of failure to state a claim); *Valentino v. Cont'l Cas. Co.*, 2000 WL 33341979, at *5 (W.D. Pa. June 29, 2000) (observing that plaintiff "offer[ed] no rebuttal" to defendant's argument on motion to dismiss and that plaintiff also did not "make any attempt to distinguish the many cases cited" and stating, "I view [plaintiff's] failure to respond to [defendant's] argument in this regard to be a concession that the claim must be dismissed.") (attached hereto as Exhibit B); *Scognamillo v. Credit Suisse First Boston LLC*, 2005 WL 2045807, at *9 (N.D. Cal. Aug. 25, 2005) ("The Court construes Plaintiffs' failure to respond, either in their papers or at oral argument, as a concession, and the Court therefore grants the motion to dismiss this claim against [defendants] with prejudice.") (attached hereto as Exhibit C).    As Google explained in its Opening Brief at pages 11-13, (D.I. 53), Plaintiff's claims based on Google's determinations about which advertisements and search results it will and will not display cannot stand in the face of the First Amendment.

Google also argued in its Opening Brief that Plaintiff's claims were barred by 47 U.S.C. § 230(c)(2), which safeguards an online service provider's editorial control over content accessible through its service.[1]    *See* Op. Br. at 13-15 (D.I. 53).    In his Response, Plaintiff argues

---

[1]        Under Section 230(c)(2):

> No provider ... of an interactive computer service shall be held liable on account of ... any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing or otherwise objectionable, whether or not such material is constitutionally protected.

47 U.S.C. § 230(c)(2).

that Section 230(c)(2) does not bar his claims because his websites were not found by Google to be "obscene" or "harassing." But Plaintiff's argument badly misses the mark. Section 230(c)(2) is not so limited in its application, and Plaintiff cites no authority for such a reading.

On its face, Section 230(c)(2) bars any claim based upon a provider refusing to carry or restricting access to any content the provider deems "objectionable," whether or not the content is also obscene or harassing. 47 U.S.C. § 230(c)(2). Not surprisingly, that is how courts have interpreted it. *See, e.g.*, *Green v. Am. Online (AOL)*, 318 F.3d 465, 472 (3d Cir. 2003) (immunity extended to blocking spam and objectionable news groups); *Blumenthal v. Drudge*, 992 F. Supp. 44, 52, n.13 (D.D.C. 1998) (content that is "otherwise objectionable" includes content that is simply defamatory, regardless of whether it is obscene or violent).[2]

Congress has acted to bar the imposition of liability upon service providers for declining to provide access to content they deem objectionable. Because Plaintiff seeks to impose such liability on Google through his claims for violation of his free speech rights, breach of contract, fraud, deceptive trade practices, and discrimination by one engaged in a public calling, the claims fail as a matter of law.

## II.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM

### A.    Plaintiff Cannot State a Claim for Violation of the First Amendment

---

[2]    The complete discretion that the statute affords to service providers to determine what is objectionable is no accident; it was intended to ensure that the statute was constitutional by removing the government from the decision-making process. 141 Cong. Rec. H8460 (daily ed. Aug. 4, 1995) (statement of Rep. Wyden) (co-author of legislation, distinguishing his version from Senate's version on grounds that Senate's would involve the federal government and therefore require "vast sums of money trying to define elusive terms that are going to lead to a flood of legal challenges"); *id.* (statement of Rep. Cox) (co-author of legislation, stating that bill will avoid "content regulation by the Federal Government of what is on the Internet"); *see also Consol. Edison Co. of N.Y. Inc. v. Pub. Serv. Comm'n*, 447 U.S. 530, 538 (1980) (agency order prohibiting inserts in monthly utility bills that discussed "controversial issues of public policy" held unconstitutional on grounds that it would provide government the choice of permissible subjects for public debate).

Plaintiff can assert no First Amendment claim against Google because Google is a private party, not a state actor. Nothing that Plaintiff has offered in his Response alters this basic and fatal deficiency in his claim.

Plaintiff argues that Google should be deemed a state actor based upon his allegation that Google has somehow opened its private property to the public. Plaintiff's conclusory allegation on this point need not be accepted as true for purposes of this motion. *See, e.g., Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000) ("[W]hile our standard of review requires us to accept as true all factual allegations in the complaint, we need not accept as true unsupported conclusions and unwarranted inferences.") (citations and quotation marks omitted). But it does not matter. As set forth in Google's Opening Brief, a private property owner is not subject to the First Amendment merely because it opens its property to the public. *See* Op. Br. at 17-19 (D.I. 53). While Plaintiff continues to dispute this legal truism, he cites not a single case to support his view, and fails even to address most of Google's authorities.

Instead, Plaintiff argues that Google misinterprets *Lloyd Corp. v. Tanner*, 407 U.S. 551, 569 (1972); however, it is Plaintiff who misunderstands the case. In addressing the argument that a shopping center had been dedicated to public use and therefore was required to permit the distribution of handbills on the private shopping center property, the Supreme Court in *Lloyd* explained that "[t]he Constitution by no means requires such an attenuated doctrine of dedication of private property to public use." The Court went on to make clear: "[n]or does property lose its private character merely because the public is generally invited to use it for designated purposes." *Id.* at 569. The Supreme Court later characterized its holding in *Lloyd* as a "total rejection" of the previous case finding that an owner of private property could become subject to the strictures of the First Amendment by opening his or her property to the public. *Hudgens v. N.L.R.B.*, 424 U.S. 507, 518 (1976) ("we make clear now, if it was not clear before, that the

4

rationale of *Logan Valley* did not survive the Court's decision in the *Lloyd* case"). Thus, *Lloyd*, like *Hudgens* after it, holds that private property owners like Google do not undertake First Amendment obligations simply because they offer services to the public. Indeed, as the Supreme Court made clear in *Hudgens,* other than circumstances such as those present in *Marsh v. Alabama*, 326 U.S. 501 (1946), where a private property owner "'perform[s] the full spectrum of municipal powers and [stands] in the shoes of the State,'" "the constitutional guarantee of free expression has no part to play." *Hudgens*, 424 U.S. at 519, 521 (quoting *Lloyd*, 407 U.S. at 569). *Hudgens* and *Lloyd* control here, and they bar Plaintiff's claim.[3]

Plaintiff also argues that Google is subject to the First Amendment because it is "entangled" with the government. Again, Plaintiff ignores controlling law. Under the Supreme Court's precedents, to demonstrate state action under an entanglement theory, a private party must be so entwined with the government with respect to the "specific conduct of which the plaintiff complains" that "seemingly private behavior may be fairly treated as that of the State itself." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). The Amended Complaint does not, and could not in good faith allege that the government played any role in Google's decisions with respect to Plaintiff's proposed advertisements or its alleged removal of his website from Google's search results. Under such circumstances (and regardless of any allegations as to the government's role with respect to the Internet in general), the Amended Complaint fails to state a First Amendment claim against Google under an "entanglement" theory. *See, e.g., Green*, 318 F.3d at 472 (rejecting argument that Internet

---

[3]     The assertion that *Hudgens v. N.L.R.B.*, 424 U.S. 507 (1976) is somehow inapplicable because it involved a labor dispute is specious. *Hudgens* contains no express or implied limitation restricting its holding to the facts presented by that case, and it has been applied repeatedly by the Third Circuit in finding the First Amendment inapplicable to private property owners who open their property to the public. *See Radich v. Goode*, 886 F.2d 1391, 1398 (3d Cir. 1989) ("Private property has been treated as public property for first amendment purposes only when such property has all of the characteristics of a town."); *Cable Invs., Inc. v. Woolley*, 867 F.2d 151, 161-62 (3d Cir. 1989) (citing *Hudgens* for the proposition that *Marsh* has been construed narrowly and rejecting claim that apartment complex owners were subject to First Amendment).

service provider was transformed into a state actor because it provided an Internet connection permitting users to access government websites and opened its network to the public). Accordingly, Plaintiff's First Amendment claim against Google cannot proceed.

**B.    Plaintiff Cannot State a Claim for Violation of the Delaware Constitution**

Because Plaintiff's First Amendment claim fails, so does his attempt to state a claim under the Delaware Constitution.    Despite the Delaware Supreme Court's holding that the Delaware free speech provision has the same scope as the Federal First Amendment, *Gannett Co. v. State*, 571 A.2d 735, 741 n.9 (Del. 1989), Plaintiff argues that the Court should certify to the Delaware Supreme Court the issue of whether an Internet search engine is a public forum for purposes of the Delaware free speech provision.    In light of the clear holding in *Gannett,* and the lack of any uncertainty on the question, such a request would be improper.    *See, e.g., Fiat Motors of N. Am. v. Mayor and Council of Wilmington*, 619 F. Supp. 29, 34 (D. Del. 1985) ("In the absence of uncertainty regarding state law, certification is inappropriate.").[4]    Delaware law is clear, and it rejects the claim that Plaintiff has asserted.[5]

**C.    Plaintiff Cannot State a Claim for Fraud, Deceptive Trade Practices, Breach of Contract or Discrimination by One Engaged in a Public Calling**

In response to Google's argument that the Amended Complaint fails to state a claim for fraud or deceptive business practices under Delaware law, Plaintiff asserts only that "[t]hey are claims upon which relief may be granted." Pl.'s Resp. at 10 (D.I. 61).    Plaintiff does not point to

---

[4]    As discussed in Google's Opening Brief, *State v. Elliott*, 548 A.2d 28 (Del. Super. 1988) does not stand for the proposition that a mall is a public forum.    *See* Op. Br. at 23-24.    The *Elliott* court held that abortion protestors could constitutionally be subject to criminal penalties for demonstrating on the private grounds of a health clinic. *Id.* at 33.

[5]    Plaintiff's position that a violation of the Delaware Constitution may arise out of conduct that took place in California and allegedly harmed a Florida resident, is equally without merit. *Lee v. Minner*, 369 F. Supp. 2d 527 (D. Del. 2005), *aff'd*, 458 F.3d 194 (3d Cir. 2006), cited by Plaintiff, concluded that a Delaware statute that denied non-citizens access to Delaware public records violated the Privileges and Immunities Clause of the U.S. Constitution. *Id.* at 529. *Lee* says nothing about the applicability of the Delaware Constitution's free speech protections to non-citizens or to conduct occurring outside of Delaware.

any particular allegations of the Amended Complaint that if proven would support such claims or make any attempt to address the deficiencies Google highlighted in its Opening Brief. Plaintiff's bald assertions and legal conclusions do nothing to save these claims from dismissal. *See, e.g., Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997) (in deciding a motion to dismiss, "a court need not credit a complaint's 'bald assertions' or 'legal conclusions'").

Plaintiff likewise says almost nothing in defense of his supposed breach of contract claim. In response to Google's argument that it could not have breached its contract with Plaintiff by rejecting Plaintiff's ads because the contract at issue specifically allowed Google to "reject or remove any ad[vertisement] . . . for any or no reason," Plaintiff asserts that it is improper for the Court to consider the contents of the contract on a motion to dismiss. Plaintiff is wrong. As Google explained in its Opening Brief at 3-4 n.3, it is well-established that in deciding a motion to dismiss, a court may consider documents that form the basis for a plaintiff's complaint, even where the plaintiff has not attached those documents to its complaint. *See, e.g., Rossman v. Fleet Bank (R.I.) Nat'l Ass'n,* 280 F.3d 384, 388 n.4 (3d Cir. 2002) (stating that in deciding a motion to dismiss, a court may consider any documents attached to the motion to dismiss that form the basis of the plaintiff's claims); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993) (court may consider a document that forms the basis for plaintiff's claim, even where plaintiff did not attach document to its complaint); *Williams v. Potter,* 384 F. Supp. 2d 730, 733 n.4 (D. Del. 2005) (considering defendant's written denial of benefits to plaintiff in evaluating motion to dismiss even though plaintiff did not rely on writing itself, because plaintiff's claims were based on denial). There can be no doubt that the basis of Plaintiff's breach of contract claim is the Google AdWords Terms and Conditions, which incorporates Google's Content Policy. Plaintiff points to no other contract between himself and Google, and he refers to the Content Policy repeatedly throughout

7

his original and Amended Complaint. *See, e.g.,* Am. Compl. at 3, 4 (D.I. 44). Accordingly, it is entirely proper for the Court to consider the content of these documents in determining whether Plaintiff has stated a claim for breach of contract. It is likewise entirely proper for the Court to hold that the documents bar Plaintiff's claim from the start.

Finally, Plaintiff tries to save his claim for discrimination by one engaged in a public calling with the single sentence that "[t]he common law has never been restricted to inns" and a request to certify to the Delaware Supreme Court the issue of whether Internet search engines are engaged in a public calling as recognized by the Delaware common law. Pl.'s Resp. at 9 (D.I. 61). Plaintiff, however, cites no authority applying the public calling doctrine outside of the innkeeper context. In fact, the Delaware Supreme Court has recognized that the common law doctrine only applies in the context of an inn. *State v. Brown*, 195 A.2d 379, 381-82 (Del. 1963) ("Apart from the above-cited limited [innkeeper-guest] category of public establishments, it is clear that at common law the owner of a restaurant or other place of public refreshment, amusement, or entertainment was free to select patrons upon any basis deemed satisfactory to him."). In light of this Delaware Supreme Court precedent, Plaintiff's claim is flawed beyond repair.[6]

## III.    PLAINTIFF MAY NOT ENGAGE IN DISCOVERY WHERE HE HAS FAILED TO STATE A CLAIM

Throughout his Response, Plaintiff takes the position that the Court should allow him to conduct discovery to obtain factual support for his bare contentions. *See* Pl.'s Resp. at 3, 6 (D.I. 61). Plaintiff seeks to put the cart before the horse. A plaintiff is not entitled to discovery to determine whether he can state a claim. *See, e.g., McLaughlin v. Copeland*, 455 F. Supp. 749,

---

[6]    Plaintiff also essentially concedes that his Amended Complaint fails to comply with Rule 8. He argues that the Amended Complaint should not be dismissed because it "is of an appropriate length." But the length of his pleading is not the issue. It is his failure to provide "simple, concise, and direct" averments from which the Court and the defendants can discern the nature of the his claims and the grounds upon which each rests that renders the Amended Complaint subject to dismissal under Rule 8.

753 (D. Del. 1978), *aff'd*, 595 F.2d 1213 (3d Cir. 1979) ("While a plaintiff is entitled to a full opportunity to adduce evidence in support of the cognizable claims set out in his complaint, he is not entitled to discovery for the purpose of determining whether or not there may be a factual basis for a claim he has not made."); *Jones v. Capital Cities/ABC Inc.*, 168 F.R.D. 477, 480 (S.D.N.Y. 1996) (rejecting plaintiff's argument that she should have been afforded discovery in order to produce sufficient facts to state a claim, explaining that, "[t]he purpose of discovery is to find out additional facts about a well-pleaded claim, not to find out whether such a claim exists") (citation and quotation marks omitted; alteration in original). A complaint must stand or fall on its face and the face of any documents central to its allegations. *See Satellite Fin. Planning Corp. v. First Nat'l Bank of Wilmington*, 643 F. Supp. 449, 452 (D. Del. 1986) (stating that in evaluating the contested meaning of a contractual provision a court could not look beyond the complaint and the express terms of the agreement at issue); *Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) ("In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."). As set forth fully in Google's Opening Brief, Plaintiff's factual allegations, even if proven, are insufficient to state a claim upon which relief could be granted. *See* Op. Br. at 15-34 (D.I. 53). Accordingly, the Amended Complaint should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons as well as those set forth in Google's Opening Brief and the arguments made in support of Yahoo! Inc. and Microsoft Corp.'s motions to dismiss, the Court should dismiss the Amended Complaint with prejudice.

PROCTOR HEYMAN LLP

Kurt M. Heyman (# 3054)
Email:  kheyman@proctorheyman.com
Patricia L. Enerio (# 3728)
Email:  penerio@proctorheyman.com
1116 West Street
Wilmington, DE  19801
(302) 472-7300
Attorneys for Defendant Google Inc.

OF COUNSEL:

WILSON SONSINI GOODRICH & ROSATI PC
David H. Kramer
Colleen Bal
Bart E. Volkmer
650 Page Mill Road
Palo Alto, CA  94304
(650) 493-9300

Tonia Ouellette Klausner
Emily Shepard Smith
12 East 49th Street, 30th Floor
New York, NY 10017
(212) 999-5800

DATED:        December 22, 2006

## CERTIFICATE OF SERVICE

Patricia L. Enerio, Esquire, hereby certifies that on December 22, 2006, copies of the foregoing Motion to Dismiss were served as follows:

### VIA FEDERAL EXPRESS

Mr. Christopher Langdon
1835 Edwin Boulevard
Winter Park, FL 32789

### VIA E-FILING

Daniel V. Folt, Esquire
Duane Morris LLP
1100 North Market Street, Suite 1200
Wilmington, DE 19801

_____
Patricia L. Enerio (# 3728)

# EXHIBIT A

**Reply Brief in Further Support of Google Inc.'s
Motion to Dismiss the Amended Complaint**

Westlaw.

Not Reported in F.Supp.2d                                                                                                    Page 1
Not Reported in F.Supp.2d, 2005 WL 2127820 (D.Del.), 178 L.R.R.M. (BNA) 2628, 151 Lab.Cas. P 10,559, 10
Wage & Hour Cas.2d (BNA) 1633
(Cite as: Not Reported in F.Supp.2d)

C

Briefs and Other Related Documents

Tillman v. Pepsi Bottling Group, Inc.D.Del.,2005.
United States District Court,D. Delaware.
Marlayna G. TILLMAN, Plaintiff,
v.
THE PEPSI BOTTLING GROUP, INC. and
Teamsters Local Union 830 Defendants.
No. Civ. 04-1314-SLR.

Aug. 30, 2005.

Jeffrey K. Martin, and Timothy J. Wilson, of
Margolis Edelstein, Wilmington, Delaware, for
Plaintiff.
William M. Kelleher, of Ballard Spahr Andrews &
Ingersoll, LLP, Wilmington, Delaware, for Defendant
Pepsi Bottling Group, Inc., Daniel V. Johns, and
Lucretia C. Clemons, of Ballard Spahr Andrews &
Ingersoll, LLP, Philadelphia, Pennsylvania, of
counsel.
Clifford B. Hearn, Jr., Wilmington, Delaware.
Stephen J. Holroyd, and Marc. L. Gelman, of
Jennings Sigmond, Philadelphia, Pennsylvania, for
Defendant Teamsters Local Union 830.

MEMORANDUM OPINION
ROBINSON, Chief J.

I. INTRODUCTION

*1 On September 29, 2004, plaintiff Marlayna G.
Tillman commenced this suit against defendants,
Pepsi Bottling Group, Incorporated ("PBG") and
Teamsters Local 830 ("Local 830"). (D.I.1) In her
complaint, plaintiff asserted the following claims: (1)
racial discrimination; (2) violation of 42 U.S.C. §
1981; (3) gender discrimination; (4) sexual
harassment; (5) retaliation; (6) failure to promote in
violation of the Fair Labor Standards Act ("FLSA");
(7) violation of Delaware's Wage Payment and
Collection Act; (8) violation of the Equal Pay Act;
and (9) a breach of the covenant of good faith and
fair dealing. (Id.) The court has jurisdiction pursuant
to 28 U.S.C. § 1331. Presently before the court is
PBG's motion to dismiss plaintiff's claims for sexual
harassment, retaliation, breach of the covenant of
good faith and fair dealing,FN1 failure to promote and
all claims under the Delaware Wage Payment and

Collection Act. For the reasons set forth below, the
court grants in part and denies in part defendant
PBG's motion. Also before the court is Local 830's
motion for a more definite statement which, for the
reasons set forth below, the court shall deny.

> FN1. The court shall grant the motion to
> dismiss plaintiff's claim alleging breach of
> the implied covenant of good faith and fair
> dealing, as it is unopposed. (D.I. 11 at 2)

II. BACKGROUND FN2

> FN2. Given the standard for a motion to
> dismiss, the court considered only those
> facts pled in the complaint and not those
> additional facts alleged in the brief
> answering defendant PBG's motion to
> dismiss.

PBG hired plaintiff on May 8, 2001, as a
merchandiser in the Merchandising/Marketing/Sales
department. (Id. at ¶ 11) Plaintiff, employed in an
entry level position, was paid an hourly rate of
$10.57 per hour. (Id.) In September 2001, plaintiff
was moving pallets at work when a wood chip
entered her eye. (Id. at ¶ 13) She was taken to the
hospital and missed two days of work. (Id.) Plaintiff
returned to work and her supervisor, Bruce Wray,
informed her that she would not be paid for the
missed days. (Id.) Believing that she was entitled to
six paid sick days, plaintiff discussed the situation
with the Human Resources Department ("HR"). (Id.)
Five months later, plaintiff was assigned to the
Conventional Department by Wray; because plaintiff
was maintaining her responsibilities in the
Merchandising/Marketing/Sales Department, she was
effectively working two jobs. (Id. at ¶¶ 14, 20)
Plaintiff believes that the transfer was an act of
retaliation for her conversation with HR regarding the
unpaid sick days. (Id.)

The Conventional Department position is union-
eligible. (Id. at ¶ 15) According to Local 830's by-
laws and the defendants' collective bargaining
agreement, the defendants had thirty days after
transferring plaintiff to either incorporate her into
Local 830 or return her to her original position in the

Not Reported in F.Supp.2d                                                                    Page 2
Not Reported in F.Supp.2d, 2005 WL 2127820 (D.Del.), 178 L.R.R.M. (BNA) 2628, 151 Lab.Cas. P 10,559, 10
Wage & Hour Cas.2d (BNA) 1633
**(Cite as: Not Reported in F.Supp.2d)**

company.[FN3] (*Id.*) at ¶ 19) This procedure was not followed by defendants. (*Id.*) Further, plaintiff went to HR to ask for assistance in obtaining entry to Local 830, but was not permitted to join. (*Id.*)

> FN3. The complaint does not differentiate between the defendants and, as the court must accept the facts of the complaint as true, the court will use "defendants" to refer to both PBG and Local 830 as the complaint does.

Plaintiff worked both positions for eight months, starting October 13, 2001 and ending May 28, 2002. (*Id.* at ¶ 20) During this period, plaintiff did not receive overtime pay or the Union's higher weekend pay rate. (*Id.* at ¶ 18) Plaintiff, an African-American female, was the only employee in the department performing union work who was not paid union wages. (*Id.* at ¶ 15) Plaintiff continued to be paid at her initial hourly rate of $10 .57 while other male employees were paid $16.63 per hour. (*Id.* at ¶ 16) Additionally, plaintiff was supposed to be paid for a pre-determined forty hour work week but on several occasions was not compensated for the full forty hours. (*Id.* at ¶ 25) On average, plaintiff worked approximately fifteen to twenty overtime hours per week without any overtime compensation. (*Id.* at ¶ 26). In failing to pay plaintiff wages to which she was entitled, defendants are alleged to have violated the collective bargaining agreement between them. (*Id.* at ¶¶ 25, 31) Plaintiff requested back pay for the eight months that she had been working both positions and her request was denied by defendants. (*Id.* at ¶ 37) Further, by not gaining admittance to Local 830, plaintiff was also denied union benefits and protection. (*Id.* at ¶ 17)

*2 Despite her repeated requests, plaintiff was not made a member of the Union. (*Id.*) In April 2002, plaintiff asked HR to transfer her to a union position. (*Id.* at ¶ 35) On May 28, 2002, plaintiff was returned to her original position in the Merchandising/Marketing/Sales Department and was given a pay raise, making her hourly rate $10.86. (*Id.* at ¶ 36) On July 22, 2002, HR transferred plaintiff to a union position in the Warehouse Department. (*Id.* at ¶ 39) Prior to plaintiff's transfer, PBG hired (in the same capacity as plaintiff) three male employees who had no prior experience and had never worked for PBG. (*Id.* at ¶ 40) The male employees were installed in union positions before plaintiff's transfer was finalized and, therefore, were able to surpass

plaintiff in seniority.[FN4] (*Id.* at ¶ 41) Plaintiff filed a complaint with HR and Local 830 because the hiring violated company policy to hire from within. (*Id.* at ¶ 42)

> FN4. This hiring affected plaintiff's seniority and her ability to bid for positions. (D.I. 1 at ¶ 43)

After being transferred to the Warehouse Department, plaintiff was paid $12.68 per hour. The union rate, which her male colleagues received, was between $15.75 and $16.63 per hour. (*Id.* at ¶ 44) In her complaint, plaintiff also alleges that, during July 2002, her new male co-workers made comments on her breast size and other inappropriate topics. (*Id.* at ¶ 45-47) A co-worker, Howard Laws, told plaintiff that she needed "to get laid" and that "[he was] just the man to do it to [her]." (*Id.* at ¶ 46) On another occasion, Laws asked plaintiff if he could borrow a pen. (*Id.* at ¶ 47) When plaintiff removed the pen from her shirt pocket, Laws commented "you just want me to watch you touch your breasts." (*Id.*) Plaintiff filed a grievance with HR alleging sexual harassment, but no action was taken.[FN5] (*Id.* at ¶ 48) In August 2002, plaintiff asserts that the Warehouse Department supervisors began to scrutinize her more than her co-workers by singling her out for verbal discipline and threatening to place written reprimands in her file. (*Id.* at ¶¶ 51, 52)

> FN5. Plaintiff also complained to HR and management about rumors that were circulating. (D.I. 1 at ¶ 50) The rumors portrayed the plaintiff as sleeping with co-workers. (*Id.*) The complaint to HR about the rumors also went unanswered. (*Id.*)

On August 28, 2002, plaintiff filed a Charge of Discrimination with the Delaware Department of Labor ("DDOL") and the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging discrimination on the basis of her race and her gender. (*Id.* at ¶ 53; D.I. 9, ex. 1) Plaintiff's charge states the following:
I am a black female individual who has been employed by Respondent since 5/8/01. Respondent has denied me various promotional opportunities, particularly for Driver positions. Instead, I have been assigned to work in various departments, including, currently, the Warehousing Department, where I am subjected to disparate treatment with regard to terms

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                      Page 3
Not Reported in F.Supp.2d, 2005 WL 2127820 (D.Del.), 178 L.R.R.M. (BNA) 2628, 151 Lab.Cas. P 10,559, 10
Wage & Hour Cas.2d (BNA) 1633
(Cite as: Not Reported in F.Supp.2d)

and conditions of my employment. My supervisors, Glen Matthew (white male) and Tom Riley (black male) hold me to a higher standard than my white male coworkers with regard to rules and regulations. As recently as 8/27/02, I was falsely accused of leaving my shift without checking with the Supervisor on Duty. Also, I am paid lower wages than my white male counterparts, although I am expected to perform the same work as they are.

*3 I have been told that I could not get a Driver position because I am not in the Union. I believe I have been discriminated against in violated [sic] of the Civil Rights Act of 1964, as amended, and the Delaware Discrimination in Employment Act, because: I am the only female working in my classification, and I am paid lower wages than my male counterparts, denied promotional opportunities, and held to a higher standard. I have seen male coworkers who are not in the union, some with less tenure, obtain Driver positions and thereby become union members.

(D.I.9, ex. 1) Shortly thereafter, plaintiff received a salary increase to $15.75 per hour. (D.I. 1 at ¶ 54)

Plaintiff was fired, along with other members of her Department, on September 18, 2002. (*Id.* at ¶ 55) All of plaintiff's co-workers were recalled to work two days later, but plaintiff was not recalled until October 21, 2002. <sup>FN6</sup> (*Id.* at ¶¶ 55-57) Upon her return to work, plaintiff's supervisors started a disciplinary file on her. (*Id.* at ¶ 58) Every minor infraction was recorded and plaintiff was sometimes written up without her knowledge. (*Id.*) Prior to this time, plaintiff had never been issued a written reprimand. (*Id.*) In November 2002, plaintiff was singled out and verbally reprimanded for using a personal cell phone. (*Id.* at ¶ 60) Plaintiff filed a grievance with Local 830, but no action was taken. (*Id.* at ¶ 61)

> FN6. Upon her return to work, plaintiff filed another grievance with the Local 830 regarding her layoff. (D.I. 1 at 58) This time, Local 830 demanded the company pay plaintiff for the four weeks she was laid off. (*Id.*) Plaintiff was paid these wages in December 2002. (*Id.*)

In April 2003, plaintiff heard a male supervisor, Joe Rizzo, make racial and derogatory comments about African-Americans, Hispanics and women. (*Id.* at ¶ 63) Plaintiff complained to HR and was assured that an investigation would take place. (*Id.*) To the best of

plaintiff's knowledge, no action was taken against Rizzo. (*Id.*) After filing the complaint with HR, plaintiff observed an immediate change in Rizzo's behavior towards her. (*Id.*) Plaintiff was then transferred to the Production Department of which Rizzo was supervisor. (*Id.*) Plaintiff requested a transfer from the Production Department on three occasions; all were denied. (*Id .*) On April 22, 2003, plaintiff filed an additional charge of discrimination with the DDOL against Local 830 alleging racial and sex discrimination and also retaliation. (*Id.* at ¶ 64)

On November 6, 2003, plaintiff injured her leg while climbing out of a truck and was placed on short term disability. (*Id.* at ¶ 65) Plaintiff did not receive her disability check for ten weeks because HR forgot to file the paperwork. (*Id.*) Plaintiff ultimately was paid in one lump sum and, therefore, was taxed heavily on the full amount. (*Id.*) Plaintiff returned to work on April 19, 2004, and was assigned to the can line filler room. (*Id.* at ¶ 66) This position required plaintiff to stand for prolonged periods of time. (*Id.*) Plaintiff went to Rizzo and asked for accommodations or to "bump" another employee for a sitting position because she was unable to stand for long periods of time. (*Id.*) Rizzo informed plaintiff that her only option would be to take a short term disability leave again. (*Id.*) Plaintiff was not paid for the second short term disability period. (*Id.*)

*4 The DDOL investigated plaintiff's Charge of Discrimination and found in favor of plaintiff. (*Id.* at ¶ 67) With respect to the Charge of Discrimination filed against PBG in August 2002, the DDOL characterized the disputed facts as follows:
1. Charging party states that she was discriminated against by Respondent because she was not afforded the same opportunities as her male counterparts in regards to promotions such as driver positions and she is subjected to disparate treatment from management in regards to the terms and conditions of her employment.
2. Respondent states that Ms. Tillman was treated the same as her male co-workers and afforded all the same opportunities for promotions and not treated disparately by her supervisors.

(D.I.1, ex. A) After its investigation, the DDOL resolved these issues of facts as follows:1. Charging Party was able to establish that she had been treated disparately compared to her male co-workers. This was demonstrated through the documentation provided by Respondent in regards to Charging Party's attendance records and the various

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                              Page 4
Not Reported in F.Supp.2d, 2005 WL 2127820 (D.Del.), 178 L.R.R.M. (BNA) 2628, 151 Lab.Cas. P 10,559, 10
Wage & Hour Cas.2d (BNA) 1633
(Cite as: Not Reported in F.Supp.2d)

documentation regarding the amount of time she was late, left work early and called off of work. The same attendance records for her co-workers do not reflect the same amount of scrutiny on a regular basis as Charging Party in regards to being less than 5 minutes late to work....

2. A review of the punch detail reports along with the timecard records reveals that male employees more frequently are receiving the standard number of hours in a week and are also more frequently receiving overtime hours than Charging Party....

4. Charging Party provided documentation, which reflects a decreased amount of hourly wage than that of her male co-workers....

5. Witnesses were contacted and asked about their schedules, the number of hours they are afforded each week, the disciplinary [sic] received or not received regarding their work schedules and the use of personal cell phones on the job. The results of these interviews clearly revealed that Charging Party's male counterparts are treated more favorably than Charging Party.

(*Id.*) The DDOL concluded that plaintiff had "met her burden of showing that she was discriminated against based on her gender." (*Id.*) Plaintiff was issued two right to sue letters from the EEOC on July 1, 2004. (*Id.* at ¶ 68)

Plaintiff took three weeks vacation from August 8, 2004 through August 30, 2004. (*Id.* at ¶ 69) Upon returning to work, plaintiff was called into HR to discuss her complaints about the sexual harassment.[FN7] (*Id.*) On August 12, 2004, the NAACP held a press conference in which plaintiff participated. (*Id.* at ¶ 70) After the press conference, plaintiff was informed that she had been awarded a transfer to the Transport Department, a position she had bid on three or four times over the last few years. (*Id.*) Plaintiff was awarded this position on September 17, 2004. (*Id.*) After transferring to the Transport Department, plaintiff was warned to "watch her back" because the company wants "to get rid of [her]." (*Id.* at ¶ 71)

FN7. Plaintiff also gave HR a pornographic magazine which she had found on a clipboard inside a truck. (D.I. 1 at ¶¶ 49, 69)

### III. STANDARD OF REVIEW

*5 In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all material allegations of the complaint and it must construe the complaint in favor of the plaintiff. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*, 140 F.3d 478, 483 (3d Cir.1998). "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." *Id.* Claims may be dismissed pursuant to a Rule 12(b)(6) motion only if the plaintiff cannot demonstrate any set of facts that would entitle her to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The moving party has the burden of persuasion. *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir.1991).

When deciding a motion to dismiss, the court also is allowed to consider any exhibits attached to the complaint as well as documents attached to the motion to dismiss which form the basis of the plaintiff's claims. *See Rosman v. Fleet Bank Nat'l Assoc.*, 280 F.3d 384, 388 n. 4 (3d Cir.2002); *Pryor v. Nat'l Collegiate Athletic Assoc.*, 288 F.3d 548, 559-60 (3d Cir.2002); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993)("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on that document.").

### IV. DISCUSSION

PBG makes three separate arguments for dismissal of plaintiff's claims against it. First, PBG claims that plaintiff's sexual harassment and retaliation claims fail because she did not exhaust all available administrative remedies. (D.I. 9 at 1) Second, PBG argues that there is no legal basis for plaintiff's failure to promote claim. (*Id.*) Finally, PBG asserts that plaintiff's claim pursuant to the Delaware Wage Payment and Collection Act is preempted by § 301 of the Labor Management Relations Act. (*Id.*)

#### A. Sexual Harassment and Retaliation Claims

PBG seeks dismissal of plaintiff's claims for sexual harassment and retaliation because she did not

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                     Page 5
Not Reported in F.Supp.2d, 2005 WL 2127820 (D.Del.), 178 L.R.R.M. (BNA) 2628, 151 Lab.Cas. P 10,559, 10
Wage & Hour Cas.2d (BNA) 1633
(Cite as: Not Reported in F.Supp.2d)

exhaust all her administrative remedies. (D.I. 9 at 4) Specifically, PBG contends that plaintiff's claims fail because her allegations of sexual harassment and retaliation were not included in her Charge of Discrimination. (*Id*.)

The jurisdictional prerequisites to a suit under Title VII are the filing of charges with the EEOC and the receipt of a Notice of Right to Sue. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798 (1973). The requirement that a complainant file charges with the EEOC gives that administrative agency the opportunity to investigate, mediate and take remedial action with respect to a charge of discrimination. *See Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398 (3d Cir.1976). Although preliminary requirements for a Title VII action are to be interpreted in a non-technical fashion, *see Love v. Pullman Co.*, 404 U.S. 522, 527 (1972), nonetheless, "the parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination, including new acts which occurred during the pendency of the proceedings." *Ostapowicz*, 541 F.2d at 398-99. The relevant test for determining whether plaintiff must exhaust her administrative remedies, therefore, is "whether the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir.1996) (quoting *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir.1984)). Claims considered within the scope of the prior EEOC complaint either arise during the pendency of the EEOC investigation, are closely related to conduct alleged in the charge, or are explanations of the original charge. *See Waiters v. Parsons*, 729 F.2d 233 (3d Cir.1984); *Ostapowicz*, 541 F.2d at 398-99; *Flesch v. E. Pa. Psychiatric Inst.*, 434 F.Supp. 963, 970 (E.D.Pa.1977); *Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208, 1212 (3d Cir.1984).

*6 As evidenced by plaintiff's Charge of Discrimination filed with the DDOL and the EEOC, and the Notice of Reasonable Cause Finding issued by the DDOL, plaintiff's sexual harassment claim is not reasonably within the scope of either the claim or the investigation. The sexual harassment claim arises from a set of facts wholly distinct from plaintiff's contention of disparate treatment with respect to the terms and conditions of her employment, i.e., wages, promotional opportunities, and disciplinary record. *See, e.g., Sandom v. Travelers Mortgage Servs., Inc.*, 752 F.Supp. 1240, 1248 (D.N.J.1990). Because

neither plaintiff nor the DDOL ever mentioned any of the incidents about inappropriate comments as described in plaintiff's complaint at bar, "[t]he sexual harassment claim would, most likely, not have arisen out of a reasonable EEOC investigation of the filed claim absent a specific allegation in the charge." *Id.* The sexual harassment claim cannot be said to closely relate to the conduct alleged in the charge nor is it an explanation of the conduct in the charge. Additionally, the conduct did not occur during the pendency of the EEOC investigation, as the alleged sexual harassment occurred in July 2002, at least one month prior to plaintiff filing her Charge of Discrimination. (D.I. 1 at ¶ ¶ 45, 53) Therefore, plaintiff failed to exhaust her administrative remedies as to this claim and the motion to dismiss shall be granted in this regard.

Retaliation claims have been considered within the scope of a prior charge. *See Molthan v. Temple Univ.*, 778 F.2d 955, 960 (3d Cir.1985) (finding a retaliation claim within the scope of a prior claim filed with the EEOC alleging sexual discrimination); *Howze*, 750 F.2d at 1212 (3d Cir.1984) (allowing a retaliation claim for failure to promote allegation within race discrimination). In this case, plaintiff's Charge of Discrimination sets forth three allegations: 1) plaintiff is paid lower wages than her male counterparts; 2) plaintiff is denied promotional opportunities; and 3) there is disparate treatment between plaintiff and her white male counterparts. (D.I.9, ex. 1) Plaintiff filed a charge of discrimination on August 28, 2002. (D.I. 1 at ¶ 53) Plaintiff was fired on September 18, 2002, and returned to work on October 21, 2002. (*Id.* at ¶ ¶ 55, 57) After plaintiff returned to work, her supervisors began creating a disciplinary file on her based on conduct for which other employees received no discipline. (D.I. 1 at ¶ ¶ 59-60) Additionally, plaintiff alleges that she was denied equal pay, benefits, and promotional opportunities in retaliation for filing her Charge of Discrimination. (D.I. 1 at ¶ ¶ 62, 65-66, 88(b)) Accepting the allegations contained in the administrative record as true, the motion to dismiss the retaliation claim shall be denied.

### B. Failure to Promote

PBG argues that plaintiff's failure to promote claim is not sufficiently pled because plaintiff failed to identify whether her claim was based on racial or gender discrimination or both. (D.I. 9 at 5; D.I. 13 at 3) "When deciding a motion to dismiss for failure to

Not Reported in F.Supp.2d                                                           Page 6
Not Reported in F.Supp.2d, 2005 WL 2127820 (D.Del.), 178 L.R.R.M. (BNA) 2628, 151 Lab.Cas. P 10,559, 10
Wage & Hour Cas.2d (BNA) 1633
(Cite as: Not Reported in F.Supp.2d)

state a claim, 'one must read Fed.R.Civ.P. 12(b)(6) in conjunction with Fed.R.Civ.P. 8(a), which establishes the requirements for adequately pleading a claim in federal court." ' *Relational Funding Corp. v. TCIM Servs., Inc.,* No. Civ. A. 01-821-SLR, 2002 WL 655479, at *3 (D.Del. Apr. 18, 2002) (quoting *Brunetti v. Rubin,* 999 F.Supp. 1408, 1409 (D.Col.1998)). Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* The statement need not contain detailed facts, but it requires that plaintiff give defendant fair notice of what the claim is and the grounds upon which it rests. *Conley v. Gibson,* 355 U.S. 41, 47 (1957). A plaintiff is not required to state precisely each element of the claim. *Relational Funding Corp.,* 2002 WL 655479, at *3 (discussing 5 Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1216 (2d ed.1990)). "Despite that fact, a plaintiff must 'set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." ' *Id.* (quoting *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 515 (1st Cir.1988)). The defendant bears the burden of establishing that the plaintiff's complaint fails to state a claim upon which relief can be granted. *See Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir.2000).

*7 In her complaint, plaintiff states that she is an African-American female. (D.I. 1 at ¶ 2) As an African-American female, plaintiff is clearly a member of a protected class. *Bradley v. United States,* 299 F.3d 197, 206 (3d Cir.2002). Given the liberal pleading requirements of Rule 8, the court concludes that plaintiff's statement that she is an African-American female is sufficient as it asserts factual allegations that support her claim.

Additionally, PBG's inference that there is no statutory or common law basis for a failure to promote claim is without merit, as the Third Circuit has previously recognized such claims. *See, e.g., Young v. Pennsauken Township Sch. Dist.,* 47 Fed. Appx. 160, 161 (3d Cir.2002) ("Such failure-to-promote claims are analyzed under the well known burden-shifting framework as set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).". The court concludes that plaintiff's failure to promote claim meets the requirements of Rule 8 and the motion to dismiss shall be denied.

C. Delaware Wage Payment and Collection Act

Plaintiff asserts that her claim under the Delaware Wage Payment and Collection Act is not dependant upon, or inextricably intertwined with, the collective bargaining agreement because her claim for lost wages is only for the time period when plaintiff was not a member of the Union. (D.I. 11 at 17) In the same paragraph, plaintiff claims that the collective bargaining agreement has "nothing to do" with her claim other than the fact that she "rightly should have been paid at the same rate of pay as those other individuals, similarly situated, who were being paid in accordance with that agreement." (*Id.*)

The reach of Section 301 of the Labor Management Relations Act ("LMRA") "encompasses not only state-law claims that are directly based on a collective bargaining agreement but also all those that are 'substantially dependent upon analysis of the terms' of the agreement." *Wheller v. Graco Trucking Corp.,* 985 F.2d 108, 113 (3d Cir.1993) (quoting *Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 220 (1985)); *see also id.* at 112 (holding that state law claims for wages allegedly due under a collective bargaining agreement are preempted by § 301 of the LMRA); *Phillips v. United Parcel Serv., Inc.,* No. 01-22-GMS, 2001 WL 694535, at *2-3 (D.Del. Jun. 20, 2001) (holding that claims brought pursuant to the Delaware Wage Payment and Collection Act for wages under a collective bargaining agreement are preempted by the LMRA).

Plaintiff claims that she is entitled to liquidated damages in an amount equal to unpaid overtime and wage differences pursuant to Delaware's Wage Payment and Collection Act. (D.I. 1 at ¶ 104) Specifically, plaintiff asserts that PBG "refused to pay [her] for overtime for weeks in which she worked in excess of forty hours, as well as time and a half for Saturday hours worked and double-time for Sunday hours worked per the terms of the collective bargaining agreement." (D.I. 1 at ¶ 31) Additionally, plaintiff asserts the collective bargaining agreement was violated when she was not admitted to Local 830 in November 2001. (*Id.* at ¶ 19) To determine whether the collective bargaining agreement was violated, whether plaintiff is entitled to the higher Union wages, and whether plaintiff is entitled to overtime, the court will have to interpret the collective bargaining agreement. The court finds that this interpretation of the collective bargaining agreement will be substantially dependent upon analysis of the terms of the agreement and, therefore,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                            Page 7
Not Reported in F.Supp.2d, 2005 WL 2127820 (D.Del.), 178 L.R.R.M. (BNA) 2628, 151 Lab.Cas. P 10,559, 10
Wage & Hour Cas.2d (BNA) 1633
(Cite as: Not Reported in F.Supp.2d)

plaintiff's state wage claims are preempted by the LMRA. The motion to dismiss this claim shall be granted.

### D. Motion for a More Definite Statement

**\*8** Local 830 moves the court to require plaintiff to provide a more definite statement pursuant to Fed.R.Civ.P. 12(e). (D.I.10) In this case, Local 830 contends that a more definite statement is needed because the complaint fails to "specifically delineate" the conduct performed by each defendant and that the conduct of Local 830 is only alluded to, not "specifically" pled. (D.I. 10 at 2)

A motion under Rule 12(e) is made to correct a pleading that is "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." Fed.R.Civ.P. 12(e). The purpose, however, of Rule 12(e) is not to make it easier for the moving party to prepare its case.[FN8] *Symbol Techs., Inc. v. Hand Held Prods., Inc.,* No. Civ. A. 03-102-SLR, 2003 WL 22750145, at \*3 (D.Del. Nov. 14, 2003).

> FN8. The advisory committee notes to Rule 12(e) state: "With respect to preparations for trial, the party is properly relegated to the various methods of examination and discovery provided in the rules for that purpose." *See, e.g., Campbell v. Miller,* 836 F.Supp. 827, 832 (M.D.Fla.1993) ("A motion for a more definite statement is not a substitute for discovery.")

Consistent with Fed.R.Civ.P. Rule 8, the complaint states the nature of the action, the general factual background, the basis for seeking relief, and the relief sought. "This is all that is required by notice pleading under the [Federal Rules of Civil Procedure]. In these circumstances, a motion for a more definite statement should not be granted." *Marshall v. Local 326,* No. 80-181, 1980 U.S. Dist. LEXIS 16547, at \*1 (D.Del. May 5, 1980). Paragraph I of the complaint alleges that the action arises under Title VII. (D.I. 1 at 1) Among other things, the complaint alleges that the Union failed to respond to plaintiff's complaints, violated its collective bargaining agreement, and engaged in discrimination on the basis of race and sex. (D.I. 1 at 19, 31, 42, 61) In addition, the complaint demands various forms of compensation to be determined at trial. (D.I.1) The complaint, therefore, complies with Rule 8's liberal pleading

requirements and provides sufficient notice to Local 830 to prepare a responsive pleading. Local 830's motion for a more definite statement shall be denied.

### V. CONCLUSION

For the reasons stated above, defendant PBG's motion to dismiss is granted as to the sexual harassment claim, the breach of implied covenant and good faith and fair dealing and the Delaware Wage Payment and Collection Act, and as to all other claims denied. Defendant Local 830's motion for a more definite statement is denied. An order consistent with this memorandum opinion shall issue.

D.Del.,2005.
Tillman v. Pepsi Bottling Group, Inc.
Not Reported in F.Supp.2d, 2005 WL 2127820 (D.Del.), 178 L.R.R.M. (BNA) 2628, 151 Lab.Cas. P 10,559, 10 Wage & Hour Cas.2d (BNA) 1633

Briefs and Other Related Documents (Back to top)

• 2005 WL 3666880 (Trial Pleading) Answer and Affirmative Defenses of Defendant Teamsters Local Union 830 (Oct. 19, 2005) Original Image of this Document (PDF)
• 2005 WL 3666879 (Trial Pleading) Answer, Affirmative Defenses and Counterclaim of Defendant Bottling Group LLC (Oct. 14, 2005) Original Image of this Document (PDF)
• 1:04CV01314 (Docket) (Sep. 29, 2004)

END OF DOCUMENT

# EXHIBIT B

**Reply Brief in Further Support of Google Inc.'s
Motion to Dismiss the Amended Complaint**

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 33341979 (W.D.Pa.), 25 Employee Benefits Cas. 2316
**(Cite as: Not Reported in F.Supp.2d)**

C

Valentino v. Continental Cas. Co.W.D.Pa.,2000.
United States District Court, W.D. Pennsylvania.
Joelle M. VALENTINO, a minor by Joseph R.
Valentino and Mary Pat Valentino, her Co-
Guardians, Plaintiffs,
v.
CONTINENTAL CASUALTY CO., CNA Financial
Corporation, CNA Insurance Companies, C-Cor, Net
Corp t/d/b/a C-Cor Clectronics, Inc. f/k/a C-Cor
Electrnics, Inc., Defendants.
**No. CIV. A. 99-1101.**

June 29, 2000.

Brucker Olszewski Schneider & Porter, Attn
BernardSchneider Esq, Pittsburgh, for Plaintiffs'
Counsel.
Brenner Brown Golian & Mccaffrey, Attn PhilipF
Brown Esq, Columbus OH, Bower Greer &
Panzarella, Attn AmyJ Greer Esq, Pittsburgh, for
Defendants' Counsel: (Continental & CNA).
Jackson Leewis Schnitzler & Krupman, Attn JonahH
Spivak Esq, Pittsburgh, for Defendants' Counsel: (C-
Cor).

OPINION and ORDER OF COURT
AMBROSE, District J.

SYNOPSIS

*1 Pending is a Motion to Dismiss all ERISA claims
asserted against the Employer. The Motion is granted
in part and denied in part. It is granted insofar as the
claims asserted in Counts V and VII are dismissed in
their entirety. It is further granted in that Count VI is
dismissed to the extent that it is premised upon a
violation of 29 U.S.C. § 1132(a)(1)(B). The Motion
is denied, however, with respect to Count VI, insofar
as Count VI is premised upon a violation of 29
U.S.C. § 1132(a)(3).

OPINION

Erik Valentino ("the Decedent") was employed by
Defendant C-Cor net Corp. ("the Employer"). While
traveling to Bangkok, Thailand on company business,
the Decedent mistakenly ingested morphine and died.
This suit arises out of attempts to collect on a

business travel insurance policy ("the Policy")
established by the Employer.

The Decedent named his minor sister, Joelle
Valentino ("Valentino"), as the beneficiary of the
Policy. According to the allegations set forth in the
Amended Complaint, the Valentino family contacted
the Employer on numerous occasions in an effort to
obtain copies of the Policy, and to assert a claim
under the Policy. Nevertheless, the Employer failed
to provide any assistance. No benefits have yet been
paid-despite the fact that the Decedent died in 1995.

Decedent's parents then commenced this action on
behalf of Joelle Valentino, in the Court of Common
Pleas of Allegheny County, Pennsylvania.[FN1] The
Complaint originally named only Continental
Casualty Company, CNA Financial Corporation and
CNA Insurance Companies (hereinafter collectively
referred to as "Continental") as Defendants.
Continental removed the action to this forum, and
filed an Amended Answer alleging that the claims
were untimely. Thereafter, Valentino filed an
Amended Complaint, naming the Employer as
another Defendant.

FN1. For ease of reference, the Court will
refer to the Plaintiff(s) simply as
"Valentino."

As it currently reads, the Amended Complaint sets
forth seven claims. Counts I through IV are asserted
against Continental only, and are beyond the scope of
this Opinion. Counts V, VI and VII are directed
against the Employer.[FN2] In Count V, Valentino seeks
to recover under § 1132(c)(1) of ERISA, for "failure
to provide plan information." In Count VI, Valentino
seeks "specific performance" under § 1132(a)(3)
and/or § 1132(a)(1)(B) of ERISA, based upon
breaches of fiduciary duties. Finally, in Count VII,
Valentino seeks "reformation" under § 1132(a)(3)
and/or § 1132(a)(1)(B) of ERISA, also based upon
breaches of fiduciary duties.

FN2. Count VII is also directed against
Contintental.

Pending is the Employer's Motion to Dismiss (Docket
No. 21). The Employer contends that each claim

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                   Page 2
Not Reported in F.Supp.2d, 2000 WL 33341979 (W.D.Pa.), 25 Employee Benefits Cas. 2316
**(Cite as: Not Reported in F.Supp.2d)**

asserted is deficient in some respect-either that it is time barred, or that the requested relief is unavailable. After careful consideration, and for the reasons set forth below, the Motion is granted in part and denied in part.

### STANDARD OF REVIEW

In deciding a Motion to Dismiss, all factual allegations and all reasonable inferences therefrom, must be accepted as true and viewed in the light most favorable to the Plaintiff. _Colburn v. Upper Darby Township,_ 838 F.2d 663, 666 (3d Cir.1988), _cert. denied,_ 489 U.S. 1065 (1988). I may dismiss a complaint only if it appears beyond a reasonable doubt that Plaintiff can prove no set of facts in support of his claims which would entitle him to relief. _Conley v. Gibson,_ 355 U.S. 41, 45 (1957). In ruling on a motion for failure to state a claim, I must look to "whether sufficient facts are pleaded to determine that the complaint is not frivolous, and to provide defendants with adequate notice to frame an answer." _Colburn,_ 838 F.2d at 666.

### ANALYSIS

I. _Count V- § 1132(c)(1)_

**\*2** In Count V, Valentino seeks relief under § 1132(c)(1). Section 1132(c)(1) provides, in relevant part, that:
Any administrator ... who fails or refuses to comply with a request for information ... by mailing the material requested to the last known address of the requesting participant or beneficiary within thirty days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c)(1). Here, Valentino insists that the Employer's repeated refusals to tender the requested information and to provide help, violates § 1132(c)(1). She seeks the imposition both of the $100 a day fine and an award of benefits. She contends that the reference to "other relief" encompasses the award of benefits. The Employer contends that the claim is untimely.[FN2]

FN2. The Employer raises additional

arguments in support of dismissal. However, because I find the limitations argument to be persuasive, I need not address any other bases.

While there may be disagreement as to when Valentino's claim expires / expired, there appears to be no doubt as to when it _accrued._ A claim for civil penalties accrues when: (1) a plaintiff makes a demand for information to which she is entitled under ERISA; and (2) the defendant fails to supply the requested information within thirty days of the demand. _See_ § 1132(c)(1) and _Cohen v. Zarwin & Baum, P.C.,_ Civ. No. 93-2145, 1993 WL 460795 at *2 (E.D.Pa. Nov. 9, 1993). Significantly, Valentino does not disagree with the Employer's contention that her claim accrued, at the latest, thirty days after the July 17, 1996 letter to the Employer requesting a copy of the Policy. She did not commence this suit against the Employer until January of 2000-approximately 3 1/2 years later. The question thus becomes, did the statute of limitations expire during this intervening period.

I agree with the Employer that it did. Because ERISA does not contain a statute of limitations expressly governing claims asserted under § 1132(c)(1), I must apply the most analogous state law statute. _See Cohen,_ 1993 WL 460795 at * 2; _Harless v. Research Institute of America,_ 1 F.Supp.2d 235, 239 (S.D.N.Y.1998); and _Middleton v. The Russell Group, Ltd.,_ 924 F.Supp. 48, 49-50 (M.D.N.C.1996). Here, the most analogous state statute of limitations is that set forth in 42 Pa. Cons.Stat. Ann. § 5524(5).

Section 5524(5) provides a two year statute of limitations period in "[a]n action upon a statute for a civil penalty and forfeiture." 42 Pa. Cons.Stat. Ann. § 5524(5). Thus, Valentino's claim would have expired, at the latest, two years from approximately August of 1996-more than 1 1/2 years before she commenced this suit against the Employer. Consequently, her claim must be dismissed as untimely.

In so holding, I reject Valentino's attempts to characterize the $100 fine imposed by § 1132(c)(1) as something other than penal in nature. In _Groves v. Modified Retirement Plan for the Hourly Paid Employees of the Johns Manville Corp. and Subsidiaries,_ 803 F.2d 109 (3d Cir.1986), the Third Circuit court declared that, though the issue was "close," the fine imposed by § 1132(c)(1) was penal in nature. Indeed, the decision is replete with references to the $100 fine as providing for "penalties" and "sanctions." Further, the court

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                  Page 3
Not Reported in F.Supp.2d, 2000 WL 33341979 (W.D.Pa.), 25 Employee Benefits Cas. 2316
**(Cite as: Not Reported in F.Supp.2d)**

explained that it viewed the statute as penal in nature, because the primary purpose of the provision was to induce compliance with ERISA's requirements. Compensation awarded to the claimants is, in the court's view, only a secondary purpose.

**\*3** I decline Valentino's invitation to reject the Third Circuit court's characterization of the nature of § 1132(c)(1). Indeed, its decision in this regard is consistent with those of many other courts. *See Cohen,* 1993 WL 460795 at \* 2 (applying 42 Pa. Cons.Stat. Ann. § 5534(5) to a claim under 29 U.S.C. § 1132(c)(1)); *Damon v. Unlsys Corp.,* 841 F.Supp. 1094, 1097 (D.Colo.1994) (stating that "the state law claim most analogous to a § 1132(c)(1) civil penalty claim is an action for civil penalties pursuant to a penal statute"); *Harless,* 1 F.Supp.2d at 240 (same); and *Kumar v. Higgins,* 91 F.Supp.2d 1119, 1123-24 (S.D.N.Y.1998) (same).[FN3]

> FN3. I recognize that the *Abbott v. Ridgik, Steinberg & Associates,* 609 F.Supp. 1216 (D.N.J.1985) court reached a contrary decision. I do not find the *Abbott* decision to be persuasive. First, the decision was rendered before, and without the benefit of, the Third Circuit court's conclusion in *Groves.* Further, I do not believe that, because section 1132(c)(1) vests the district court with discretion in fashioning the penalty, the overriding purpose of the statute must be compensatory, rather than penal, in nature. Finally, the *Abbott* court expressed a reluctance to remove the "teeth" of section 1132(c)(1) by imposing a short statute of limitations. I do not find that the imposition of such a statute minimizes the effectiveness of the provision. A violation of section 1132(c)(1) is a discrete, identifiable act. A claimant knows of any violation within 31 days of issuing a written request for information.

I also reject Valentino's efforts to apply a different statute of limitations to the final phrase of § 1132(c)(1) quoted above-that portion which allows a court to award "such other relief as it deems proper." Valentino believes that "other relief" can encompass the award of benefits, and that such an award should be subject to a statute of limitations which would govern a breach of contract. First, I note that Valentino has not identified any case law in which a court has severed § 1132(c)(1) in this manner and has applied different statute of limitations. Further, I

believe that the reference to "other relief" is simply ancillary in nature. It does not detract from the fact that the overall purpose of the statute is to ensure an administrator's compliance with ERISA, and to penalize a failure to so comply.

### II. *Count VI- § 1132(a)(1)(B) and § 1132(a)(3)*

In Count VI, Valentino charges the Employer with breaching its fiduciary duties by misrepresenting the nature of the travel insurance benefits. She seeks relief under § 1132(a)(1)(B) and § 1132(a)(3). The Employer responds that the claim is deficient in several respects.

Specifically, the Employer urges that relief is not available under § 1132(a)(1)(B) for the breach of fiduciary duties. I agree. In *Haberern v. Kaupp Vascular Surgeons Pension Plan,* 24 F.3d 1491, 1500 (3d Cir.1994), *cert. denied,* 513 U.S. 1149 (1995), the Third Circuit court unequivocally stated that a beneficiary "may not recover damages for a breach of fiduciary duty under section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B)." *See also Smith v. The Prudential Health Care Plan, Inc.,* Civ. No. 97-891, 1997 WL 587340 at \* 3 n. 4 (E.D.Pa. Sept. 10, 1997).[FN4] Consequently, to the extent that Count VI is premised upon § 1132(a)(1)(B), it is dismissed.

> FN4. Valentino ignores the *Haberern* decision entirely, citing instead to the decision rendered in *Gridley v. Cleveland Pneumatic Co.,* 924 F.2d 1310 (3d Cir.1991). I do not find the *Gridley* decision to be applicable here, however, because it does not discuss the award of benefits under § 1132(a)(1)(B) for a breach of fiduciary duties.

The Employer offers additional bases for dismissing Count VI, to the extent that it is premised upon § 1132(a)(3). Section 1132(a)(3) permits a beneficiary to bring an action "... to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3)(B).[FN5] "To make out a claim for breach of fiduciary duty under ERISA, a plaintiff must show that (1) the company was acting in a fiduciary capacity; (2) the company made affirmative misrepresentations or failed to adequately inform plan participants and beneficiaries; (3) the company knew of the confusion generated by its misrepresentations or silence; and (4) there was

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                Page 4
Not Reported in F.Supp.2d, 2000 WL 33341979 (W.D.Pa.), 25 Employee Benefits Cas. 2316
**(Cite as: Not Reported in F.Supp.2d)**

resulting harm to employees." *International Union v. Skinner Engine Co.,* 188 F.3d 130, 148 (3d Cir.1999) (citations omitted).

> FN5. Section 1132(a)(3)(A) permits a beneficiary to seek an injunction. Given that Valentino does not mention injunctive relief anywhere either in her Amended Complaint or in her Brief, I surmise that she does not seek relief under this section.

**\*4** The Employer challenges the sufficiency of the pleadings regarding the second and fourth elements. Specifically, it rejects the notion that it made affirmative misrepresentations or remained silent on any material issue, and/or that any such misrepresentations or silence caused Valentino to suffer harm. I reject both contentions.

As to the first challenge, Valentino adequately alleges that the Employer failed to fully inform her of the available benefits and/or the method of asserting a claim for the benefits. Consequently, she complains of the Employer's silence. She also charges the Employer with having made material misrepresentations. She contends that there exists a discrepancy between the language used in the different materials regarding whether or not the travel insurance benefits were payable only upon accidental death. These allegations are sufficient to satisfy the pleading requirements with respect to the second element.[FN6]

> FN6. The Employer questions whether any such misrepresentations could have been "material" that is, whether there existed a substantial likelihood that the statements would mislead a reasonable beneficiary. This challenge implicates factual issues which are beyond the scope of a Rule 12(b)(6) motion. For now, Valentino need merely meet pleading requirements. She has done so. The Employer is free to raise any factual arguments at the close of discovery in the context of a motion for summary judgment.

As to the second challenge-causation-again, the Amended Complaint contains sufficient allegations. In paragraphs 32 and 33, Valentino contends that, as a result of the Employer's misrepresentations and/or omissions, she did not timely learn of the need to file a proof of claim, or of any limitations periods. She

argues that the denial of benefits resulted from this lack of knowledge.

### III. Count VII- *§ 1132(a)(1)(B) and § 1132(a)(3)*

In Count VII, Valentino repeats her allegations that there existed a discrepancy between the various materials describing the travel insurance benefits. She surmises that the discrepancy arose due to a mutual mistake between the Employer and Continental. Specifically, she contends that those parties intended to put in place a travel insurance benefits policy which provided for benefits regardless of whether the cause of death was accidental. Accordingly, she seeks a "reformation" of the policy pursuant to ERISA § 1132(a)(1)(B) and § 1132(a)(3).

As with Count VI, the Employer contends that a claim for breach of fiduciary duties cannot be brought pursuant to § 1132(a)(1)(B). I agree, for the reasons set forth above, that § 1132(a)(1)(B) does not provide a remedy for a breach of fiduciary duties. Consequently, Count VII is dismissed insofar as it is premised upon § 1132(a)(1)(B).

The Employer asserts several other bases for dismissing that portion of Count VII which is premised upon alleged violations of § 1132(a)(3). I need, however, consider only one. The Employer argues that, in Count VII, Valentino seeks what is essentially the award of benefits under the Policy. It then reasons that, because the recovery of benefits is available in an action asserted under § 1132(a)(1)(B), there is no need to resort to the "equitable relief" available under § 1132(a)(3). I agree.

As the Employer points out, the Supreme Court observed in *Varity v. Howe,* 516 U.S. 489, 515 (1996) that equitable relief under § 1132(a)(3) is not appropriate where another provision of ERISA provides adequate relief for the injury. Here, Valentino's claim for reformation is based upon her belief that the Policy in question entitles her to the award of benefits. Yet § 1132(a)(1)(B) provides a remedy concerning the improper denial of benefits. Indeed, Valentino included such a claim in her Amended Complaint. As such, her claim in Count VII is no different than her claim for benefits. Under *Varity,* the relief requested cannot then be "appropriate."

**\*5** Significantly, I note that Valentino offers no rebuttal to the Employer's argument in this regard.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 33341979 (W.D.Pa.), 25 Employee Benefits Cas. 2316
**(Cite as: Not Reported in F.Supp.2d)**

Valentino does not deny that the relief she seeks pursuant to § 1132(a)(3) is already available under § 1132(a)(1)(B). Nor does she make any attempt to distinguish the many cases cited by the Employer in support of the proposition that her disguised claim for benefits in Count VII is not viable. I view Valentino's failure to respond to the Employer's argument in this regard to be a concession that the claim must be dismissed.

## ORDER OF COURT

AND NOW, this 29th day of June, 2000, after careful consideration, and for the reasons set forth in the accompanying Opinion, it is ORDERED that the Motion to Dismiss (Docket No. 21) is granted in part and denied in part. It is GRANTED insofar as the claims asserted in Counts V and VII are DISMISSED in their entirety. It is further GRANTED in that Count VI is DISMISSED to the extent that it is premised upon a violation of 29 U.S.C. § 1132(a)(1)(B). The Motion is DENIED, however, with respect to Count VI, insofar as Count VI is premised upon a violation of 29 U.S.C. § 1132(a)(3).

It is further ORDERED that the parties attend a Status Conference scheduled for Monday, August 7, 2000, at 9:00 A.M. In the Chambers of the Honorable Donetta W. Ambrose, 620 U.S. Post Office and Courthouse, Pittsburgh, Pennsylvania. Counsel shall have settlement authority.

W.D.Pa.,2000.
Valentino v. Continental Cas. Co.
Not Reported in F.Supp.2d, 2000 WL 33341979 (W.D.Pa.), 25 Employee Benefits Cas. 2316

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT C

**Reply Brief in Further Support of Google Inc.'s
Motion to Dismiss the Amended Complaint**

Westlaw.

Not Reported in F.Supp.2d                                                                 Page 1
Not Reported in F.Supp.2d, 2005 WL 2045807 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

**H**
Briefs and Other Related Documents
Scognamillo v. Credit Suisse First Boston
LLCN.D.Cal.,2005.Only the Westlaw citation is
currently available.
United States District Court,N.D. California.
Frank SCOGNAMILLO, et al., Plaintiffs,
v.
CREDIT SUISSE FIRST BOSTON LLC, et al.,
Defendants.
**No. C03-2061 TEH.**

Aug. 25, 2005.

Leo Ray Beus, Quinton F. Seamons, Beus Gilbert
PLLC, Scottsdale, AZ, Robert S. Green, Robert A.
Jigarjian, Green Welling LLP, San Francisco, CA, for
Plaintiffs.
Paul L. Stoller, Don Bivens, Meyer Hendricks &
Bivens, P.A., Joel P. Hoxie, Jennifer L. Hadley, Snell
& Wilmer L.L.P., Maureen Beyers, Osborn Maledon,
P.A., Phoenix, AZ, Fraser Lee Hunter, Robert Bruce
McCaw, Wilmer Cutler Pickering Hale & Dorr LLP,
Mitchell A. Lowenthal, Cleary Gottlieb Steen &
Hamilton LLP, New York, NY, Bruce B. Kelson,
Stephen D. Hibbard, Shearman & Sterling LLP,
David T. Vanalek, Joseph E. Floren, Stephen S.
Mayne, Steefel, Levitt & Weiss, A Professional
Corporation, Benjamin J. Holl, Drinker Biddle &
Reath LLP, Dirk M. Schenkkan, Evan Nadel,
Howard Rice Nemerovski Canady et. al., San
Francisco, CA, Caroline McIntyre, Daniel J.
Bergeson, Bergeson LLP, San Jose, CA, for
Defendants.

*ORDER GRANTING MOTIONS TO DISMISS BY*
*DEFENDANTS SHELL, LONGINOTTI, AND*
*QUATTRONE*
HENDERSON, J.
**\*1** This matter came before the Court on Monday,
July 11, 2005, on motions to dismiss filed by
Defendants West Shell III, John F. Longinotti, and
Frank Quattrone. The parties submitted supplemental
briefs on the impact of the United States Supreme
Court's decision in *Dura Pharmaceuticals, Inc. v.*
*Broudo, --- U.S. ----, 125 S.Ct. 1627, 161 L.Ed.2d*
*577 (2005),* on August 5, 2005. After carefully
reviewing all of the parties' papers and considering
the parties' oral arguments, relevant case law, and
Plaintiffs' factual allegations, the Court now

GRANTS all three motions for the reasons discussed
below.

BACKGROUND

The parties are familiar with the factual background
of this case, and the Court has already summarized
Plaintiffs' allegations in a prior order. Thus, the Court
need not re-summarize the allegations here.

By agreement of the parties and order of this Court,
Plaintiffs filed a second amended complaint on
January 13, 2004.[FN1] It was not until the second
amended complaint that Defendant Quattrone was
added to the case. Again by agreement of the parties
and order of this Court, Plaintiffs filed a third
amended complaint ("TAC") on May 3, 2004.

> [FN1.] Plaintiffs actually filed the second
> amended complaint on December 12, 2003.
> However, they did not have leave of court to
> do so, and the parties later stipulated that
> Plaintiffs would be granted such leave, but
> that the complaint would not be deemed
> filed until the Court signed off on the
> stipulation. The Court's approval of the
> parties' stipulation and proposed order was
> filed on January 13, 2004.

On September 27, 2004, Defendants Credit Suisse
First Boston ("CSFB"), George Boutros, and Storm
Duncan (collectively referred to as the "CSFB
Defendants") filed motions to dismiss and strike
portions of the third amended complaint. On
February 1, 2005, the Court granted in part and
denied in part the CSFB Defendants' motion to strike.
The Court granted the motion regarding allegations
that reference unadjudicated government
investigations, regulatory actions, and other
litigation, and it also granted the motion to strike
allegations regarding Defendant Quattrone's
compensation at CSFB, the termination of his
employment at CSFB, and his indictment and trial on
charges of obstruction of justice. The Court denied
the motion to strike on all other issues.

On March 21, 2005, the Court granted in part and
denied in part the CSFB Defendants' motion to
dismiss. The Court dismissed without prejudice

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 2045807 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

Plaintiffs' fraud-based claims that rely on allegations that Defendants Boutros and Duncan "encouraged many of the practices described in this Complaint" and "in some instances, personally engaged in the practices described in this Complaint" for failure to plead fraud with particularity. In addition, the Court dismissed with prejudice Plaintiffs' fraud-based claims based on alleged misstatements regarding the business prospects and future value of Netcentives as non-actionable statements of opinion, and it also dismissed with prejudice Plaintiffs' claim for violation of *California Corporations Code sections 25401* and *25501* for lack of privity. The Court denied the CSFB Defendants' motion in all other respects, concluding that the allegations viewed in a light most favorable to Plaintiffs were sufficient to withstand scrutiny at this early stage of the proceedings.

Defendants Shell, Longinotti, and Quattrone have now filed separate motions to dismiss the claims asserted against them in the third amended complaint. This order addresses the issues raised in all three motions.

### LEGAL STANDARD

**\*2** Dismissal is appropriate under *Federal Rule of Civil Procedure 12(b)(6)* when a plaintiff's allegations fail "to state a claim upon which relief can be granted." *Fed.R.Civ.P. 12(b)(6)*. A court should not grant dismissal "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)*. Moreover, dismissal should be with leave to amend unless it is clear that amendment could not possibly cure the complaint's deficiencies. *Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1296 (9th Cir.1998)*.

In deciding whether a case should be dismissed, a court may generally only consider the complaint and any attached exhibits that have been incorporated therein. *Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir.2001)*. However, the court may consider a document external to the complaint if the complaint "necessarily relies" on the document and no party contests the document's authenticity. *Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir.1998)*. The court may also consider facts for which judicial notice is appropriate. *Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir.1994)*. Thus, while the court must generally accept as true the factual allegations of the complaint

and construe those allegations in the light most favorable to the plaintiff, the court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.2001), amended by 275 F.3d 1187 (9th Cir.2001)*. "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Id.*

### DISCUSSION

### I. Breach of Fiduciary Duty

The Court summarized the law governing claims for breach of fiduciary duty in its order on the CSFB Defendants' motion to dismiss:
"The mere fact that in the course of their business relationships the parties reposed trust and confidence in each other does not impose any corresponding fiduciary duty in the absence of an act creating or establishing a fiduciary relationship known to law." *City Solutions, Inc. v. Clear Channel Communications, Inc., 201 F.Supp.2d 1048, 1050 (N.D.Cal.2002)* (citing *Worldvision Enterprises, Inc. v. Am. Broad. Cos., 142 Cal.App.3d 589, 595, 191 Cal.Rptr. 148 (1983)*). To become a fiduciary, a person "must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law." *Comm. on Children's Television, Inc. v. Gen. Foods Corp., 35 Cal.3d 197, 221, 197 Cal.Rptr. 783, 673 P.2d 660 (1983)*. That is, a fiduciary "assumes duties beyond those of mere fairness and honesty in marketing its product-he must undertake to act on behalf of the beneficiary, giving priority to the best interest of the beneficiary." *Id. at 222, 197 Cal.Rptr. 783, 673 P.2d 660*. A fiduciary relationship generally does not arise in a buyer-seller relationship, "even though sellers routinely make representations concerning their product, often on the basis of a claimed expert knowledge about its utility and value." *Id.* However, "[d]oubtless in an exceptional case a court might be able to find that a close and trusting relationship between buyer and seller, in which the buyer relied on the seller and the seller recognized that reliance, justified imposing fiduciary duties." *Id. at 222 n. 22, 197 Cal.Rptr. 783, 673 P.2d 660*.

**\*3** Mar. 21, 2005 Order Granting in Part & Denying in Part the CSFB Defs.' Mot. to Dismiss at 3-4 [hereinafter "CSFB Mot. to Dismiss Order"].

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 3
Not Reported in F.Supp.2d, 2005 WL 2045807 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

In ruling on the CSFB Defendants' motion to dismiss, the Court found that the allegations in the TAC demonstrate that Plaintiffs negotiated aggressively during the merger, thus suggesting that the negotiations were arms-length. Furthermore, the Court found that the merger agreement itself expressly states that the parties agreed that they were represented by counsel during the negotiation, preparation, and execution of the agreement. The Court noted that the fiduciary duty claims therefore appeared to be unfounded, and that Plaintiffs did not identify a single case where a financial advisor in an arms-length negotiation was found to owe fiduciary duties to the opposing party. Nonetheless, the Court concluded that Plaintiffs' allegations were sufficient to withstand a motion to dismiss:

Plaintiffs specifically allege that Defendant Duncan, on behalf of all Defendants, told Plaintiffs that they "need not retain their own financial adviser or separate investment banker because CSFB was the 'underwriter and 'market maker' for Netcentives shares, and that CSFB owed duties to the marketplace, including duties to Plaintiffs, to disclose all material information." TAC ¶ 89. Plaintiffs further allege that "Duncan insisted that all CSFB personnel were 'straight shooters.' These representations, along with the business advice provided by Duncan and Boutros to Plaintiffs during the Merger, induced Plaintiffs to impose trust and confidence in CSFB and each Individual Defendant and to consider the Merger a joint venture in which they did not need separate advisers." *Id.* Thus, Defendants allegedly went beyond saying they had confidential or superior information about Netcentives. When viewed in a light most favorable to Plaintiffs, the allegations suggest that Defendants induced Plaintiffs' trust and convinced Plaintiffs that Defendants would be acting in Plaintiffs' best interest. This is sufficient to state claims for breach of fiduciary duty, and the Court therefore DENIES Defendants' motion as to these claims.

*Id.* at 4-5.

### A. Shell and Longinotti

Plaintiffs heavily rely on paragraph 89 of the TAC to support their breach of fiduciary claims against Shell and Longinotti, but that paragraph only alleges that Duncan made statements "on behalf of all Defendants." At oral argument, the Court asked Plaintiffs what statements or actions by Shell or Longinotti-as opposed to statements or actions by

Boutros, Duncan, or CSFB-allegedly gave rise to a fiduciary relationship. The Court further asked Plaintiffs if they had any authority for their proposition that Shell and Longinotti became Plaintiffs' fiduciaries because Duncan allegedly spoke on their behalf. These questions were included in a list of questions distributed to all counsel prior to argument, yet Plaintiffs' counsel failed to respond. The Court considers this failure to respond to be a concession that Plaintiffs can allege no statements or actions by Shell or Longinotti, as opposed to statements or actions allegedly made on their behalf, that may give rise to a fiduciary duty. By failing to respond to the Court's questioning, Plaintiffs also conceded that they have no authority for the proposition that Shell and Longinotti may have entered into a fiduciary relationship with Plaintiffs based on statements allegedly made on their behalf by a third party.

*4 Plaintiffs do attribute several statements to Shell or Longinotti in the TAC, but these are insufficient to give rise to a fiduciary duty. For example, Plaintiffs allege that Shell and Longinotti, like Boutros and Duncan, represented that they had superior inside information that Plaintiffs should rely upon, and that Shell and Longinotti encouraged Plaintiffs to be team players. As the case law cited above demonstrates, this is not enough to establish a fiduciary relationship; instead, it is mere puffery that would likely be present in any sales relationship. It is highly unlikely that the CEO and CFO of a company on the other side of a merger deal would seek to act in the target company's best interests, and Plaintiffs have failed to point to any specific allegations of statements or actions by Shell or Longinotti that indicate that this case is so exceptional that the fiduciary duty claims should be allowed to proceed. Accordingly, with good cause appearing, the Court GRANTS the motion to dismiss the breach of fiduciary duty claims against Shell and Longinotti with prejudice. Plaintiffs have already had two opportunities to amend the complaint, and their failure to respond to the Court's questioning on what already appears to be a tenuous claim convinces the Court that further leave to amend would be futile.

### B. Quattrone

Quattrone presents an even more tenuous case than Shell and Longinotti. Plaintiffs nowhere allege any direct interactions between themselves and Quattrone, and they admitted at oral argument that Quattrone had no involvement in the merger that

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 2045807 (N.D.Cal.)

(Cite as: Not Reported in F.Supp.2d)

forms the basis for this lawsuit. Instead, Plaintiffs assert that Quattrone assumed a fiduciary relationship with Plaintiffs because, as the director of the group at CSFB that handled the Netcentives IPO, he knew that the Netcentives prospectus contained fraudulent misrepresentations and that Plaintiffs were "invited to rely upon CSFB and the Prospectus." Opp'n at 30. Even if that were true, however, it is not enough to show that Quattrone knowingly undertook to act on behalf and for the benefit of Plaintiffs, which is what is required to state a claim for breach of fiduciary duty. The Court therefore GRANTS Quattrone's motion to dismiss the breach of fiduciary duty claims against him. Dismissal of these claims is with prejudice because, even if given leave to amend, Plaintiffs could not allege that Quattrone somehow assumed fiduciary duties to individuals he never had any interactions with on a merger with which he was not involved.

## II. Aiding and Abetting Breach of Fiduciary Duty

To be liable for aiding and abetting breach of a fiduciary duty, a defendant must have knowledge of the breach and must have substantially assisted or encouraged the breach. *Ortho-Med, Inc. v. Micro-Aire Surgical Instruments, Inc.,* No. CV 93-7621 JGD, 1995 WL 293180, at *12 (C.D.Cal. Apr.10, 1995). Plaintiffs do not dispute that these are elements of a claim for aiding and abetting a breach of fiduciary duty.

### A. Shell and Longinotti

*5 Plaintiffs cite paragraphs 269-86 of the TAC as evidence that they have sufficiently alleged both that Shell and Longinotti knew of the breach of fiduciary duty by the CSFB Defendants and that they substantially assisted or encouraged that breach. However, these paragraphs contain only summary allegations. For example, paragraph 285 of the TAC merely alleges that "[e]ach of the Individual Defendants provided substantial assistance to each of the other Individual Defendants and CSFB in breaching their respective fiduciary duties by aiding, abetting, participating in and/or assisting each of the other Individual Defendants and CSFB in their improper and wrongful conduct." The Court need not accept as true such conclusory allegations where, as here, Plaintiffs have pointed to no specific factual allegations regarding Shell's or Longinotti's knowledge of any fiduciary duties the CSFB Defendants may have undertaken on Plaintiffs'

behalf, or to any specific allegations regarding what Shell or Longinotti allegedly did to substantially assist or encourage breach of any such duties. Given Plaintiffs' failure to identify specific allegations, and their having had multiple opportunities to do so, the Court finds good cause to GRANT the motion to dismiss with prejudice the aiding and abetting claims against Shell and Longinotti.

### B. Quattrone

Plaintiffs also fail to plead the necessary elements of an aiding and abetting claim as to Quattrone. Plaintiffs do not, for example, discuss any knowledge by Quattrone of the merger negotiations between Netcentives and UVN, let alone knowledge of statements or actions by the other defendants that may have created a fiduciary duty. Nor have Plaintiffs alleged any actions by Quattrone that could have substantially assisted someone else's breach of fiduciary duties during the merger negotiations. Plaintiffs' response to Quattrone's motion is even more meager than their response to Shell's and Longinotti's motions, since Plaintiffs failed even to cite any paragraphs of the TAC to support their conclusory statement that "Plaintiffs have adequately pled, in accordance with Rule 9(b), the elements of a claim against Quattrone for aiding and abetting breach of fiduciary duty." Opp'n at 53. Accordingly, the Court GRANTS Quattrone's motion to dismiss with prejudice the aiding and abetting claim asserted against him.

### III. Negligence

### A. Shell and Longinotti

Like the CSFB Defendants, Shell and Longinotti argue that they owed no actionable duty of reasonable care to Plaintiffs and that Plaintiffs' negligence claim must therefore fail. In ruling on the CSFB Defendants' motion to dismiss, the Court observed that:
Defendants correctly assert that it would make no sense to impose a duty of negligence on professional advisors in the general case: "To impose the duty asserted by plaintiffs here would place every financial advisor in a hopeless conflict of interest-the advisor could never fulfill its duty to negotiate the best deal possible for its own client without at least the fear of violating a countervailing duty to ensure that the terms of the deal were also advantageous to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                          Page 5
Not Reported in F.Supp.2d, 2005 WL 2045807 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

its client's counterparty/adversary." Mot. at 10. *See also Quelimane Co. v. Stewart Title Guar. Co.,* 19 Cal.4th 26, 59, 77 Cal.Rptr.2d 709, 960 P.2d 513 ("In the business arena it would be unprecedented to impose a duty on one actor to operate a business that would ensure the financial success of transactions between third parties. With rare exceptions, a business entity has no duty to prevent financial loss to others with whom it deals directly.").

**\*6** CSFB Mot. to Dismiss Order at 5-6. The Court declined to dismiss Plaintiffs' negligence claims against the CSFB Defendants because the Court found that Plaintiffs may be able to demonstrate the existence of a fiduciary relationship between the CSFB Defendants and Plaintiffs, and Defendants conceded that such a relationship would give rise to a duty under negligence law. *Id.* at 6.

However, as discussed above, the Court reached a contrary conclusion regarding Shell and Longinotti, finding that Plaintiffs' breach of fiduciary duty claims fail as to these defendants because Plaintiffs have not adequately alleged the existence of a fiduciary relationship. Thus, it would be extraordinary to impose a duty of care on Shell and Longinotti under negligence law, and Plaintiffs have cited no precedent for doing so.[FN2]

> FN2. Plaintiffs assert that Defendants were negligent because they failed to disclose material information. However, the single case Plaintiffs cite in support of this proposition was a fraud case, not a negligence case. *See Reyes v. Atl. Richfield Co.,* 12 F.3d 1464, 1472 (9th Cir.1993); *see also Goodman v. Kennedy,* 18 Cal.3d 335, 346-48, 134 Cal.Rptr. 375, 556 P.2d 737 (1976) (discussing breach of duty to disclose as the basis for a fraud claim). Although a defendant may be negligent for failing to disclose material information if such failure violates the relevant standard of care, that defendant must first be found to owe a duty of care to the plaintiff. As discussed below, the Court does not find it appropriate to impose such a duty in this case.

In addition, although Plaintiffs argue that they were not sophisticated or knowledgeable with respect to mergers, this Court has already explained that Plaintiffs allege that they were highly experienced businessmen and that Plaintiff Cresto was a major law partner in a department handling financial services, mergers, and acquisitions:

For example, the complaint alleges that the "management team," including Plaintiffs Scognamillo and Galasso, "was experienced and successful in developing and expanding the business of UVN." TAC ¶ 59. Prior to joining UVN, Plaintiff Galasso was the CEO of the consumer credit card division of Bank of America. *Id.* Plaintiff Scognamillo has more than twenty years of marketing experience and, together with Plaintiff Shein, developed and organized UVN. *Id.* ¶¶ 57-58. Plaintiff Cresto was laterally hired as a partner by Seyfarth Shaw in the "financial services, mergers and acquisitions" department. Defs.' Request for Judicial Notice Ex. 1. Elsewhere, the complaint alleges that Plaintiffs questioned the terms of the agreement, *e.g.,* TAC ¶ 92, and actually threatened to walk away from the deal shortly before the closing after the equity portion of the merger agreement was reduced from $27 million to $22 million, *id.* ¶¶ 116-17. In addition, the merger agreement explicitly states that the parties "agree that they have been represented by counsel during the negotiation, preparation, and execution of the Agreement." Hibbard Decl. Ex. E § 7.8.

CSFB Mot. to Dismiss Order at 7-8. These allegations belie any claim Plaintiffs now assert that they were powerless parties to this merger, or that they had no knowledge of business affairs, and Plaintiffs have failed to counter Defendants' argument that public policy dictates against imposing a negligence duty where, as here, Plaintiffs were knowledgeable, sophisticated businessmen and Defendants owed no fiduciary duties to Plaintiffs. *See Desert Healthcare Dist. v. PacifiCare, FHP, Inc.,* 94 Cal.App.4th 781, 792-93, 114 Cal.Rptr.2d 623 (2001) (citing *Quelimane,* 19 Cal.4th at 58, 77 Cal.Rptr.2d 709, 960 P.2d 513, and *Bily v. Arthur Young & Co.,* 3 Cal.4th 370, 403, 11 Cal.Rptr.2d 51, 834 P.2d 745 (1992)) (observing that, "where the plaintiffs are sophisticated, knowledgeable entities, distinguishable from the 'presumptively powerless consumer,' '[a]s a matter of economic and social policy, [the plaintiffs] should be encouraged to rely on their own prudence, diligence, and contracting power, as well as other informational tools' "). For all of the reasons discussed above, this Court concludes that Shell and Longinotti did not owe a duty of care to Plaintiffs to prevent them from suffering economic harm. To hold otherwise would require the unprecedented conclusion that a seller owes a duty to take reasonable steps to protect the economic interests of a buyer-even where no fiduciary relationship exists between the buyer and seller and the buyer is

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 6
Not Reported in F.Supp.2d, 2005 WL 2045807 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

sophisticated, represented by counsel, and not a powerless consumer. The Court refuses to make such an extraordinary holding and therefore GRANTS the motion to dismiss with prejudice the negligence claim asserted against Shell and Longinotti.

### B. Quattrone

**\*7** The Court has also found that Quattrone, like Shell and Longinotti, did not owe fiduciary duties to Plaintiffs as a matter of law. Thus, as with Shell and Longinotti, it would be unprecedented to impose a duty of care under negligence law on Quattrone under the factual allegations of this case.

Moreover, Plaintiffs specifically argue in their opposition that their negligence claim against Quattrone is not based on supervisory or vicarious liability, but is instead based on Quattrone's alleged direct participation in Defendants' allegedly negligent acts. However, Plaintiffs never allege any participation by Quattrone in the Netcentives/UVN deal. Absent any such allegations, Plaintiffs cannot establish that Quattrone owed them any duty in connection with the merger discussions.

Plaintiffs further allege that Quattrone owed them a duty of care by virtue of the standard of care allegedly established by various securities rules and regulations. However, Plaintiffs failed to respond to Quattrone's argument that National Association of Securities Dealers ("NASD") rules do not create legal duties to members of the general public, including Plaintiffs, and that the standard of care established by such rules is therefore irrelevant to a negligence claim against Quattrone. *See, e.g., Stevenson v. Rochdale Inv. Mgmt., Inc.,* No. CIV. A. 3:97CV1544L, 2000 WL 1278479, at \*9 (N.D.Tex. Sept.7, 2000) (NASD rules "do not impose a legal duty to perform some affirmative act or refrain from performing some act"). Even though NASD rules may be evidence of the proper standard of care in cases where a duty is found to exist, they do not in and of themselves establish any such duty. Similarly, Plaintiffs failed to respond to Quattrone's argument that section 17(a) of the Exchange Act "does not by any stretch of its language purport to confer private damages rights." *Touche Ross & Co. v. Redington,* 442 U.S. 560, 570, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979).

Plaintiffs also failed to respond to Quattrone's argument that the Securities and Exchange Commission ("SEC") regulations cited by Plaintiffs

do not apply to him. Quattrone argues that SEC Regulation M does not apply because Plaintiffs have failed to allege that Quattrone bid for, purchased, or induced anyone to bid for Netcentives stock during the restricted period after the Netcentives IPO. In addition, Quattrone argues that SEC Regulation S-K does not apply to him because he did not sign the registration statement and was an employee of the issuer's investment bank, not of the issuer. Plaintiffs' utter failure to respond to these arguments essentially concedes them. Given all of the above, the Court GRANTS Quattrone's motion to dismiss with prejudice the negligence claim asserted against him.

### IV. Fraud and Negligent Misrepresentation

#### A. Shell and Longinotti

Shell and Longinotti move to dismiss the fraud and negligent misrepresentation claims on grounds that any reliance by Plaintiffs was not justifiable. *Gonsalves v. Hodgson,* 38 Cal.2d 91, 100-01, 237 P.2d 656 (1951) (absence of justifiable reliance will preclude recovery on a fraud claim). As discussed above, the allegations in the TAC demonstrate that Plaintiffs were sophisticated businessmen who were represented by counsel during the negotiation, preparation, and execution of the merger agreement. Although the Court declined to dismiss the fraud claims against the CSFB Defendants based on lack of justifiable reliance, the Court did so only because Plaintiffs may be able to establish a fiduciary relationship with the CSFB Defendants. Plaintiffs cannot do so with respect to Shell or Longinotti, and any reliance on statements made by Shell or Longinotti would therefore have been unreasonable as a matter of law. Plaintiffs cannot demonstrate that, in the absence of a fiduciary relationship, reliance on statements made by individuals on the other side of a business transaction would have been justified in light of Plaintiffs' knowledge and experience. *See Kolodge v. Boyd,* 88 Cal.App.4th 349, 373, 105 Cal.Rptr.2d 749 (2001) (citations omitted) (noting that the issue "is whether the person who claims reliance was justified in believing the representation in the light of his own knowledge and experience"). Even though reasonable reliance is ordinarily a question of fact, *id.,* dismissal is appropriate where, as here, Plaintiffs can prove no set of facts that would entitle them to relief. Accordingly, the Court GRANTS the motion to dismiss Plaintiffs' fraud-based claims against Shell and Longinotti with prejudice. This includes Plaintiffs' claims for fraud

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

and negligent misrepresentation, as well as Plaintiffs' statutory claim for fraudulent deceit.

**\*8** In addition, several of Plaintiffs' fraud claims against Shell and Longinotti fail for independent reasons. First, the Court has already ruled that statements regarding the business prospects and future value of Netcentives are non-actionable statements of opinion. CSFB Mot. to Dismiss Order at 13. Second, as to statements about alleged other transactions with Netcentives and a supposedly pending merger, Plaintiffs' claims against Longinotti must be dismissed because Plaintiffs fail to allege with the requisite specificity that Longinotti ever made such statements. Instead, the TAC only alleges specific representations made by Duncan, Boutros, and Shell regarding these other deals. *See* TAC ¶¶ 115-32. Third, as to statements about the Netcentives IPO and prospectus, Shell and Longinotti correctly argue that Plaintiffs fail to allege any facts showing these defendants' roles in any market manipulation scheme. Instead, the allegations only describe in detail the schemes that CSFB allegedly employed during other contemporaneous IPOs. Plaintiffs fail to tie these allegations, or knowledge of CSFB's allegedly habitual fraudulent practices, to Shell or Longinotti. Plaintiffs do allege that "Shell and Longinotti knew, should have known, or were reckless in not knowing, of the manipulative arrangements for distributing and trading the Netcentives shares that occurred during the IPO and during the Merger and aftermarket trading." TAC ¶ 88. However, this is a conclusory allegation that the Court need not accept as true when, as here, it is unsupported by any factual allegations about how Shell or Longinotti could or would have known that CSFB engaged in unlawful market manipulation regarding the Netcentives IPO (if, in fact, any such manipulation occurred).

### B. Quattrone

Like Shell and Longinotti, Quattrone did not owe any fiduciary duties to Plaintiffs, and any reliance on statements made by Quattrone would therefore also have been unreasonable as a matter of law. Moreover, Plaintiffs' fraud and negligent misrepresentation claims are based on Defendants' alleged failure "to make full and fair disclosure of all material facts in the offer and sale of Netcentives shares in the Merger" and Defendants' alleged "material misrepresentations and omissions in the Merger." *E.g.,* TAC ¶¶ 313, 333. Given that Plaintiffs fail to allege any representations made by

Quattrone, or even any involvement by Quattrone in the merger discussions, they cannot state a claim against Quattrone based on such statements or omissions. Plaintiffs failed to respond to the Court's question at oral argument asking whether they had any other basis for asserting fraud claims against Quattrone, and the Court construes Plaintiffs' silence as a concession that they have no other basis to assert such claims. For all of these reasons, the Court GRANTS Quattrone's motion to dismiss with prejudice the fraud-based claims asserted against him.

### V. Corporations Code Claims

**\*9** Plaintiffs assert two claims under the California Corporations Code against all three moving defendants: violation of sections 25400 and 25500 (count XI) and violation of section 25403 (count XIII). Plaintiffs assert two additional claims against Defendant Quattrone, but not against Defendants Shell and Longinotti: violation of section 25401 (count XII) and violation of section 25504.1 (count XIV). Shell, Longinotti, and Quattrone move to dismiss all Corporations Code claims asserted against them.

### A. Shell and Longinotti

#### 1. Count XI (sections 25400/25500)

Sections 25400 and 25500 of the Corporations Code only apply to buyers or sellers of securities. *Kamen v. Lindly,* 94 Cal.App.4th 197, 206, 114 Cal.Rptr.2d 127 (2001) (holding that section 25500, which allows civil liability for a violation of section 25400, "applies only to a defendant who is either a person selling or offering to sell or buying or offering to buy a security"). Unlike sections 25401 and 25501, sections 25400 and 25500 do not require direct privity-i.e., a sale from defendant to plaintiff.

In the briefing and oral argument on the CSFB Defendants' motion to dismiss, Plaintiffs conceded that there was no direct privity between Plaintiffs and Defendants in this case-i.e., that CSFB, Boutros, and Duncan never sold or offered to sell Netcentives shares to Plaintiffs. Thus, Plaintiffs conceded that the merger negotiations did not constitute the sale of or offer to sell Netcentives stock, and they cannot now claim that the same negotiations constituted a sale or offer to sell stock by Shell or Longinotti. Plaintiffs

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 8
Not Reported in F.Supp.2d, 2005 WL 2045807 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

nowhere allege any other sale, offer to sell, purchase, or offer to purchase stock by Shell or Longinotti, and they failed to respond to the Court's questioning at oral argument on this point. Consequently, this Court GRANTS the motion to dismiss this claim against Shell and Longinotti with prejudice.

### 2. Count XIII (section 25403)

Shell and Longinotti argue that Plaintiffs' section 25403 claim must fail because this code section does not provide for a private right of action. In general, statutes in the 25400 series of the Corporations Code are penal in nature, and private remedies for violation of these code sections exist only by virtue of corresponding statutes in the 25500 series. _Cal. Amplifier, Inc. v. RLI Ins. Co.,_ 94 Cal.App.4th 102, 108-09, 113 Cal.Rptr.2d 915 (2001) (noting that sections 25400, 25401, and 25402 are penal, but private remedies for damages were available under the corresponding sections 25500, 25501, and 25502). Plaintiffs failed to identify any such corresponding statute for violation of section 25403. Indeed, Plaintiffs completely failed to respond to Defendants' argument; instead, Plaintiffs only responded to the argument raised in the CSFB Defendants' motion to dismiss. The Court construes Plaintiffs' failure to respond, either in their papers or at oral argument, as a concession, and the Court therefore GRANTS the motion to dismiss this claim against Shell and Longinotti with prejudice.

### B. Quattrone

*10 The parties agree that Section 25506 provides the relevant statute of limitations for Plaintiffs' Corporations Code claims. That section requires that actions must be brought "four years after the act or transaction constituting the violation or the expiration of one year after discovery by the plaintiff of the facts constituting the violation." Cal. Corp.Code § 25506. The Ninth Circuit has held that inquiry notice suffices to start the running of the statute, but there was no fiduciary relationship present in that case. _Kramas v. Sec. Gas & Oil, Inc.,_ 672 F.2d 766, 770 (9th Cir.1982). California law requires actual notice in cases of a fiduciary relationship. _Eisenbaum v. W. Energy Resources,_ 218 Cal.App.3d 314, 324-25, 267 Cal.Rptr. 5 (1990). Because the Court finds, as a matter of law, that Quattrone did not owe Plaintiffs any fiduciary duties, inquiry notice applies to the Corporations Code claims asserted against Quattrone.

Plaintiffs did not name Quattrone as a defendant until they filed their second amended complaint on January 13, 2004. Thus, with a one-year statute of limitations, Plaintiffs must show that they were not put on inquiry notice until after January 13, 2003. Inquiry notice requires that a plaintiff at least suspect that someone has done something wrong to him, and "failure to discover, or have reason to discover, the identity of the defendant does not postpone the accrual of a cause of action." _Norgart v. Upjohn Co.,_ 21 Cal.4th 383, 398-99, 87 Cal.Rptr.2d 453, 981 P.2d 79 (1999).

Plaintiffs cannot satisfy the one-year inquiry notice statute as to Quattrone because they filed their original complaint on March 1, 2002, and that complaint alleged all of the conduct on which their current claims are based. Thus, Plaintiffs clearly suspected wrongdoing by CSFB and two of its employees, Boutros and Duncan, at least as of the time of the filing of the original complaint. Plaintiffs boldly assert that they "had no knowledge of Quattrone's role in the Technology Group of CSFB and his relationship with Boutros and Duncan or reason to suspect his participation in the fraud until the indictment [of Quattrone] was announced" on April 23, 2003, Opp'n at 44, but this is not persuasive. The news articles and court documents from other cases plainly make clear that Quattrone headed the Technology Group at CSFB and worked with Boutros. Although, as Plaintiffs correctly argue, the Court cannot take judicial notice of the accuracy of the facts contained in the articles and documents submitted by Quattrone, the Court can take judicial notice that the statements were made-and that they were made much earlier than January 2003. Given the widespread nature of the publicity surrounding Quattrone's role at CSFB, any reasonable investigation by Plaintiffs would have revealed his role. The Court therefore GRANTS Quattrone's motion to dismiss all Corporations Code claims asserted against him based on the one-year statute of limitations. Dismissal of these claims is with prejudice because Plaintiffs cannot cure this deficiency by amendment.

### VI. Acting in Concert

*11 Shell, Longinotti, and Quattrone all argue that acting in concert is not an independent cause of action. For example, Quattrone notes that in _Chavers v. Gatke Corp.,_ the California Court of Appeal discussed acting in concert as a theory of joint tort liability rather than an independent cause of action.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 2045807 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

Page 9

*Chavers,* 107 Cal.App.4th 606, 615, 132 Cal.Rptr.2d 198 (2003). Shell and Longinotti argue that acting in concert is simply an antiquated means of phrasing conspiracy. *See Frost v. Hanscome,* 198 Cal. 550, 557, 246 P. 53 (1926) (defining "conspiracy" as a "concert of action between two or more persons to accomplish an unlawful purpose, or a lawful purpose by unlawful or fraudulent means"). Plaintiffs failed to respond to any of these arguments either in their papers or at oral argument-despite being given a written question specifically asking whether Defendants were correct when they argued that acting in concert was not an independent cause of action. Again, the Court construes Plaintiffs' failure to respond as a concession, and the Court therefore GRANTS the motion to dismiss with prejudice Plaintiffs' acting in concert claim.


### VII. Conspiracy

Quattrone and Shell both argue that conspiracy is not an independent cause of action. For support, they cite *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal.4th 503, 510-11, 28 Cal.Rptr.2d 475, 869 P.2d 454 (1994), in which the court wrote that "[c]onspiracy is not a cause of action.... Standing alone, a conspiracy does no harm and engenders no tort liability." However, Defendants interpret this quote out of context. Although the court there did write that "[c]onspiracy is not a cause of action," the court later went on to describe the "elements of an action for civil conspiracy." *Id.* at 511, 28 Cal.Rptr.2d 475, 869 P.2d 454. The court's point appears to have been that simply agreeing to commit a tort does not give rise to a cause of action if no tort is actually committed.


### A. Shell and Longinotti

Shell and Longinotti next argue that the conspiracy claim must be dismissed because Plaintiffs fail to allege the conspiracy with sufficient particularity as to them. *See Alfus v. Pyramid Tech. Corp.,* 764 F.Supp. 598, 606-07 (N.D.Cal.1991) (conspiracy must be pleaded with particularity under Rule 9(b)). Plaintiffs assert in their conspiracy cause of action that "[t]he conspiracy consisted of the systematic, institutionalized process by which *CSFB and its employees* agreed to participate in, and did participate in, to illegally manipulate the market price of shares in IPOs underwritten by CSFB, including the Netcentives IPO which violated [the] law." TAC ¶ 383 (emphasis added). Plaintiffs further allege that

the "conspiracy also consisted of authoring, publishing and republishing the materially misleading Netcentives Prospectus in violation of law." *Id.* ¶ 384. However, as Shell and Longinotti argue, and as Plaintiff failed to rebut, the TAC nowhere alleges any facts that Shell or Longinotti agreed to participate in the alleged scheme by CSFB and its employees to engage in illegal market manipulation, or that Shell or Longinotti agreed to conspire with the CSFB Defendants to author, publish, or republish a misleading prospectus. Thus, the Court GRANTS the motion to dismiss Plaintiffs' conspiracy claim against Shell and Longinotti. Dismissal is with prejudice because Plaintiffs have had ample opportunities to rebut Defendants' arguments with specific allegations and failed to do so, and Plaintiffs have also already had two opportunities to amend the complaint. The Court therefore finds that granting leave to amend is unwarranted.


### B. Quattrone

**\*12** Quattrone argues that the conspiracy claim against him must be dismissed because (1) Plaintiffs fail to allege any communications between Quattrone and Shell or Longinotti and (2) the "agent's immunity rule" states that an employee cannot conspire with his employer or fellow employees, thus preventing any conspiracy between Quattrone and Boutros, Duncan, or CSFB. Plaintiffs failed to rebut either argument. They point to no allegation in the TAC where Quattrone is alleged to have made any agreement with Shell or Longinotti. Nor do Plaintiffs cite any authority contrary to the case cited by Quattrone holding that an employee cannot conspire with his employer or with fellow employees acting in the course of their employment. *Black v. Bank of Am.,* 30 Cal.App.4th 1, 6, 35 Cal.Rptr.2d 725 (1994) ("When a corporate employee acts in the course of his or her employment, on behalf of the corporation, there is no entity apart from the employee with whom the employee can conspire.... A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation."). In addition, Plaintiffs conceded that Quattrone had no involvement with the Netcentives merger. Thus, the Court GRANTS Quattrone's motion to dismiss with prejudice the conspiracy claim against him.


### VIII. Unfair Competition Law Claim

Shell, Longinotti, and Quattrone all move to dismiss

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 10
Not Reported in F.Supp.2d, 2005 WL 2045807 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

Plaintiffs' unfair competition law ("UCL") claim under California Business and Professions Code sections 17200 et seq. Plaintiffs failed to respond to this issue in their opposition papers or at oral argument, and the Court construes Plaintiffs' lack of opposition as a concession. In addition, Plaintiffs claim that Defendants violated California's UCL "when they took steps to pay for UVN securities with artificially inflated Netcentives' shares." TAC ¶ 390. However, several courts have concluded that section 17200 does not apply to securities transactions, and it appears that no court has held to the contrary. E.g., Bowen v. Ziasun Technologies, Inc., 116 Cal.App.4th 777, 786-90, 11 Cal.Rptr.3d 522 (2004) (and cases cited therein). In light of all of the above, the Court GRANTS Defendants' motions to dismiss with prejudice Plaintiffs' UCL claim.

CONCLUSION

For the reasons discussed above, the Court GRANTS in their entirety the motions to dismiss brought by Defendants Shell, Longinotti, and Quattrone. Plaintiffs have already amended the complaint twice, and they have failed to convince the Court that a third opportunity to amend their claims against these three defendants is warranted. In addition, Plaintiffs failed to respond in their opposition papers to many of Defendants' arguments and, beyond that, failed to respond to the Court's questions during oral argument. Silence, especially in the face of multiple opportunities to respond, is tantamount to a concession. Based on these concessions, in conjunction with the Court's interpretation of governing law, the Court concludes that Plaintiffs cannot state a claim against Shell, Longinotti, or Quattrone, even when the Court, as it must, views the allegations in the third amended complaint in a light most favorable to Plaintiffs.

*13 Consequently, only some of Plaintiffs' claims against the CSFB Defendants remain in this case. The Court previously granted Plaintiffs leave to amend a limited number of claims but did not set a deadline by which amendments must be made due to the remaining motions to dismiss yet to be decided. Now that the Court has ruled on all motions to dismiss, IT IS HEREBY ORDERED that Plaintiffs shall file their fourth amended complaint, taking into account this order and the Court's orders on the CSFB Defendants' motions to dismiss and strike, no later than thirty calendar days from the date of this order. During that time period, the Court encourages the parties to meet and confer over Plaintiffs' proposed amendments in

an attempt to resolve any remaining disputes over the sufficiency of the pleadings. If the parties are meeting and conferring in good faith, then the Court will entertain a stipulation to extend the deadline for filing the fourth amended complaint.

IT IS FURTHER ORDERED that the remaining parties shall appear for a further case management conference on Monday, October 17, 2005, at 1:30 PM. The parties shall file a joint case management statement on or before Friday, October 7, 2005.

Finally, although the CSFB Defendants submitted a supplemental brief regarding the Supreme Court's decision in Dura Pharmaceuticals, reconsideration of the Court's order on the CSFB Defendants' motion to dismiss is not properly before the Court.[FN3] If the CSFB Defendants wish to file a motion for reconsideration, they must do so in accordance with this Court's Civil Local Rules.

> FN3. Because this Court dismissed Plaintiffs' fraud claims against Shell, Longinotti, and Quattrone on other grounds, it was unnecessary for the Court to decide whether Dura applies.

IT IS SO ORDERED.

N.D.Cal.,2005.
Scognamillo v. Credit Suisse First Boston LLC
Not Reported in F.Supp.2d, 2005 WL 2045807 (N.D.Cal.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 733583 (Trial Pleading) Answer of Credit Suisse Securities (USA) LLC, George F. Boutros, and Storm Duncan to the Fifth Amended Complaint (Feb. 3, 2006) Original Image of this Document (PDF)
• 2005 WL 3606647 (Trial Pleading) Fifth Amended Complaint (Nov. 23, 2005) Original Image of this Document (PDF)
• 2005 WL 3606646 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Objection to Prposed Judgment (Nov. 4, 2005) Original Image of this Document (PDF)
• 2005 WL 2614059 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Brief Regarding Dura Pharmaceuticals v. Broudo, 125 S.CT. 1627 (2005) (Aug. 5, 2005) Original Image of this Document with Appendix (PDF)
• 2004 WL 2159179 (Trial Motion, Memorandum

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                          Page 11
Not Reported in F.Supp.2d, 2005 WL 2045807 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

and Affidavit) Joint Opposition of Defendants John F. Longinotti and West Shell, Iii to Plaintiffs' Motion for Denial of Defendants' Request for Judicial Notice, Or, in the Alternative, for A Conversion of Defendants' Motions to Motions for Summary Adjudication (Sep. 20, 2004) Original Image of this Document (PDF)

• 2004 WL 2159187 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities of Defendant Frank P. Quattrone in Opposition to Plaintiffs' Alternative Motions for Denial of Request for Judicial Notice or Conversion of Defendants' Motions to Motions for Summary Adjudication (Sep. 20, 2004) Original Image of this Document (PDF)

• 2004 WL 2159190 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities of Defendants Credit Suisse First Boston Llc, George F. Boutros and Storm Duncan in Opposition to Plaintiffs' Motion for Denial of Defendants' Request for Judicial Notice Or, in the Alternative, for A Conversion o f Defendants' Motions to Motions for Summary Adjudication (Sep. 20, 2004) Original Image of this Document (PDF)

• 2004 WL 2159701 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities of Defendant Frank P. Quattrone in Opposition to Plaintiffs' Alternative Motions for Denial of Request for Judicial Notice or Conversion of Defendants' Motions to Motions for Summary Adjudication (Sep. 20, 2004) Original Image of this Document (PDF)

• 3:03cv02061 (Docket) (May. 02, 2003)

• 2003 WL 23793601 (Trial Pleading) Second Amended Complaint (2003) Original Image of this Document (PDF)

• 2003 WL 23793623 (Trial Pleading) Third Amended Complaint (2003) Original Image of this Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.