Langdon v. Google Inc. et al Doc. 63 Att. 3


# EXHIBIT C

**Reply Brief in Further Support of Google Inc.'s Motion to Dismiss the Amended Complaint**

Dockets.Justia.com

**H**
Briefs and Other Related Documents
Scognamillo v. Credit Suisse First Boston LLCN.D.Cal.,2005.Only the Westlaw citation is currently available.

United States District Court,N.D. California.
Frank SCOGNAMILLO, et al., Plaintiffs,
v.
CREDIT SUISSE FIRST BOSTON LLC, et al., Defendants.
**No. C03-2061 TEH.**

Aug. 25, 2005.

Leo Ray Beus, Quinton F. Seamons, Beus Gilbert PLLC, Scottsdale, AZ, Robert S. Green, Robert A. Jigarjian, Green Welling LLP, San Francisco, CA, for Plaintiffs.
Paul L. Stoller, Don Bivens, Meyer Hendricks & Bivens, P.A., Joel P. Hoxie, Jennifer L. Hadley, Snell & Wilmer L.L.P., Maureen Beyers, Osborn Maledon, P.A., Phoenix, AZ, Fraser Lee Hunter, Robert Bruce McCaw, Wilmer Cutler Pickering Hale & Dorr LLP, Mitchell A. Lowenthal, Cleary Gottlieb Steen & Hamilton LLP, New York, NY, Bruce B. Kelson, Stephen D. Hibbard, Shearman & Sterling LLP, David T. Vanalek, Joseph E. Floren, Stephen S. Mayne, Steefel, Levitt & Weiss, A Professional Corporation, Benjamin J. Holl, Drinker Biddle & Reath LLP, Dirk M. Schenkkan, Evan Nadel, Howard Rice Nemerovski Canady et. al., San Francisco, CA, Caroline McIntyre, Daniel J. Bergeson, Bergeson LLP, San Jose, CA, for Defendants.

*ORDER GRANTING MOTIONS TO DISMISS BY DEFENDANTS SHELL, LONGINOTTI, AND QUATTRONE*

HENDERSON, J.
*1 This matter came before the Court on Monday, July 11, 2005, on motions to dismiss filed by Defendants West Shell III, John F. Longinotti, and Frank Quattrone. The parties submitted supplemental briefs on the impact of the United States Supreme Court's decision in *Dura Pharmaceuticals, Inc. v. Broudo*, --- U.S. ----, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005), on August 5, 2005. After carefully reviewing all of the parties' papers and considering the parties' oral arguments, relevant case law, and Plaintiffs' factual allegations, the Court now GRANTS all three motions for the reasons discussed below.

BACKGROUND

The parties are familiar with the factual background of this case, and the Court has already summarized Plaintiffs' allegations in a prior order. Thus, the Court need not re-summarize the allegations here.

By agreement of the parties and order of this Court, Plaintiffs filed a second amended complaint on January 13, 2004.[FN1] It was not until the second amended complaint that Defendant Quattrone was added to the case. Again by agreement of the parties and order of this Court, Plaintiffs filed a third amended complaint ("TAC") on May 3, 2004.

FN1. Plaintiffs actually filed the second amended complaint on December 12, 2003. However, they did not have leave of court to do so, and the parties later stipulated that Plaintiffs would be granted such leave, but that the complaint would not be deemed filed until the Court signed off on the stipulation. The Court's approval of the parties' stipulation and proposed order was filed on January 13, 2004.

On September 27, 2004, Defendants Credit Suisse First Boston ("CSFB"), George Boutros, and Storm Duncan (collectively referred to as the "CSFB Defendants") filed motions to dismiss and strike portions of the third amended complaint. On February 1, 2005, the Court granted in part and denied in part the CSFB Defendants' motion to strike. The Court granted the motion regarding allegations that reference unadjudicated government investigations, regulatory actions, and other litigation, and it also granted the motion to strike allegations regarding Defendant Quattrone's compensation at CSFB, the termination of his employment at CSFB, and his indictment and trial on charges of obstruction of justice. The Court denied the motion to strike on all other issues.

On March 21, 2005, the Court granted in part and denied in part the CSFB Defendants' motion to dismiss. The Court dismissed without prejudice

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Plaintiffs' fraud-based claims that rely on allegations that Defendants Boutros and Duncan "encouraged many of the practices described in this Complaint" and "in some instances, personally engaged in the practices described in this Complaint" for failure to plead fraud with particularity. In addition, the Court dismissed with prejudice Plaintiffs' fraud-based claims based on alleged misstatements regarding the business prospects and future value of Netcentives as non-actionable statements of opinion, and it also dismissed with prejudice Plaintiffs' claim for violation of California Corporations Code sections 25401 and 25501 for lack of privity. The Court denied the CSFB Defendants' motion in all other respects, concluding that the allegations viewed in a light most favorable to Plaintiffs were sufficient to withstand scrutiny at this early stage of the proceedings.

Defendants Shell, Longinotti, and Quattrone have now filed separate motions to dismiss the claims asserted against them in the third amended complaint. This order addresses the issues raised in all three motions.

## LEGAL STANDARD

*2 Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when a plaintiff's allegations fail "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). A court should not grant dismissal "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Moreover, dismissal should be with leave to amend unless it is clear that amendment could not possibly cure the complaint's deficiencies. *Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293, 1296 (9th Cir.1998).

In deciding whether a case should be dismissed, a court may generally only consider the complaint and any attached exhibits that have been incorporated therein. *Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir.2001). However, the court may consider a document external to the complaint if the complaint "necessarily relies" on the document and no party contests the document's authenticity. *Parrino v. FHP, Inc.,* 146 F.3d 699, 706 (9th Cir.1998). The court may also consider facts for which judicial notice is appropriate. *Barron v. Reich,* 13 F.3d 1370, 1377 (9th Cir.1994). Thus, while the court must generally accept as true the factual allegations of the complaint and construe those allegations in the light most favorable to the plaintiff, the court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir.2001), *amended by* 275 F.3d 1187 (9th Cir.2001). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Id.*

## DISCUSSION

### I. Breach of Fiduciary Duty

The Court summarized the law governing claims for breach of fiduciary duty in its order on the CSFB Defendants' motion to dismiss:
"The mere fact that in the course of their business relationships the parties reposed trust and confidence in each other does not impose any corresponding fiduciary duty in the absence of an act creating or establishing a fiduciary relationship known to law." *City Solutions, Inc. v. Clear Channel Communications, Inc.,* 201 F.Supp.2d 1048, 1050 (N.D.Cal.2002) (citing *Worldvision Enterprises, Inc. v. Am. Broad. Cos.,* 142 Cal.App.3d 589, 595, 191 Cal.Rptr. 148 (1983)). To become a fiduciary, a person "must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law." *Comm. on Children's Television, Inc. v. Gen. Foods Corp.,* 35 Cal.3d 197, 221, 197 Cal.Rptr. 783, 673 P.2d 660 (1983). That is, a fiduciary "assumes duties beyond those of mere fairness and honesty in marketing its product-he must undertake to act on behalf of the beneficiary, giving priority to the best interest of the beneficiary." *Id.* at 222, 197 Cal.Rptr. 783, 673 P.2d 660. A fiduciary relationship generally does not arise in a buyer-seller relationship, "even though sellers routinely make representations concerning their product, often on the basis of a claimed expert knowledge about its utility and value." *Id.* However, "[d]oubtless in an exceptional case a court might be able to find that a close and trusting relationship between buyer and seller, in which the buyer relied on the seller and the seller recognized that reliance, justified imposing fiduciary duties." *Id.* at 222 n. 22, 197 Cal.Rptr. 783, 673 P.2d 660.

*3 Mar. 21, 2005 Order Granting in Part & Denying in Part the CSFB Defs.' Mot. to Dismiss at 3-4 [hereinafter "CSFB Mot. to Dismiss Order"].

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

In ruling on the CSFB Defendants' motion to dismiss, the Court found that the allegations in the TAC demonstrate that Plaintiffs negotiated aggressively during the merger, thus suggesting that the negotiations were arms-length. Furthermore, the Court found that the merger agreement itself expressly states that the parties agreed that they were represented by counsel during the negotiation, preparation, and execution of the agreement. The Court noted that the fiduciary duty claims therefore appeared to be unfounded, and that Plaintiffs did not identify a single case where a financial advisor in an arms-length negotiation was found to owe fiduciary duties to the opposing party. Nonetheless, the Court concluded that Plaintiffs' allegations were sufficient to withstand a motion to dismiss:

Plaintiffs specifically allege that Defendant Duncan, on behalf of all Defendants, told Plaintiffs that they "need not retain their own financial adviser or separate investment banker because CSFB was the 'underwriter and 'market maker' for Netcentives shares, and that CSFB owed duties to the marketplace, including duties to Plaintiffs, to disclose all material information." TAC ¶ 89. Plaintiffs further allege that "Duncan insisted that all CSFB personnel were 'straight shooters.' These representations, along with the business advice provided by Duncan and Boutros to Plaintiffs during the Merger, induced Plaintiffs to impose trust and confidence in CSFB and each Individual Defendant and to consider the Merger a joint venture in which they did not need separate advisers." *Id.* Thus, Defendants allegedly went beyond saying they had confidential or superior information about Netcentives. When viewed in a light most favorable to Plaintiffs, the allegations suggest that Defendants induced Plaintiffs' trust and convinced Plaintiffs that Defendants would be acting in Plaintiffs' best interest. This is sufficient to state claims for breach of fiduciary duty, and the Court therefore DENIES Defendants' motion as to these claims.

*Id.* at 4-5.

A. Shell and Longinotti

Plaintiffs heavily rely on paragraph 89 of the TAC to support their breach of fiduciary claims against Shell and Longinotti, but that paragraph only alleges that Duncan made statements "on behalf of all Defendants." At oral argument, the Court asked Plaintiffs what statements or actions by Shell or Longinotti-as opposed to statements or actions by Boutros, Duncan, or CSFB-allegedly gave rise to a fiduciary relationship. The Court further asked Plaintiffs if they had any authority for their proposition that Shell and Longinotti became Plaintiffs' fiduciaries because Duncan allegedly spoke on their behalf. These questions were included in a list of questions distributed to all counsel prior to argument, yet Plaintiffs' counsel failed to respond. The Court considers this failure to respond to be a concession that Plaintiffs can allege no statements or actions by Shell or Longinotti, as opposed to statements or actions allegedly made on their behalf, that may give rise to a fiduciary duty. By failing to respond to the Court's questioning, Plaintiffs also conceded that they have no authority for the proposition that Shell and Longinotti may have entered into a fiduciary relationship with Plaintiffs based on statements allegedly made on their behalf by a third party.

*4 Plaintiffs do attribute several statements to Shell or Longinotti in the TAC, but these are insufficient to give rise to a fiduciary duty. For example, Plaintiffs allege that Shell and Longinotti, like Boutros and Duncan, represented that they had superior inside information that Plaintiffs should rely upon, and that Shell and Longinotti encouraged Plaintiffs to be team players. As the case law cited above demonstrates, this is not enough to establish a fiduciary relationship; instead, it is mere puffery that would likely be present in any sales relationship. It is highly unlikely that the CEO and CFO of a company on the other side of a merger deal would seek to act in the target company's best interests, and Plaintiffs have failed to point to any specific allegations of statements or actions by Shell or Longinotti that indicate that this case is so exceptional that the fiduciary duty claims should be allowed to proceed. Accordingly, with good cause appearing, the Court GRANTS the motion to dismiss the breach of fiduciary duty claims against Shell and Longinotti with prejudice. Plaintiffs have already had two opportunities to amend the complaint, and their failure to respond to the Court's questioning on what already appears to be a tenuous claim convinces the Court that further leave to amend would be futile.

B. Quattrone

Quattrone presents an even more tenuous case than Shell and Longinotti. Plaintiffs nowhere allege any direct interactions between themselves and Quattrone, and they admitted at oral argument that Quattrone had no involvement in the merger that

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

forms the basis for this lawsuit. Instead, Plaintiffs assert that Quattrone assumed a fiduciary relationship with Plaintiffs because, as the director of the group at CSFB that handled the Netcentives IPO, he knew that the Netcentives prospectus contained fraudulent misrepresentations and that Plaintiffs were "invited to rely upon CSFB and the Prospectus." Opp'n at 30. Even if that were true, however, it is not enough to show that Quattrone knowingly undertook to act on behalf and for the benefit of Plaintiffs, which is what is required to state a claim for breach of fiduciary duty. The Court therefore GRANTS Quattrone's motion to dismiss the breach of fiduciary duty claims against him. Dismissal of these claims is with prejudice because, even if given leave to amend, Plaintiffs could not allege that Quattrone somehow assumed fiduciary duties to individuals he never had any interactions with on a merger with which he was not involved.

II. Aiding and Abetting Breach of Fiduciary Duty

To be liable for aiding and abetting breach of a fiduciary duty, a defendant must have knowledge of the breach and must have substantially assisted or encouraged the breach. *Ortho-Med, Inc. v. Micro-Aire Surgical Instruments, Inc.*, No. CV 93-7621 JGD, 1995 WL 293180, at *12 (C.D.Cal. Apr.10, 1995). Plaintiffs do not dispute that these are elements of a claim for aiding and abetting a breach of fiduciary duty.

A. Shell and Longinotti

*5 Plaintiffs cite paragraphs 269-86 of the TAC as evidence that they have sufficiently alleged both that Shell and Longinotti knew of the breach of fiduciary duty by the CSFB Defendants and that they substantially assisted or encouraged that breach. However, these paragraphs contain only summary allegations. For example, paragraph 285 of the TAC merely alleges that "[e]ach of the Individual Defendants provided substantial assistance to each of the other Individual Defendants and CSFB in breaching their respective fiduciary duties by aiding, abetting, participating in and/or assisting each of the other Individual Defendants and CSFB in their improper and wrongful conduct." The Court need not accept as true such conclusory allegations where, as here, Plaintiffs have pointed to no specific factual allegations regarding Shell's or Longinotti's knowledge of any fiduciary duties the CSFB Defendants may have undertaken on Plaintiffs' behalf, or to any specific allegations regarding what Shell or Longinotti allegedly did to substantially assist or encourage breach of any such duties. Given Plaintiffs' failure to identify specific allegations, and their having had multiple opportunities to do so, the Court finds good cause to GRANT the motion to dismiss with prejudice the aiding and abetting claims against Shell and Longinotti.

B. Quattrone

Plaintiffs also fail to plead the necessary elements of an aiding and abetting claim as to Quattrone. Plaintiffs do not, for example, discuss any knowledge by Quattrone of the merger negotiations between Netcentives and UVN, let alone knowledge of statements or actions by the other defendants that may have created a fiduciary duty. Nor have Plaintiffs alleged any actions by Quattrone that could have substantially assisted someone else's breach of fiduciary duties during the merger negotiations. Plaintiffs' response to Quattrone's motion is even more meager than their response to Shell's and Longinotti's motions, since Plaintiffs failed even to cite any paragraphs of the TAC to support their conclusory statement that "Plaintiffs have adequately pled, in accordance with Rule 9(b), the elements of a claim against Quattrone for aiding and abetting breach of fiduciary duty." Opp'n at 53. Accordingly, the Court GRANTS Quattrone's motion to dismiss with prejudice the aiding and abetting claim asserted against him.

III. Negligence

A. Shell and Longinotti

Like the CSFB Defendants, Shell and Longinotti argue that they owed no actionable duty of reasonable care to Plaintiffs and that Plaintiffs' negligence claim must therefore fail. In ruling on the CSFB Defendants' motion to dismiss, the Court observed that:

Defendants correctly assert that it would make no sense to impose a duty of negligence on professional advisors in the general case: "To impose the duty asserted by plaintiffs here would place every financial advisor in a hopeless conflict of interest-the advisor could never fulfill its duty to negotiate the best deal possible for its own client without at least the fear of violating a countervailing duty to ensure that the terms of the deal were also advantageous to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

its client's counterparty/adversary." Mot. at 10. *See also* Quelimane Co. v. Stewart Title Guar. Co., 19 Cal.4th 26, 59, 77 Cal.Rptr.2d 709, 960 P.2d 513 ("In the business arena it would be unprecedented to impose a duty on one actor to operate a business that would ensure the financial success of transactions between third parties. With rare exceptions, a business entity has no duty to prevent financial loss to others with whom it deals directly.").

***6** CSFB Mot. to Dismiss Order at 5-6. The Court declined to dismiss Plaintiffs' negligence claims against the CSFB Defendants because the Court found that Plaintiffs may be able to demonstrate the existence of a fiduciary relationship between the CSFB Defendants and Plaintiffs, and Defendants conceded that such a relationship would give rise to a duty under negligence law. *Id.* at 6.

However, as discussed above, the Court reached a contrary conclusion regarding Shell and Longinotti, finding that Plaintiffs' breach of fiduciary duty claims fail as to these defendants because Plaintiffs have not adequately alleged the existence of a fiduciary relationship. Thus, it would be extraordinary to impose a duty of care on Shell and Longinotti under negligence law, and Plaintiffs have cited no precedent for doing so.[FN2]

FN2. Plaintiffs assert that Defendants were negligent because they failed to disclose material information. However, the single case Plaintiffs cite in support of this proposition was a fraud case, not a negligence case. *See* Reyes v. Atl. Richfield Co., 12 F.3d 1464, 1472 (9th Cir.1993); *see also* Goodman v. Kennedy, 18 Cal.3d 335, 346-48, 134 Cal.Rptr. 375, 556 P.2d 737 (1976) (discussing breach of duty to disclose as the basis for a fraud claim). Although a defendant may be negligent for failing to disclose material information if such failure violates the relevant standard of care, that defendant must first be found to owe a duty of care to the plaintiff. As discussed below, the Court does not find it appropriate to impose such a duty in this case.

In addition, although Plaintiffs argue that they were not sophisticated or knowledgeable with respect to mergers, this Court has already explained that Plaintiffs allege that they were highly experienced businessmen and that Plaintiff Cresto was a major law partner in a department handling financial services, mergers, and acquisitions:

For example, the complaint alleges that the "management team," including Plaintiffs Scognamillo and Galasso, "was experienced and successful in developing and expanding the business of UVN." TAC ¶ 59. Prior to joining UVN, Plaintiff Galasso was the CEO of the consumer credit card division of Bank of America. *Id.* Plaintiff Scognamillo has more than twenty years of marketing experience and, together with Plaintiff Shein, developed and organized UVN. *Id.* ¶ ¶ 57-58. Plaintiff Cresto was laterally hired as a partner by Seyfarth Shaw in the "financial services, mergers and acquisitions" department. Defs.' Request for Judicial Notice Ex. 1. Elsewhere, the complaint alleges that Plaintiffs questioned the terms of the agreement, *e.g.*, TAC ¶ 92, and actually threatened to walk away from the deal shortly before the closing after the equity portion of the merger agreement was reduced from $27 million to $22 million, *id.* ¶ ¶ 116-17. In addition, the merger agreement explicitly states that the parties "agree that they have been represented by counsel during the negotiation, preparation, and execution of the Agreement." Hibbard Decl. Ex. E § 7.8.

CSFB Mot. to Dismiss Order at 7-8. These allegations belie any claim Plaintiffs now assert that they were powerless parties to this merger, or that they had no knowledge of business affairs, and Plaintiffs have failed to counter Defendants' argument that public policy dictates against imposing a negligence duty where, as here, Plaintiffs were knowledgeable, sophisticated businessmen and Defendants owed no fiduciary duties to Plaintiffs. *See* *Desert Healthcare Dist. v. PacifiCare, FHP, Inc.,* 94 Cal.App.4th 781, 792-93, 114 Cal.Rptr.2d 623 (2001) (citing *Quelimane,* 19 Cal.4th at 58, 77 Cal.Rptr.2d 709, 960 P.2d 513, and *Bily v. Arthur Young & Co.,* 3 Cal.4th 370, 403, 11 Cal.Rptr.2d 51, 834 P.2d 745 (1992)) (observing that, "where the plaintiffs are sophisticated, knowledgeable entities, distinguishable from the 'presumptively powerless consumer,' '[a]s a matter of economic and social policy, [the plaintiffs] should be encouraged to rely on their own prudence, diligence, and contracting power, as well as other informational tools" '). For all of the reasons discussed above, this Court concludes that Shell and Longinotti did not owe a duty of care to Plaintiffs to prevent them from suffering economic harm. To hold otherwise would require the unprecedented conclusion that a seller owes a duty to take reasonable steps to protect the economic interests of a buyer-even where no fiduciary relationship exists between the buyer and seller and the buyer is

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

sophisticated, represented by counsel, and not a powerless consumer. The Court refuses to make such an extraordinary holding and therefore GRANTS the motion to dismiss with prejudice the negligence claim asserted against Shell and Longinotti.

B. Quattrone

*7 The Court has also found that Quattrone, like Shell and Longinotti, did not owe fiduciary duties to Plaintiffs as a matter of law. Thus, as with Shell and Longinotti, it would be unprecedented to impose a duty of care under negligence law on Quattrone under the factual allegations of this case.

Moreover, Plaintiffs specifically argue in their opposition that their negligence claim against Quattrone is not based on supervisory or vicarious liability, but is instead based on Quattrone's alleged direct participation in Defendants' allegedly negligent acts. However, Plaintiffs never allege any participation by Quattrone in the Netcentives/UVN deal. Absent any such allegations, Plaintiffs cannot establish that Quattrone owed them any duty in connection with the merger discussions.

Plaintiffs further allege that Quattrone owed them a duty of care by virtue of the standard of care allegedly established by various securities rules and regulations. However, Plaintiffs failed to respond to Quattrone's argument that National Association of Securities Dealers ("NASD") rules do not create legal duties to members of the general public, including Plaintiffs, and that the standard of care established by such rules is therefore irrelevant to a negligence claim against Quattrone. *See, e.g., Stevenson v. Rochdale Inv. Mgmt., Inc.*, No. CIV. A. 3:97CV1544L, 2000 WL 1278479, at *9 (N.D.Tex. Sept.7, 2000) (NASD rules "do not impose a legal duty to perform some affirmative act or refrain from performing some act"). Even though NASD rules may be evidence of the proper standard of care in cases where a duty is found to exist, they do not in and of themselves establish any such duty. Similarly, Plaintiffs failed to respond to Quattrone's argument that section 17(a) of the Exchange Act "does not by any stretch of its language purport to confer private damages rights." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 570, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979).

Plaintiffs also failed to respond to Quattrone's argument that the Securities and Exchange Commission ("SEC") regulations cited by Plaintiffs do not apply to him. Quattrone argues that SEC Regulation M does not apply because Plaintiffs have failed to allege that Quattrone bid for, purchased, or induced anyone to bid for Netcentives stock during the restricted period after the Netcentives IPO. In addition, Quattrone argues that SEC Regulation S-K does not apply to him because he did not sign the registration statement and was an employee of the issuer's investment bank, not of the issuer. Plaintiffs' utter failure to respond to these arguments essentially concedes them. Given all of the above, the Court GRANTS Quattrone's motion to dismiss with prejudice the negligence claim asserted against him.

IV. Fraud and Negligent Misrepresentation

A. Shell and Longinotti

Shell and Longinotti move to dismiss the fraud and negligent misrepresentation claims on grounds that any reliance by Plaintiffs was not justifiable. *Gonsalves v. Hodgson*, 38 Cal.2d 91, 100-01, 237 P.2d 656 (1951) (absence of justifiable reliance will preclude recovery on a fraud claim). As discussed above, the allegations in the TAC demonstrate that Plaintiffs were sophisticated businessmen who were represented by counsel during the negotiation, preparation, and execution of the merger agreement. Although the Court declined to dismiss the fraud claims against the CSFB Defendants based on lack of justifiable reliance, the Court did so only because Plaintiffs may be able to establish a fiduciary relationship with the CSFB Defendants. Plaintiffs cannot do so with respect to Shell or Longinotti, and any reliance on statements made by Shell or Longinotti would therefore have been unreasonable as a matter of law. Plaintiffs cannot demonstrate that, in the absence of a fiduciary relationship, reliance on statements made by individuals on the other side of a business transaction would have been justified in light of Plaintiffs' knowledge and experience. *See Kolodge v. Boyd*, 88 Cal.App.4th 349, 373, 105 Cal.Rptr.2d 749 (2001) (citations omitted) (noting that the issue "is whether the person who claims reliance was justified in believing the representation in the light of his own knowledge and experience"). Even though reasonable reliance is ordinarily a question of fact, *id.*, dismissal is appropriate where, as here, Plaintiffs can prove no set of facts that would entitle them to relief. Accordingly, the Court GRANTS the motion to dismiss Plaintiffs' fraud-based claims against Shell and Longinotti with prejudice. This includes Plaintiffs' claims for fraud

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

and negligent misrepresentation, as well as Plaintiffs' statutory claim for fraudulent deceit.

*8 In addition, several of Plaintiffs' fraud claims against Shell and Longinotti fail for independent reasons. First, the Court has already ruled that statements regarding the business prospects and future value of Netcentives are non-actionable statements of opinion. CSFB Mot. to Dismiss Order at 13. Second, as to statements about alleged other transactions with Netcentives and a supposedly pending merger, Plaintiffs' claims against Longinotti must be dismissed because Plaintiffs fail to allege with the requisite specificity that Longinotti ever made such statements. Instead, the TAC only alleges specific representations made by Duncan, Boutros, and Shell regarding these other deals. *See* TAC ¶ ¶ 115-32. Third, as to statements about the Netcentives IPO and prospectus, Shell and Longinotti correctly argue that Plaintiffs fail to allege any facts showing these defendants' roles in any market manipulation scheme. Instead, the allegations only describe in detail the schemes that CSFB allegedly employed during other contemporaneous IPOs. Plaintiffs fail to tie these allegations, or knowledge of CSFB's allegedly habitual fraudulent practices, to Shell or Longinotti. Plaintiffs do allege that "Shell and Longinotti knew, should have known, or were reckless in not knowing, of the manipulative arrangements for distributing and trading the Netcentives shares that occurred during the IPO and during the Merger and aftermarket trading." TAC ¶ 88. However, this is a conclusory allegation that the Court need not accept as true when, as here, it is unsupported by any factual allegations about how Shell or Longinotti could or would have known that CSFB engaged in unlawful market manipulation regarding the Netcentives IPO (if, in fact, any such manipulation occurred).

B. Quattrone

Like Shell and Longinotti, Quattrone did not owe any fiduciary duties to Plaintiffs, and any reliance on statements made by Quattrone would therefore also have been unreasonable as a matter of law. Moreover, Plaintiffs' fraud and negligent misrepresentation claims are based on Defendants' alleged failure "to make full and fair disclosure of all material facts in the offer and sale of Netcentives shares in the Merger" and Defendants' alleged "material misrepresentations and omissions in the Merger." *E.g.*, TAC ¶ ¶ 313, 333. Given that Plaintiffs fail to allege any representations made by Quattrone, or even any involvement by Quattrone in the merger discussions, they cannot state a claim against Quattrone based on such statements or omissions. Plaintiffs failed to respond to the Court's question at oral argument asking whether they had any other basis for asserting fraud claims against Quattrone, and the Court construes Plaintiffs' silence as a concession that they have no other basis to assert such claims. For all of these reasons, the Court GRANTS Quattrone's motion to dismiss with prejudice the fraud-based claims asserted against him.

V. Corporations Code Claims

*9 Plaintiffs assert two claims under the California Corporations Code against all three moving defendants: violation of sections 25400 and 25500 (count XI) and violation of section 25403 (count XIII). Plaintiffs assert two additional claims against Defendant Quattrone, but not against Defendants Shell and Longinotti: violation of section 25401 (count XII) and violation of section 25504.1 (count XIV). Shell, Longinotti, and Quattrone move to dismiss all Corporations Code claims asserted against them.

A. Shell and Longinotti

1. Count XI (sections 25400/25500)

Sections 25400 and 25500 of the Corporations Code only apply to buyers or sellers of securities. *Kamen v. Lindly*, 94 Cal.App.4th 197, 206, 114 Cal.Rptr.2d 127 (2001) (holding that section 25500, which allows civil liability for a violation of section 25400, "applies only to a defendant who is either a person selling or offering to sell or buying or offering to buy a security"). Unlike sections 25401 and 25501, sections 25400 and 25500 do not require direct privity-i.e., a sale from defendant to plaintiff.

In the briefing and oral argument on the CSFB Defendants' motion to dismiss, Plaintiffs conceded that there was no direct privity between Plaintiffs and Defendants in this case-i.e., that CSFB, Boutros, and Duncan never sold or offered to sell Netcentives shares to Plaintiffs. Thus, Plaintiffs conceded that the merger negotiations did not constitute the sale of or offer to sell Netcentives stock, and they cannot now claim that the same negotiations constituted a sale or offer to sell stock by Shell or Longinotti. Plaintiffs

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

nowhere allege any other sale, offer to sell, purchase, or offer to purchase stock by Shell or Longinotti, and they failed to respond to the Court's questioning at oral argument on this point. Consequently, this Court GRANTS the motion to dismiss this claim against Shell and Longinotti with prejudice.

2. Count XIII (section 25403)

Shell and Longinotti argue that Plaintiffs' section 25403 claim must fail because this code section does not provide for a private right of action. In general, statutes in the 25400 series of the Corporations Code are penal in nature, and private remedies for violation of these code sections exist only by virtue of corresponding statutes in the 25500 series. *Cal. Amplifier, Inc. v. RLI Ins. Co.,* 94 Cal.App.4th 102, 108-09, 113 Cal.Rptr.2d 915 (2001) (noting that sections 25400, 25401, and 25402 are penal, but private remedies for damages were available under the corresponding sections 25500, 25501, and 25502). Plaintiffs failed to identify any such corresponding statute for violation of section 25403. Indeed, Plaintiffs completely failed to respond to Defendants' argument; instead, Plaintiffs only responded to the argument raised in the CSFB Defendants' motion to dismiss. The Court construes Plaintiffs' failure to respond, either in their papers or at oral argument, as a concession, and the Court therefore GRANTS the motion to dismiss this claim against Shell and Longinotti with prejudice.

B. Quattrone

***10** The parties agree that Section 25506 provides the relevant statute of limitations for Plaintiffs' Corporations Code claims. That section requires that actions must be brought "four years after the act or transaction constituting the violation or the expiration of one year after discovery by the plaintiff of the facts constituting the violation." Cal. Corp.Code § 25506. The Ninth Circuit has held that inquiry notice suffices to start the running of the statute, but there was no fiduciary relationship present in that case. *Kramas v. Sec. Gas & Oil, Inc.,* 672 F.2d 766, 770 (9th Cir.1982). California law requires actual notice in cases of a fiduciary relationship. *Eisenbaum v. W. Energy Resources,* 218 Cal.App.3d 314, 324-25, 267 Cal.Rptr. 5 (1990). Because the Court finds, as a matter of law, that Quattrone did not owe Plaintiffs any fiduciary duties, inquiry notice applies to the Corporations Code claims asserted against Quattrone. Plaintiffs did not name Quattrone as a defendant until they filed their second amended complaint on January 13, 2004. Thus, with a one-year statute of limitations, Plaintiffs must show that they were not put on inquiry notice until after January 13, 2003. Inquiry notice requires that a plaintiff at least suspect that someone has done something wrong to him, and "failure to discover, or have reason to discover, the identity of the defendant does not postpone the accrual of a cause of action." *Norgart v. Upjohn Co.,* 21 Cal.4th 383, 398-99, 87 Cal.Rptr.2d 453, 981 P.2d 79 (1999).

Plaintiffs cannot satisfy the one-year inquiry notice statute as to Quattrone because they filed their original complaint on March 1, 2002, and that complaint alleged all of the conduct on which their current claims are based. Thus, Plaintiffs clearly suspected wrongdoing by CSFB and two of its employees, Boutros and Duncan, at least as of the time of the filing of the original complaint. Plaintiffs boldly assert that they "had no knowledge of Quattrone's role in the Technology Group of CSFB and his relationship with Boutros and Duncan or reason to suspect his participation in the fraud until the indictment [of Quattrone] was announced" on April 23, 2003, Opp'n at 44, but this is not persuasive. The news articles and court documents from other cases plainly make clear that Quattrone headed the Technology Group at CSFB and worked with Boutros. Although, as Plaintiffs correctly argue, the Court cannot take judicial notice of the accuracy of the facts contained in the articles and documents submitted by Quattrone, the Court can take judicial notice that the statements were made-and that they were made much earlier than January 2003. Given the widespread nature of the publicity surrounding Quattrone's role at CSFB, any reasonable investigation by Plaintiffs would have revealed his role. The Court therefore GRANTS Quattrone's motion to dismiss all Corporations Code claims asserted against him based on the one-year statute of limitations. Dismissal of these claims is with prejudice because Plaintiffs cannot cure this deficiency by amendment.

VI. Acting in Concert

***11** Shell, Longinotti, and Quattrone all argue that acting in concert is not an independent cause of action. For example, Quattrone notes that in *Chavers v. Gatke Corp.,* the California Court of Appeal discussed acting in concert as a theory of joint tort liability rather than an independent cause of action.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Chavers*, 107 Cal.App.4th 606, 615, 132 Cal.Rptr.2d 198 (2003). Shell and Longinotti argue that acting in concert is simply an antiquated means of phrasing conspiracy. *See* *Frost v. Hanscome*, 198 Cal. 550, 557, 246 P. 53 (1926) (defining "conspiracy" as a "concert of action between two or more persons to accomplish an unlawful purpose, or a lawful purpose by unlawful or fraudulent means"). Plaintiffs failed to respond to any of these arguments either in their papers or at oral argument-despite being given a written question specifically asking whether Defendants were correct when they argued that acting in concert was not an independent cause of action. Again, the Court construes Plaintiffs' failure to respond as a concession, and the Court therefore GRANTS the motion to dismiss with prejudice Plaintiffs' acting in concert claim.

VII. Conspiracy

Quattrone and Shell both argue that conspiracy is not an independent cause of action. For support, they cite *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 510-11, 28 Cal.Rptr.2d 475, 869 P.2d 454 (1994), in which the court wrote that "[c]onspiracy is not a cause of action.... Standing alone, a conspiracy does no harm and engenders no tort liability." However, Defendants interpret this quote out of context. Although the court there did write that "[c]onspiracy is not a cause of action," the court later went on to describe the "elements of an action for civil conspiracy." *Id.* at 511, 28 Cal.Rptr.2d 475, 869 P.2d 454. The court's point appears to have been that simply agreeing to commit a tort does not give rise to a cause of action if no tort is actually committed.

A. Shell and Longinotti

Shell and Longinotti next argue that the conspiracy claim must be dismissed because Plaintiffs fail to allege the conspiracy with sufficient particularity as to them. *See* *Alfus v. Pyramid Tech. Corp.*, 764 F.Supp. 598, 606-07 (N.D.Cal.1991) (conspiracy must be pleaded with particularity under Rule 9(b)). Plaintiffs assert in their conspiracy cause of action that "[t]he conspiracy consisted of the systematic, institutionalized process by which *CSFB and its employees* agreed to participate in, and did participate in, to illegally manipulate the market price of shares in IPOs underwritten by CSFB, including the Netcentives IPO which violated [the] law." TAC ¶ 383 (emphasis added). Plaintiffs further allege that the "conspiracy also consisted of authoring, publishing and republishing the materially misleading Netcentives Prospectus in violation of law." *Id.* ¶ 384. However, as Shell and Longinotti argue, and as Plaintiff failed to rebut, the TAC nowhere alleges any facts that Shell or Longinotti agreed to participate in the alleged scheme by CSFB and its employees to engage in illegal market manipulation, or that Shell or Longinotti agreed to conspire with the CSFB Defendants to author, publish, or republish a misleading prospectus. Thus, the Court GRANTS the motion to dismiss Plaintiffs' conspiracy claim against Shell and Longinotti. Dismissal is with prejudice because Plaintiffs have had ample opportunities to rebut Defendants' arguments with specific allegations and failed to do so, and Plaintiffs have also already had two opportunities to amend the complaint. The Court therefore finds that granting leave to amend is unwarranted.

B. Quattrone

***12** Quattrone argues that the conspiracy claim against him must be dismissed because (1) Plaintiffs fail to allege any communications between Quattrone and Shell or Longinotti and (2) the "agent's immunity rule" states that an employee cannot conspire with his employer or fellow employees, thus preventing any conspiracy between Quattrone and Boutros, Duncan, or CSFB. Plaintiffs failed to rebut either argument. They point to no allegation in the TAC where Quattrone is alleged to have made any agreement with Shell or Longinotti. Nor do Plaintiffs cite any authority contrary to the case cited by Quattrone holding that an employee cannot conspire with his employer or with fellow employees acting in the course of their employment. *Black v. Bank of Am.*, 30 Cal.App.4th 1, 6, 35 Cal.Rptr.2d 725 (1994) ("When a corporate employee acts in the course of his or her employment, on behalf of the corporation, there is no entity apart from the employee with whom the employee can conspire.... A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation."). In addition, Plaintiffs conceded that Quattrone had no involvement with the Netcentives merger. Thus, the Court GRANTS Quattrone's motion to dismiss with prejudice the conspiracy claim against him.

VIII. Unfair Competition Law Claim

Shell, Longinotti, and Quattrone all move to dismiss

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Plaintiffs' unfair competition law ("UCL") claim under California Business and Professions Code sections 17200 *et seq.* Plaintiffs failed to respond to this issue in their opposition papers or at oral argument, and the Court construes Plaintiffs' lack of opposition as a concession. In addition, Plaintiffs claim that Defendants violated California's UCL "when they took steps to pay for UVN securities with artificially inflated Netcentives' shares." TAC ¶ 390. However, several courts have concluded that section 17200 does not apply to securities transactions, and it appears that no court has held to the contrary. *E.g., Bowen v. Ziasun Technologies, Inc.,* 116 Cal.App.4th 777, 786-90, 11 Cal.Rptr.3d 522 (2004) (and cases cited therein). In light of all of the above, the Court GRANTS Defendants' motions to dismiss with prejudice Plaintiffs' UCL claim.

CONCLUSION

For the reasons discussed above, the Court GRANTS in their entirety the motions to dismiss brought by Defendants Shell, Longinotti, and Quattrone. Plaintiffs have already amended the complaint twice, and they have failed to convince the Court that a third opportunity to amend their claims against these three defendants is warranted. In addition, Plaintiffs failed to respond in their opposition papers to many of Defendants' arguments and, beyond that, failed to respond to the Court's questions during oral argument. Silence, especially in the face of multiple opportunities to respond, is tantamount to a concession. Based on these concessions, in conjunction with the Court's interpretation of governing law, the Court concludes that Plaintiffs cannot state a claim against Shell, Longinotti, or Quattrone, even when the Court, as it must, views the allegations in the third amended complaint in a light most favorable to Plaintiffs.

***13** Consequently, only some of Plaintiffs' claims against the CSFB Defendants remain in this case. The Court previously granted Plaintiffs leave to amend a limited number of claims but did not set a deadline by which amendments must be made due to the remaining motions to dismiss yet to be decided. Now that the Court has ruled on all motions to dismiss, IT IS HEREBY ORDERED that Plaintiffs shall file their fourth amended complaint, taking into account this order and the Court's orders on the CSFB Defendants' motions to dismiss and strike, no later than thirty calendar days from the date of this order. During that time period, the Court encourages the parties to meet and confer over Plaintiffs' proposed amendments in an attempt to resolve any remaining disputes over the sufficiency of the pleadings. If the parties are meeting and conferring in good faith, then the Court will entertain a stipulation to extend the deadline for filing the fourth amended complaint.

IT IS FURTHER ORDERED that the remaining parties shall appear for a further case management conference on Monday, October 17, 2005, at 1:30 PM. The parties shall file a joint case management statement on or before Friday, October 7, 2005.

Finally, although the CSFB Defendants submitted a supplemental brief regarding the Supreme Court's decision in *Dura Pharmaceuticals,* reconsideration of the Court's order on the CSFB Defendants' motion to dismiss is not properly before the Court.[FN3] If the CSFB Defendants wish to file a motion for reconsideration, they must do so in accordance with this Court's Civil Local Rules.

FN3. Because this Court dismissed Plaintiffs' fraud claims against Shell, Longinotti, and Quattrone on other grounds, it was unnecessary for the Court to decide whether *Dura* applies.

IT IS SO ORDERED.

N.D.Cal.,2005.
Scognamillo v. Credit Suisse First Boston LLC
Not Reported in F.Supp.2d, 2005 WL 2045807 (N.D.Cal.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 733583 (Trial Pleading) Answer of Credit Suisse Securities (USA) LLC, George F. Boutros, and Storm Duncan to the Fifth Amended Complaint (Feb. 3, 2006) Original Image of this Document (PDF)
• 2005 WL 3606647 (Trial Pleading) Fifth Amended Complaint (Nov. 23, 2005) Original Image of this Document (PDF)
• 2005 WL 3606646 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Objection to Prposed Judgment (Nov. 4, 2005) Original Image of this Document (PDF)
• 2005 WL 2614059 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Brief Regarding Dura Pharmaceuticals v. Broudo, 125 S.CT. 1627 (2005) (Aug. 5, 2005) Original Image of this Document with Appendix (PDF)
• 2004 WL 2159179 (Trial Motion, Memorandum

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

and Affidavit) Joint Opposition of Defendants John F. Longinotti and West Shell, Iii to Plaintiffs' Motion for Denial of Defendants' Request for Judicial Notice, Or, in the Alternative, for A Conversion of Defendants' Motions to Motions for Summary Adjudication (Sep. 20, 2004) Original Image of this Document (PDF)

• 2004 WL 2159187 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities of Defendant Frank P. Quattrone in Opposition to Plaintiffs' Alternative Motions for Denial of Request for Judicial Notice or Conversion of Defendants' Motions to Motions for Summary Adjudication (Sep. 20, 2004) Original Image of this Document (PDF)

• 2004 WL 2159190 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities of Defendants Credit Suisse First Boston Llc, George F. Boutros and Storm Duncan in Opposition to Plaintiffs' Motion for Denial of Defendants' Request for Judicial Notice Or, in the Alternative, for A Conversion o f Defendants' Motions to Motions for Summary Adjudication (Sep. 20, 2004) Original Image of this Document (PDF)

• 2004 WL 2159701 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities of Defendant Frank P. Quattrone in Opposition to Plaintiffs' Alternative Motions for Denial of Request for Judicial Notice or Conversion of Defendants' Motions to Motions for Summary Adjudication (Sep. 20, 2004) Original Image of this Document (PDF)

• 3:03cv02061 (Docket) (May. 02, 2003)

• 2003 WL 23793601 (Trial Pleading) Second Amended Complaint (2003) Original Image of this Document (PDF)

• 2003 WL 23793623 (Trial Pleading) Third Amended Complaint (2003) Original Image of this Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.